UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case No.: 23 Cr. 430 (KPF) |
| Plaintiff, | |
| -against- | |
| ROMAN STORM, ET AL., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF ROMAN STORM'S MOTION TO COMPEL DISCOVERY

Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

*Attorneys for Roman Storm*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     PRELIMINARY STATEMENT ........................................................................................1

II.    RELEVANT BACKGROUND ........................................................................................1

III.   LEGAL STANDARDS ..................................................................................................4

IV.   ARGUMENT ..................................................................................................................6

        A.    The Government Should Be Compelled to Produce Communications, including any MLAT Requests, with Authorities in the Netherlands ...................6

        B.    The Government Should Be Compelled to Review and Produce OFAC and FinCEN Materials and Communications ...........................................................7

V.    CONCLUSION.............................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alderman v. United States,*
    394 U.S. 165 (1969) ...................................................................................................... 4

*Amado v. Gonzalez,*
    758 F.3d 1119 (9th Cir. 2014) ....................................................................................... 9

*Brady v. Maryland,*
    373 U.S. 83 (1963) ................................................................................................. passim

*Carriger v. Stewart,*
    132 F.3d 463 (9th Cir. 1997) ......................................................................................... 9

*Kyles v. Whitley,*
    514 U.S. 419 (1995) ....................................................................................................... 9

*Strickler v. Greene,*
    527 U.S. 263 (1999) ....................................................................................................... 9

*United States v. Avellino,*
    136 F.3d 249 (2d Cir. 1998) ........................................................................................... 5

*United States v. Brooks*
    966 F.2d 1500 (D.C. Cir 1992) .................................................................................... 10

*United States v. Finnerty,*
    411 F. Supp. 2d 428 (S.D.N.Y. 2006) ........................................................................... 8

*United States v. Gil,*
    297 F.3d 93 (2d Cir. 2002) ............................................................................................. 7

*United States v. Gupta,*
    848 F. Supp. 2d 491(S.D.N.Y. 2012) ............................................................................ 8

*United States v. Leon,*
    468 U.S. 897 (1985) ....................................................................................................... 4

*United States v. Linder,*
    No. 12 CR 22, 2013 WL 812382 (N.D. Ill. Mar. 5, 2013) ............................................ 8

*United States v. Lloyd*,
    992 F.2d 348 (D.C. Cir. 1993) ........................................................................ 5, 6, 7

*United States v. Morris*,
    80 F.3d 1151 (7th Cir. 1996) .................................................................................. 8

*United States v. Shakur*,
    543 F. Supp. 1059 (S.D.N.Y.1982) ....................................................................... 8

*United States v. Stein*,
    488 F. Supp. 2d 350 (S.D.N.Y. 2007) ............................................................ 4, 6, 7

*United States v. Upton*,
    856 F. Supp. 727 (E.D.N.Y.1994) .......................................................................... 8

*United States v. Walker*,
    746 F.3d 300 (7th Cir. 2014) .................................................................................. 7

*United States v. Wood*,
    57 F.3d 733 (9th Cir. 1995) .................................................................................... 8

**Rules**

Fed. R. Crim. P. 16 ...................................................................................................... 4, 5

Fed. R. Crim. P. 16(d)(2)(D) ........................................................................................... 5

Fed. R. Crim. P. 5(f) ................................................................................................. 2, 3, 5

## I.      PRELIMINARY STATEMENT

Defendant Roman Storm respectfully moves the Court for an order compelling the

government to produce the following discovery:

1. All communications, including any Mutual Legal Assistance Treaty ("MLAT")
   requests, between the Federal Bureau of Investigation ("FBI"), the United States'
   Attorney's Office for the Southern District of New York ("USAO"), National Security
   Division (DOJ), and/or the Office of International Affairs (DOJ), and any Netherlands
   authorities or judicial bodies, related to Mr. Storm, Roman Semenov, Alexey Pertsev,
   Peppersec, and/or the Tornado Cash protocol.

2. All Office of Foreign Assets Control ("OFAC") and Financial Crimes Enforcement
   Network ("FinCEN") materials and communications relating to Mr. Storm or this case.

The Indictment charges Mr. Storm with three counts of conspiracy: (1) money

laundering; (2) operating an unlicensed money transmitting business; and (3) violating the

International Emergency Economic Powers Act ("IEEPA").  Mr. Storm vigorously disputes

those charges, and the government should be ordered to provide the requested discovery pursuant

to Federal Rule of Criminal Procedure 16, *Brady* and its progeny, and other applicable case law

because it is material to preparing his defense and can help exonerate him.

***

As part of its pretrial motion practice, the defense is concurrently filing a motion to

dismiss and a motion to suppress.  The defense incorporates by reference the facts and arguments

contained in the separate memoranda of law in support of those motions.

## II.     RELEVANT BACKGROUND

On August 8, 2022, OFAC sanctioned the open-source Tornado Cash protocol ("Tornado

Cash"), naming it as a specially designated national (SDN), and added Tornado Cash, along with

numerous cryptocurrency wallet addresses associated with the protocol, to the SDN List under

1

Executive Order 13694.[1]  Soon after, Mr. Storm, a Russian with political asylum in the U.S., who while living here co-founded a company called Peppersec, Inc. ("Peppersec") along with Mr. Semenov and Mr. Pertsev (collectively, "Peppersec developers") that helped launch Tornado Cash, learned that the government was investigating him.  Mr. Storm was cooperative with the investigation and even met with law enforcement in this District on November 16, 2022 for a large part of the day to discuss Tornado Cash.

Despite his ongoing willingness to cooperate with law enforcement and explain why he had not violated any laws, on August 23, 2023, Mr. Storm was arrested at his home in the Seattle area based on the pending Indictment, which relates to Tornado Cash, and which was filed under seal in this District on August 21, 2023.[2]  Mr. Semenov was charged along with Mr. Storm in the Indictment (although he has not been arrested), and the same day that the Indictment was unsealed OFAC announced that it had sanctioned him.  Mr. Pertsev has been separately charged in the Netherlands and is on trial there now on criminal charges tied to his alleged involvement with Tornado Cash.[3]

On September 6, 2024, Mr. Storm made his initial appearance in this District before the Court, where he pleaded not guilty and was released on a bail package.  In response to the Court's questioning, the government acknowledged its obligations under Federal Rule of

---

[1] On November 8, 2022, OFAC simultaneously delisted and redesignated Tornado Cash as an SDN under Executive Orders 13694 (Blocking the Property of Certain Persons Engaging in Significant Malicious Cyber-Enabled Activities (As Amended)) and 13722 (Blocking Property of the Government of North Korea and the Workers' Party of Korea, and Prohibiting Certain Transactions With Respect to North Korea), and it provided further guidance on the sanctions.

[2] The same day as his arrest, Mr. Storm appeared before a magistrate judge in the Western District of Washington and was released pending his appearance in this District.  *See U.S. v. Storm*, Case No. 23-MJ-5316 (DWC).

[3] Mr. Pertsev is designated as "CC-1" in Paragraph 2 of the Indictment.  (Dkt. 1.)

Criminal Procedure 5(f).[4]  (9/6/23 Transcript 3:21-25-4:1-2 (Dkt. 6).)  The government went on to discuss categories of discovery it intended to produce, including materials it had received from Dutch law enforcement pursuant to an Mutual Legal Assistance Treaty request ("MLAT request").  (*Id.* at 8:6-9.)

On September 28, 2023, the government made its first in an ongoing series of discovery productions.  Overall, voluminous discovery has been produced to the defense and the government has made ten productions so far, with more expected before trial.  Those productions include materials Dutch authorities have provided to the government (presumably in response to the MLAT request and obtained in connection with their prosecution of Mr. Pertsev) and one lengthy internal OFAC report.  The government has not produced any communications with Dutch authorities (including any MLAT requests), anything else OFAC-related, or anything at all FinCEN-related, despite the defense's understanding that both agencies are playing a role in the prosecution of this case.

Since the inception of this case, the defense has undertaken its own investigation, conducted a review of the government's voluminous (and continuing) discovery productions, researched applicable legal precedents and principles, and consulted with Mr. Storm and others regarding the events underlying the charges in the Indictment.  The defense intends to continue to prepare for trial, and, as part of that process, expects to gather exculpatory evidence and interview witnesses.

---

[4] Although the Court noted it would enter an order with respect to the government's obligations under Rule 5(f), the docket only shows a minute entry reflecting there was a "Rule 5(f) colloquy."  (*Id.* at 4:3-4.)  The defense respectfully requests that the Court issue a Rule 5(f) order.

On February 22, 2024, the defense sent the government a letter containing a number of individually tailored discovery requests, which is attached as Exhibit A and which includes the discovery requests in the Preliminary Statement that are the subject of this motion (although the OFAC and FinCEN requests in the letter have been combined for purposed of this motion). On March 5, 2024, the parties met and conferred about the discovery requests but were not able to resolve all their differences. Despite good faith efforts, the parties have reached an impasse on the topics that are the subject of this motion.

## III.    LEGAL STANDARDS

A defendant is entitled to be "acquitted or convicted on the basis of all the evidence which exposes the truth." *United States v. Leon*, 468 U.S. 897, 900–01 (1985) (quoting *Alderman v. United States*, 394 U.S. 165, 175 (1969)). To that end, Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides, in pertinent part:

> *Documents and Objects.* Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)    the item is material to preparing the defense.

In *United States v. Stein*, a matter involving prosecutions arising out of the promotion of allegedly phony tax shelters, Judge Kaplan ruled on a request for documents evidencing communications between the USAO and the accounting firm that had employed the defendant as to matters pertinent to the government investigation, explaining:

> The 'materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' 'Evidence that

> the government does not intend to use in its case in chief is material
> if it could be used to counter the government's case or to bolster a
> defense.' 'There must be some indication that the pretrial
> disclosure of the disputed evidence would . . . enable[ ] the
> defendant significantly to alter the quantum of proof in his favor.'

488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (citations omitted); *see also United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993) (remanding where district court interpreted Rule 16 materiality to place "a very heavy burden" on the defense, and holding evidence is material "as long as there is a strong indication it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment.") (citation and internal quotation marks omitted).[5]

Pursuant to *Brady v. Maryland*, the government has a duty to disclose information "favorable to the accused" in a timely manner. 373 U.S. 83, 87 (1963). *Brady* material "includes not only evidence that is exculpatory . . . but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). In response to well-publicized failures by prosecutors to comply with *Brady*, in October 2020, Rule 5(f) was adopted, requiring judges to inform prosecutors of their *Brady* obligations and permitting judges to hold them accountable if they do not comply.

---

[5] The Court is empowered to "order [the government] to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions," Rule16(d)(2)(A), or to "enter any other order that is just under the circumstances," Rule 16(d)(2)(D).

IV.     **ARGUMENT**

      A.     **The Government Should Be Compelled to Produce Communications,**
               **including any MLAT Requests, with Authorities in the Netherlands**

Mr. Storm is entitled to receive the USAO, FBI, and DOJ communications with the authorities in the Netherlands relating to Mr. Storm, the Peppersec developers, and Tornado Cash, pursuant to the government's discovery obligations.

To date, the defense has received at least a portion of the documents the government received from the Dutch as part of their investigation and prosecution of Mr. Pertsev;[6] however, it has not received any of the government's communications with the Dutch authorities, including the MLAT request and supporting materials.  The requested discovery is material for defense preparation for all the reasons discussed by Judge Kaplan in *Stein*; namely, "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  488 F. Supp. 2d at 356-57 (quoting *Lloyd*, 992 F.2d at 351).

For example, an MLAT request can be expected to provide information on the government's theories of the case (which may be evolving and shifting over time and not all reflected in the Indictment).  That could help the defense identify witnesses who are important to interview or other lines of defense investigation that should be undertaken in advance of trial. An MLAT request also often includes an evidentiary declaration or declarations and exhibits. These would be helpful for similar reasons; indeed, the MLAT request may include exhibits the government intends to try to use against Mr. Storm at trial.  Communications with Dutch authorities may also include substantive discussions of evidence in possession of the Dutch,

_____

[6] The defense cannot be certain it has received all the documents Dutch authorities have provided to the government.

including an overview of witness statements, that were not produced pursuant to the MLAT

request but were still shared by the Dutch with the government.  Such communications may also

reveal potential weaknesses in the government's case, which would be highly material to the

defense pursuant to Rule 16 and would constitute *Brady* material.

To be clear, the defense is not requesting non-substantive communications.  For example,

the defense is not seeking an email in which a federal prosecutor simply asks to find a time to

speak with a Dutch prosecutor, or asks for a mailing address.  That said, an MLAT request itself

can be expected to include substantive portions, and there are likely more substantive

communications between the parties.

Overall, the requested Netherlands-related discovery is important to defense preparations,

including pretrial investigation and the forming of trial defenses, and may constitute *Brady*

material, and thus the Court should order it produced.

**B.      The Government Should Be Compelled to Review and Produce OFAC and
         FinCEN Materials and Communications**

The government should be required to review and produce OFAC and FinCEN materials

and communications relating to Mr. Storm and this case, and not just those currently in the

possession of the USAO or other components of the DOJ.  This requested discovery is material

to preparing the defense against the Indictment's charges, particularly the charges of conspiracy

to operate an unlicensed money transmitting business and conspiracy to violate the IEEPA.

"[T]here is a strong indication that it will play an important role in uncovering admissible

evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or

rebuttal."  *Stein*, 488 F. Supp. 2d at 356-57 (quoting *Lloyd*, 992 F.2d at 351).

The prosecution's affirmative disclosure obligations extend "beyond evidence in its

immediate possession to evidence in the possession of other actors assisting the government in

its investigation." *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014); *see also, e.g.*, *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (under *Brady,* the DOJ must produce any "evidence favorable to the accused when such evidence is material to guilt or punishment" even if in the possession of another government agency) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)), *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995) (concluding that "under *Brady* the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute."). Indeed, another court in this District explained:

> Where the USAO conducts a "joint investigation" with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence. … In the words of Judge Weinfeld, any argument that the Government's duty does not extend so far merely because another agency, not the USAO, is in actual possession of the documents created or obtained as part of the joint investigation is both "hypertechnical and unrealistic."

*United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012) (first citing *United States v. Upton,* 856 F. Supp. 727, 749–50 (E.D.N.Y.1994); and then citing *United States v. Shakur,* 543 F. Supp. 1059, 1060 (S.D.N.Y.1982)).

"The term 'prosecution team' has been broadly construed and includes … investigative and prosecutorial personnel" and "closely connected investigative agencies." *United States v. Linder*, No. 12 CR 22, 2013 WL 812382, *33 (N.D. Ill. Mar. 5, 2013) (citing *United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir. 1996)). To that end, courts have taken the practical approach to define the prosecution as "the team that investigated [the] case or participated in its prosecution." *Morris*, 80 F.3d at 1169-70; *see also United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006) (summarizing case law involving disclosures required in joint prosecutions). "For *Brady* purposes, it is enough that the agencies are engaged in joint fact-

gathering, even if they are making separate investigatory or charging decisions, because the purpose of *Brady* is to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant."   *Gupta*, 848 F. Supp. 2d at 494.

Under circumstances like those presented here, where OFAC and FinCEN appear to have acted on the government's behalf with respect to the conduct at issue, the prosecution has an obligation to review their files.  As the Supreme Court has recognized, to comply with *Brady*, "'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'"  *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).  Further, courts have recognized that the prosecution team "'may not be excused from disclosing what it does not know but could have learned,'" because it is in a unique position to get information known to other agents of the government.  *Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014) (quoting *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc)).

To date, the government has only produced one OFAC report and nothing from FinCEN, even though there is every reason to believe that law enforcement on this case has consulted with and worked closely with both agencies and will continue to do so.  The defense understands that, before an IEEPA charge is brought (like the one against Mr. Storm), the USAO consults with the DOJ's National Security Division ("NSD"), who in turn consults with OFAC and obtains its feedback and approval.  Further, concurrently with the Indictment's unsealing and in coordination with the USAO, OFAC sanctioned Mr. Semenov, who is a foreign national.[7]

---

[7] "This sanctions designation was conducted in coordination with the U.S. Department of Justice (DOJ), which unsealed an indictment against Semenov and a second co-founder of Tornado Cash, Roman Storm, who was arrested today by the Federal Bureau of Investigation and the

Likewise, the defense understands that, before bringing an unlicensed money transmitting business charge (like the one Mr. Storm faces), FinCEN, which regulates money transmitting businesses at the federal level, is often consulted; in addition, FinCEN provides assistance during the course of a prosecution, including by providing a FinCEN representative to testify at trial.

A February 2024 speech by the USAO's Chief of the Illicit Finance and Money Laundering Unit, Tara La Morte, at a New York City Bar Association event, underscores and confirms the tight working relationship.[8]  (*See* Exhibit B (Aislinn Keely, *Feds' Crypto Focus Is No Longer On 'Whack-A Mole' Cases*, LAW360, February 23, 2024.))  During that speech, Ms. La Morte discussed Mr. Storm's case specifically and went on to explain that the USAO's collaboration with FinCEN and OFAC has been increasing, stating:

> By coming together, we're able to better assess … what tool or what authority for what agency is going to be best suited to deal with a potential threat or issue that we're faced with.

(*Id.*)  In light of this close working relationship, OFAC and FinCEN's materials are not only discoverable, but are likely material to the preparation of the defense, constitute potential impeachment material for possible OFAC and FinCEN witness(es) at trial, and are likely *Brady* materials.  The prosecution's failure to review and produce these materials is an error of constitutional dimensions.  The USAO should be compelled, as part of its discovery obligations, to review OFAC and FinCEN files and to produce anything covered by Rule 16, *Brady* and its progeny, and applicable case law.

The facts set forth above require the government to conduct, at the very least, a prudential search of these agencies' files for discoverable materials, particularly given that—like the

---

Internal Revenue Service, Criminal Investigation."  *See* https://home.treasury.gov/news/press-releases/jy1702.

[8] The Unit's Deputy Chief, Noah Solowiejczyk, also spoke at that event.

USAO/DOJ—they are agencies and departments of the Executive Branch.  As the D.C. Circuit explained in *United States v. Brooks*, the government is required to conduct a search if the defendant has made an explicit request that certain files be searched, and there is a non-trivial prospect that the examination of those files will yield material exculpatory information.   966 F.2d 1500, 1504 (D.C. Cir. 1992).   Where the agencies have been involved in the underlying charged conduct at issue as well as the investigation, this standard is easily met.   The prosecution should be ordered to review these agencies' files, as well as their own (which would include the NSDs) and to produce discoverable material.

## V.    CONCLUSION

For all the foregoing reasons, Mr. Storm respectfully requests that the Court compel the government to provide the requested discovery.

Dated: March 29, 2024                         Respectfully submitted,

*/s/ Brian E. Klein*
_____
Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP

*Attorneys for Roman Storm*