# EXHIBIT B



Portfolio Media. Inc. | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Feds' Crypto Focus Is No Longer On 'Whack-A-Mole' Cases

By **Aislinn Keely**

Law360 (February 23, 2024, 4:55 PM EST) -- The U.S. Department of Justice is no longer playing "whack-a-mole" in its crypto cases, and instead is taking on large-scale actors in the hopes of encouraging industrywide compliance, veteran crypto-focused prosecutors with the Manhattan U.S. attorney's office said Friday.

Speaking at a New York City Bar Association event, the heads of the Illicit Finance and Money Laundering Unit in the U.S. Attorney's Office for the Southern District of New York said law enforcement is more strategically focused than ever when determining which crypto cases to bring.

There appeared to be a period where law enforcement was playing "a game of whack-a-mole" to keep up with crypto crimes, said Noah Solowiejczyk, deputy chief of the unit. Now, the government is filing its cases with the intention of bringing the broader industry into compliance.

"I think U.S. law enforcement is now really thinking strategically, systemically — who are the systemic, important actors that need to come into compliance to make sure that we're not seeing flagrant, massive amounts of sanctions violations, money laundering, all those sorts of things through this technology," said Solowiejczyk, who was involved in the **prosecution** of disgraced FTX founder Sam Bankman-Fried and the sector's **first insider trading case**.

The Southern District unit is prioritizing Bank Secrecy Act compliance, sanctions enforcement and international anti-money laundering investigations with "systemic-type prosecution that's going to make an industry impact," said Tara La Morte, chief of the Illicit Finance and Money Laundering Unit.

"We want the industry to take notice," she told attendees at the New York Bar Association event.

La Morte highlighted her office's **prosecution** of the operators of crypto mixer Tornado Cash, co-founders Roman Storm and Roman Semenov, on charges involving failing to implement anti-money laundering compliance mechanisms and knowingly facilitating transactions by sanctioned entities and other bad actors. Crypto mixers are privacy tools that break down and batch crypto transactions to obscure the path of funds, and can be used for lawful purposes despite being a useful tool for illicit finance.

Prosecutors contend that Tornado Cash operated as an unlicensed money transmitter that aided money launderers and sanctioned entities. Storm has pled **not guilty**, while Semenov remains at large.

"What we're trying to do is sort of bring the industry into compliance, and I think Tornado Cash is an example of that," said La Morte.

La Morte and Solowiejczyk said their unit focuses on crypto's so-called on-ramps and off-ramps, or places where funds enter and exit the crypto ecosystem, to identify potential actors for prosecution. At this stage in crypto's development, most people still need to change their tokens to cash in order to use it, said Solowiejczyk. He said it's at those points that operators are required to identify their customers.

Compliant operators report that information to regulators. That reporting, combined with the transparency of blockchain transactions, was pivotal to building the Tornado Cash case, said La Morte.

"It's on those on-ramps and off-ramps, these critical junctures, where we're able to get information about who was behind transactions," she said. "And from that, if you do tracing — because trace is actually very transparent on the blockchain — that allows us to put the pieces together."

To help trace those transactions, the government works with blockchain analytics firms like Chainalysis, which Solowiejczyk said helps "find common trends and commonality" to determine who is behind certain crypto wallets. However, once crypto enters a mixer, it becomes challenging to trace**,** he said.

"The onboarding and offboarding is often where law enforcement is able [to identify actors] because if it's been done properly, at least somebody had to give their identification documents to open up an account," he said.

La Morte also noted that new beneficial ownership reporting requirements may prove a boon to law enforcement, though it's a "wait-and-see sort of situation."

The U.S. Treasury Department's Financial Crimes Enforcement Network **finalized** beneficial ownership reporting rules in 2022, which requires businesses to submit information on those who directly or indirectly control a company. It's designed to unmask those behind shell companies, but La Morte noted that the Treasury has already **acknowledged** that the transition to reporting for many covered entities will be a significant undertaking.

Over time, the resulting database could be "very helpful" to law enforcement, La Morte said.

In the meantime, collaboration between government agencies, including FinCEN and the Treasury Department's Office of Foreign Assets Control, has been on the rise, La Morte said.

"By coming together, we're able to better assess ... what tool or what authority for what agency is going to be best suited to deal with a potential threat or issue that we're faced with," she said.

--Editing by Michael Watanabe.

All Content © 2003-2024, Portfolio Media, Inc.