UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>ROMAN STORM, ET AL.,<br><br>Defendant. | Case No.: 23 Cr. 430 (KPF)<br><br>Oral Argument: June 25, 2024 |

# MEMORANDUM OF LAW IN SUPPORT OF ROMAN STORM'S MOTION TO SUPPRESS

Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

*Attorneys for Roman Storm*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................ 1
II. RELEVANT BACKGROUND ................................................................................................. 2
III. LEGAL STANDARDS ............................................................................................................ 5
IV. ARGUMENT ........................................................................................................................... 7
   A. The Warrant Impermissibly Allows for the Indiscriminate Seizure of "Any and All Cryptocurrency" Without Probable Cause to Believe that All Cryptocurrency Found Would Constitute Evidence of a Crime ................................................................................ 8
   B. The Warrant Is Also Infirm as It Allows for the Seizure of Items Not Physically Located in Roman Storm's Home ...................................................................................................... 9
   C. The Search Warrant Impermissibly Allows for the Wholesale Seizure of Property Without the Protection of a Seizure Warrant ...................................................................... 11
V. CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant*,
   556 U.S. 332 (2009) .................................................................................................. 5

*California v. Acevedo*,
   500 U.S. 565 (1991) .................................................................................................. 5

*Coolidge v. New Hampshire,*
   403 U.S. 443 (1971) .................................................................................................. 6

*In re Government Seizure of ICX Tokens*,
   No. CV121Y00065WJMSKC1,
   2022 WL 292923 (D. Colo. 2022) .......................................................................... 12

*Keiningham v. United States,*
   287 F.2d 126 (D.C. Cir. 1960) ................................................................................ 10

*Kentucky v. King,*
   536 U.S. 452 (2011) .................................................................................................. 6

*Kyllo v. United States,*
   533 U.S. 27 (2001) .................................................................................................. 11

*Marron v. United States,*
   275 U.S. 192 (1927) .................................................................................................. 6

*Maryland v. Garrison*,
   480 U.S. 79 (1987) .................................................................................................... 6

*Payton v. New York,*
   445 U.S. 573 (1980) .................................................................................................. 5

*People v. Green*,
   33 N.Y.2d 496 (1974) ............................................................................................. 11

*Snitko v. United States,*
   90 F.4th 1250 (9th Cir. 2024) ............................................................................ 10, 11

*United States v. Aispuro*,
   17 F.3d 396 (9th Cir. 1994) .................................................................................... 10

*United States v. Chadwick*,
   433 U.S. 1 (1977) ...................................................................................................... 5

*United States v. Funds Held ex rel. Wetterer*,
   210 F.3d 96 (2d Cir. 2000) ..................................................................................... 12

*United States v. Galpin*,
    720 F.3d 436 (2d Cir. 2013) .................................................................................. 5, 6, 11

*United States v. James Daniel Good Real Property,*
    510 U.S. 43 (1993) ........................................................................................................ 12

*United States v. Purcell,*
    967 F.3d 159 (2d Cir. 2020) .......................................................................................... 6

*United States v. Twenty-Four Cryptocurrency Accts.,*
    473 F. Supp. 3d 1 (D.D.C. 2020) ................................................................................ 12

*United States v. Zovluck*,
    274 F. Supp. 385 (S.D.N.Y. 1967) .............................................................................. 10

*Zurcher v. Stanford Daily,*
    436 U.S. 547 (1978) ........................................................................................................ 9

**Statutes**

18 U.S.C. § 1956(h) .................................................................................................................. 2

18 U.S.C. § 1960 ....................................................................................................................... 2

18 U.S.C. §§ 371 ....................................................................................................................... 2

50 U.S.C. § 1705 ....................................................................................................................... 2

**Other Authorities**

W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012) ....................................................... 7

*Executing Warrants for Digital Evidence: The Case for Use Restrictions on Non-Responsive Data,* 48 TEX. TECH. L. REV. 1, 24-33 (2015) ........................................................ 11

Kane Pepi, *How Many People Use Bitcoin in 2024?*, TECHOPEDIA (Jan. 25, 2024),
    https://www.techopedia.com/cryptocurrency/how-many-people-use-bitcoin ........................... 8

iii

I.  **PRELIMINARY STATEMENT**

Federal agents have searched defendant Roman Storm's home, and now they want to seize all his cryptocurrency as well.  The problem is that they are seeking this broad seizure of "any and all cryptocurrency" based only on a search warrant issued for Mr. Storm's home.  That residential search warrant cannot support the wholesale seizure of all of Mr. Storm's alleged cryptocurrency that can be accessed from devices seized at his home.

First, the warrant is both overbroad and lacking in particularity insofar as it purports to allow for such a seizure.  The search warrant affidavit does not establish probable cause to believe that "any and all cryptocurrency" is evidence or proceeds of criminal activity.  At most, it sets forth a single transfer of cryptocurrency and nothing to establish that any and all cryptocurrency that could be found is somehow connected to criminal activity.

Second, the seizure of "any and all cryptocurrency" necessarily exceeds the scope of the warrant.  Cryptocurrency does not reside on any digital device that was seized during the search of Mr. Storm's home.  Rather, it resides outside the home on a blockchain.  Agents have no authority to go beyond the location to be searched and search for possible additional evidence that is located elsewhere.

Finally, the search warrant, to the extent it allows for the seizure of Mr. Storm's cryptocurrency, is no search warrant at all but rather a seizure warrant.  However, the government has not properly sought the seizure of property or set forth the basis for doing so.  Instead, the government essentially seeks forfeiture of Mr. Storm's property through the back door of a search warrant.

For all these reasons, the search warrant for Mr. Storm's home cannot constitutionally support the seizure of "any and all cryptocurrency," and this motion to suppress evidence should

1

be granted.  To the extent that the government has not seized, but intends yet to seize, cryptographic private keys found a device in Mr. Storm's home, relying on the constitutional overbreadth and factual inaccuracies of the search warrant, this motion requests in the alternative that the Court order the government to suspend such search and seizure.

\*\*\*

As part of its pretrial motion practice, the defense is concurrently filing a motion to dismiss and a motion to compel.  The defense incorporates by reference the facts and arguments contained in the separate memoranda of law in support of those motions.

## II.    RELEVANT BACKGROUND

On August 21, 2023, the grand jury returned a sealed indictment charging Mr. Storm and Roman Semenov with violations of 18 U.S.C. § 1956(h) (money laundering conspiracy); 18 U.S.C. §§ 371 and 1960 (conspiracy to operate an unlicensed money transmitting business); and 50 U.S.C. § 1705 (conspiracy to commit sanctions violations).  (Dkt. 1.)  The next day, August 22, 2023, FBI Special Agent Haley Richins ("Agent Richins") sought and obtained a search warrant for Mr. Storm's home in Auburn, Washington, to search for evidence relating to the same offenses.  (Ex. A.)

The search warrant affidavit set forth Agent Richins' recitation of the probable cause to believe that evidence of these offenses would be found at the home, focusing primarily on Mr. Storm's role in operating Tornado Cash.  (Ex. A ¶ 5.)  Among other facts, Agent Richins included the following paragraph describing her belief that certain amounts of cryptocurrency had been transferred to unhosted cryptocurrency wallets:

[redacted]

2



(Ex. A ¶ 5(g).)  The affidavit also set forth the agent's probable cause for believing Mr. Storm resided at the home.  (Ex. A ¶ 6; *see also* Affidavit of Roman Storm ¶¶ 2-3, attached hereto.)

Agent Richins also sought and received permission to search digital devices, including electronic storage media found in the home.  (Ex. A ¶¶ 7-16.)  As part of the probable cause offered in support of such a search, Agent Richins again referred to the alleged transfer of cryptocurrency worth approximately $2.6 million:

> As described above, after OFAC issued sanctions on Tornado Cash,



3



(Ex. A ¶ 12.)

Attachment A to the search warrant described the premises to be searched as: "The property to be searched is a single-family residence located at ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ (the "Subject Premises"), and any digital device/s or other electronic storage media found therein (the "Subject Devices")." (Ex. A, Attachment A.) The attachment provided a further description of the home and lot, with photos. It did not list any other location to be searched.

Attachment B to the search warrant described the Items to Be Seized. That attachment contained the following sweeping provision allowing for the seizure of cryptocurrency:



4

(Ex. A, Attachment B ¶¶ 16-17.)

On August 23, 2023, federal agents executed the search warrant. Among many other items seized during the search, agents seized certain wallets pursuant to Attachment B ¶ 16. These wallets do not themselves contain cryptocurrency but do contain private cryptographic keys used to access cryptocurrency held on a blockchain. (*See* Affidavit of Michael Perklin ("Perklin Aff.") at ¶¶ 2-6.) As of the time of filing this motion, based on communications with the government, the defense understands that law enforcement has not yet accessed any possible cryptocurrency itself using the wallets retrieved during the search.

### III.   LEGAL STANDARDS

The Warrant Clause of the Fourth Amendment of the United States Constitution "protects people from unreasonable government intrusion into their legitimate expectation of privacy." *United States v. Chadwick*, 433 U.S. 1, 7 (1977). It is bedrock constitutional law that the government must have a search warrant to search and seize a person's property unless it can demonstrate the application of a recognized exception to the requirement by a preponderance of the evidence. *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

The Fourth Amendment provides that warrants may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York,* 445 U.S. 573, 583 (1980)). "To prevent such 'general, exploratory rummaging in a person's belongings' and the attendant privacy violations, the Fourth Amendment provides that 'a warrant may not be issued unless

5

probable cause is properly established and the scope of the authorized search is set out with particularity.'" *Id.* (first quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971); and then quoting *Kentucky v. King,* 536 U.S. 452, 459 (2011)).

Fourth Amendment jurisprudence has delineated two distinct concepts to evaluate a warrant's validity: particularity and overbreadth. "To satisfy the Fourth Amendment's particularity requirement, a warrant must meet three criteria: (1) it 'must identify the specific offense for which the police have established probable cause'; (2) it 'must describe the place to be searched'; and (3) it 'must specify the items to be seized by their relation to designated crimes.'" *United States v. Purcell,* 967 F.3d 159, 178 (2d Cir. 2020) (quoting *Galpin*, 720 F.3d at 445-46). "The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (footnote omitted); *see also Marron v. United States,* 275 U.S. 192, 196 (1927) (holding particularity requirement "makes general searches … impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."). A warrant is fatally lacking in particularity if it fails "to link the items to be searched and seized to the suspected criminal activity … and thereby lack[s] meaningful parameters on an otherwise limitless search." *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (citing *United States v. Buck*, 813 F.2d 588, 590 (2d Cir.1987)).

"A warrant that comports with the particularity requirements may, however, be defective due to overbreadth. '[B]readth and particularity are related but distinct concepts.'" *Purcell*, 967

F.3d at 179 (quoting *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017)).  "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (internal quotation marks omitted) (quoting 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012).  "The doctrine of overbreadth represents, in a sense, an intersection point for probable cause and particularity principles: it recognizes, in pertinent part, that a warrant's unparticularized description of the items subject to seizure may cause it to exceed the scope of otherwise duly established probable cause." *United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017) (holding a warrant was unconstitutionally broad due to its "failure to impart meaningful guidelines to the searching agents" which authorized the "seizure, of, essentially all documents" in the defendant's apartment and business).

### IV. ARGUMENT

The residential search warrant here is constitutionally invalid because it fails both the particularity and breadth requirements.  Specifically, it improperly allows for: (1) the seizure of any and all cryptocurrency without setting forth probable cause to believe that all cryptocurrency constitutes evidence of the criminal conduct alleged in the search warrant; (2) the search and seizure of property that is located outside the place to be searched (*i.e.*, cryptocurrency is not physically located on the wallets found in the home but rather exists on a blockchain); and (3) the seizure of property without meeting the requirements of a seizure warrant aimed at the forfeiture of property.

A.  **The Warrant Impermissibly Allows for the Indiscriminate Seizure of "Any and All Cryptocurrency" Without Probable Cause to Believe that All Cryptocurrency Found Would Constitute Evidence of a Crime**

Under "Items to Be Seized," the search warrant allows for the seizure of "[a]ny and all cryptocurrency." The warrant is both overbroad and lacking in particularity insofar as it seeks such an expansive and vaguely defined category of property. *See, e.g., Wey,* 256 F. Supp. 3d at 387 (holding that warrants are both lacking in particularity and overbroad where they "authorize the seizure of sweeping categories of materials, regardless of their potential connection (or lack thereof) to any suspected criminal activities and limited only by the requirement that they relate in some generalized way to the owner/occupant of the very premises subject to search").

The affidavit in support of the search warrant here fails to establish probable cause to believe that any and all cryptocurrency found would constitute evidence of a crime. Nor could it. Cryptocurrency is not illegal, nor is it only used by criminals. In fact, hundreds of millions of people own cryptocurrency, on different blockchains and for different purposes. *See generally* Kane Pepi, *How Many People Use Bitcoin in 2024?*, TECHOPEDIA (Jan. 25, 2024), https://www.techopedia.com/cryptocurrency/how-many-people-use-bitcoin (discussing the widespread use of bitcoin ownership). The most the affidavit says is that $2.6 million of cryptocurrency was transferred to unhosted wallets owned by Mr. Storm following the imposition of OFAC sanctions. (Ex. A ¶¶ 5(g), 12.) While the affidavit suggests that some unidentified additional amounts of cryptocurrency, supposedly representing the proceeds of criminal conduct, were also transferred to unhosted wallets held by Mr. Storm, the affidavit offers no specificity about the amount of any such supposed proceeds, much less how, when, and

8

where any such transfers may have occurred.  In short, the affidavit offers nothing to suggest that "any and all cryptocurrency" held by Mr. Storm represents the proceeds or evidence of a crime.

To allow the seizure of any and all cryptocurrency under such circumstances would be akin to allowing the seizure of any and all currencies—issued by any country—held at a bank based only on probable cause to believe that *some* monies were transferred to the suspect's bank account in connection with criminal activity.  Obviously, agents would not have authority under such circumstances to seize an entire bank account, much less every bank account owned by the suspect.  The mere presence of money in a bank is not evidence of a crime, and the mere presence of cryptocurrency is no more so.

**B.     The Warrant Is Also Infirm as It Allows for the Seizure of Items Not Physically Located in Roman Storm's Home**

The search warrant also fails to establish that "any and all cryptocurrency" will in fact be stored in the house that was searched.  Axiomatically, a search warrant must establish probable cause to believe that "the specific 'things' to be searched for and seized are located on the property to which entry is sought."  *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978).  Here, no such probable cause exists.

In fact, the affidavit states that agents do not know the location of the $2.6 million worth of cryptocurrency.  (Ex. A ¶ 12.)  The most it could state is the suspicion that cryptocurrency would be found "in the form of cryptocurrency wallets within [Mr. Storm's] control."  (*Id.*)

This claim is not only vague but factually flawed: even assuming that cryptocurrency wallets would be found at the house, it does not mean that cryptocurrency itself would be found in the wallets. As the affiant Michael Perklin explains, a minimal understanding of cryptocurrency reveals that cryptocurrency is *not* physically stored in a wallet, like cash.

9

(Perklin Aff. ¶¶ 2, 6.)  Rather, it is stored on a blockchain that exists in cyberspace, not the home. (*Id.* ¶¶ 7, 10-13, 15-16.)  Thus, a wallet is a misnomer, as a cryptocurrency wallet is a tangible device that runs software and maintains or manages a user's private cryptographic keys, which are very large numbers that work like credentials that grant access to external systems via the Internet.  (*Id.* ¶¶ 4-6.)  While the device employs the keys to access and control the cryptocurrency (*id.*), the cryptocurrency is always on the blockchain and, indeed, no user or device ever has physical custody of their cryptocurrency.  (*Id.* ¶¶ 7, 10-13.)[1]  Thus, in allowing the seizure of "any and all cryptocurrency," the warrant necessarily allows for the seizure of property that is not located at the search warrant location at all.

What the warrant really seeks to do is to allow agents to use the evidence actually found at the house—the wallets—to access other property located elsewhere.  But a search warrant for one location obviously does not support the search of a different location.  *See United States v. Zovluck*, 274 F. Supp. 385, 390 (S.D.N.Y. 1967) (citing *Keiningham v. United States,* 287 F.2d 126, 129 (D.C. Cir. 1960)) ("The authority to search is limited to the place described in the warrant and does not include additional or different places.")*, United States v. Aispuro*, 17 F.3d 396, 3 (9th Cir. 1994) ("The authority to search granted by any warrant is limited to the specific places described in it, and does not extend to additional or different places."); *see also, e.g., Snitko v. United States,* 90 F.4th 1250, 1263-65 (9th Cir. 2024) (agents exceeded scope of search warrant for facility housing safe deposit boxes when they searched and seized contents of

---

[1] Mr. Perklin also takes issue with the Indictment's metaphor that an "Ethereum address is analogous to the account number for a bank account, while the wallet is analogous to a portfolio of bank accounts, since a single wallet can contain multiple Ethereum addresses." (Perklin Aff. ¶¶ 14-15.)  Instead, cryptocurrency wallets are more akin to debit cards, that provide authenticating information that allows users to move proceeds in their accounts, which exist at the bank, not on their cards.  (*Id.* at ¶ 8-10).

10

individual safe deposit boxes). Nor can evidence improperly seized from the subject location be used as a tool to access another location without a warrant. *See, e.g., Kyllo v. United States,* 533 U.S. 27 (2001) (agents' use of thermal-imaging device to "see" heat emanating from house was itself warrantless search and could not be used to support search warrant for house), *Snitko,* 90 F.4th at 1264 (agents could not use improper inventory search as tool to investigate other crimes); *see generally* Orin S. Kerr, *Executing Warrants for Digital Evidence: The Case for Use Restrictions on Non-Responsive Data,* 48 TEX. TECH. L. REV. 1, 24-33 (2015) (advocating for restricting use of non-responsive information found on electronic devices to justify additional searches). To allow such use here would be like allowing agents to seize keys found in a person's home and then access, without a warrant, any and all other buildings the keys might open. *See, e.g.*, *People v. Green*, 33 N.Y.2d 496, 499-500 (1974) ("To put it another way 'therein' means therein and the authority to search stops at the threshold."). Such access would allow for exactly the sort of indiscriminate searches and seizures under general warrants that the Fourth Amendment was designed to prevent. *Galpin*, 720 F.3d at 445.

### C. The Search Warrant Impermissibly Allows for the Wholesale Seizure of Property Without the Protection of a Seizure Warrant

Perhaps the most fundamental problem with the warrant, insofar as it allows for the seizure of any and all cryptocurrency, is that it is not a search warrant at all. It is a seizure warrant. Lest there be any doubt, the search warrant specifically provides: "The United States is authorized to seize any and all cryptocurrency by transferring the full account balance in each wallet to a public cryptocurrency address controlled by the United States." (Ex. A, Attachment B ¶ 16.) Essentially, the government is seeking to forfeit Mr. Storm's property through the improper means of a search warrant.

Seizure warrants are used in advance of forfeiture proceedings to seize assets that are the subject of forfeiture. The government frequently uses such warrants, and it knows full well how to do so. *See, e.g.*, *United States v. Twenty-Four Cryptocurrency Accts.,* 473 F. Supp. 3d 1 (D.D.C. 2020); *In re Government Seizure of ICX Tokens*, No. CV121Y00065WJMSKC1, 2022 WL 292923 (D. Colo. 2022). But that is not what the government did here. Instead, the government threw language into its search warrant that allows for the unsupported seizure of Mr. Storm's property and its transfer to the United States government. This alarming provision has nothing to do with a legitimate search for evidence supported by a search warrant. Instead, it allows the government to simply take Mr. Storm's property without any of the procedural and constitutional protections attendant to forfeiture proceedings. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 49 (1993) (holding due process protections apply to forfeiture); *see also United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96, 105 (2d Cir. 2000) (requiring the government to show a nexus between the illegal conduct and the property to be seized when issuing seizure warrants in forfeiture actions). For this reason as well, the search warrant is constitutionally infirm and cannot support the seizure of Mr. Storm's cryptocurrency.

## V.   CONCLUSION

For all the reasons above, the Court should grant this suppression motion.

Dated: March 29, 2024                                                Respectfully submitted,

/s/ Brian E. Klein

Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP

*Attorneys for Roman Storm*

12