UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>       -against-<br><br>ROMAN STORM, ET AL.,<br><br>            Defendant. | Case No. 23 Cr. 430 (KPF)<br><br>Oral Argument: July 12, 2024 |

# DEFENDANT ROMAN STORM'S
# REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY

Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

*Attorneys for Roman Storm*

I.     **PRELIMINARY STATEMENT**

The government's arguments opposing the production of communications with Dutch authorities, including any MLAT requests, are fatally flawed.  As set forth below, it is the government's position, not the defense's, that is not supported by the law and facts, despite the government's claims to the contrary.

As for the second discovery request relating to OFAC and FinCEN materials and communications relating to Mr. Storm or this case, the defense is narrowing its request, without prejudice to reviving it later if the facts and circumstances change, based on the government's representations in its opposition.  Specifically, as noted below, the defense respectfully requests that the Court order the government to produce any materials received from OFAC and FinCEN not already produced, including any substantive communications with those agencies, and have those agencies conduct a prudential *Brady* review.

II.    **ARGUMENT**

   A.   **The Government Should Produce the Requested Communications, Including Any MLAT Requests, with the Netherlands Authorities**

The government claims that the defense's arguments are "factually and legally unfounded." (Dkt. 53, Gov't Opp. ("Opp.") at 77.)  It goes on to argue that the defense has provided "no basis, apart from speculation, that the additional records he seeks are material to [Mr. Storm's] defense, and because [Mr. Storm] seeks them for an improper purpose." (*Id.* at 78.)  All untrue.  The defense has more than met Federal Rule of Criminal Procedure 16(a)(1)(E)'s requirements, and the Court should order the requested discovery produced.[1]

---

[1] In discussing Rule 16(a)(1)(E), the opposition begins by quoting from *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020), but it omits the supporting citation to *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991).  (*See* Opp. at 78.)  Importantly, *Maniktala* provides: "Materiality means more than that the evidence in question bears some abstract logical relationship to the

The government claims that the defense discovery request fails because it based on "nothing but conjecture." (Opp. at 78.) The Court should reject this argument. Of course, the defense does not know the precise content of the requested materials; hence, the discovery request. As a natural result, the defense has to couch what it understands are in the requested materials and communications with terms like "could" and "may." (*See* MTC at 6-7.) Tellingly, the government does not claim that the communications with Dutch authorities do not include such items as declarations and exhibits (the latter of which it could use against Mr. Storm at trial), substantive discussions of the evidence, materials that could help it identify witnesses, or even *Brady* materials (all of which are discussed in the motion to compel). (*See id.*) If the defense was required to know exactly what is contained in the discovery it seeks, very few, if any, discovery requests would ever be granted. In any event, the defense's understanding of why the discovery sought will aid Mr. Storm's defense is not speculative; it is clearly laid out in its motion to compel and meets this Circuit's non-heavy burden of prima facie materiality. *See, e.g., Stein,* 488 F. Supp. at 356-57.

---

issues in the case. There must be *some indication* that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Id*. (emphasis added). This is in accord with the materiality standard in the motion to compel, which quoted Judge Kaplan's *United States v. Stein* decision. (*See* Dkt. 25, Mot. to Compel ("MTC") at 4-5 citing 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007).) In skipping over *Maniktala*, the government only cites to a Ninth Circuit case, *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). *Mandel,* however, imposes a higher materiality standard than the Second Circuit imposes. Under *Mandel*, which the government notes in a parenthetical, materiality must be supported by "facts which would tend to show that the [g]overnment is in possession of information helpful to the defense." (Opp. at 78 citing 914 F.2d at 1219.) The opposition then concludes by quoting from *United States v. Cilins*, No. 13-CR-315 (WHP), 2014 WL 17341, at *4 (S.D.N.Y. Jan. 14, 2014). (Opp. at 78.) But it fails to note that *Cilins* cited Judge Kaplan's discussion in *Stein*, and what is quoted from *Stein* is a materially truncated portion of a more fulsome discussion, which is quoted more fully in the motion to compel and which makes clear that what is required is only "some indication that the pretrial disclosure of the disputed evidence would . . . enable[ ] the defendant significantly to alter the quantum of proof in his favor." (*Compare* Opp. at 78 *to* MTC. at 4-5.)

The government tries to shore up its position by comparing the defense's request to those in *United States v. Ralston*, *United States v. Saltsman*, and *United States v. Bases*, where those defendants' motions to compel MLAT requests and foreign communications were denied. (Opp. at 79 citing No. 19-CR-774 (JMF), 2021 WL 5054464, at *2 (S.D.N.Y. Nov. 1, 2021); Memorandum & Order at 27, No. 07-CR-641 (NGG) (E.D.N.Y. Mar. 22, 2011), ECF No. 170; No. 18-CR-48 (JZL), 2020 WL 5909072, at *7 (N.D. Ill. Oct. 6, 2020).) The government, however, misattributes and misrepresents those authorities, which are not binding and are very distinguishable.

The government claims *Ralston* is an instance where a district court denied a motion to compel the MLAT requests for being speculative or immaterial to preparing a defense. (Opp. at 79.) The defendant in *Ralston*, however, sought to show the MLAT requests were made pretextually to toll statutes of limitations, and the district court only denied the defendant's request after conducting an *in camera* review of the MLAT requests. 2021 WL 5054464, at *2. The government also cites to *Bases*, a district court decision outside of this Circuit, which similarly involved a motion to compel the government's MLAT requests for the purpose of showing that the requests were pretextual to toll statutes of limitations. 2020 WL 5909072, at *2. The motions in *Ralston* and *Bases* are clearly distinguishable from the motion here, in which the defense seeks the discovery for the preparation of Mr. Storm's defense at trial.

In *Saltsman,* the district court denied a motion to compel communications with foreign authorities for failure to "articulate some specific way in which the items request[ed] could be used to counter the [g]overnment's case or bolster a defense." Memorandum & Order at 27, No. 07-CR-641 (NGG), ECF No. 170. The defendant's request in *Saltsman* is distinguishable because here the defense has provided a number of specific ways Mr. Storm would use the

4

MLAT request(s) and other substantive communications to counter the government's case or to bolster his defense, including identifying witnesses, identifying evidentiary exhibits, identifying evidence in possession of Dutch authorities, amongst others. (*See* MTC at 6-7.) Thus, the government did not provide a single authority where a court denied a motion to compel similar to the one here.

Lastly, the government contends that seeking to understand the government's theory of the case, one among many reasons the defense made its discovery request, is an "improper purpose" to uncover the government's foreign communications. (Opp. at 79-80.) To support its contention, the government cites to a district court decision outside of this Circuit, *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137 (D.D.C. 2020). The opposition suggests that the district court in *Oseguera Gonzalez* denied the defendant's request on account of the defendant seeking to understand the government's theory of the case. (Opp. at 79-80.) The district court, however, merely speculates that the defendant's sole objective in requesting the MLAT materials was to understand the government's theory. 507 F. Supp. 3d at 179. The request was actually denied because the defendant "offered no compelling explanation of how the requests themselves would be helpful." *Id.* In contrast, as discussed above and in the motion to compel, Mr. Storm has met the materiality standard applicable in the Second Circuit, *i.e.*, the defense has put forth numerous independent grounds (in addition to understanding the government's theory of the case) that provide "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Maniktala*, 934 F.2d at 28. These include identifying witnesses and other lines of defense investigation, as well as exhibits. (MTC at 6.) Likewise, the government's citation to *United States v. Hutchins*, No. 17-CR-124 (NJ), 2018 WL 1695499, at *2 (E.D. Wis. Apr. 6, 2018), is misplaced. Not only

is *Hutchins* not binding on this Court, but the district court there denied the motion, not only because it cited the need to understand the government's theory of the case, but also because the defendant failed to demonstrate how the request was material to his defense or how the failure to disclose would be prejudicial to his defense. *Id*. Again, that is not the case here for all the reasons discussed above and in the underlying motion.

The motion to compel communications between the government and the Dutch authorities should be granted. Mr. Storm has met this Circuit's burden of showing that they are material to his defense, and the government's authorities do not support its arguments in opposition.

### B. The Government Should Produce All OFAC and FinCEN Materials in Its Files and Both Agencies Should Conduct a Prudential *Brady* Review

Based on the government's representations, the defense is narrowing this discovery request, without prejudice to raising it again.[2] Specifically, the government has represented that:

1. OFAC and FinCEN "did not affect the development of the [g]overnment's investigative case or prosecutorial strategy." (Opp. at 85-86.)
2. They "did not assign any employees to the prosecution team as special Assistant U.S. Attorneys." (*Id.*)
3. They "were not involved in presenting the case to the grand jury." (*Id.*)
4. They "did not receive grand jury transcripts." (*Id.*)
5. They "have not participated in the execution of search warrants or responsiveness reviews." (*Id.*)
6. They "did not obtain materials produced to the [g]overnment pursuant to grand jury subpoenas." (*Id.*)
7. They "have not attended any [g]overnment interviews" or "other forms of joint-fact gathering." (*Id.*)

---

[2] Until the government made its representations in its opposition, the defense did not have insight into the precise depth of any relationship other than what it proffered in its motion, and the defense made its motion on its good faith understanding of the connection based on the facts and circumstances at hand. For some reason, the government appears to take issue with the defense's reference to an article discussing public comments made by the Chief of the Illicit Finance and Money Laundering Unit, but a fair reading of those comments shows they could have easily meant there was collaboration in this case, which in part gave rise to the defense's motion here. (*See* MTC at 10; Opp. at 91.)

> 8. They "did not contribute to drafts of the Indictment or the prosecution memorandum used to make the criminal charging decision." (*Id.*)
> 9. They "have not attended court proceedings in this case." (*Id.*)
> 10. They were not "directed to… take any action on behalf of the [g]overnment." (*Id.*)
> 11. OFAC "has not provided any 'feedback'—and nor did it 'approve'—the [g]overnment's charges or its response to the motions." (*Id.* at 89.)

Concerning interactions with those agencies, the government has represented that:

> 1. At their request, it "verbally provided information about its understanding of how the Tornado Cash service worked." (*Id.* at 88.)
> 2. It "requested certain documents from FinCEN in the course of its investigation." (*Id.*)
> 3. It informed "OFAC of the forthcoming Indictment and provided OFAC with certain information about Semenov so that OFAC could decide for itself whether and when to designate Semenov."[3] (*Id.* at 89.)
> 4. It called FinCEN "barely a week before the [g]overment unsealed the Indictment [and] informed FinCEN about the forthcoming charges so that FinCEN would not be surprised." (*Id.* at 90.)
> 5. It may call a FinCEN witness at trial to testify about FinCEN's regulation of money service businesses. (*Id.*)

Regarding documents, the government notes that those agencies did provide documents that "comprise a small portion of the documents [it] has produced to [Mr. Storm] in discovery." (*Id.* at 87.) This leaves open the question of whether the government has produced to the defense all the materials it has received from OFAC and FinCEN and substantive communications with them. The defense therefore respectfully requests that the Court inquire with the government on this point at the hearing, and that the government be ordered to produce any discoverable documents not already produced, including any substantive communications with OFAC and FinCEN.

Even though the government has represented that there was no joint fact-gathering, the defense believes that the Court should still order those agencies to conduct a prudential *Brady*

---

[3] The government goes on to state that "Semenov's designation had no effect on the investigation, the Indictment, or the trial strategy in this case." (Opp. at 89.)

7

review of their files. OFAC, at a minimum, has a substantial amount of information on Tornado Cash and Mr. Storm as evidenced by the lengthy OFAC report that the government produced in discovery on September 28, 2023. (*See* MTC at 3.) And lastly, because the government did not say whether it may call an OFAC witness at trial, the defense requests that the Court inquire on this point at the hearing and confirm that the FBI has had no separate contacts with OFAC about this case. In *United States v. Griffith*, which the opposition references in footnote 20 (Opp. at 89), the government similarly claimed in its opposition to a motion to compel that OFAC was not part of the prosecution team, but after filing that opposition and before the reply was due, the government produced discovery showing the FBI had substantial contact with OFAC about that case, including sharing investigative methods and intelligence reporting.[4] *See* Memorandum in Opposition at 60-63, No. 20-CR-15 (PKC) (S.D.N.Y. Nov. 19, 2020), ECF No. 72; and Response in Support at 2-4, No. 20-CR-15 (PKC) (S.D.N.Y. Dec. 8, 2020), ECF No. 78. The district court there ultimately ordered the government to "conduct a review of material in the possession of OFAC" related to that defendant's prosecution for the relevant time period. Order at 1, No. 20-CR-15 (PKC) (S.D.N.Y. Dec. 22, 2020), ECF No. 80.

### III. CONCLUSION

For all the foregoing reasons, as well as those in the underlying motion to compel, Mr. Storm respectfully requests that the Court compel the government to: (1) produce the requested communications, including any MLAT Requests, with Netherlands authorities; and (2) produce

---

[4] The government's reliance on its prior representation in *Griffith* is surprising in light of the fact that its subsequent discovery production in that case showed a close working relationship despite initial representations to the contrary and the fact that NSD sought assurances from OFAC that it would supply a witness at trial, which the defense understands is standard pre-charging procedure. Motion to Compel at 2-4, No. 20-CR-15 (PKC) (S.D.N.Y. Oct. 22, 2020), ECF No. 63; Response in Support at 2-4, No. 20-CR-15 (PKC) (S.D.N.Y. Dec. 8, 2020), ECF No. 78.

any materials received from OFAC and FinCEN not already produced, including any substantive communications, and have those agencies conduct a prudential *Brady* review.

Dated: May 24, 2024                                                    Respectfully submitted,

/s/ Brian E. Klein

Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP

*Attorneys for Roman Storm*