U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

September 18, 2024

**BY ECF & EMAIL**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Roman Storm*
              23 Cr. 430 (KPF)

Dear Judge Failla:

    The Government respectfully submits this letter motion, pursuant to Federal Rules of Criminal Procedure 16.1 and 57(b), Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, requesting that the Court:

- Schedule a *Daubert* hearing no later than two weeks prior to the December 2, 2024 trial date, and order the parties to produce expert disclosures substantively consistent with the notice required by Federal Rules of Criminal Procedure 16(a)(1)(G) and 16(b)(1)(C) sufficiently in advance of the *Daubert* hearing to allow the parties to file any challenges to the proposed expert testimony in advance of the hearing; and

- Order the defendant to provide the Government with notice of his intention to assert an advice-of-counsel defense and attendant disclosures, including (a) the nature and specifics of his advice-of-counsel defense, (b) the identification of the attorney(s) who provided such advice and a proffer of facts in support of such a defense, and (c) all documents that he intends to rely on in support of such a defense, as well as any other documents relating to such a defense, by October 14, 2024.

    Since the Court's issuance of a revised scheduling order on July 15, 2024 (Dkt. 67), and pursuant to their obligations under Rule 16.1, the parties have had multiple discussions attempting to negotiate an agreed-upon schedule for these and other pretrial disclosures that the parties could jointly propose to the Court. In the Government's experience, it is the uniform practice in this District for the parties to a criminal trial to agree to a schedule for pretrial expert disclosures. Such disclosures allow the parties to prepare for trial and also to raise any *Daubert* challenges in advance of trial, so that the Court can address these issues without having to interrupt the trial after the jury

has been sworn. However, in this case, the defense has taken the position that as long as it does not ask for pretrial expert disclosures from the Government, there will be no such disclosures until each expert witness is called at trial. That is a recipe for chaos. It will necessitate a continuance in the midst of trial every time an expert witness is called, so that the parties and the Court can address any *Daubert* issues raised by that expert.

While Rule 16 provides one mechanism for ordering expert disclosure, this Court also has substantial discretion to structure the trial proceedings in a manner that enables it to exercise its gatekeeping function under *Daubert*. The Government is respectfully requesting that the Court exercise that discretion by ordering a single *Daubert* hearing to take place no less than two weeks in advance of trial rather than allowing for the possibility of multiple *Daubert* hearings during the trial, and to order the parties to make disclosures sufficiently in advance of the *Daubert* hearing to allow the parties to make any objections for the Court to resolve at the hearing. This proposed procedure will ensure that the trial is conducted with minimal interruptions and will minimize the risk that improper expert testimony is admitted at trial. Moreover, ordering disclosures sufficiently in advance of the *Daubert* hearing will be more efficient for the Court and the parties as it will afford the parties sufficient time to properly scrutinize and vet the expert disclosures so that they can raise any and all applicable challenges with the Court sufficiently in advance of trial. Particularly in a case such as this one that is likely to involve relatively complex expert testimony, this Court should exercise its discretion to ensure that the parties have sufficient time to litigate these issues and to ensure that the Court is provided with sufficient time to decide such issues based on fulsome briefing and a *Daubert* hearing.

During the parties' most recent discussion of this issue on September 17, 2024, the defense informed the Government that it does not want to receive or produce any pretrial expert disclosures that provide the degree of notice set forth in Rule 16, and that it will not agree to a deadline to disclose whether the defendant will assert an advice-of-counsel defense without agreement on the schedule for other pretrial disclosures. The Government's view is that the defense's position would seriously undermine the Court's ability to conduct a fair and efficient trial. Accordingly, the parties are at an impasse.[1]

    I.    **Expert Disclosures**

        a.  **Relevant Law**

As the Court well knows, pursuant to Federal Rule of Criminal Procedure 16, at the defendant's request, the Government must disclose to the defendant, among other things, "a complete statement of all opinions that the government will elicit from the [expert] witness in its

---

[1] In these discussions, the Government has also indicated that it is willing to agree to early production of 3500 material as part of an overall agreement on pretrial disclosures, despite the fact that it has no legal obligation to do so. *See, e.g., United States v. Bakhtiar*, 994 F.2d 970, 974, n. 4 (2d Cir. 1993) ("Essentially § 3500 bars discovery until the witness has testified on direct examination in the case, and limits discovery of such statements to material relating to the subject matter of the testimony; it operates as a limitation on the general discovery rules set forth in Fed. R. Crim. P. 16.").

case-in-chief." Fed. R. Crim. P. 16(a)(1)(G)(i), (iii). If the defendant requests expert disclosures from the Government, Rule 16 obliges the Court to "set a time for the government to make its disclosures…[that is] sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii). Rule 16(b)(1)(C) imposes reciprocal obligations on the defendant—including with respect to timing—for any expert witnesses whom he may call at trial, provided that the Government has requested such disclosures and the defendant has made the initial request for the Government's expert disclosures under Rule 16(a)(1)(G).

Rule 16's expert disclosure provisions were amended in 2022 to "address[] two shortcomings of the prior provisions on expert witness disclosure: the lack of adequate specificity regarding what information must be disclosed, and the lack of an enforceable deadline for disclosure." Fed. R. Crim P. 16, Notes of Advisory Committee on Rules—2022 Amendment. Among other things, the Advisory Committee noted that the amendments to Rule 16 were "intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id*. The Advisory Committee has made plain since at least 1974 that the intent behind Rule 16's expert disclosure provisions is to "minimize[] the undesirable effect of surprise at the trial….that often results from unexpected expert testimony[,]…[to] reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed R. Crim. P. 16, Notes of Advisory Committee on Rules—1974 and 1993 Amendments.

*Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), which govern the admissibility of expert testimony, also apply squarely here. Those cases and their progeny prescribe the Court's gatekeeping power under Federal Rule of Evidence Rule 702 with respect to expert testimony. *See, e.g., United States v. Ulbricht*, 858 F.3d 71, 114-18 (2d Cir. 2017). Expert testimony can be admitted under Rule 702 only if (1) the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert is qualified by "knowledge, skill, experience, training, or education"; (3) "the testimony is based upon sufficient facts or data"; (4) "the testimony is the product of reliable principles and methods"; and (5) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597 (holding that Rule 702 requires trial judges to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); *Kumho*, 526 U.S. at 147-49 (applying *Daubert* to non-scientific testimony).

A court evaluating proffered testimony under *Daubert* and *Kumho* must look beyond "bare qualifications" and an expert's conclusions to the facts, reasoning, and methodology behind those conclusions. The proponent of an expert "has the burden of establishing that [these] admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702, 2000 Advisory Committee Notes (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)). Further, in *Kumho*, the Supreme Court made clear that a judge has "considerable leeway" in evaluating the admissibility of expert testimony. *Kumho*, 526 U.S. at 152. Importantly, this discretion includes the authority both to decide "**how** to test an expert's reliability," *id.*, and to decide "**whether or when** special briefing or other proceedings are needed to investigate reliability." *Id.* (emphasis added).

The district court's power to order special briefing and proceedings, and to set the schedule for these proceedings, in connection with evaluating the admissibility of expert testimony accords with the authority vested by Federal Rule of Criminal Procedure 57(b), which empowers courts to "regulate practice in any manner consistent with federal law, these rules, and the local rules of the district," as well as Federal Rule of Evidence 102, which mandates that the Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." In applying these principles, the Second Circuit has emphasized that a trial court in a criminal case has "broad" discretion both in its "decision to admit expert testimony and the method by which the court reaches that decision." *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020).

### b. Discussion

The Court should not countenance the defendant's gamesmanship and transparent efforts to conduct this trial by ambush, which will result in unnecessary and potentially substantial mid-trial delays. His reading of Rule 16 turns the purpose of the rule and Federal Rule of Evidence 702 on their heads. It is especially untenable in a case such as this, which involves sophisticated tracing of cryptocurrency transactions and analysis of the complex array of websites, computer programs, service providers, and smart contracts that makes up the Tornado Cash service. Both parties are almost certain to call multiple expert witnesses at trial.

As noted above, the defendant has pointedly declined to request expert disclosures from the Government under Rule 16(a)(1)(G) so as not to trigger his own reciprocal obligations under Rule 16(b)(1)(C). In discussions with the Government, the defense has argued that Rule 16's disclosure obligations are too onerous because they force the defense to prematurely disclose its strategy.[2] But the implications of that position would cause serious challenges to the administration of criminal trials. Essentially, the defendant is proposing to waste the Court and the jury's time by forcing the Court to do the analysis necessary to assess the admissibility of the parties' experts mid-trial. Given the sophistication and complexity of the anticipated expert testimony in this case, that analysis will be challenging to do on an abbreviated timeline, mid-trial. Indeed, the defendant's trial-by-surprise strategy suggests that he is hoping to limit the amount of time the Government and the Court have to evaluate his proposed "experts," so he can get otherwise improper expert testimony into the record without a full and fair airing of the propriety of that testimony. As this Court is likely aware, it is a regular practice of both the Government and the defense to provide the opposing party's expert disclosures to their own experts for the purpose of evaluating the adequacy of the disclosures, the proposed methodology, and whether the expert has applied the principles and methodology in a reliable fashion, among other things. This process of having other experts scrutinize the opponent's proposed expert testimony allows both the

---

[2] The defendant has expressed willingness to make minimal disclosures under the pre-2022 version of Rule 16, which required the parties to, among other things, exchange "written summar[ies]," rather than "complete statement[s]," of any expert testimony intended to be offered at trial. The Government rejected this proposal in light of the obvious concerns animating the 2022 amendments to Rule 16 about improving trial efficiency and minimizing surprise by giving both sides a full and fair opportunity to assess and challenge expert testimony well ahead of trial.

Government and the defense to identify potential deficiencies in the proposed expert testimony and, at bottom, allows the Court to decide complex expert issues based on better, more nuanced, and more sophisticated advocacy. It would be quite difficult to engage in such a process, however, if expert disclosures are being made mid-trial.

As the Advisory Committee's notes make plain, Rule 16 was not amended to encourage gamesmanship or to avoid the need to provide the opposing party with notice of proposed expert testimony. Rather, it was amended to facilitate trial preparation, to ensure that challenges to expert testimony can be aired and dealt with well ahead of time to ensure a smooth and efficient trial. This is a crucial part of the Court's ability to properly conduct its gatekeeping function under *Daubert* and its progeny. *See, e.g., Ulbricht*, 858 F.3d at 114-18.

The Government's concerns are not hypothetical. In the recent trial in *United States v. Eisenberg*, No. 23 Cr. 10 (AS), another case involving cryptocurrency for which defense counsel in this case also served as defense counsel, the defense attempted to introduce multiple categories of expert testimony that went beyond its pretrial disclosures. Judge Subramanian was forced to conduct a *Daubert* hearing in the midst of trial, expressing frustration that this resulted in "burning jury time." *See United States v. Eisenberg*, No. 23 Cr. 10 (AS), Apr. 15, 2024 Trial Tr. (attached hereto as Exhibit A), at 975. After hearing extensive testimony from a proposed defense expert outside the presence of the jury, Judge Subramanian excluded some of the proposed expert opinions on the ground that the defense had committed a "plain violation of Rule 16," and that its disclosures had been "woefully deficient." *Id.* at 994-95. The court also substantially limited other areas of the proposed expert testimony, and again noted the "woefully deficient" nature of the defense expert disclosure. *Id.* at 1025-29.[3] The next day, during redirect of the same expert, the court had to interrupt the testimony to conduct a second *Daubert* hearing, which resulted in the preclusion of additional expert testimony that the defense was attempting to elicit on redirect. *Eisenberg*, No. 23 Cr. 10 (AS), Apr. 16, 2024 Trial Tr. (attached hereto as Exhibit B), at 1242-43.

Upon the conclusion of the *Eisenberg* trial, defense counsel first informed the Government that it did not want to engage in any expert disclosures in this case.

Defense counsel in this case also sought to avoid expert disclosures in *United States v. Thompson*, No. CR19-159-RSL, 2022 WL 841133 (W.D. Wash. Mar. 21, 2022), in which the court ruled in the defense's favor. The Government respectfully disagrees with the *Thompson* court's reasoning and circumscribed view of its own powers. And, of course, *Thompson* is not binding on this Court.

At least one other district court has recognized that it retains "some discretion" under *Daubert* to order expert disclosures in advance of trial even if the defense does not make any requests under Rule 16. *United States v. Impastato*, 535 F.Supp.2d 732, 742 (E.D. La. 2008). The Government submits that the reasoning in *Impastato* is more persuasive than the reasoning in *Thompson*, and is more in line with the purposes of the Federal Rules of Criminal Procedure and

---

[3] Judge Subramanian also noted that it would have been better—and would have resulted in less delay of the trial—if the Government had "insist[ed] on a more fulsome disclosure at the outset." *Id.* at 1029-30. The Government is mindful of that admonition in making this motion in this case.

the Federal Rules of Evidence, as interpreted in *Daubert* and *Kumho Tire*. As the district court in *Impastato* recognized, the trial court has discretion to decide "**how** to test an expert's reliability," and "**whether or when** special briefing or other proceedings are needed to investigate reliability." *Kumho*, 526 U.S. at 152 (emphasis added); *see also Jones*, 965 F.3d at 161.

In *Impastato*, the court ordered the defense to make its disclosures first to the court in advance of trial, and stated that it would turn the disclosures over to the government if the expert "testimony is of such nature that immediate disclosure to the Government is warranted in order to facilitate the efficient operation of the trial." *Id.* at 744. In this case, given the obvious complexity of the issues at trial, the Government submits that there is no need for the Court to conduct an *ex parte* review before ordering disclosure to the Government. The proposed schedule for disclosures and a pretrial *Daubert* hearing two weeks prior to trial will ensure that the parties can fairly prepare for trial on an equal footing and prevent gamesmanship. *Cf. United States v. Tin Yat Chin,* 476 F.3d 144, 146 (2d Cir. 2007) (chastising Government for engaging in "sharp practice" for not making pretrial disclosures with respect to rebuttal expert testimony until one day before end of defense case because then-current version of Rule 16(a)(1)(G) only required pretrial disclosures with respect to expert testimony to be introduced in Government's case-in-chief).

In sum, consistent with its discretion and its gatekeeping function, Federal Rule of Criminal Procedure 57(b), and Federal Rule of Evidence 702, this Court should schedule a pretrial *Daubert* hearing and order the parties to make expert disclosures in advance of the hearing.

## II.  Advice-Of-Counsel Defense

### a. Relevant Law

In a criminal case where the defendant's intent is at issue, "the advice-of-counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true," but rather "is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'" *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017). "That said, defendants are entitled to an advice-of-counsel instruction only if there are sufficient facts in the record to support the defense." *Scully*, 877 F.3d at 476 (citing *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)). Specifically, "[t]here must be evidence such that a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'" *Id.* (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)).

Where the defendant has not put forward a formal defense of reliance on advice of counsel, courts have limited the admission of evidence about the involvement of attorneys on relevancy grounds and pursuant to Rule 403. The decision in *S.E.C. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), illustrates the limited relevance of evidence of attorney involvement absent a showing of each of the elements of the advice-of-counsel defense. In that case, which was brought against a Goldman Sachs employee alleged to have violated securities laws in the offer and sale of a synthetic collateralized debt obligation, the defendant disclaimed any advice-of-counsel defense,

but sought to introduce evidence that in-house counsel had reviewed various documents, reviewed disclosure language, was copied on communications, and in some instances assisted in drafting documents. *Id.* at 682-83. The court, however, held that Rules 401 and 403 precluded evidence and references to counsel, explaining:

> a lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction. Likewise, the fact that lawyers saw and commented on disclosure language could be understood as 'blessing' the sufficiency of that disclosure. This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.

*Id.* at 684. Accordingly, in *Tourre*, the court precluded as irrelevant and prejudicial (1) evidence used solely to show lawyers attended or set up meetings, (2) evidence that lawyers approved of certain documents or disclosures, and (3) the placing by the defendant of undue focus on the fact that a lawyer was present at meetings or reviewed documents or disclosures. *Id.* at 685. Although the defendant was allowed to present evidence of the attendees of meetings and to include professional descriptions for those participants, defense counsel could not mention the presence of lawyers in their opening statements or arguments. The court emphasized that this was not an inclusive list of inadmissible references to counsel and that other references may similarly be inadmissible. *Id.*

Similarly, in *S.E.C. v. Stoker*, another civil securities fraud action in which the defendant did not intend to assert an advice-of-counsel defense, but rather sought to elicit testimony about whether lawyers had reviewed certain transactions, Judge Rakoff took issue with defense counsel's efforts to highlight, through questioning, the fact that attorneys had reviewed certain offering materials. No. 11 Civ. 7388 (S.D.N.Y. July 23, 2012), Trial Tr. at 895-96. The court recognized that "absent evidence that counsel knew either the information that Mr. Stoker allegedly kept secret, at least from outsiders, or knew the information that the SEC claims were distorted misrepresentations, the role of counsel in any of this [was] totally irrelevant." *Id.* And, although the defendant proffered an alternative reason for the questioning, the court recognized that counsel's tactic was a "disguised reliance argument," *id.* at 973, and that, even if the testimony were offered for some other purpose, questioning about the role of attorneys invited "all the dangers of the jury misunderstanding the alleged purpose" of the testimony. *Id.* at 981. Similarly, in *S.E.C. v. Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019), Judge Cote precluded "references to counsel's communications" because, among other things, they were "not relevant in the absence of an advice-of-counsel defense." The court explained that "any probative value of such references is substantially outweighed" by, among other things, "the risk that such references will sow confusion and mislead the jury by suggesting that counsel … fully informed … approved" a transaction. *Id.*

Thus, where a defendant seeks to admit evidence of the involvement of attorneys, whether as a formal advice of counsel defense, or to show good faith, he must provide the Government with sufficient notice and disclosures ahead of trial. Ordering such disclosures is routine in this district. *See, e.g., United States v. Schulte*, No. 17 Cr. 548 (PAC), 2020 WL 133620, at *6

(S.D.N.Y. Jan. 13, 2020) (requiring advanced advice of counsel disclosure); *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018) (defendant should have made pertinent disclosures in advance of trial); *United States v. Rubin/Chambers, Dunhill*, 828 F. Supp. 2d 698, 711 (S.D.N.Y. 2011) (requiring notification to the Government of advice-of-counsel defense sufficiently before pre-trial conference to permit litigation over disputes). Such pretrial notice and disclosure are necessary to assess the relevance and admissibility of evidence and the permissibility of argument and to prevent confusing and unfairly prejudicial arguments from being presented to the jury.

### b. Discussion

As noted above, the defendant has refused to disclose whether he even intends to assert an advice-of-counsel defense, much less produce any materials relevant to that defense, until the parties can agree on a "holistic" pretrial schedule. For the following reasons, the Court should set a deadline of October 14, 2024, for the defendant to provide notice if he intends to assert an advice-of-counsel defense and to produce any materials relevant to that defense.

First, additional disclosure is necessary to determine whether the evidence the defendant hopes to elicit or offer will be relevant and not confusing or prejudicial. Regardless of whether the defendant intends to argue a "formal" advice of counsel defense, he will need to establish the relevance of evidence relating to any attorneys' involvement in the development of the Tornado Cash service. *See Tourre*, 950 F. Supp. 2d at 684.

Second, notice and discovery are necessary because by invoking an advice-of-counsel and/or good-faith defense, the defendant typically impliedly waives the privilege. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Pretrial notice is therefore necessary to conduct discovery into otherwise potentially privileged areas. A defendant's "conversations with counsel regarding the legality of his schemes" are "directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.* Because conversations with counsel can reveal an absence of good faith or advice of counsel, "the attorney-client privilege cannot at once be used as a shield and a sword." *Id.* In other words, to assess whether a defendant truly acted in good faith, it becomes necessary to understand his communications with his attorney: did he fully and honestly lay out all the facts, did the attorney provide him information that would leave him to believe he was not acting lawfully, did he in good faith and honestly follow counsel's advice? For that reason, once a defendant raises a good faith or advice of counsel defense, "any communications or evidence defendants intend to use to establish the defense are subject to disclosure" as are "otherwise privileged communications that defendants do not intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018). In addition, in this case the attorney-client privilege may be controlled by a corporation (here, Peppersec). As a result, the Court may need to resolve whether the defendant can rely on evidence that is protected by a company's privilege. *See United States v. Milton*, 626 F. Supp. 3d 694, 702-03 (S.D.N.Y. 2022) (denying the defendant's constitutional claim that "privileged communications become discoverable simply because a defendant wishes to use those communications in his defense"). Pretrial resolution of that waiver issue is important here because it appears that the issue may implicate not only the defendant's privilege, but also Peppersec's, and therefore may require collateral litigation as to who may waive the privilege and

to what materials the Government is entitled. This additional complication underscores why a short deadline for assertion of any advice-of-counsel defense, and corresponding disclosures, is necessary.

Third, pretrial notice and disclosure are in the interest of the efficient administration of the trial and to ensure that there are no delays mid-trial. *See Schulte*, 2020 WL 133620, at *6; *Scali*, 2018 WL 461441, at *8; *Rubin/Chambers, Dunhill*, 828 F. Supp. 2d at 711.

Applying this reasoning, Judge Kaplan recently ordered similar pretrial disclosures in *United States v. Bankman-Fried*, 22 Cr. 673 (LAK). There, the Court initially ordered the defense to provide notice of its intention to present an advice-of-counsel defense approximately two months before trial. *Id*. Dkt. 173 (July 30, 2023). Initially, the defense provided a bare-bones statement that it merely intended to assert such a defense, without further elaboration. At that point, the Government moved for and the Court ordered more detailed disclosures, including "the contours of the defense," the identity of the "attorney(s) involved, the general subject matter of the communications …, the format of the communications (e.g., written or oral), the approximate dates or date range of the relevant communications," the identity of "any other individuals present for or involved in the communications," and also to disclose any "materials supporting the defense(s), as well as any materials in the defendant's possession that would tend to undermine or impeach the defense(s)." *Id.* Dkt. 248 (Sept. 5, 2023). The Government submits that similar disclosures are appropriate here.

### III. Conclusion

For all of the foregoing reasons, the Government respectfully requests that the Court order the following reasonably in advance of trial: (1) a *Daubert* hearing and pre-hearing disclosures substantively consistent with the notice required by Federal Rules of Criminal Procedure 16(a)(1)(G) and 16(b)(1)(C) for any experts to be called at trial; and (2) notice of the defendant's intention to assert an advice-of-counsel defense and attendant disclosures by October 14, 2024, including (a) the nature and specifics of his advice-of-counsel defense, (b) the identification of the attorney(s) who provided such advice and a proffer of facts in support of such a defense, and (c)

all documents that he intends to rely on in support of such a defense, as well as any other documents relating to such a defense.

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney

By:    /s/ Thane Rehn
                              Benjamin A. Gianforti
                              Thane Rehn
                              Ben Arad
                              Assistant United States Attorneys
                              (212) 637-2490
                              (212) 637-2354
                              (914) 993-1907

                              Kevin Mosley
                              Special Assistant United States Attorney

cc: Brian Klein, Esq., Keri Axel, Esq., & David Patton, Esq. (by ECF & email)