

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

December 19, 2024

**BY ECF & EMAIL**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**MEMO ENDORSED**

    Re:    *United States v. Roman Storm*
            23 Cr. 430 (KPF)

Dear Judge Failla:

       The Government respectfully submits this letter motion in opposition to the defendant's letter dated December 18, 2024, seeking *ex parte*, *in camera* expert disclosures in this matter. The defendant's request represents his *third* attempt to avoid making pretrial expert disclosures, having previously been rebuffed by this Court and more recently by the Second Circuit in his failed *mandamus* petition. What the defendant is really asking this Court to do is to reconsider its earlier decision requiring reciprocal pretrial expert disclosures in accordance with Rule 16. But the defendant's request falls far short of the standard for a motion for reconsideration under Local Criminal Rule 49.1 and Local Civil Rule 6.3,[1] both because it is untimely and because the defendant has not "demonstrate[d] an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Alvarez-Estevez*, 2014 WL 12681364, at *1 (S.D.N.Y. Nov. 6, 2014) (internal quotation marks omitted). The Court should also reject the defendant's request for *ex parte*, *in camera* expert disclosures because it is impractical in a case like this one where the expert testimony is expected to be extremely technical and difficult for the Court to assess in the absence of a full adversarial process.

       First, under Local Criminal Rule 49.1(b) and Local Civil Rule 6.3, a motion for reconsideration must be filed within 14 days of the order being challenged. "'[U]ntimeliness is itself a sufficient basis for denial' of a motion for reconsideration." *United States v. Waring*, 2022 WL 2236334, at *2 (S.D.N.Y. June 22, 2022) (quoting *United States v. Lisi*, 2020 WL 1331955, at *1 (S.D.N.Y. Mar. 23, 2020)). Here, the Court ordered reciprocal pretrial expert disclosures on

---

[1] *See United States v. Yannotti*, 457 F. Supp. 2d 385, 388–89 (S.D.N.Y. 2006) ("[M]otions for reconsideration in criminal cases have traditionally been allowed within the Second Circuit. In deciding such motions, district courts have applied the standard found in Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ('Local Rule 6.3').").

October 10, 2024 (the "Order"). Rather than seeking reconsideration before this Court, the defendant opted to seek a writ of *mandamus* before the Second Circuit on October 16, 2024. On October 29, 2024, the Second Circuit stayed the Court's Order. On November 15, 2024, the Second Circuit denied the defendant's petition in a summary order because the defendant had "not demonstrated that his right to the writ is clear and indisputable." (*In Re Roman Storm*, No. 24-2742, Dkt. 49). Even assuming that the *mandamus* petition and the related stay tolled the 14-day deadline for filing a motion for reconsideration, the defendant's motion would still be untimely, as nearly five weeks have passed since the Second Circuit denied the petition, effectively reinstating the Order. For this reason alone, the Court can and should deny the defendant's motion for reconsideration.

Second, "[t]he standard for granting motions for reconsideration is strict, and a court may grant reconsideration only where the moving party demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Alvarez-Estevez*, 2014 WL 12681364, at *1 (internal quotation marks omitted). Here, the defendant can meet none of these requirements. He has identified no intervening change in controlling law; indeed, the Second Circuit declined the invitation to make such a change in summarily denying his *mandamus* petition.[2] Instead, he rehashes old arguments and now relies on an out-of-District case that he previously disparaged, *United States v. Impastato*, 535 F. Supp. 2d 732 (E.D. La. 2008), and which the Court has already considered in connection with ordering reciprocal pretrial expert disclosures. (*See* Dkt. 82 at 6-7; Oct. 10, 2024 Hrg. Tr. at 23). Nor has the defendant demonstrated that the Court made a clear error that requires correcting or that a manifest injustice must be prevented. Indeed, his inability to do is reflected in the Second Circuit's summary denial of his *mandamus* petition. Finally, he points to no new evidence. In sum, the defendant has not met the high bar for a motion for reconsideration and therefore it should be denied.

Third, even assuming for the sake of argument that the defendant's motion is timely (which it is not) and that he can meet the threshold requirements for a motion for reconsideration (which he cannot), his request for *ex parte*, *in camera* expert disclosures is impractical at best, particularly with his novel request (raised for first time here) that, if the Court determines there are potential *Daubert* issues with respect to the defendant's proposed experts, those issues be litigated by "a walled-off taint team of prosecutors," rather than the undersigned prosecution team. (Dkt. 111 at 3). The defendant cites no precedent for such a procedure, which is simply impractical. The Court would be right to reject it pursuant to its inherent authority to administer a fair and efficient trial.

At the outset, the defendant assumes that the Court will easily be able to determine whether there are potential *Daubert* issues without the benefit of adversarial briefing on the subject. As the

---

[2] The defendant cites certain questions asked by the Second Circuit panel during oral argument on the *mandamus* petition, arguing that these suggest that the Second Circuit had "concern about the government's position." That argument is meritless. As the Court is aware, judges frequently use oral argument to press counsel on the implications of their positions, and the Second Circuit panel also asked a number of questions expressing concern about the defendant's position. Ultimately, the Second Circuit rejected the defendant's position that Rule 16 or any other legal authority gave him a "clear and indisputable" right to *mandamus*.

Court knows, and the defendant has conceded, this case involves highly technical issues regarding cryptocurrency transactions, computer code, and the interaction of multiple computer applications and smart contracts both on and off the Ethereum blockchain. (*See In Re Roman Storm*, No. 24-2742, Dkt. 1 at 12 ("In a case such as this one, where the issues are highly technical, the parties' respective cases depend largely on expert testimony.")). As the Government explained in its initial motion for expert disclosures, it is the regular practice in cases of this nature for both the Government and the defense to provide the opposing party's expert disclosures to their own experts for the purpose of evaluating the adequacy of the disclosures, the proposed methodology, and whether the expert has applied the principles and methodology in a reliable fashion, among other things. Given the obvious complexity of the issues in dispute in this case, it would be impractical for the Court to attempt to evaluate the parties' expert disclosures in camera and without the benefit of adversarial presentation of the issues.

The defendant's motion further argues that if there is any *Daubert* litigation, it should be carried out not by the prosecution team, which has been working diligently on this case for almost three years and has retained experts to aid its understanding of the technical issues this case presents, but rather by a wholly separate team of prosecutors who are not read in on this matter in any way. Presumably, the experts that the prosecution team has already retained would also be walled-off under the defendant's approach, which would necessitate retaining further experts to assess the defense experts' proposed testimony. This is simply unworkable. Using a filter team of prosecutors and experts who are not nearly as familiar with the expert issues raised by the case would not at all meaningfully assist the Court in understanding and analyzing the admissibility of the defense's expert opinions under *Daubert*, let alone in a case like this, where those issues are highly technical and sophisticated.

Notably, the defendant's letter does not address the difficulties that would likely arise at trial as a result of his proposed *Daubert* procedure. For example, since the prosecution team will have been walled off from the *Daubert* litigation, how is it to know the parameters of the Court's *Daubert* ruling so that it can object to potentially impermissible testimony? Would the prosecution be bound by the Court's rulings on whatever objections were made by the filter team, or permitted to make new objections in light of its greater understanding of the technical issues involved in the case? Moreover, the defense proposal does not reduce the likelihood of potentially lengthy midtrial adjournments; in addition to having to adjudicate new objections by the prosecution team, which could cause substantial delays, the parties are likely to need to designate rebuttal experts to respond to the newly disclosed expert testimony during trial. This, of course, would set off an entirely new round of potential *Daubert* litigation and attendant delays in the trial. In short, the defense proposal does little to address the serious judicial efficiency concerns rightly expressed by the Court in the Order.

Simply put, the defense's motion is presented on a purported right to not have to prematurely disclose the defense's strategy, but it really boils down to the defense's belief that it has a right to ambush the Government at trial. While (absent certain affirmative defenses), a criminal defendant has no burden, that does not translate into an absolute or constitutionally-required right to withhold all evidence from the Government pretrial. The Supreme Court has rejected such a position, and it is otherwise unsupported by any legal authority. *See Williams v. Florida*, 399 U.S. 78, 82 (1970) (upholding rules requiring pretrial disclosure of alibi defense and

explaining that "the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate"); *id.* at 85 ("Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense[.]").

In sum, the defendant's request for *ex parte*, *in camera* review of expert disclosures, to be potentially followed by *Daubert* litigation carried out by a Government filter team, is untimely, falls far short of the standard for a motion for reconsideration, and is ultimately unworkable. Accordingly, the defendant's motion should be denied.

>
> Respectfully submitted,
>
> EDWARD Y. KIM
> Acting United States Attorney
>
> By: _____
> Benjamin A. Gianforti
> Thane Rehn
> Ben Arad
> Assistant United States Attorneys
> (212) 637-2490
> (212) 637-2354
> (914) 993-1907
>
> Kevin Mosley
> Special Assistant United States Attorney

cc: Brian Klein, Esq., Keri Axel, Esq., & David Patton, Esq. (by ECF & email)

The Court has reviewed Defendant Roman Storm's request that certain expert disclosures be submitted *ex parte* and *in camera* (Dkt. #111), and the Government's submission in opposition (Dkt. #113). To begin, the Court rejects the Government's arguments that Mr. Storm's request should be viewed as an untimely or improper motion for reconsideration. While it is true that Mr. Storm did not offer this alternative position initially, the Court accepts that the position was not crystallized until Mr. Storm had heard from both this Court and the Second Circuit.

That said, the Court believes that the Government has the better of the substantive arguments and denies the defense's request. As evidenced by its ruling on Mr. Storm's initial application, the Court's principal concerns have been for itself and the jury; to that end, the Court set a disclosure schedule that ensured that admissible evidence was presented in a timely, efficient, and fair manner, with appropriate respect for the Court's ability to control its trial docket and the jury's time. Given the extremely technical nature of the underlying facts, the Court believes that the obligations it has with respect to ascertaining the adequacy of expert disclosures and determining the propriety (and content) of a *Daubert* hearing are best accomplished if the disclosures are made to the Court and the current prosecution team simultaneously, and not to the Court *ex parte* or to a separate "taint team" of prosecutors.

Accordingly, Mr. Storm's motion for disclosure of expert information *ex parte* and *in camera* is denied, and the Clerk of Court is directed to terminate the motion pending at docket entry 111.

In consequence, the Court adopts the second of the proposed schedules with the following dates:

-**February 17, 2025**: Government provides 404(b) and expert notice; defense provides advice of counsel notice;
-**March 3, 2025**: Defense provides expert disclosure;
-**March 10, 2025**: Rebuttal expert disclosures;
-**March 17, 2025**: Requests to charge, *voir dire*, motions *in limine*, and *Daubert* motions;
-**March 24, 2025**: Oppositions to motions *in limine* and *Daubert* motions;
-**March 26, 2025**: Government provides 3500 material to the defense;
-**March 31, 2025**: Exhibit and witness lists;
-**April 8, 2025**: Final pretrial conference, to take place at **3:00 p.m.** in Courtroom 618 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

Dated:    December 23, 2024           SO ORDERED.
          New York, New York

*[signature: Katherine Polk Failla]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE