# EXHIBIT 2

OAABSTOA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                 v.                          23 Cr. 430 (KPF)

5   ROMAN STORM,

6

7                 Defendant.

8                                            Oral Argument
    ------------------------------x
9
                                             New York, N.Y.
10                                           October 10, 2024
                                             4:00 p.m.
11

12  Before:

13
                       HON. KATHERINE POLK FAILLA,
14
                                             District Judge
15                              APPEARANCES

16
    DAMIAN WILLIAMS
17       United States Attorney for the
         Southern District of New York
18  BY:  NATHAN M. REHN II
         KEVIN MOSLEY
19       BENJAMIN A. GIANFORTI
         BEN ARAD
20       Assistant United States Attorneys

21  WAYMAKER, LLP
         Attorneys for Defendant
22  BY:  BRIAN E. KLEIN
         KEVIN CASEY
23       KERI AXEL

24  HECKER FINK, LLP
       Attorneys for Defendant
25  BY:  DAVID E. PATTON

OAABSTOA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

OAABSTOA

1          (Case called)

2          THE DEPUTY CLERK:  Starting with the government,

3    counsel, note your appearance.

4          MR. REHN:  Good afternoon, your Honor.  This is Than

5    Rehn appearing for the United States.  I'm joined here in my

6    office by Ben Gianforti.  We also have on the line Kevin Mosley

7    and Ben Arad.

8          THE COURT:  Thank you, and good afternoon to each of

9    you.  And representing Mr. Storm, do I have Mr. Klein and

10   others?

11         MR. KLEIN:  Good afternoon, your Honor.  Thank you

12   again for accommodating us with the telephonic conference.  You

13   have myself, Keri Axel Kevin Casey, and we also have David

14   Patton.  He's dialed in.  He couldn't get into this line, but

15   he won't be speaking, but he's also listening in.  And we also

16   have our client who's dialed in Mr. Storm.

17         THE COURT:  Thank you very much, and good afternoon to

18   each of you.  Mr. Klein, you sort of suggested this in your

19   response to me, but I believe that you and your client have

20   discussed his right to have this proceeding take place in

21   person and that he is waiving that right?

22         MR. KLEIN:  That is correct, your Honor.

23         THE COURT:  Let me please confirm that with Mr. Storm.

24   May I speak with him directly, Mr. Klein?

25         MR. KLEIN:  Yes.

OAABSTOA

                    THE COURT:  Thank you.  Mr. Storm, first of all I want

1   to be sure you can hear us this afternoon.  Can you, sir?

2                    THE DEFENDANT:  Good afternoon, yes.  Yes, I can hear

3   you well.

4                    THE COURT:  Okay.  Good. My deputy also advises me

5   just if you're wondering that there are also eight listen only

6   participants on this conference as well.  I just want to make

7   sure that's there for the record.  Mr. Storm, your attorney and

8   I have been speaking and as happened at a prior conference of

9   ours, I believed it was easier for everyone to participate

10  telephonically just given the distance folks would have to

11  travel.  Mr. Klein advises me that you and he have discussed

12  the matter, that you're aware of your rights to have this

13  proceeding take place in person; and that you are consenting or

14  waiving your right to have it take place in person and

15  consenting to a telephonic proceeding.  Is all of that correct,

16  sir?

17                    THE DEFENDANT:  Yes, that's all correct.  Thank you.

18                    THE COURT:  Mr. Storm, thank you for letting me know.

19  Friends, I've been thinking about everyone's submissions.  I've

20  been doing a lot of talking with a lot of other judges.  And I

21  mentioned I did have a few questions that I'd like to ask the

22  parties just to fill in some gaps that I have, or perhaps to

23  dispel some misimpressions that I have, so let me do that. And

24  then depending on your answers, I will either have the ability

OAABSTOA

1    to give you a decision immediately, or I might need a little

2    bit of time.  So let's hope for the former.  Thank you.

3            Mr. Rehn, I'm told I should be directing government

4    inquiries to you.  Is that correct, sir?

5            MR. REHN:  Yes, your Honor.

6            THE COURT:  Perhaps I am misreading the parties'

7    submissions, but there was a suggestion in the defense

8    submission that the government is taking a very textualist

9    approach to the Jencks Act, and that they're planning on not

10    producing 3500 material until after the witness' testimony.  Is

11    that correct or have I just misunderstood?

12            MR. REHN:  No, your Honor.  We've been I think as we

13    say in our letter attempting to have a discussion with them

14    across a range of issues.  And as part of that discussion, we

15    have expressed a willingness to produce materials pursuant to

16    Section 3500 in advance of trial.  And have hopes that that

17    would be part of an agreed upon agreement as to all pretrial

18    disclosures.  Because we haven't been able to reach that

19    agreement, we haven't yet decided the timing for those

20    disclosures in particular.

21            THE COURT:  And I guess I understand that a little

22    better than I did a moment ago.  Is it actually the

23    government's contemplation -- if I can use the Failla parlance,

24    is there a world in which you would not produce 3500 material

25    until after the witness testified?

OAABSTOA

1         MR. REHN:  That is very much not our practice, so I

2    don't expect that would be the world that we would anticipate

3    going into the trial.  I do think the timing of those

4    disclosures is something we frequently include in our

5    discussions with defense counsel about a range of hoped for

6    agreed upon pretrial disclosures.  And so the precise timing of

7    those disclosures is something that we are continuing to

8    include in our discussions with defense counsel.

9         THE COURT:  I see.  The way I'm looking at it,

10    Mr. Rehn, we're here.  You're talking to me because you haven't

11    worked that out.  Is it possible that I could suggest a

12    production schedule of 3500 material to the parties?

13         MR. REHN:  There's precedent in the Circuit that says

14    that Rule 3500 is not something that the government can be

15    ordered to do in advance of the specific time that's set forth

16    in the statute.

17         THE COURT:  And please, sir, let me be very clear

18    about the question I asked you.  That's exactly why I use the

19    term "suggest." I'm familiar with *In Re United States*, 834 F.2d

20    283 from 1987 which tells me that, so I get it.  I guess what

21    I'm asking is, you're talking about negotiating things, but

22    there are some issues that I imagine that the parties or that

23    the parties do want me to resolve.  Is it your contemplation

24    that after I resolve the issues of expert witness disclosures

25    and advice of counsel disclosures, that then the parties are

OAABSTOA

1    going to negotiate the 3500 material?

2            MR. REHN:  Your Honor, I think the position we've

3    articulated in our letter, it reflects our view that the best

4    thing to do is figure out a way to have pretrial disclosures to

5    facilitate the efficient presentation of evidence at trial

6    without unnecessary interruptions.  And my expectation is that

7    we will produce 3500 material in a manner that allows for that

8    after the Court resolves our issues relating to the expert

9    disclosures.

10           THE COURT:  Okay.

11           MR. REHN:  And our usual practice would be to produce

12   it in advance of trial.

13           THE COURT:  Yes, I know.  Again, I am aware of Second

14   Circuit precedent on this issue, that's why I'm couching in

15   terms of suggestion or a request.  I will say I don't know that

16   I knew, or at least did not focus on this idea that a judge

17   couldn't order earlier disclosures.  Because heaven knows, I've

18   both ordered and been ordered to produce things earlier.  I

19   don't remember your office invoking *In Re United States* cases

20   of that type previously, but we all know that they are there.

21           Mr. Rehn, that actually leads me to my next question

22   which is this:  As I understand, the decision, the *In Re United*

23   *States* decision from 1987, what it stands for is the

24   proposition that a court's inherent power does not trump the

25   production schedule or the production deadline that's listed in

OAABSTOA

1    the Jencks Act, such that a district court lacks the power to

2    order production on an earlier timetable.  Perhaps I'm

3    overstating the issue, but that's how I'm looking at it.  If

4    you hold that same view of the case, could you help me

5    understand how I can reconcile the inherent power I have or

6    don't have to order early 3500 material disclosure with the

7    inherent power I have or don't have to order disclosure of

8    expert witness disclosures under Rule 16 without the triggering

9    event of the defense making a request for them?

10           MR. REHN:  Yes, your Honor.  So first off the issue of

11   the Court ordering pretrial expert disclosures is, as far as we

12   can tell, an issue of first impression, not just in this

13   district, but in this Circuit.  So unlike with respect to 3500,

14   there's no binding precedent on this issue from any prior

15   court.  There are some decisions from other district courts

16   that are cited in the parties' letters.

17           THE COURT:  Yes.

18           MR. REHN:  But I think the core principle here is that

19   there's Rule 16 in the Federal Rules of Criminal Procedure

20   which does provide for certain provisions for pretrial

21   disclosures.  And in addition to that, the actual presentation

22   of evidence at trial is governed by the Federal Rules of

23   Evidence which include Rule of Evidence 702.  And under Rule of

24   Evidence 702, the Court has an inherent gatekeeping authority

25   pursuant to the Supreme Court's decision in *Daubert* and *Kumho*

OAABSTOA

*Tire* and has discretion in determining how to exercise that

gatekeeping authority.  What we're simply saying is that

there's basically apparently two ways that are being proposed

here for the Court to exercise its gatekeeping discretion.  One

which would involve resolving evidentiary objections to expert

testimony shortly in advance of trial, and one which would

involve a potentially lengthy mid-trial adjournment, possibly

multiple mid-trial adjournments to allow the parties to review

and respond to each other's disclosures; and then present any

potential objections to the Court at that point in time.

And we would suggest that the Court should exercise

its discretion that is clearly afforded it pursuant to the

*Daubert* line of cases to order that proceeding in such a way to

avoid that sort of a mid-trial adjournment.  And the law does

contemplate that the trial court has discretion to decide when

and how to address expert objections.

THE COURT:  Let me ask a question in the 702 vein.

You're familiar with -- and this may sound a little bit

over-academic.  That's the appellate lawyer in me, so please

excuse me.  You're familiar, sir, with the concept of the if,

as or when subpoena?

MR. REHN:  Yes, your Honor.

THE COURT:  If the government filed a *Daubert* motion

expressing concern about the reliability or about the

admissibility of Mr. Storm's contemplated expert testimony,

OAABSTOA

1   which as yet has not been foreshadowed or introduced.  Do you

2   believe that I would have the power to order them to disclose

3   sufficient information to allow me to make findings under Rule

4   702, under perhaps Rule 403, and under the *Daubert* line of

5   cases, is that the argument that you're making to me now?  That

6   you could today file a motion saying, we are worried that this

7   stuff may not be admissible; therefore, we're asking to require

8   them to disclose it and to set a schedule for a *Daubert*

9   hearing, or do you think it's something I can do sua sponte or

10   both?

11           MR. REHN:  Well, I think that's what we're essentially

12   saying in our letter motion.  I don't think we currently have

13   an articulable basis to object to expert testimony in the

14   contents of which we don't know.  And so we're aware from our

15   conversations with defense counsel that they are contemplating

16   certain experts.  We're aware from the motions they filed in

17   the case that that is likely to involve technical issues

18   relating to things like cryptocurrency, transactions, computer

19   software, issues that involve quite a bit of work to even

20   understand for a lay person like myself usually with the help

21   of our own experts to try to figure these issues out.

22           And so in order to be able to -- for both parties to

23   be able to review the disclosures, decide whether there are

24   things that aren't proper expert testimony, and then explain

25   them in briefing to the Court, and for the Court then to have

OAABSTOA

1   the opportunity to rule on those would take a reasonable amount

2   of time.  Even a 24-hour adjournment in the midst of trial I

3   don't think would probably be enough to do that level of work.

4   And so what we're saying is, in light of the clear anticipated

5   complicated expert testimony that's at issue in this case, it's

6   an appropriate case for the Court to exercise discretion to

7   have those proceedings take place in advance of the time the

8   jury is sworn.

9           THE COURT:  Do you think, sir, my authority rises, if

10  at all, from the Federal Rules of Evidence and not from Rule 16

11  and not from my inherent powers; or do you think it's a

12  combination?  By the way, I'm not saying I agree with you.  I

13  just want to make sure I understand the point.

14          MR. REHN:  I think we take the point that is raised by

15  defense counsel that the specific aspects of Rule 16 that

16  require disclosures are triggered by defense request for

17  disclosures.  But we do think that the underlying purpose of

18  Rule 16 clearly contemplates that what the advisory committee

19  was trying to do was avoid mid-trial surprise, and ensure that

20  fair and efficient presentation of evidence for the jury.  And

21  so it should be considered in accordance with the Federal Rules

22  of that Evidence that are going to govern this expert

23  testimony.  And under those rules of evidence, there's I don't

24  think any question that the trial court does have discretion to

25  decide in the words of the Supreme Court in the *Kumho Tire*

OAABSTOA

decision, 526 U.S. at 152 "whether or when special briefing or
other proceedings are needed to investigate reliability."  And
so there is an avenue under Rule 702 to set the trial
proceedings up in such a way so that the Court is best
positioned to exercise the gatekeeping authority without
creating a problem with a mid-trial adjournment.

     THE COURT:  Okay.  Thank you.  Just one moment,
please.  Mr. Rehn, your adversary has suggested that there's
nothing that prevents the government from disclosing the expert
testimony and information on its own.  I presume you're just
going to tell me that yes you can, but you would much prefer to
disclose it in some sort of negotiated resolution with the
defense.  Yes?

     MR. REHN:  Yes, or a schedule ordered by the Court.  I
think there are considerations of fairness that have to be
taken into account, along with conditions considerations of
efficiency.

     THE COURT:  Okay.  Thank you.  Mr. Klein, could I hear
from you, sir.  I have a little better sense now about the
government's perspective on the 3500 material.  Would you
please engage in the discussion I was just having with counsel
about the Federal Rules of Evidence recognizing, sir, that
perhaps similar arguments may have been made to the judge in
Washington?

     MR. KLEIN:  Your Honor, I think Rule 16 is very clear

OAABSTOA

1    and was crafted in a way that is clear, and that Rule 702 even

2    read that way doesn't trump it, otherwise it would drive a hole

3    through the rule.

4         THE COURT:  Okay.  Is there anything -- and, sir, that

5    was really -- I have candidly more questions for the government

6    than I have for the defense.  But if there's anything else

7    you'd like to comment on based on the conversation I had with

8    Mr. Rehn, please tell me now?

9         MR. KLEIN:  Two things.  One is, the government did

10   tell us they weren't going to give 3500 material unless we gave

11   defense expert disclosures, and that was the real hangup in our

12   negotiations.  We really do and have consistently wanted a

13   holistic schedule as I think you saw in our letter.  But the

14   second point is, there's one point for consideration you

15   haven't touched on is the advice of counsel disclosure.  And I

16   think we noted that there's an issue of fairness there if the

17   3500 materials aren't being handed over.  We've been working

18   diligently on a set team as a defense.  And sort of in light of

19   sometime that has past, some discovery and us delaying I think

20   makes one amendment to our request in our letter that 404(b)

21   and advice of counsel, we'd be given two additional weeks until

22   October 28.

23        In our letter we had put in October 14, which is next

24   week, so that's actually this coming Monday.  So I just wanted

25   to note that our request now is that the schedule would be as

OAABSTOA

outlined in our letter, but with the October 14th date moved to
October 28.

THE COURT:  Just so that I'm clear, sir, you'd be
willing to produce advice of counsel and 404(b) notice only if
the entirety of your schedule is adopted as well, sir.  Am I
correct?  Let me be more pointed.  Okay.  Let's say that I am
not ordering production one month in advance of 3500 material.
Are you still willing to give early notice of the advice of
counsel or not?  I'm fine either way.

MR. KLEIN:  I think we would need to think about that,
your Honor.  Again, our contemplated schedule is November 8.  I
think we would want -- and again, as we noted at the end, it's
sort of an issue of fairness.  And I think we felt our schedule
that we proposed balances competing concerns by both parties,
but also giving everybody time to review and analyze stuff.  So
if the government is only suggested to produce 3500 or only
ordered, however it's phrased a week or two in front of trial,
we would want sufficiently more time to assess our advice of
counsel defense.  So maybe that's not as a direct answer you
would like, but I just --

THE COURT:  Well, you're exactly right.  It's not as a
direct answer as I would like. For me, sir, the issue is this.
I disagree with the defense's effort to link 3500 material and
advice of counsel defense.  I don't see them as joined at the
hip as you do.  That doesn't mean that I'm not going to ask the

OAABSTOA

1    government to produce it early.  Although as you've heard

2    Mr. Rehn tell me gently, I don't have the authority to order

3    it.  But I am not conditioning the advice of counsel disclosure

4    on the 3500 material, that's not something that I plan to do in

5    resolving this.  You'll see in a few moments because I need a

6    few moments to think about what you all just told me, and I

7    will then give you my decision.  But you'll see I have

8    uncoupled 3500 material and advice of counsel.

9         MR. KLEIN:  We would still ask for October 28 for the

10   advice of counsel defense. If the government's not going to be

11   producing -- even we understand your Honor is not coupling

12   them, we still view them as coupled respectfully.  And we would

13   ask for additional time past the 28th, so that's our position.

14        THE COURT:  Okay.  And let me say this as well, let's

15   talk about what we maybe agree on, which by the way may not be

16   much.  On page three of your letter, your September 25th

17   letter, sir, there are certain things that are bold, and those

18   are things that I ordered.  Obviously I don't plan on changing

19   the things that I have ordered, although I'll listen to the

20   parties if I needed to.  It was my contemplation that the

21   404(b) disclosures would be made in the motions *in limine*, that

22   I hear about it first in the motions *in limine*, parties seeking

23   to produce 404(b) evidence would do in the motions *in limine*.

24   And then I get the opposition one week later telling me why

25   that shouldn't happen.

OAABSTOA

1    So while you're asking for the 28th of October for

2    that disclosure, in my mind it was going to be disclosed on the

3    4th of November.

4    MR. KLEIN:  Your Honor, one point with that, sometimes

5    it's helpful, and the reason why we asked for it a little

6    earlier is sometimes we're able to negotiate a resolution of

7    the 404(b) issues that prevent the need for 404(b) motions.  So

8    that is one reason we contemplated it early.  I've had that in

9    the past with the government where they notice something.  You

10    talk about it with them, and then you reach an agreement so

11    your Honor doesn't have as many motions in front of the court.

12    That's one reason we put it in.

13    THE COURT:  Well, Mr. Rehn, opposition to that

14    friendly moment, sir.

15    MR. REHN:  It was also our view -- and generally it's

16    the practice that we would do the 404(b) as part of the motions

17    *in limine*, but I don't know if we're necessarily opposed to a

18    disclosure somewhat in advance of that.

19    THE COURT:  Well, one week in advance of that

20    suggest -- the reason to do it, which I know you know, is that

21    if you can agree on it, then you don't have to write me a

22    motion, and then I don't have to decide a motion.  That's not a

23    crazy thing, so I'm okay with that.  But wait.  Mr. Klein, does

24    that mean that you're also disclosing advice of counsel on that

25    day, or is that something you're still thinking about, sir?

OAABSTOA

1          MR. KLEIN:  Your Honor, that would be October 28.

2    Just to be clear, we were requesting October 28, for both of

3    those.  Now again, I'm not trying to be difficult with the 3500

4    on November 8th, but again we do see the benefit -- and I just

5    outlined it too, of getting 404(b) at least a week in advance

6    so we can try to work out a resolution and avoid unnecessary

7    motions.  Sounds like we have agreement with the government.

8          THE COURT:  Okay.  Let me be more explicit then with

9    what I was just saying.  Earlier in this conversation you said

10   to me that your thought was -- and indeed, in your letter it

11   was originally October 14th, but it is now October 28 -- the

12   idea of disclosing 404(b) and the advice of counsel defense.  I

13   believe that we just agreed -- and if not, I can order it --

14   that the government and you -- well, I guess really the

15   government -- provide 404(b) notice by the 28th of October.  So

16   that you've got.  And then we've got our motions.  Otherwise

17   the November 4th, November 11, November 19th dates remain the

18   same.  I guess I'm asking whether having negotiated that

19   resolution, you're willing to disclose advice of counsel on the

20   28th of October, or whether you want to hear more from me

21   before you make that decision?  I just want to know.

22         MR. KLEIN:  Your Honor, in light of that, I think we

23   will agree to the advice of counsel on the 28th; but again,

24   with the idea that the government will be producing 3500

25   sufficiently in advance of trial, whether you give us the date

OAABSTOA

1    we ask for, which we think is appropriate for fairness.  So I

2    think we are finding common ground here.

3              THE COURT:  Okay.  Well, I'm sad for the amount of

4    time we spent looking at advice of counsel defense, but if I

5    can bring the parties to a negotiated resolution all the

6    better.  All right.  Mr. Rehn, still there, sir?

7              MR. REHN:  Yes, your Honor.

8              THE COURT:  Okay.  Mr. Rehn, we now have a date of

9    October 28th for the 404(b) notice and the advice of counsel

10   disclosure.  We've got -- otherwise my dates are set.  Do you

11   have a thought about 3500 material, sir?  Because, remember,

12   we've been talking about negotiation, but that's sort of what

13   we've devolved to doing in this call.  Do you have a position,

14   or are you still thinking about that, sir?

15             MR. REHN:  Your Honor, I think in light of this

16   discussion, we do intend to produce the 3500 material in

17   advance of trial.  I think the 8th would be a challenge just

18   given the number of other things that are going to be done that

19   week.  So I would ask for probably the -- when I say ask, I

20   would sort of propose that we would plan on producing it more

21   like the following Wednesday or something.

22             THE COURT:  Okay.  All right.  The 13, November 13th,

23   for 3500.  That actually sounds great to me.  And Mr. Klein is

24   not going to tell me that he objects because that is fair.

25   What about the exhibit and witness list from the 18th of

OAABSTOA

1  November, sir, is that something the government can do?

2         MR. REHN:  One moment, your Honor.

3         THE COURT:  Of course.

4         MR. REHN:  Your Honor, I think we can work with that

5  deadline.

6         THE COURT:  Okay.  All right.  So that means we have

7  many things resolved.  But, Mr. Klein, I'm going back to you,

8  sir.  You've gotten a lot of what you've asked for, which is

9  great.  Mr. Klein, what about expert witness disclosures?  Are

10  we still there?  Is that something I need to resolve, or are we

11  in a really conciliatory mood and you might propose something

12  with the government?

13         MR. KLEIN:  Your Honor, we had talked to them about

14  disclosures short of current Rule 16.  They've rejected those

15  each time we raise those.

16         THE COURT:  And I wouldn't ask them for that either.

17  I agree.  I don't think that that's not -- that won't cut it.

18  I guess is there otherwise, what, the plan is to just disclose

19  at trial?

20         MR. KLEIN:  So, your Honor, I think when we disclose a

21  witness list, we would have to put the name of an expert that

22  we might call in there just to be clear.  I think that is

23  something we would contemplate doing.  It's not voluntarily or

24  however you want to look at it, but I think our plan is to

25  stick with Rule 16.  Maybe in the meantime we are able to

OAABSTOA

1   negotiate something with the government.  We will continue to

2   try to do so.  To be clear, we're not giving up on that front,

3   so I don't know if they change their mind on this call.  But

4   maybe after this hearing we all have time to think about it,

5   we'll be able to reach a resolution.  That's what happened in

6   the Thompson case that was referenced in both our briefs.

7           THE COURT:  I'm familiar with Thompson.  Mr. Klein,

8   let me be more precise, sir, excuse me.  I think I was being a

9   little bit too oblique.  I have in front of me an oral decision

10  resolving the parties' dispute about Rule 16.  I can give it,

11  or I cannot give it because the parties are going to continue

12  to negotiate it.  If you're not today comfortable making a

13  commitment or continuing to negotiate with the government

14  regarding the disclosure in accordance with the current version

15  of Rule 16 in terms of the content, then I can proceed with the

16  oral decision, or I can give you more of a chance to speak.

17  The reason I'm asking, sir, is we were getting along so well

18  for a few minutes there, and I do believe ultimately this trial

19  is better if the parties can negotiate it.  But I want to give

20  you that option, but if that's where you are, then I'll give my

21  decision.

22          MR. KLEIN:  Your Honor, that's where we are.

23          THE COURT:  That's an answer and that is fine.  Then

24  let me do this, please.  Just give me a moment.  I have notes,

25  but I have notes that I'm sort of annotating in light of the

OAABSTOA

1    discussions we've been having today.  And I just want to be

2    sure that they've not been rendered dated by our discussions

3    today.  Okay.  I'll ask for everyone's attention.  I'll ask you

4    to please mute your lines, and I will beg your indulgence as I

5    read this into the record.  My intention this afternoon is not

6    to read into the record a lot of the applicable case law and

7    statutes and rules.  I know the parties know what they are.  I

8    don't think they aid the transcript to have me read them word

9    for word into the record, so I'll make reference to them, and

10   I'll be incorporating some of them by reference.

11       So I begin by thanking you, and I guess I have more to

12   thank you for than when we started this conversation because at

13   least part of this motion seems to have resolved itself,

14   although I'll talk about that in a little while.  So thanks for

15   that.  Let me tell you also that in anticipation of this

16   decision, the way that I approached it given the paucity of

17   case law in the issue was to reach out to a rather large number

18   of my colleagues here in the Southern District to discuss the

19   parties' competing views on these issues.  And I actually

20   received a fair amount of feedback from my colleagues which was

21   great for me.  And I analogize it -- again, this is the

22   appellate lawyer in me -- to like a mini *en banc* of Southern

23   District judges on these areas.

24       And as to some of the issues I'm going to discuss,

25   there was sort of a universal consensus.  As to others, what

OAABSTOA

1    I'm going to outline is my position in the majority view.  I'll

2    also let the parties know that I engaged in extensive

3    conversations with Judge Subramanian, who if you're wondering

4    was much less sanguine about the conduct of the Eisenberg trial

5    than defense counsel recalls; and who really would have

6    preferred to hashed out these issues in full in advance of

7    trial rather than mid-trial.  But I also had a very lengthy and

8    very helpful chat with Judge Liman, who's just a very smart man

9    as all of you know who did a lot of work on the advice of

10   counsel defense in the Ray case, but also had a lot of things

11   to say about Rule 16.  So my decision today involved and

12   incorporates the wisdom of those two judges and the others

13   judges with whom I've spoken.

14       So I understand and you understand that the rules at

15   issue here include Federal Rule of Criminal Procedure 16, in

16   particular Subsections (a)(1)(G) and (b)(1)(C).  I've looked at

17   the advisory committee notes, in particular the advisory

18   committee notes, the 1997 and 2022 amendments.  The parties, at

19   least the government, has suggested that Federal Rule of

20   Criminal Procedure 57 might assist me in its Subsection B.  And

21   I've looked at the Federal Rules of Evidence, and I focused

22   mostly on Rule 104, Rule 403, Rule 702, and some of the others

23   in the 700 series.  And the parties know what the parties'

24   positions are with respect to the timing of expert disclosures.

25   And I do and I want to underscore I appreciate everyone's

OAABSTOA

efforts to come to a holistic agreement on these issues because

it takes up less of everyone's time.  And so really I to

appreciate that.  And I also do appreciate the opportunity this

afternoon to speak with the parties about what they really were

intending to do and what their thoughts were.

As I suggested in my conversations with Mr. Klein, I

don't condition Rule 3500 material and the advice of counsel

defense.  I don't condition Rule 3500 material and expert

witness disclosures.  I think that that's a little bit

different, but I understand his position on it.  I have looked

at, as I mentioned, the case on the issue, the *Thompson* case

and the *Impastato* case that were cited to me, although

*Impastato* predates it.  I did reach out to a number of my

colleagues.  And I'll tell you that the majority of the

colleagues who responded to me actually were agreed or believed

that I had the authority under my inherent power to set a

timetable for disclosure.  And let me just put that a little

bit differently.  These judges felt that while Rule 16 set

forth the content of the disclosures and a mechanism for

ensuring the fairness of pretrial disclosures, that there came

a point in the trial process where the Court's inherent power

to control the progress of the trial, the Court's concerns

about not wasting jury time, the Court's need to schedule a

pretrial as distinguished from mid-trial hearings interest the

calculus.  The belief was that the trial judge's duty to

OAABSTOA

1    control the trial process so that the jury can render a just

2    verdict allowed the Court and indeed required the Court to set

3    schedules so that admissible evidence was presented in a timely

4    and efficient manner.

5         One of my colleagues wrote back to me and said

6    specifically, we can't let gamesmanship trump justice.  And so

7    I thought about my inherent powers, and I would love to just

8    very easily say that these judges are correct.  I also know

9    that the advisory committee notes at least suggest that a

10   criminal defendant could not strategically avoid his or her

11   obligation to make timely disclosures by avoiding actions that

12   trigger disclosure obligations until trial.  And by the way as

13   a parenthetical here, I can't believe that the rules committee

14   which was seeking to enhance the detail and the timeliness of

15   disclosures would have enshrined or wanted to enshrine such

16   gamesmanship.  But there's language in the advisory committee

17   notes that suggest that I can order disclosures in order to

18   ensure enforceable deadlines.  And that seems to me that I have

19   that power even where one of the parties was seeking to delay

20   triggering -- that party being the defense -- seeking to delay

21   triggering the disclosure obligation.  But that's where we are.

22   If it turns out that my colleagues are wrong, and I don't have

23   the inherent power to overcome the triggering import of Rule

24   16, let me say this:  I absolutely have other sources of

25   authority to obtain this information.  And here I agree with

OAABSTOA

1    the arguments that the government is making today about my

2    ability under the Federal Rules of Evidence.  And to me that

3    includes Federal Rules of Evidence 104 which obligates me to

4    decide certain preliminary questions of admissibility where

5    such hearings are often conducted prior to trial so that the

6    parties and the Court can understand the ground rules. I also

7    think that Rule 702 and the *Kumho Tire Daubert* line of cases do

8    require me to make preliminary findings regarding the

9    qualification of experts, the relevance of their testimony, and

10   the reliability of their testimony.  So I do believe I have the

11   authority to resolve these Rule 702 issues prior to trial.  And

12   the fact that the disclosures that would have to be made to

13   satisfy Rule 702 and Daubert, the fact that they're essentially

14   if they're not very similar to or identical to, they're very

15   close to what's specified in Rule 16 does not foreclose me from

16   ordering such a disclosure pretrial.

17          As a result, I am including expert witness disclosures

18   within the existing trial schedule.  Anyone seeking to present

19   expert testimony at trial must present disclosures in

20   accordance with the current version of Rule 16 on or before

21   November 4.  Any rebuttal disclosures or request for *Daubert*

22   motions will be submitted on or before November 11, and we'll

23   hold the *Daubert* hearing at or in the same week as the final

24   pretrial conference on November 19.  I say possibly in the same

25   week because I don't know what the parties are going to be

OAABSTOA

1    submitting to me, so I don't know whether this can all be done

2    in one afternoon or requires multiple afternoons.  I have here

3    really thoughtful stuff about the advice of counsel defense,

4    but I'll stop because the parties have made agreements on it.

5    I'll just say this, please, and I'm sure that this is just me

6    being unnecessarily worried.  When I'm using the term "advice

7    of counsel defense," what I'm really speaking about are two

8    things.  And one of them is the formal advice of counsel

9    defense that's noted in cases like *Bilzerian* and that requires

10   certain disclosures by the defense and certain findings by the

11   court before such a defense can be raised.

12            But I'm also talking about cases in which someone is

13   arguing that the presence of lawyers or their participation in

14   meetings might impact a defendant's intent.  So when I'm asking

15   for advice of counsel disclosures on or before October 28, what

16   I'm really talking about is any reference to counsel being

17   present, being in the room, and any arguments that you make

18   from that.  I just say that because while I'm familiar, very

19   familiar with the advice of counsel defense, I've had instances

20   in which litigants have wanted to just do this variant of

21   advice of counsel.  And I've read a recent decision from Judge

22   Kaplan in the *Bankman-Fried* litigation.  And there contained at

23   2023 WL 6392718 and 2024 WL 477043.  And I take his point about

24   the, perhaps the near co-extensiveness of both formal and

25   informal advice of counsel.  But I'm really telling you this

OAABSTOA

1  because I don't want to be surprised at trial.  So if we're

2  going to talk about lawyers, please tell me before trial.  All

3  right.

4          Let me just say this one other thing.  And, you know,

5  I wrote this earlier today before we had this very congenial

6  conversation.  So I'm going to just give this to you and hope

7  that it is already dated even as I say it.  Here's what I

8  wrote.  I'm ending with this thought, which like a few others

9  I've expressed this afternoon may not be something that anyone

10  asked for.  This case is an interesting case.  This is an

11  important case, and I'm just one person thinking about this.  I

12  think it's a triable case.  My concern about this most recent

13  round of motion practice is that the parties are planning to

14  engage in a trial by ambush in the hopes of either gaining some

15  advantage from the jury or gaining some advantage from me by

16  making it more difficult for their advisory to respond.  And my

17  thought to you here is that I don't think you need to engage in

18  litigation with parlor tricks.

19          And I'll say on this point that if you make life a

20  little bit more difficult for your adversary, if you give them

21  less time to look at something, I care less about that.  What I

22  really care about is that you're not going to give me enough

23  time to think about these issues, and you're not going to give

24  me enough time to arrive at a correct decision on your

25  applications.  I also actually don't think that late breaking

OAABSTOA

1   changes in strategy or gotcha moments actually really help

2   anyone for trial fortune turn around.  It didn't work for

3   Mr. Bankman-Fried for instance.  I'm asking you to play well

4   with each other as best you can.  And I'm asking you to spend

5   maybe a little bit less time on strategic thinking and a little

6   more time on the substance of the case.  But perhaps today is

7   the conversation we needed to air things out.  Perhaps today we

8   realize we can work together, and we can focus on the really

9   important substantive issues that are going to take place in

10   this trial.  And that really is my hope.  But for now, I

11   resolve the motions that I have in front of me.  I don't think

12   there are open issues.  But, Mr. Rehn, let me ask you now if

13   there are from your perspective?

14          MR. REHN:  Not from our perspective at this time, your

15   Honor.  Thank you.

16          THE COURT:  Okay.  And, Mr. Klein, any from your

17   perspective at this time?

18          MR. KLEIN:  No, your Honor.

19          THE COURT:  Okay.  Then I will let you go forth and

20   continue to prepare for this trial.  I am assuming that we are

21   having a trial on December 2nd.  You'll of course let me know

22   if that changes.

23          Thank you all very much.  Thank you.  Genuinely, thank

24   you for the comprehensiveness of your submissions, and for the

25   argument that you made to me which I really feel covered the

OAABSTOA

1  landscape.  I really appreciate that.  We'll talk again as

2  needed.  We are now adjourned.  Thank you.

3          (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25