

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

May 16, 2025

*Via ECF*

Brian E. Klein
Direct (424) 652-7814
bklein@waymakerlaw.com

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:** *United States v. Roman Storm*, 23 Cr. 430 (KPF)

Dear Judge Failla:

The defense recently learned that the government has possessed exculpatory materials since August 2023 that go to the heart of a fundamental issue in this case: whether a noncustodial cryptocurrency mixer is a "money transmitting business" for purposes of 18 U.S.C. § 1960. The government's failure to produce those materials in the fall of 2023, when Roman Storm was indicted and first appeared in court, constitutes a *Brady* violation that has materially prejudiced his defense (*e.g.,* motions to dismiss and compel), even if the government is no longer charging a violation of Section 1960(b)(1)(B), the first object of the Section 1960 conspiracy count.[1]

A recent filing in a similar prosecution involving Samourai Wallet, a noncustodial cryptocurrency mixer, revealed that, on August 23, 2023, S.D.N.Y. prosecutors had a previously undisclosed call with senior officials from the Financial Crimes Enforcement Network ("FinCEN"). *See* Samourai Defense *Brady* Letter, *United States v. Rodriguez et al.*, No. 24 Cr. 82 (RMB) (the "Samourai case"), ECF No. 86 at 3.[2] During that call, FinCEN officials stated that because Samourai "did not take 'custody' of the cryptocurrency by possessing the private keys to any addresses where the cryptocurrency is stored, that would strongly suggest that Samourai is NOT (emphasis in original) acting as an MSB [money services business/money transmitting business]."[3] *Id.* at 3. As the government is well aware, the defense has argued from the beginning of this prosecution that FinCEN regulations make clear that Tornado Cash is not a "money transmitting business," and that Mr. Storm acted in good faith based in part on his

---

[1] See the government's May 16, 2025 letter to the Court, Dkt. 144. All "Dkt." references are to this matter.
[2] A copy of the May 5, 2025 letter submitted by the defense in the Samourai case on this issue is attached as <u>Exhibit A</u>. A copy of the May 9, 2025 letter submitted in opposition by the government in the Samourai case (ECF No. 88) is attached as <u>Exhibit B</u>.
[3] FinCEN uses "MSB" to refer to a "money services business." "MSB" is defined in the regulations to include "money transmitters." 31 C.F.R. 1010.100(ff). Thus, if Samourai was not an MSB, then by definition, it could not be a "money transmitter."

understanding of that guidance. The government has been strident in its arguments to the contrary, going so far as to call Mr. Storm's arguments in his motion to dismiss "legally baseless" because "in the FinCEN guidance, the 'control' concept is listed as just one factor." (*See*, *e.g.*, Gov't Opp. to MTD, Dkt. 53 at 31.) And the government intends to call at least one FinCEN witness at trial.

The disclosures in the Samourai case reveal that the government, at the very least, played fast and loose and, at worst, affirmatively misled this Court, with its arguments about FinCEN guidance when responding to the motions to dismiss and to compel discovery. Perhaps equally as disturbing as the government's *Brady* violation is its insistence that the disclosures are not *Brady* material. In response to the defense's request for information regarding the Samourai disclosures,[4] the government claimed that the disclosures were not exculpatory, based in part on its view that Samourai Wallet and Tornado Cash only share "some superficial similarities."[5] But what the government characterizes as a superficial similarity is, in fact, the core feature that lies at the heart of the conflicting interpretations of FinCEN guidance and the scope of Section 1960: the noncustodial nature of both protocols. That users exercised sole control over their assets was a basis for Mr. Storm's motion to dismiss and to compel discovery of FinCEN materials.[6] (*See* Dkt. 25 at 5; and Dkt. 30 at 17-24.)

Although this Court has repeatedly emphasized the importance of the government's *Brady* obligations, it is clear that the government is not fulfilling its obligations. For these reasons, Mr. Storm seeks an order from this Court requiring the government to: (1) conduct a thorough *Brady* review for any information suggesting that Tornado Cash would not qualify as a "money transmitting business," including any communications with FinCEN, and promptly produce them; (2) produce the disclosures made in the Samourai case that are referenced in the recent filings (as well as any other related *Brady* materials that may have been produced in discovery to the defense there); and (3) provide the date this prosecution team learned of the information in those disclosures. Before filing this motion, the defense made these same requests of the government, and in response it only raised objections to them. The remedies Mr. Storm may seek depends on what else he learns, and he is reserving all rights.

**Relevant Background**

- **Roman Storm's Efforts to Seek FinCEN-related Discovery and *Brady* Materials**

Throughout this case, a central point of contention has been whether Tornado Cash is a money transmitting business and the implications of that characterization for liability under Section 1960 as well as Section 1956. The government has emphatically argued that Tornado Cash is a money transmitting business. Mr. Storm has forcefully argued that it is not. On March 29, 2024, Mr. Storm filed a motion to compel discovery of, *inter alia*, "[a]ll [OFAC] and [FinCEN]

---

[4] The defense's May 8, 2025 letter is attached as Exhibit C.
[5] The government's May 12, 2025 response letter is attached as Exhibit D.
[6] As discussed below, the issue of whether Tornado Cash was a money transmitting business is highly relevant not only to the Section 1960 charge but also to the money laundering charge.

materials and communications relating to Mr. Storm or this case." (Dkt. 25 at 5.) In support of his motion, Mr. Storm noted the defense's understanding that "before bringing an unlicensed money transmitting business charge (like the one Mr. Storm faces), FinCEN, which regulates money transmitting businesses at the federal level, is often consulted; in addition, FinCEN provides assistance during the course of a prosecution, including by providing a FinCEN representative to testify at trial." (*Id.* at 10.) In opposing Mr. Storm's motion, the government characterized the defense's understanding as "speculat[ion]" but conceded that it had a call with FinCEN representatives regarding this case before the indictment was unsealed. (Gov't Opp. to MTD, Dkt. 53 at 100.) Rather than provide details about this call, the government focused its opposition on the argument that FinCEN was not part of the prosecution team and thus not subject to the discovery obligations imposed by Rule 16. (*See id.* at 95-101.)

This Court denied Mr. Storm's motion to compel discovery of FinCEN materials. (*See* Dkt. 83.) In doing so, this Court noted that "there are standards for the production of discovery pursuant to Rule 16, and for the disclosure of information pursuant to cases like *Brady*," and that there was "nothing to suggest that the government wasn't warranted in withholding from disclosing things outside of the bounds of these obligations." (Mot. to Dismiss Oral Order Tr. ("MTD Order Tr."), Dkt. 99 at 13:11-16.) This Court appeared to rely on the government's representations during oral argument that while it "cannot confirm that the government has produced all of the documents that it has received from OFAC and FinCEN," it "can confirm for th[is] Court that the government has fully complied with its discovery obligations under Rule 16, *Brady* and its progeny." (MTD Oral Arg. Tr., Dkt. 69 at 21:14-19.) This Court explained it was not compelling the government "to turn over the withheld materials" but "if it turns out the government ultimately has interpreted its obligations too narrowly, there likely will be unfortunate consequences for their case." (MTD Order Tr., Dkt. 99 at 13:16-21.)

On February 26, 2025, Mr. Storm submitted a letter requesting that this Court order the government to comply with its obligations under *Brady* in light of the government's production of certain exculpatory witness statements that it contended were not *Brady* materials but were being provided as a courtesy. (*See* Dkt. 130.) In response, the government stated that it "has at all times complied with its *Brady* obligations in this case, and continues to comply with *Brady* and with this Court's orders regarding the Government's *Brady* obligations." (Dkt. 136 at 1.) In denying Mr. Storm's request, this Court stated it was "confident that the [g]overnment is aware of its disclosure obligations under [*Brady*]" in light of the government's repeated assurances to that effect. (Dkt. 137 at 4.)

- **The Government's Disclosures in the Samourai Case**

On May 5, 2025, the defendants in the Samourai case filed a letter requesting a hearing to determine the circumstances surrounding the government's belated disclosures of *Brady* materials in that case. (*See* Ex. A.) As set forth in that letter, in response to a specific *Brady* request by the defense, the government explained that it had a call on August 23, 2023 with senior FinCEN officials, including Kevin O'Connor, Chief of the Virtual Assets and Emerging Technology Section in the Enforcement and Compliance Division, and Lorena Vale, a senior official of the Policy Division, during which the FinCEN officials expressed their views on whether Samourai would qualify as a money services business under FinCEN's regulations. (*Id.* at 3.) According to the prosecution team's email summary of the call, "[FinCEN's] view was that the FinCen guidance has generally focused on custody of cryptocurrency in the question of determining whether an entity is acting as a [money services business]." (*Id.* at 3.) The summary concluded that because the Samourai Wallet application at issue there "did not take 'custody' of the cryptocurrency by possessing the private keys to any addresses where the cryptocurrency is stored, that would strongly suggest that Samourai is NOT (emphasis in original) acting as an MSB." (*Id.*) The email summary noted the FinCEN officials "acknowledged that we could make arguments about functional control of the cryptocurrency, but that has never been addressed in the guidance, and so it could be a difficult argument for us." (*Id.*) The government filed its opposition to the defense's request for a *Brady* hearing on May 9, 2025. (*See* Ex. B.)

On May 14, 2025, Judge Berman advised defense counsel to "raise this issue in its pretrial motion which is due on May 29, 2025," noting there was no need for multiple motions. (Samourai case, ECF No. 90.) In other words, the Samourai defendants, unlike Mr. Storm, will have the opportunity to raise this issue in any pretrial motions to dismiss or to compel discovery.

- **The Government Fails to Respond to Roman Storm's Request for Relevant Information and Materials Following the Samourai Disclosures**

On May 8, 2025, the defense wrote to the government expressing its concern with the government's belated disclosures in the Samourai case and requesting "any information suggesting that Tornado Cash would not qualify as a 'money services business' under FinCEN's regulations and/or be required to be licensed as 'money transmitting business' as outlined in 18 U.S.C. §1960, including any communications with FinCEN." (Ex. C at 1.) The defense requested: (1) the disclosures made in the Samourai case; (2) the date this prosecution team learned of the information in those disclosures; and (3) any other *Brady* materials that fall under the request as articulated above. (*Id.*) On May 12, 2025, the government responded by refusing to provide substantive responses to the defense's requests. (*See* Ex. D.)

*First*, regarding the defense's request for the disclosures made in the Samourai case, the government claims that the "relevant disclosures can be found embedded in and attached to the letter filed by the defense" in the Samourai case, referencing the filing attached here as Exhibit A. (*See* Ex. D at 1.) But that letter attaches a single email that is heavily redacted. (See Ex. A at 7.) It is unclear whether the government has provided an unredacted version of that email to the defense team in the Samourai case or whether there are additional materials related to the

prosecution team's communications with FinCEN regarding their interpretation of the scope of Section 1960.

*Second,* the government did not respond to the request for information regarding when the prosecution team in this case learned of the Samourai case's prosecution team's call with the senior FinCEN officials. That call occurred "on or about August 23, 2023"—the very same day the indictment in this case was unsealed, and many months before Mr. Storm's motions to dismiss and compel discovery of FinCEN materials were filed. (*See* Ex. A at 3; Dkts. 2, 24, 29.)

*Third*, the government states that it does not have any materials relating to FinCEN that are "subject to disclosure under any rule or law." (Ex. D at 3.) But that begs the very question at issue here: What materials are exculpatory and thus subject to the obligations imposed by *Brady*? In claiming it has no responsive materials, the government takes the troubling and untenable position that the disclosures in the Samourai case "are not *Brady* material in the [Samourai] case, let alone this one." (*Id.*) That material, however, is clearly favorable to the defense as it is both exculpatory and useful for impeachment, and the government's claims to the contrary are without merit.

- **The Government Informs this Court That It Will Not Proceed Under 18 U.S.C. § 1960(b)(1)(B), But It Will Proceed Under 18 U.S.C. § 1960(b)(1)(C) and the Other Charges**

Leading up to and during the same time period when the discussions of the government's *Brady* obligations were ongoing, the defense sought dismissal by the U.S. Attorney's Office ("USAO") of all charges based on the April 7, 2025 memorandum by the Deputy Attorney General ("DAG") indicating that cryptocurrency mixer cases like this one would no longer be prosecuted.

On May 15, 2025, the USAO informed the defense in a letter that it had consulted with the Office of the DAG and it was decided that the USAO could continue to pursue this prosecution, but the government would inform this Court that it would not proceed to trial under Section 1960(b)(1)(B), the first object of the conspiracy charged in Count Two. Later that day, the government filed a letter with this Court. (*See* Dkt. 144.)

**Discussion**

- **The Disclosed Materials Constitute *Brady* Material**

Notwithstanding the government's argument that the FinCEN officials were "expressing their own opinions" and "that opinions of any kind . . . are not *Brady* material," the disclosed materials are clearly *Brady* because they are both exculpatory and useful for impeachment. (Ex. D at 2.) "*Brady* and its progeny require the [g]overnment to disclose material information that is favorable to the accused, either because it is exculpatory, or because it is impeaching." *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) (citations omitted). The government has already expressed its intent to call FinCEN employees as witnesses, and the material at issue is

useful for impeachment purposes.[7] Further, as the government's cited cases make clear, the defense is entitled to any exculpatory facts that may be contained within an opinion. *See, e.g., United States v. NYNEX Corp.*, 781 F. Supp. 19, 25-26 (D.D.C. 1991) ("The government should, and apparently already has, disclosed exculpatory facts, even if contained in internal documents otherwise protected by the work product privilege.") The government attempts to minimize the importance of the FinCEN call by characterizing the statements as "off-the-cuff opinions of two FinCEN employees" but fails to explain what the purpose of the call was and why it included such senior FinCEN officials (such as the chief of its Virtual Assets and Emerging Technology Section in the Enforcement and Compliance Division and a senior official in its Policy Division). (Ex. D at 3.) To the extent the government is questioning the reliability or weight of the exculpatory information, "it [is] the prerogative of the defendant and his counsel—and not of the prosecution—to exercise judgment in determining whether the defendant should make use of it," because "[t]o allow otherwise would be to appoint the fox as henhouse guard." *DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006).

The government next argues that even if the FinCEN communication could be considered *Brady* material in the Samourai case, it cannot be considered *Brady* here because "FinCEN staff provided those opinions in response to a fact-specific description of how Samourai Wallet operated that was provided to them by a member of the [prosecution] team" in the Samourai case. (Ex. D at 3.) The government claims that while Tornado Cash and Samourai "may share some superficial similarities, they operated quite differently." (*Id.*) Although there are indeed distinguishing features, the one crucial commonality is that both are noncustodial—that is, the users of both maintain custody over their assets at all times. The issue of custody goes to the very heart of Mr. Storm's defense against Count Two: whether custody is required under relevant FinCEN guidance for an entity to be considered a money services business and, even assuming so, whether there was sufficient notice to satisfy due process.

Importantly, the government cannot avoid its discovery obligations simply because it has now elected not to pursue the one of the two objects of the Section 1960 conspiracy charge; namely,

---

[7] On February 18, 2025, the government disclosed its intent to call a FinCEN employee to testify; in response, the defense wrote on February 28, 2025, to express its belief that the anticipated testimony "requires expert qualification." The defense's February 28, 2025 letter is attached as <u>Exhibit E</u>. Per the government, the FinCEN employee intends to testify regarding "FinCEN's regulation of money transmitters as a type of money services business" which "will include that FinCEN regulates MSBs, including money transmitters [and] that money transmitters are required to register with FinCEN and comply with certain FinCEN regulations." (Ex. E at 1.) In response, the government claimed that such testimony does not constitute an "opinion—expert or otherwise," because the FinCEN (and OFAC) witnesses "will be testifying to the basic functions of their agencies" and "[h]ow these agencies operate . . . are simply facts." (*See* government's March 10, 2025 letter, attached as <u>Exhibit F</u>, at 1, 2.) The government cannot have it both ways, arguing on the one hand that a FinCEN employee's testimony regarding his agency's "regulation of money transmitters" is a "simple fact" while on the other hand dismissing a senior FinCEN official's understanding of the scope of his agency's regulations as an "off-the-cuff opinion."

the alleged failure to register under Section 1960(b)(1)(B). The government will likely argue that the FinCEN communication was relevant (if at all) only to Tornado Cash's obligation to register and that, with the registration issue now removed from the case, it has no obligation to disclose the communication or any facts about that communication. Indeed, the government made precisely this relevance argument in the Samourai case. (*See* Ex. B at 2-3 ("The disclosure at issue is only relevant—if at all—to the first object of this Count, that is, one object of one of the two counts, namely, the failure to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code. The disclosure is irrelevant to the remainder of the charged conduct, which neither cites to nor relies on FinCEN regulations."); *see also id.* at 7.) But the FinCEN communication goes not only to the requirement to register under Section 1960(b)(1)(B) but also to whether a cryptocurrency mixing protocol that does not control the assets, such as Tornado Cash, is a "money transmitting business." Section 1960(b)(1)(C), which the government still intends to pursue against Mr. Storm, *also* requires that the defendant operate a "money transmitting business." Thus, FinCEN's view on whether Samourai (and by logical extension, Tornado Cash) is a "money transmitting business" is directly relevant to Mr. Storm's potential liability under Section 1960(b)(1)(C).

Whether Tornado Cash was a "money transmitting business" is also relevant to the money laundering conspiracy charge, Count One. First, if Tornado Cash is not a "money transmitting business," then it does not fit one of the definitions of a "financial institution" relied upon by the government. Second, the government claims that the Tornado Cash founders "took no steps to install KYC [Know-Your-Customer procedures] or implement an AML [anti-money laundering] program" into the Tornado Cash user interface. (Indictment, Dkt. 1 at 17 ¶ 37; *see also id.* at 15 ¶ 34 (founders "failed to establish an effective AML program or to engage in any KYC efforts); Gov't Opp. to MTD, Dkt. 53 at 14 ("[T]he Tornado Cash founders also did not put in place any KYC or AML features in the Tornado Cash service, despite being required to do so"); and MTD Oral Arg. Tr., Dkt. 69 at 82:15-18 ("And there will be both a general argument to the jury that the jury can come to the conclusion that the defendants had that intent from the fact that they failed to take any steps to prevent it.").) If Tornado Cash was not a money transmitting business because it lacked control, it equally undermines the government's claim that it had an obligation (or the ability) to implement KYC procedures.

Finally, the government argues that, to the extent that the materials disclosed in the Samourai case are *Brady*, Mr. Storm has suffered no prejudice from its failure to disclose this material because trial is not for another two months. (Ex. D at 3.) This ignores the prejudice that Mr. Storm has suffered in being denied the opportunity to raise this issue in support of his motions to dismiss and to compel discovery of FinCEN materials. In failing to disclose these materials, the government, at a minimum, misled this Court with regard to the scope of Section 1960 under relevant FinCEN guidance.

- **The Government's Failure to Disclose the FinCEN Officials' Communication Misled the Court in Ruling on the Motion to Dismiss**

The government also claims that, in denying the motion to dismiss, this Court purportedly recognized that "this prosecution is fully consistent with Section 1960 and its implementing

regulations, and is also fully consistent with FinCEN's published guidance regarding virtual currencies." (Ex. D at 2.) The government's own words demonstrate the significance of the FinCEN officials' communication: namely, that it undermines the government's characterization of the relevant FinCEN guidance promulgated in 2019,[8] which characterization this Court adopted in ruling on Mr. Storm's motion to dismiss.

In opposing Mr. Storm's motion to dismiss, the government argued that "the FinCEN Guidance does not suggest that control of funds is required." (Gov't Opp. to MTD, Dkt. 53 at 31 (initial caps removed).) As the government explained:

> [I]n the FinCEN Guidance, the "control" concept is listed as just one factor in a four-factor test for determining whether a wallet provider, which is a completely different type of business model than the Tornado Cash service, is a money transmitter. In a separate section of the same guidance, FinCEN describes how to evaluate whether a cryptocurrency mixing service such as Tornado Cash is a money transmitter, and that section of the guidance does not reference the concept of "control" of the funds. Thus, the suggestion by the defendant and his *amici* that "control" is a prerequisite for any money transmitting business is legally baseless, contrary to the plain text of the statute, and should accordingly be rejected.

(*Id.*; *see also id.* at 41-43.) In its ruling, this Court adopted the government's argument, noting that the 2019 FinCEN guidance "does speak of control, but it does that in the context of setting forth a four-factor test for determining whether a wallet provider is a money transmitting business," and that "[t]he section addressing cryptocurrency mixing services does not similarly require control." (MTD Order Tr., Dkt. 99 at 22:6-11.)

The communication with the FinCEN officials at issue here directly undermines the government's stated interpretation of the 2019 FinCEN guidance upon which this Court relied. Contrary to what the government argued in its opposition, the communication demonstrates that FinCEN *does* believe that control is required for a cryptocurrency mixing service to be a money transmitting business. Moreover, the government likely knew at the time it submitted its opposition that FinCEN officials had stated their view that a cryptocurrency mixing service would "NOT" (all caps in original) be a money transmitting business in the absence of control. (Ex. A at 7.) The conversation at issue happened in August 2023, just before the indictment was unsealed in this case and months before the government's opposition was filed. (*See* Dkts. 2, 53.) Yet, the government said nothing to the defense or to this Court about the FinCEN officials' contrary view of the control issue. The government's omission is troubling, to say the least.

Mr. Storm has undeniably suffered prejudice as a result of the government's omission. If the FinCEN officials' communication had been timely disclosed to the defense, Mr. Storm would

---

[8] *See* FinCEN Guidance, FIN-2019-G001, Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies (May 9, 2019).

have relied on it in his motion to dismiss and in reply to the government's opposition. Not only was it directly relevant to the defense's argument as to the insufficiency of the Section 1960 charge, it was also relevant to the argument regarding fair notice and due process. The fact that FinCEN officials believed that a noncustodial mixer would likely "NOT" be considered a money services business under the statute should, at the very least, underscore the ambiguity around that statute—and, as Mr. Storm argued in his motion to dismiss, "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." (Dkt. 30 at 64 (quoting *United States v. Banki*, 685 F.3d 99, 109 (2d Cir. 2011)).) Further, this information would have been highly pertinent in support of Mr. Storm's motion to compel discovery of FinCEN materials, as this Court appeared to credit the government's assurances about its compliance with *Brady* in denying that motion. (*See* MTD Order Tr., Dkt. 99 at 13:11-16.) Unlike Mr. Storm, the Samourai defendants will have the opportunity to raise this issue in connection with their pretrial motions. (Samourai case, Dkt. 90.) Having lost the opportunity to do so here, Mr. Storm has suffered prejudice, and this Court should not entertain the government's arguments to the contrary.

- **This Court Should Issue a Detailed *Brady* Order**

*Brady* imposes upon the government a duty to disclose information "favorable to the accused" in a timely manner and "includes not only evidence that is exculpatory . . . but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *see also United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) (stating that *Brady* material includes material that "would be an effective tool in disciplining witnesses during cross-examination"). The government's "broad duty of disclosure" under *Brady* is due, in part, to the notion that the obligation of the government in a criminal prosecution "is not that it shall win a case, but that justice shall be done." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)); *see Rodriguez*, 496 F.3d at 225 ("This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions.").

Here, the government concedes that this prosecution team had a call with FinCEN staff in August 2023 to discuss the planned charges against Mr. Storm shortly before the indictment was unsealed. (Ex. D at 3.) The government also notes that it had "limited interactions with FinCEN in which [it] verbally explained its understanding of how the Tornado Cash service worked." (*Id.* at 3 n.2; *see also* Gov't Opp. to MTD, Dkt. 53 at 110-11.) While the government claims it "did not seek—and FinCEN did not provide—any opinion about whether the Tornado Cash service would qualify as a money services business or money transmission business requiring registration with FinCEN" during the August 2023 call, the government did not address when it learned about the Samourai prosecution team's interactions with FinCEN. (*See* Ex. D. at 3; Gov't Opp. to MTD, Dkt. 53 at 111.) The government only states that "there are no materials relating to FinCEN in this case that are analogous to those produced in the Samourai Wallet case, or that are otherwise subject to disclosure under any rule or law." (Ex. D at 3.) But given the government's circumscribed understanding of its obligations under *Brady*, it should not be left to

the government to decide what communications with FinCEN regarding Tornado Cash constitute materials favorable to Mr. Storm.

The information sought is also time-sensitive and important in light of the sea change in Department of Justice's charging policy regarding cryptocurrency mixers. That new policy, announced on April 7, 2025, cautions federal prosecutors to not "regulate by prosecution," and with respect to cryptocurrency in particular, states that the Department will "no longer target … mixing and tumbling services… for the acts of their end users." That, of course, is precisely what this prosecution does. Although the prosecution insists it will go forward, its discussions with the DAG were one-sided, as the defense was not permitted a meeting with the Office of the DAG or any opportunity to respond to the prosecution's (undisclosed) arguments. The defense intends to engage in further discussions with the USAO and the Department of Justice. But those discussions will continue to be one-sided if the defense is kept in the dark about regulators' views of the key issue of whether Tornado Cash is a "money transmitting business." The defense recognizes that this Court does not play a role such discussions, but the passage of Rule 5(f) and the S.D.N.Y. Standing Order encouraging prompt disclosure of *Brady* material was done to ensure that parties could have a meaningful opportunity to engage in informed discussions well in advance of trial. Such timely and informed discussions are vital for the efficient and just administration of criminal cases.

## **Conclusion**

For the above reasons, the defense respectfully asks this Court to issue an order requiring the government to: (1) conduct a thorough *Brady* review for any information suggesting that Tornado Cash would not qualify as a "money transmitting business," including any communications with FinCEN, and promptly produce any responsive information found; (2) produce the disclosures made in the Samourai case referenced in the recent filings (as well as any other related *Brady* materials that may have been produced in discovery to the defense there); and (3) provide the date this prosecution team learned of the information in those disclosures.

/ / /

/ / /

/ / /

Mr. Storm reserves all rights, including the right to seek reconsideration of his motion to dismiss and to compel discovery of additional FinCEN materials.

Respectfully submitted,

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Nicholas Pavlis
Hecker Fink LLP

*Attorneys for Roman Storm*