# Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278

May 9, 2025

**BY CM/ECF**

The Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: ***United States v. Keonne Rodriguez and William Lonergan Hill,***
> **No. 24 Cr. 82 (RMB)**

Dear Judge Berman:

The Government writes in response to the defendants' letter regarding the Government's April 1, 2025 disclosure, which recounted a phone call between members of the prosecution team and employees of the U.S. Financial Crimes Enforcement Network ("FinCEN"). In their letter, the defendants allege that the Government provided a "late disclosure of *Brady* information," request a hearing to litigate the timing of the Government's disclosure, and seek "an appropriate remedy." For the reasons set forth below, the defendants' motion should be denied as moot. There is no basis for a hearing, nor is there anything to remedy: the disclosure itself shows that the Government has not violated *Brady.* The Government disclosed all known substantive communications between the prosecution team and FinCEN regarding Samourai Wallet months in advance of pretrial motions and trial. Indeed, the defendants will have seven months to make use of the information before trial. Nothing more is warranted. Accordingly, the defendants' request for a hearing and other unspecified relief should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendants are charged with carrying out a large-scale, multi-year money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count One). As charged in the Indictment, between 2015 and 2024, the defendants developed, marketed, and operated a cryptocurrency mixing service known as Samourai Wallet ("Samourai"), the purpose of which was to conceal Bitcoin transactions and the individuals who owned the Bitcoin, in exchange for substantial fees. (Indictment ¶¶ 1, 10, 25, 26, 27). As alleged, Samourai laundered over $100 million dollars of crime proceeds originating from, among other criminal sources: illegal darkweb markets, such as Silk Road and Hydra Market; various wire fraud and computer fraud schemes that deprived victims of funds, including a web-server intrusion, a spear phishing scheme, and schemes to defraud multiple decentralized finance protocols; and other illegal activities. (Indictment ¶¶ 1, 27, 28).

At trial, the Government will prove that the defendants specifically intended and actively encouraged and solicited criminals to conceal the proceeds of their criminal activities by using the defendants' money laundering service. The defendants' public statements and marketing materials make clear that, from inception, the defendants specifically intended Samourai to execute transactions using crime proceeds as one source of funds. For example:[1]

- Samourai's marketing materials contemplated that "Illicit Activity," "Restricted Markets," and "Dark/Grey Market Participants" would be part of Samourai's intended customer base and revenue stream. (Indictment ¶¶ 17, 20, 21).

- In July 2020, there was public reporting about a group of hackers that had used compromised Twitter accounts to defraud various victims. A Twitter user posted a message: "To the lovely hackers of @twitter today, please do yourself a favor and use @SamouraiWallet whirlpool to mix out once you are done or decide to take profits. This is to protect you from being found." Defendant Keonne Rodriguez retweeted that message and further encouraged the Twitter hackers to launder their criminal proceeds using Samourai, saying: "Feed me your tired, your dirty . . . the wretched refuse of your teeming scam." Rodriguez also later posted a message: "Never let a good crisis go to waste. #twitterhacked 20% OFF all Whirlpool CoinJoin fees until end of day Saturday."

- In January 2018, Rodriguez was asked by an associate in a WhatsApp Chat what was "mixing"—*i.e.*, what Samourai indisputably does and advertises itself as doing. Rodriguez responded: "Money laundering for bitcoin." Rodriguez's associate then responded with an emoji: "😳."

- Similarly, defendant William Lonergan Hill advertised Samourai on Dread, a dark web message board featuring discussions about darknet marketplaces. Dread contained a subforum on its website titled "Laundromat," bearing the banner of a photograph of a masked criminal washing money in a bathtub. In response to a Dread user who had asked "What are the most Op Secure methods to clean dirty BTC?", Hill responded: "Wasabi [a Samourai competitor] is dangerously broken. Avoid Wasabi at all costs . . . Samourai Whirlpool is a much better option."

In addition, the defendants are charged with conspiring to operate an unlawful money transmitting business in connection with operating Samourai, in violation of 18 U.S.C. § 371 (Count Two). Specifically, they are charged with operating an unlawful money transmitting business in two independent ways by: (1) failing to comply with money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, in violation of 18 U.S.C. § 1960(b)(1)(B); and (2) transporting and transmitting funds that they knew were derived from criminal offenses and were intended to be used to promote and support unlawful activity, in violation of 18 U.S.C. § 1960(b)(1)(C). The disclosure at issue is only relevant—if at all—to the first object of this Count, that is, one object

---

[1] All of these examples have been produced to the defendants as part of the Rule 16 discovery materials in this matter.

of one of the two counts, namely, the failure to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code. The disclosure is irrelevant to the remainder of the charged conduct, which neither cites to nor relies on FinCEN regulations.

Since the indictment was unsealed in April 2024, the Government has made approximately ten productions of Rule 16 discovery materials to the defendants, which included, among other things, law enforcement reports regarding criminal proceeds that were laundered using Samourai, search warrants, extractions from electronic devices, and identified data seized from email accounts and social media accounts pursuant to warrants, public posts on social media and other websites, cryptocurrency analysis reports, and business records. The Government has promptly responded to all of the defendants' discovery inquiries.

On March 16, 2025, the defendants sent the Government a twelve-page discovery demand letter containing over 60 requests for additional discovery materials, including "documents, communications, and data shared" between the Government and FinCEN concerning Samourai or the defendants. At the time, the Government's discovery productions to the defense were actively ongoing, as described in the Government's letter to the Court dated March 17, 2025. (ECF No. 76). On April 1, 2025, the Government provided responses to each of the defendants' discovery demands and disclosed, in response to the defendants' request for communications with FinCEN, the substance of a phone call between members of the prosecution team and two FinCEN employees on August 23, 2023, in which those FinCEN employees expressed their individual, informal, and caveated opinion regarding whether Samourai would have been required to register as a money transmitting business under FinCEN regulations. Specifically, the Government disclosed the following in its April 1, 2025, letter:

> Regarding Request A(3)(m), the Government is not aware of a legal basis for your request for "documents, communications, and data shared" between [FinCEN] concerning Samourai Wallet or the defendants. Nonetheless, the Government hereby informs you of the following: [members of the prosecution team] had a phone call with Kevin O'Connor (Chief of FinCEN's Virtual Assets and Emerging Technology Section in the Enforcement and Compliance Division) and Lorena Valente (then an employee in FinCEN's Policy Division) on or about August 23, 2023. The AUSAs generally explained to the FinCEN representatives their understanding of how Samourai operates, including Samourai's claims that it does not take "custody" of any cryptocurrency because Samourai does not possess the private keys to any addresses where the cryptocurrency is stored. The FinCEN representatives were not able to predict whether FinCEN's Policy Committee would find whether Samourai would qualify as a Money Services Business ("MSB") under FinCEN's regulations. The FinCEN representatives stated that FinCEN's guidance has generally focused on custody of cryptocurrency in the

question of determining whether an entity is acting as an MSB, and arguments about functional control of cryptocurrency have not been addressed in FinCEN's guidance. As a result, under FinCEN's guidance, a mixer like Samourai that does not take custody of the cryptocurrency by possessing the private keys would strongly suggest that Samourai is not acting as an MSB. Ultimately, the FinCEN representatives did not have a view of what FinCEN would decide if this question were presented to the FinCEN policy committee.

One month after this disclosure, on April 30, 2025, the defense requested additional information and records regarding the phone call with members of FinCEN on August 23, 2023. Promptly, two days later, on May 2, 2025, the Government responded to the defendants' request, although the Government noted that it did "not believe any supplemental disclosure [was] required," and that it was responding "in an abundance of caution and in good faith." Specifically, the Government: (1) confirmed the call participants previously identified were the only participants and witnesses to the call known to the prosecution team; (2) produced all substantive email correspondence between the prosecution team and members of FinCEN relating to the August 23, 2023 call, which consisted of a single email chain sent in preparation for the call; and (3) produced an email summary of the August 23, 2023 call, prepared by a member of the prosecution team and sent to unit supervisors immediately after the call. The email summary stated:

> Separately, we also just had a call with Kevin O'Connor (FinCen Investigator) and Lorena Valente (FinCen Policy Person) to get their take on the Samourai fact pattern. Their view was that the FinCen guidance has generally focused on custody of cryptocurrency in the question of determining whether an entity is acting as a MSB. Because Samourai does not take "custody" of the cryptocurrency by possessing the private keys to any addresses where the cryptocurrency is stored, that would strongly suggest that Samourai is NOT acting as an MSB. They acknowledged that we could make arguments about functional control of the cryptocurrency, but that has never been addressed in the guidance, and so it could be a difficult argument for us. Ultimately, they did not have a sense of what FinCen would decide if this question were presented to their FinCen policy committee.

Moreover, the Government disclosed that "the prosecution team has reviewed its files, and it has not identified any further substantive communications with FinCEN regarding Samourai Wallet. Nor is the prosecution team aware of other records summarizing the substance of the August 23, 2023 call."

## DISCUSSION

The record shows that there was no *Brady* violation in this case. The Government acted in good faith to disclose the informal, individual opinion expressed by two FinCEN employees during a phone conversation regarding whether those employees believed that Samourai needed to register as a money transmitting business under FinCEN's regulations and public guidance. As stated explicitly in both the disclosure on April 1, 2025, and in the email summary of the August 23, 2023 call produced on May 2, 2025, the individual employees of FinCEN were not speaking on behalf of FinCEN, they were not providing FinCEN's opinion, and they "did not have a sense of what FinCen would decide if this question were presented to their FinCen policy committee." Nonetheless, the Government disclosed the contents of this informal conversation to the defense in advance of pretrial motions, and approximately seven months in advance of trial in response to a request for that information. Nothing more is required.

The Government's actions demonstrate its complete commitment to meeting its disclosure obligations, beyond the strict requirements of *Brady v. Maryland*. Courts have repeatedly held that these types of legal opinions—or opinions of any kind—are not *Brady* material; facts are *Brady* material. *See United States v. Carroll*, No. 19 Cr. 545 (CM), 2020 WL 1862446, at *10 (S.D.N.Y. Apr. 14, 2020) ("The thoughts and impressions of SEC staff concerning its case and investigation are not *Brady* material. The evidence that matters is not an attorney's opinion, but the underlying facts."); *United States v. Redcorn*, 528 F.3d. 727, 744 (10th Cir. 2008) (rejecting *Brady* claim in health insurance fraud case in connection with post-trial disclosures regarding an email by a state insurance official suggesting a corporate officer and shareholder could not steal from his own company because, as a "legal opinion," it was "inadmissible and incorrect"); *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25-26 (D.D.C. 1991) (explaining that "[a] particular government attorney's opinion as to the strength or weakness of a NYNEX argument, or as to the clarity or meaning of the decree" is not material to guilt or punishment because it does not "preclude a contrary argument during litigation by the government or bind a court's ruling").[2] As the two FinCEN employees emphasized in their call with members of the prosecution team, they could not speak for how FinCEN would ultimately decide whether Samourai would be classified as a money transmitting business under 31 U.S.C. § 5330. Moreover, FinCEN published guidance, let alone the informal opinion of FinCEN employees, are not regulations or rules and have no authoritative

---

[2] *See also United States v. Thirion*, 813 F.2d 146, 156 (8th Cir. 1987) (rejecting claim of prosecutorial misconduct based on the allegation that " the government suppressed exculpatory evidence by not revealing that one of its witnesses held the opinion that [the defendant] was innocent") (citation omitted); *Rogers v. Klee*, No. 2:07-CV-11902, 2014 WL 5499112, at *8–9 (E.D. Mich. Oct. 30, 2014) (rejecting habeas claim in sexual assault case based on post-trial disclosure that victim had told the prosecution that she did not feel she had been sexually assaulted because, among other reasons, it "was the victim's own opinion on a legal issue and was neither exculpatory nor material to the question of Petitioner's guilt"); *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) ("Thus, in general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady* unless they contain underlying exculpatory facts.").

effect interpreting 18 U.S.C. § 1960 or 31 U.S.C. § 5330, particularly since the Supreme Court eliminated *Chevron* deference to agency interpretations of federal statutes. *See* FinCEN, "Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies," May 9, 2019 ("FinCEN Guidance")[3] (The FinCEN Guidance is "intended to help financial institutions comply with their existing obligations," and it "covers only certain business models and necessarily does not address every potential combination of facts and circumstances."); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (holding courts may not defer to an agency's interpretation of an ambiguous statute, overruling *Chevron* deference). As a result, the off-the-cuff legal opinions of two FinCEN employees are not *Brady* material.

Irrespective of whether the disclosed information could constitute *Brady* material, the prosecution team disclosed the information about its call with FinCEN employees approximately six weeks before the defendants' prior pretrial motions deadline, eight weeks before the defendants' current pretrial motions deadline, and seven months before trial. In other words, the defendants now have the information to make use of it with ample time in advance of pretrial motions and trial. As the Second Circuit has made clear, even in cases where exculpatory evidence exists, "[a]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (quoting *In re United States (Coppa)*, 267 F.3d 132, 144 (2d Cir. 2001)). The defendants do not even attempt to satisfy this standard. Nor could they. Indeed, the defendants cite no legal authority or other justification for Court intervention, such as a "hearing" or "appropriate remedy" to address the timing of a disclosure made seven months before trial.[4] Simply put, there is no need for court intervention when the defendants have received discovery materials sufficiently in advance of trial to effectively use the information.

The defendants claim they have been prejudiced because the disclosed information could have purportedly impacted the magistrate judge's decision regarding bail conditions or could have impacted this Court's decision to permit the defendants to move to dismiss the indictment immediately after the arraignments. This argument is wrong because the disclosure is entirely irrelevant to most of—including the core—charged conduct. As described above, the defendants are charged with willfully engaging in a serious and sophisticated money laundering scheme in

---

[3] The FinCEN Guidance is available at https://www.fincen.gov/sites/default/files/2019-05/FinCEN%20Guidance%20CVC%20FINAL%20508.pdf.

[4] The defendants indirectly seek to support their motion by citing a memorandum dated April 7, 2025, "Ending Regulation by Prosecution," by the Deputy Attorney General. The memorandum states on its face that it "is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies or entities, its officers, employees, or agents, or any other person." Accordingly, the Court should not consider this memorandum.

which they intentionally and successfully laundered over $100 million of crime proceeds of all types (which carries a statutory maximum term of imprisonment of 20 years), as well as conspiring to transmit and transport funds they knew were criminally derived. As such, whether Samourai qualifies as a money transmitting business under 31 U.S.C. § 5330 at most impacts one object of a single count, that is, the conspiracy to violate 18 U.S.C. § 1960 by failing to register under 31 U.S.C. § 5330, as charged in Count Two. Of course, Samourai's status as a money transmitting business under Title 31 is not an element of either the money laundering conspiracy charged in Count One or the transmission of criminal proceeds object in Count Two. *See United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 90, 93 (D.D.C. 2008) (holding that Section 5330 definition of "money transmitting business" only applied to portion of indictment charging violation of Section 1960(b)(1)(B)); *see also United States v. Mazza-Alaluf*, 621 F.3d 205, 210 (2d Cir. 2010) (rejecting defendant's attempt to "import[] the § 5330(d)(1)(B) definition of 'money transmitting business' into § 1960"). Thus, the disclosed information would only be relevant (if at all) in a motion to dismiss one part of one of the two counts. The driving force of the charges against the defendants is their willful participation in a scheme to commit money laundering and to profit from that criminal business. The Government's April 1, 2025 disclosure has no bearing on that core conduct. There is thus no reason to believe that the information would have been material to the bail determination—nor have the defendants moved to modify their bail conditions since receiving the disclosure over one month ago. And because the defendants have received the information with abundant time before trial—and pretrial motions—to make use of it, there is nothing to remedy, and there is no need for a hearing to litigate the timing of the disclosure, which was made swiftly in response to the defendants' requests.

      For the foregoing reasons, the Court should deny the defendants' request for an unnecessary hearing and for an unspecified "appropriate remedy."

                Respectfully submitted,

                PERRY CARBONE
                Attorney for the United States,
                Acting under Authority Conferred by
                28 U.S.C. § 515

            By:  /s/
                Andrew K. Chan
                David R. Felton
                Cecilia Vogel
                Assistant United States Attorneys
                Tel: (212) 637-1072 / 2299 / 1084

cc:  Counsel for defendants