# Exhibit D



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

Jacob K. Javits Federal Building
26 Federal Plaza, 38th Floor
New York, New York 10278

May 12, 2025

**BY EMAIL**
Brian Klein, Esq.
Keri Axel, Esq.
Kevin Casey, Esq.
Waymaker LLP
bklein@waymakerlaw.com
kaxel@waymakerlaw.com
kcasey@waymakerlaw.com

David Patton, Esq.
Hecker Fink LLP
dpatton@heckerfink.com

Re:   *United States v. Roman Storm*, No. 23 Cr. 430 (KPF)

Dear Counsel:

The Government writes in response to your letter dated May 8, 2025 regarding the Government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, your letter asks for "any information suggesting that Tornado Cash would not qualify as a 'money services business' under FinCEN's regulations and/or be required to be licensed as 'money transmitting business' as outlined in 18 U.S.C. §1960, including any communications with FinCEN." Your letter also asks for "(1) the disclosures made in [*United States v. Rodriguez*, No. 24 Cr. 82 (RMB)] that are referenced in the recent filing (as well as any other related *Brady* materials that may have been produced in discovery to the defense there); (2) the date this prosecution team learned of the information in those disclosures; and (3) any other *Brady* materials that fall under the request in the first paragraph of this letter." The relevant disclosures can be found embedded in and attached to the letter publicly filed by the defense in the *Rodriguez* case (the "*Rodriguez* Letter"). (*See Rodriguez* Dkt. 86).

For the reasons set forth below and in a recent filing in the *Rodriguez* matter, the disclosures made in *Rodriguez* with respect to certain communications between those prosecutors and FinCEN do not constitute *Brady* material in that case, much less in this one. (*See Rodriguez* Dkt. 88). The Government has consistently honored its *Brady* obligations in this case, and will continue to do so.

### **The *Rodriguez* FinCEN Disclosures Are Not *Brady* Material**

*First*, as set forth in the *Rodriguez* Letter, the individual employees of FinCEN with whom the *Rodriguez* team spoke were not speaking on behalf of FinCEN, they were not providing FinCEN's opinion, and they "did not have a sense of what FinCEN would decide if this question were presented to their FinCEN policy committee." (*Rodriguez* Letter at 3-4). At most, they were expressing their own opinions, and courts have repeatedly held that opinions of any kind—let alone informal legal opinions like those at issue here—are not *Brady* material; *facts* are *Brady* material. *See United States v. Carroll*, No. 19 Cr. 545 (CM), 2020 WL 1862446, at *10 (S.D.N.Y. Apr. 14, 2020) ("The thoughts and impressions of SEC staff concerning its case and investigation are not *Brady* material. The evidence that matters is not an attorney's opinion, but the underlying facts."); *United States v. Redcorn*, 528 F.3d. 727, 744 (10th Cir. 2008) (rejecting *Brady* claim in health insurance fraud case in connection with post-trial disclosures regarding an email by a state insurance official suggesting a corporate officer and shareholder could not steal from his own company because, as a "legal opinion," it was "inadmissible and incorrect"); *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25-26 (D.D.C. 1991) (explaining that "[a] particular government attorney's opinion as to the strength or weakness of a NYNEX argument, or as to the clarity or meaning of the decree" is not material to guilt or punishment because it does not "preclude a contrary argument during litigation by the government or bind a court's ruling").[1] As the two FinCEN employees emphasized in their call with members of the *Rodriguez* team, they could not say how FinCEN would ultimately decide whether Samourai Wallet would be classified as a money transmitting business under 31 U.S.C. § 5330. Moreover, the informal opinions of FinCEN employees have no bearing on the legal requirements of 18 U.S.C. § 1960 or 31 U.S.C. § 5330.

As the Government argued in responding to the defendant's motion to dismiss in this case, and as the District Court recognized in denying the motion to dismiss, this prosecution is fully consistent with Section 1960 and its implementing regulations, and is also fully consistent with FinCEN's published guidance regarding virtual currencies. But even if that guidance were somehow inconsistent with the language of the statute and regulations (which it is not), the guidance has no authoritative effect and itself disclaims having any. *See* FinCEN, "Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies,"

---

[1] *See also United States v. Thirion*, 813 F.2d 146, 156 (8th Cir. 1987) (rejecting claim of prosecutorial misconduct based on the allegation that " the government suppressed exculpatory evidence by not revealing that one of its witnesses held the opinion that [the defendant] was innocent") (citation omitted); *Rogers v. Klee*, No. 2:07-CV-11902, 2014 WL 5499112, at *8–9 (E.D. Mich. Oct. 30, 2014) (rejecting habeas claim in sexual assault case based on post-trial disclosure that victim had told the prosecution that she did not feel she had been sexually assaulted because, among other reasons, it "was the victim's own opinion on a legal issue and was neither exculpatory nor material to the question of Petitioner's guilt"); *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) ("Thus, in general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady* unless they contain underlying exculpatory *facts*.") (emphasis added).

May 9, 2019 at p. 1 ("FinCEN Guidance") (The FinCEN Guidance is "intended to help financial institutions comply with their existing obligations," and it "covers only certain business models and necessarily does not address every potential combination of facts and circumstances"). Accordingly, the off-the-cuff opinions of two FinCEN employees are not *Brady* material in the *Rodriguez* case, let alone this one.

*Second*, even if these informal opinions might constitute *Brady* material in the *Rodriguez* matter (which they do not), they in no way constitute *Brady* material in this matter because FinCEN staff provided those opinions in response to a fact-specific description of how Samourai Wallet operated that was provided to them by a member of the *Rodriguez* team. While Samourai Wallet and the Tornado Cash service may share some superficial similarities, they operated quite differently. So even if FinCEN's staff's informal opinions have some bearing on whether the defendants in the *Rodriguez* case had a good faith belief that Samourai Wallet did not need to register with FinCEN or implement AML controls (*see Rodriguez* Dkt. 89 at 2), it does not follow that these opinions somehow bear on your client's understanding of the need for his service to be federally registered and compliant.

Certain members of the team in this case did have a call with FinCEN staff in August 2023, shortly before this case was charged.[2] The team informed FinCEN staff about the planned charges during that call, but the team did not seek—and FinCEN staff did not provide—any opinion about whether the Tornado Cash service would qualify as a money services business or money transmission business requiring registration with FinCEN. Rather, FinCEN staff told the prosecution team that no one from the Tornado Cash team had ever come to FinCEN for guidance on this issue at any point. Thus, there are no materials relating to FinCEN in this case that are analogous to those produced in the Samourai Wallet case, or that are otherwise subject to disclosure under any rule or law.

*Third*, the defense has been on notice of the disclosures in the *Rodriguez* case at least since they were filed on May 5, 2025. At worst, therefore, you learned of this information more than two months out from trial. In other words, your client now has ample time to make effective use of this information before trial. As the Second Circuit has made clear, even in cases where exculpatory evidence exists, "[a]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (quoting *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001)); *see also United States v. Campbell*, 850 F. App'x 102, 109 n. 4 (2d Cir. 2021) (noting that district court correctly found that defendant was not prejudiced by disclosure of certain *Brady* evidence five days and two weeks before trial, "which provided sufficient time for the effective use of that information"); *United States v. Halloran*, 821 F.3d 321,

---

[2] As noted in the Government's opposition to your motion dismiss, the Government had limited interactions with FinCEN in which the Government verbally explained its understanding of how the Tornado Cash service worked. (*See Storm* Dkt. 53 at 87-88).

341-42 (2d Cir. 2016) (rejecting *Brady* violation claim based on midtrial disclosure of *Brady* evidence where defendant agreed to weeklong continuance to be able to make "effective use" of the evidence); *United States v. Espinal*, 96 F. Supp. 3d 53, 69 (S.D.N.Y. 2015) (rejecting *Brady* violation claim based on *Brady* disclosure within days of trial where trial was adjourned for several weeks as a result of late disclosure). That is not the case here.

        Very truly yours,

        JAY CLAYTON
        United States Attorney


By: /s/ _____
    Ben Arad
    Benjamin A. Gianforti
    Thane Rehn
    Assistant United States Attorneys
    (212) 637-6521
    (212) 637-2490
    (212) 637-2354

    Kevin Mosley
    Special Assistant United States Attorney