# Exhibit C

## Expert Disclosure – Stephan George
(February 18, 2025)

Stephan George is a Special Agent with Internal Revenue Service – Criminal Investigation (IRS-CI). He will be called to testify regarding the analysis and tracing of cryptocurrency and fiat currency linked to the defendant through the Tornado Cash service or other businesses owned by the defendant. His testimony will include tracing cryptocurrency and fiat currency transactions used to purchase real and personal property and transactions disbursing cryptocurrency to the defendant and other founders of the Tornado Cash service.

### A. Qualifications and Prior Testimony

Special Agent George has been a Special Agent with IRS-CI since 2016. As a Special Agent, he has received specialized training in accounting, financial tracing, and investigating crimes involving digital assets. He has used this training to investigate complex schemes involving criminal violations of the Bank Secrecy Act and anti-fraud, tax, and money laundering statutes. Many of these investigations have involved tracing traditional fiat and virtual currency transactions and analyzing blockchain data. Since November 2024, he has been assigned to the National Cyber Crimes Unit, where his investigative priorities include schemes using the Internet to commit crime, elude law enforcement, and to conceal financial transactions, including the nature, source, and ownership of assets. He has been recognized by his agency and task forces within the Department of Justice as a subject matter expert in such investigations; and he has experience investigating the misuse of smart contract protocols. Mr. George's additional qualifications, training, experience, and certifications are detailed in his curriculum vitae, which is attached to this disclosure.

### B. Anticipated Opinions

Outlined below are the opinions that Special Agent George is expected to offer as well as the bases and reasons for those opinions:

1.      Cryptocurrency transactions are generally recorded on a public ledger known as the blockchain, which is stored on the network of computers that run that particular blockchain. For example, the Ethereum blockchain is stored on the computers, or "nodes," that are part of the Ethereum network. The Ethereum blockchain records the balance held in each Ethereum address and records all ETH transactions between Ethereum addresses. This information includes the date, time, and amount of the transaction, the addresses involved in the transaction, and for ETH transactions, the gas fee charged by the Ethereum network to validate the transaction. The public nature of the Ethereum blockchain means that the movement of funds over the Ethereum blockchain can be traced across multiple addresses and multiple transactions. This testimony will be based in part on Special Agent George's training and experience in numerous cryptocurrency investigations.

2.      The Tornado Cash service combined multiple unique features to facilitate the execution of anonymous financial transactions in various cryptocurrencies for its customers and to generate profits for the Tornado Cash founders. One of these features was a proprietary token on the Ethereum blockchain known as TORN. The defendant and his co-founders created approximately 10 million TORN, each receiving approximately 800,000 TORN. There were

1

further distributions of TORN to early users of the Tornado Cash service. These early distributions of TORN came through redeemable vouchers issued by a Tornado Cash smart contract and later redeemed through a different Tornado Cash smart contract. In addition, the defendant developed, operates, and profits from a separate service called Multisender, which utilizes smart contracts to send cryptocurrency to multiple recipients in one simplified transaction. This testimony will be based in part on facts and data in the case of which Special Agent George has been made aware and on blockchain analysis and cryptocurrency tracing.

3.      The value of a cryptocurrency such as ETH can be determined by reference to the pricing data available on various public indexes. Thus, if the time and amount of a cryptocurrency transaction are known, the dollar value of that transaction can be ascertained by reference to publicly available pricing data. Special Agent George used well-regarded, commonly used public blockchain explorers and indicies, such as Etherscan.io, to determine the historical price of certain cryptocurrencies. In addition, certain custodial cryptocurrency exchanges maintain records of transactions occurring on servers controlled and maintained by the exchange. In some cases, the exchange can apply historical pricing data to transaction records that are indexed to the United States dollar or an equivalent stablecoin. Special Agent George will testify as to the market value of various cryptocurrencies at the time of the transfers included in his analysis. Special Agent George reviewed and independently verified the tracing analysis in spreadsheets capturing the data on which he relied for his analysis, which are being produced along with this disclosure.

4.      Special Agent George conducted cryptocurrency and fiat currency tracing analysis on a series of transactions leading to the purchase of three assets: real property located at 16738 SE 328th Place, Auburn, Washington 98092 (the Auburn House); real property located at 2825 204th Avenue Ct. E., Lake Tapps, Washington 98391 (the Lake Tapps House); and a 2022 Tesla Model Y automobile with the vehicle identification number 7SAYGDEF3NF553417 (the 2022 Tesla) (together the subject properties). Each asset was purchased with fiat currency withdrawn or transferred from a traditional financial institution. The fiat currency used to purchase these assets resulted from multiple exchanges and conversions of various kinds of cryptocurrency. Using the "last in, first out" (LIFO) accounting method, a widely accepted methodology for tracing flows of funds over multiple transactions for various purposes—including in the context of criminal forfeiture—Special Agent George traced the flow of funds from the purchase of the subject properties back to, among other things, cryptocurrencies derived from TORN, Tornado Cash service withdrawals, and/or funds derived from Multisender. In analyzing the fiat currency transactions, Special Agent George relied on, or reviewed title documents attached to each of the subject properties and transaction records produced by various financial institutions. For the cryptocurrency transactions, Special Agent George initially followed the movement of cryptocurrency using a commonly used, commercially available blockchain analysis tool. These tools, like those developed by companies like TRM Labs, are generally considered to be reliable in tracing cryptocurrency transactions and in identifying the individuals or entities associated with certain cryptocurrency addresses. He then verified that analysis and obtained information regarding various wallet addresses using well-regarded, commonly used public blockchain explorers and indicies, such as Etherscan.io. The materials used and reviewed by Special Agent George, including title documents, financial records and spreadsheets tracing cryptocurrency transactions, are being produced along with this disclosure. As described in more detail below, for each of the specific properties, the deposit or the funds used to purchase the asset were derived in part, often substantially so, from funds traceable to the defendant, including from TORN token

2

distributions, funds processed through the Tornado Cash service, and funds connected to the Multisender service.

5.      For example, the Auburn House was partially purchased in two transactions using fiat currency deposited into and withdrawn from a traditional financial institution in the name of the defendant. Special Agent George traced the funds composing these deposits back to various sources associated with the defendant, including early adopter TORN distributions, Multisender profits and a withdrawal from the Tornado Cash service. In all, of the nearly $375,000 traced to the purchase of the Auburn House, approximately nine percent came from funds involved in the Tornado Cash Service.

6.      The Lake Tapps House was purchased with funds deposited into a traditional financial institution in an account in the defendant's name. Special Agent George traced the funds composing the deposit used to purchase the home to multiple withdrawals from the Tornado Cash service. The ETH withdrawn from the Tornado Cash service was exchanged, in multiple transactions, to different types of cryptocurrency and then to United States dollar pegged stablecoins. The entirety of the funds was later converted to an equivalent amount of fiat currency via an account at a well-known United States based cryptocurrency exchange in the defendant's birth name, Roman Ganchenko. Approximately 75% of the funds used to purchase the Lake Tapps House were traced back to withdrawals from the Tornado Cash service.

7.      The 2022 Tesla was purchased with funds withdrawn or transferred from traditional financial institution accounts in the name of the defendant. Deposits into the traditional financial institution accounts came from an accounts at cryptocurrency exchanges, including an account at a well-known United States based cryptocurrency exchange in the defendant's birth name, Roman Ganchenko, and an account at the FTX cryptocurrency exchange in the name of Roman Storm. Based on Special Agent George's tracing, and his training and experience in investigations involving cryptocurrency, nearly 100% of the funds composing this transaction were derived from TORN distributions and profits from the Multisender service. Of the nearly $94,000 used to purchase the 2022 Tesla, approximately 23% came from TORN token distributions and approximately 77% from profits from Multisender. In addition, special Agent George traced some of the TORN token distributions used to purchase the 2022 Tesla to a cryptocurrency address that interacted with addresses associated with the purchases of the Auburn House and the Lake Tapps House.

8.      For each of the subject properties, Special Agent George reviewed title documents, cryptocurrency exchange transaction records, records from well-known, widely used, and generally reliable public cryptocurrency and blockchain tracing indicies, financial institution onboarding documents, relevant communications amongst and including the defendant and the other Tornado Cash service founders, identification documents, and facts of which Special Agent George was made aware. Special Agent George also reviewed or created charts and spreadsheets to track his analysis. These materials will be produced along with this disclosure.

9.      Special Agent George also traced transactions occurring in June and August 2022 involving the sale of TORN tokens in exchange for stablecoins pegged to the United States dollar and subsequent distributions of stablecoins to the defendant and other Tornado Cash founders.

3

These transactions were executed through an account at a well-known, widely used cryptocurrency exchange held in the name of a Russian national who was not one of the Tornado Cash founders (the Russian exchange account). On or about June 21, 2022, the defendant used the Russian exchange account to convert approximately 8200 TORN to approximately $161,000 in United States dollar pegged stablecoins. In the August 2022 transactions, the defendant deposited approximately 606,000 TORN worth approximately $11.7 million into the Russian exchange account. Shortly thereafter, approximately 586,000 TORN was converted into approximately $12.1 million in various United States dollar pegged stablecoins. Approximately $8 million of those funds were withdrawn to a cryptocurrency address ending in 0eef. On or about August 9 and 10, the defendant conducted three transactions sending, in each transaction, approximately $2.67 million in United States pegged stablecoins to one of three other addresses ending in cd78, db70, and 62de. Special Agent George based this opinion on his review of transaction records from the well-known cryptocurrency exchange, blockchain analysis using well-regarded, commonly used public blockchain explorers and indicies, such as Etherscan.io, contemporaneous communications describing these transactions, IP address records, and his training and experience in numerous financial and cryptocurrency investigations. These materials will be produced along with this disclosure.

## C. Approval and Signature

I hereby approve the disclosure of my qualifications, anticipated opinions, and bases for such opinions, as set forth above.

Stephan George

## Appendix A: Prior Expert Testimony

Special Agent George testified as a lay witness in the following trial:

December 18, 2019    *United States v. Edmonson et al.* – No. 19-CR-60086-001 (RLR) (S.D.F.L.)

Special Agent George has not previously testified at trial as an expert witness.