# Exhibit F

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

            v.                          20 CR 330 (AJN)

GHISLAINE MAXWELL,

                Defendant.              Jury Trial
------------------------------x
                                        New York, N.Y.
                                        December 9, 2021
                                        9:00 a.m.
Before:
                    HON. ALISON J. NATHAN,

                                        District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  MAURENE COMEY
     ALISON MOE
     LARA POMERANTZ
     ANDREW ROHRBACH
     Assistant United States Attorneys

HADDON MORGAN AND FOREMAN
     Attorneys for Defendant
BY:  JEFFREY S. PAGLIUCA
     LAURA A. MENNINGER
         -and-
BOBBI C. STERNHEIM
         -and-
COHEN & GRESSER
BY:  CHRISTIAN R. EVERDELL

Also Present:  Amanda Young, FBI
               Paul Byrne, NYPD
               Sunny Drescher,
                Paralegal, U.S. Attorney's Office
               Ann Lundberg,
                Paralegal, Haddon Morgan and Foreman
```

documents you'll show her have the full or real names of the other witnesses testifying under pseudonym?

MS. MENNINGER: Right, your Honor. I don't think they had any interaction with one another. I don't believe there's anything in here that references anyone else.

THE COURT: Okay.

MS. MENNINGER: Your Honor, there is a substantial amount of hearsay, both within the record and also in the public domain as between Annie Farmer and her sister Maria Farmer. I've conferred with the government that there won't be hearsay being offered from Maria Farmer, with the exception of at least one place I know where it's in effect on the listener that Annie traveled to New York because her sister told her to come there. But outside of that, we have agreed that we're not having -- there's no other hearsay exception that applies to Maria Farmer's statements.

Within that subset, your Honor, there has been a contention by Maria Farmer that nude photographs or provocative photographs were stolen from her. None were found when Mr. Epstein's home was searched. That, again, would be hearsay from Maria and is not planning to be a part of the government's case or the defense's cross.

And lastly, your Honor, because Ms. Farmer is herself a practicing therapist, psychologist, she has made a number of statements publicly about her opinions on the topic of

                    As we explained to the defense this morning, we
 anticipate calling Special Agent Michael Buscemi as a summary
 witness, as is common in this district.  His testimony will be
 limited to his analysis of exhibits; he won't be analyzing
 testimony of other witnesses.

                    There are a number of exhibits in this case which have
 not yet been published or reviewed during the course of this
 case; and so we anticipate fairly brief testimony from Special
 Agent Buscemi about his review of several exhibits.

                    In short, the testimony will concern, among other
 things, the message pads, the majority of which have not been
 published or viewed by the jury at this point.  And the purpose
 of the testimony is to connect up several exhibits and review
 them in a way to make those exhibits clear to the jury and
 publish them to show, for example, the continuity of certain
 phone numbers and names, where they change over time, where
 they are in the message books in order to make that clear for
 the jury.

                    I anticipate that the testimony from Special Agent
 Buscemi would be likely something like 15 to 20 minutes, maybe
 slightly more, again, just talking about exhibits and the
 similarity of phone numbers and names between a variety of
 different exhibits.  That's the scope of his testimony.

                    Our view is that's consistent with the way summary
 witnesses are called in many trials in this district and

1    doesn't exceed the scope of the ordinary practice.
2             THE COURT:  Let's take the specific example that
3    you've given on message pads.  So just give me an example of
4    the kind of testimony he would provide there.
5             MS. MOE:  Yes, your Honor.
6             So, for example, within the message pads, we published
7    yesterday, I think, just either two or three specific messages
8    that had a first and last name of someone and a phone number.
9    But elsewhere throughout the message pads, there appear entries
10   that only have a first name, and sometimes that entry is, for
11   example, Carolyn and sometimes it's Caroline.  But when you
12   compare the phone numbers -- and there are a variety of
13   different phone numbers throughout the book -- it becomes clear
14   that Caroline is the same Carolyn, first and last name, as some
15   of the other messages, because there's continuity between the
16   phone numbers.
17            And there are a variety of different phone numbers
18   throughout the exhibits with different names like Carolyn,
19   Caroline, and Carolyn with a last name.  And reviewing them and
20   analyzing them makes it clear throughout the books and across a
21   variety of different dates that we're talking about the same
22   person.  And so that facilitates both publishing the exhibits
23   so that the jury can see them for the first time, and doing
24   that in a way that sort of connects up those different
25   exhibits.  And so that's the purpose of that testimony.

1          THE COURT:  Let's take that example, Mr. Pagliuca.
2          MR. PAGLIUCA:  Your Honor, the problem, I think, is
3    that it is simply highlighting a specific piece of evidence;
4    that this is summation, essentially, and not witness testimony.
5    The witness has no personal knowledge of the phone calls.  The
6    witness is simply comparing this to that, which is what should
7    be done in summation or should have been done with the witness
8    who actually was the testifying witness with the exhibit.
9          So this could have been done, you know, with
10   Ms. Hesse, for example.  You have that message pad?  Yes.
11   Compare that message pad with this particular record.  Are
12   those the same phone numbers?  I suppose that could happen.
13         Or with Carolyn, could have been asked, Is that your
14   phone number?  Does that match the record?
15         This is simply an FBI agent who's going to take those
16   pieces of evidence selectively and then talk about them; this
17   matches this, this matches that.  I don't believe that's
18   appropriate under 1006, which is, you know, the rule that
19   allows for summary exhibits, for example, but does not allow
20   for summary testimony of things that have already been admitted
21   into evidence.
22         Certainly in the government's closing argument they
23   can do this and they can make whatever arguments they want.
24   But this is simply a closing argument through a summary witness
25   in the middle of a trial before a very long break, and I just

1 don't think it's appropriate under these circumstances.
2       THE COURT:  This agent, what was his role in the
3 investigation?
4       MS. MOE:  Your Honor, this agent's role was limited to
5 analyzing these records in preparation for trial.
6       Your Honor, in particular because these exhibits
7 contain identifying phone numbers and names, we feel more
8 comfortable publishing these exhibits with an agent, as opposed
9 to asking lay witnesses to review government exhibits for us in
10 order to facilitate that testimony.  Our preference is to
11 publish this with an agent to do this carefully and
12 thoughtfully so that we're able to publish the exhibits before
13 the jury without exposing any identifying information.
14       It's very streamlined testimony, your Honor.  We're
15 talking about exhibits the jury hasn't yet seen that haven't
16 been published.  It's not duplicative of anything that's
17 already happened at the trial.  And in particular, because
18 closings will be maybe as long as two weeks from now, we think
19 the jury should see these exhibits now; they have not yet been
20 published.
21       THE COURT:  That's a little bit of the problem.
22       Typically, in my experience, the summary agent witness
23 is the agent who talks about what he did in the investigation,
24 and that helps draw out complicated document comparators and
25 the like, not somebody who's just effectively doing a mini

1  closing.

2          MS. MOE:  Your Honor, we often call summary witnesses
3  who are not involved in the investigation who are just talking
4  about their analysis of records.  The purpose here isn't to
5  have the summary witness talk through the investigation or
6  investigative steps, but to talk about a review of exhibits.
7  And I have called agents to do just that.

8          THE COURT:  But for the purposes of doing what 1006
9  permits, that's not what this is.  I've seen it in two
10 contexts:  One, 1006 you've got a complicated, extensive set of
11 records that are being summarized via a witness.  And then
12 you've got investigative summary witnesses who talk through
13 factually what they did in a sense.  And you're not doing
14 either of those; you're providing essentially a closing
15 argument or mini closing argument via a witness who has no
16 personal involvement in the investigation and doing so, sounds
17 like, with materials that don't require the type of 1006
18 summary.

19         So you've created, I think, a little bit of a hybrid
20 of certainly what I've seen those two exemplars, for them to be
21 used.  And so it just does sound like argument, summation, and
22 the kind of thing that -- I mean, it's certainly true you could
23 have done it with the witnesses.  At some point I might have
24 said, Save it for summation, counsel.  But I can't say I've
25 ever seen a version like this.

1            MS. MOE:  Yes, your Honor.
2            I have in trials in this district called summary
3    witnesses who helped publish and connect up facts across
4    exhibits without creating summary charts under Rule 1006.  I
5    think this testimony --
6            THE COURT:  You're not offering him under 1006?
7            MS. MOE:  That's correct, your Honor.
8            THE COURT:  And he isn't involved in the
9    investigation.
10           MS. MOE:  That's correct, your Honor.
11           We'd just like an opportunity to publish these
12   exhibits in a way that facilitates the jury seeing them without
13   doing this through lay witnesses where there are complications
14   about reading things out loud, so that it's streamlined and
15   efficient so the jury can see the evidence that's been
16   admitted.  We think that's appropriate.
17           THE COURT:  Why not just do it in closing?
18           MS. MOE:  Your Honor, I think to rest our case and
19   have the jury not see some of the evidence in this case, our
20   preference would be --
21           THE COURT:  The one thing I've seen that it sounds
22   like you're saying is actually not with a witness, but a bunch
23   of documents come in, and then the government spends a little
24   bit of time just publishing, publish this and publish that.
25           Again, I've never seen -- never seen -- an agent, a

1  law enforcement agent, who had no involvement in the
2  investigation of the case and who isn't providing testimony
3  essentially pursuant to 1006.
4          MS. MOE:  Your Honor, if the Court's preference is for
5  us to, without a person on the stand, just ask the jury to turn
6  from one exhibit to another to another, we can do that.  I
7  think that is slightly more awkward than facilitating that
8  through a witness and pointing out the connections between two
9  things.
10          THE COURT:  Right.  But the witness is providing
11 testimony over which they have no personal knowledge.  You're
12 simply asking them to do the work of the government in the
13 closing.
14          So, Mr. Pagliuca, do you have any objection to the
15 government publishing a few documents, going to a few points,
16 and then we move on, without a witness?
17          MR. PAGLIUCA:  I don't understand that process, I
18 guess, your Honor.  We're simply going to -- is this with a
19 witness or without a witness?
20          THE COURT:  Without a witness.
21          MR. PAGLIUCA:  We're simply going to say, The
22 government would like the jury to look at this and then look at
23 that?
24          THE COURT:  Yes.
25          MR. PAGLIUCA:  I do object to that process, your

1  Honor.  This is classically what someone would do in a closing
2  argument.  You can put this in a Power Point and put up a
3  screen that shows this, and then put up a screen that shows
4  that, and then make an argument about it.
5           And if they wanted to elicit this testimony, it should
6  have been done, I believe, with a witness that then could be
7  cross-examined substantively about what was being discussed.
8           This witness, Mr. -- if I'm saying it correctly,
9  Mr. Buscemi, can't be cross-examined substantively about
10 anything; all he's going to be able to say would be, I looked
11 at this, and I looked at that, and I looked at this, I looked
12 at that, and those are the exhibits.
13          So I guess I'm a little confused about the process,
14 where one would just look at a jury and say, Look at this and
15 then look at that.  And I don't understand why that isn't, sort
16 of, impermissibly highlighting certain pieces of evidence.  And
17 then, you know, am I allowed to get up and say, Why don't you
18 look at this and why don't you look at that?  It just seems
19 rather awkward to me to be doing it in that fashion.
20          MS. MOE:  Your Honor, that's why we propose doing this
21 with a witness, to avoid any, sort of, awkwardness.  But I
22 don't understand the objection to publishing items that are in
23 evidence that the jury has not yet seen.  Again, our hope was
24 for this to be very streamlined; but I understand the Court's
25 concerns.

1    THE COURT:  Right.  It's a streamlined version of the
2    closing argument.  And again, I'm not aware -- I'm not aware --
3    certainly seen summary with investigative officers.  That's not
4    this.  And I've seen officers who are analyzing complicated
5    data under 1006 provide that to the jury.  That's not this.
6    And I've seen, when the evidence comes in, the government spend
7    a fair amount of time -- as you've done with some exhibits --
8    going through piece by piece in order to highlight and draw
9    certain connections.
10        I'm not going to let you do it through a witness who
11   has no personal experience.  I think you do it in closing.
12   That's what this is, it's closing argument.
13        MS. MOE:  Understood, your Honor.
14        THE COURT:  Okay.  What else?
15        MR. PAGLIUCA:  I think the only open issue that I'm
16   aware of, your Honor, is the Exhibit 52 issue.
17        THE COURT:  Yes.  I got the briefing at 9:45, so 15
18   minutes early finished, I appreciate it.  And I am still
19   dotting my i's and crossing my t's.  I think we don't need it
20   till the government is prepared to rest; is that right?
21        MS. COMEY:  That's correct, your Honor.
22        THE COURT:  You agree with that?
23        MR. PAGLIUCA:  Yes, your Honor.
24        THE COURT:  Anything else to take up now?
25        MR. PAGLIUCA:  Not from the defense, your Honor.