

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

June 13, 2025

Brian E. Klein
Direct (424) 652-7814
bklein@waymakerlaw.com

*Via ECF*

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:    United States v. Storm, 23 Cr. 430 (KPF)**

Dear Judge Failla:

On behalf of our client, defendant Roman Storm, we move to dismiss the Superseding Indictment. (Dkt. 109.) On May 30, 2025, the government explained that it will no longer be proceeding to trial on the first object of Count Two, 18 U.S.C. § 1960(b)(1)(B) (failure to register and comply with FinCEN regulations). (*See* Dkt. 160, 5/30/2025 Hearing Tr. at 8:5-16.) Instead, the government intends to proceed only on the second object of Count Two, 18 U.S.C. § 1960(b)(1)(C) (transmission of funds known to be criminally derived). (*Id.*) The government's change raises a host of fatal legal problems as to Count Two, which spill over to Counts One and Three, meriting dismissal of the entire Superseding Indictment with prejudice.

- **Count Two is Fatally Flawed**

Count Two has a number of fatal flaws. First, Section 1960 only applies to money transmitting businesses (as the government concedes), and Tornado Cash is indisputably not a money transmitting business. Second, as a matter of statutory construction, the second object of the Section 1960 conspiracy, subsection 1960(b)(1)(C)—now the only object being prosecuted—only applies to money transmitting businesses that are *otherwise* registered. Third, Count Two is an improper conspiracy charge.

- **The "Tornado Cash Service" Is Not a Money Transmitting Business**

It has become crystal clear based on the recent disclosure of communications between the U.S. Attorney's Office and the U.S. Treasury's Financial Crimes Enforcement Network ("FinCEN") that what the government alleges is the "Tornado Cash service" cannot be deemed a "money transmitting business" at all because it never takes custody of the funds. The defense will not repeat all the arguments it has previously made on this point; however, new developments warrant reconsideration of this Court's earlier ruling. First, the government has conceded two important points in its proposed jury instructions: (1) for Mr. Storm to be liable under subsection (b)(1)(C), the business in question must have been a "money transmitting business"; and

(2) a "money transmitting business" is defined as a business that "transfer[s] funds on behalf of the public." (*See* Gov't Requests to Charge, Dkt. 156 at 29-30.)

As this Court is aware, for at least five years, FinCEN guidance has supported the interpretation that a "money transmitting business" must take custody or control over the funds.[1] Now, it has come to light that in August 2023, FinCEN's Chief of the Virtual Assets and Emerging Technology Section in the Enforcement and Compliance Division stated that FinCEN guidance had "generally focused on custody of cryptocurrency in the question of determining whether an entity is acting as an MSB [money services business]." Because Samourai Wallet—like Tornado Cash—"did not take 'custody' of the cryptocurrency . . . that would strongly suggest that Samourai was NOT acting as an MSB." (Dkt. 148, Ex. A at 2.) Importantly, the government has admitted that, what it refers to as "the Tornado Cash service" does not take custody of the funds, just like Samourai Wallet. (Dkt. 160, 5/30/2025 Hearing Tr. at 7:18-23.)

As Mr. Storm has argued, Section 1960's statutory language makes clear that FinCEN's interpretation is correct. The word "transfer" connotes taking an action, namely to send or convey the funds from one person to another.[2] It is not possible to take such an action without taking custody of the funds being transferred. Indeed, to say otherwise is unprecedented, as there is not a single case among the 90+ publicly reported Section 1960 decisions in which someone charged with operating an unlicensed money transmitting business did not have custody of the funds. *See, e.g.*, *United States v. Velastegui,* 199 F.3d 590, 592 (2d Cir. 1999) (GMJ controlled funds when it collected money from its principals and then sent that money to third parties); *United States v. Bah*, 574 F.3d 106, 108 (2d Cir. 2009) (Bah was in control of money that he received in New York and carried to New Jersey for transmittal abroad); *United States v. Faiella,* 39 F. Supp. 3d 544, 546 (S.D.N.Y. 2014) (Faiella controlled the "cash deposits" he received from his customers and then "transferred . . . to the customers' accounts on Silk Road").

While the government argued in opposition to Mr. Storm's motion to dismiss that the definition of money transmitting business in subsection 1960(b)(2) is not coextensive with the definition of money transmitting in 31 U.S.C. § 5330(d)(1)(A), it has effectively conceded in another case that they are coextensive. *See* Gov't Proposed Jury Charge, *United States v. Rahmankulov,* No. 20 Cr. 653 (Aug. 01, 2022) (ECF No. 151 at 19 n.9) (government's proposed instructions, signed by AUSA Rehn, citing both 18 U.S.C. § 1960(b)(2) and 31 U.S.C. §§ 5330, (d)(1)(A) to define "money transmitting business").

Courts have also confirmed that the two provisions are coextensive. The definition of "money transmitting business" under the Bank Secrecy Act, which the FinCEN guidance interprets, "tracks the language of Section 1960 so closely . . . as to be virtually indistinguishable." *United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 92 n.10 (D.D.C. 2008). Indeed, "there is virtually no

---

[1] *See* FinCEN Guidance, FIN-2019-G001, Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies (May 9, 2019).
[2] *See Transfer*, Merriam-Webster Dictionary Online, available at https://www.merriam-webster.com/dictionary/transfer ("to convey from one person, place, or situation to another" or "to cause to pass from one to another").

substantive difference, nor did Congress intend there to be a substantive difference, between the terms 'money transmitting' in Section 1960 and 'money transmitting business' in Section 5330." *Id.*; *see also United States v. Murgio*, 209 F. Supp. 3d 698, 714 (S.D. N.Y. 2016) (finding that regulatory definition of "money transmitter," which is set forth at 31 C.F.R. § 1010.100(ff)(5), "is at least as broad as" the definition of "money transmitting" in Section 1960(b)(2)); *United States v. Harmon*, 474 F. Supp. 3d 76, 101-109 (D.D.C. 2020) (reviewing definitions of "money transmitting" in Section 1960(b)(2), "money transmitting business" in 31 U.S.C.A. § 5330(d)(1), and "money transmitter" in 31 C.F.R. § 1010.100(f)(5), and holding that bitcoin tumbler, as described in the indictment, satisfied the definition of "unlicensed money transmitting business" because its core business involved the receipt of bitcoin and the transmission of that bitcoin to another location or person).

Legislative history further supports that the two provisions are coextensive. Congress amended Section 1960 in 1994 to criminalize the failure to obtain a license in the same legislation where it amended Section 5330 and, *in the exact same section of the bill*, which was titled "Registration of money transmitting businesses to promote effective law enforcement." *See* Pub. L. No. 103-325, 108 Stat 2160, Section 408 (1994). Once again, in the Patriot Act, the two provisions were amended in the same bill, and FinCEN was also officially made part of Treasury. *See* Pub. L. No. 107-56, 115 Stat 272 (2001). "[S]uch proximity in time of enactment is forceful evidence that Congress intended the two statutes to stand together." *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 145 (2d Cir. 2002) (also explaining that "when two statutes are enacted on the same day, the presumption that Congress intends both statutes to stand together is even stronger and the approach is to make every effort to reconcile the statutes so as to give maximum effect to both").

Moreover, to say that someone who lacks custody of the funds can nevertheless be guilty of operating an unlicensed money transmitting business slips into an impermissible negligence theory of criminal liability and violates the Constitution's due process and fair notice protections. (Dkt. 30 at 30-34; Dkt. 58 at 18-20.) Since it is undisputed that neither Mr. Storm nor any alleged coconspirator controlled the transfer of funds, the only way he could be liable is on the theory that they *should have* done something to prevent or remedy the use of Tornado Cash by bad actors. But except for limited circumstances not present here, where Congress has expressly imposed criminal liability for mere negligence, a defendant must affirmatively act with the requisite *mens rea* to be guilty of a crime. *See Elonis v. United States,* 575 U.S. 723, 738 (2015) (Court has "long been reluctant to infer that a negligence standard was intended in criminal statutes"). This Court should conclude that even what the government alleges is the "Tornado Cash service" is not a money transmitting business within the ambit of Section 1960.

- **The Second Object, Subsection (b)(1)(C), Only Applies to Businesses That Are Registered, Which the "Tornado Cash service" Was Not**

Subsection (b)(1)(C) does not operate, like the government would have it, as a standalone prohibition on conduct related to the transfer of funds. That, of course, is precisely what the money laundering statutes address. *See* 18 U.S.C. §§ 1956, 1957. Instead, subsection (b)(1)(C) must be read together with the other two prongs of section (b)(1). The "otherwise" clause of

subsection (b)(1)(C) must be given meaning that provides some liability that is distinct from the liability created in subsections (b)(1)(A) and (b)(1)(B). Properly read, subsection (b)(1)(C) only applies to money transmitting businesses that *are* federally registered, and it is not disputed that what the government alleges is the money transmitting business, the "Tornado Cash service," was not registered. Thus, the government cannot proceed on the second object of Count Two.

Section 1960 provides in full:

> **(a)** Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.
>
> **(b)** As used in this section—
>
>> **(1)** the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
>>
>>> **(A)** is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
>>>
>>> **(B)** fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or
>>>
>>> **(C)** otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;
>>
>> **(2)** the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and
>>
>> **(3)** the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States.

The focus of Section 1960 is squarely on ensuring proper licensing and registration compliance. Its core prohibition is expressed in subsection (a), which forbids conducting an "unlicensed money transmitting business." And, as the government concedes, Section 1960 only applies to "money transmitting businesses" (*see* Gov't's Request to Charge, Dkt. 156 at 28), all of which are required to be registered with FinCEN. *See* 31 U.S.C. § 5330(a); *see also* Indictment, Dkt. 1 at ¶ 32 ("Under federal law, all money transmitting businesses, including businesses engaged in

transmission of cryptocurrencies such as ETH, are required to register with [FinCEN]."). Therefore, any money transmitting business that is not registered with FinCEN is, by definition, unlicensed under subsection (b)(1)(B).

This leads to the question of what is left for subsection (b)(1)(C). That is because, if a money transmitting business is not registered with FinCEN, then it is deemed unlicensed under subsection (b)(1)(B), and there is no need to ever inquire whether the money transmitting business is also unlicensed under subsection (b)(1)(C). The only function of subsection (b)(1)(C), then, is to apply to money transmitting businesses that *are* registered with FinCEN, but are rendered unlicensed by their transfer of criminally derived funds.

This interpretation of subsection (b)(1)(C) is supported by the canon of statutory construction that all words in a statute should be given meaning. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) (cleaned up) (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001); *see also United States v. Menasche,* 348 U.S. 528, 538-539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'") (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883)). Here, all of subsection (b)(1)(C) is surplusage if it applies to money transmitting businesses that are already deemed unlicensed under subsection (b)(1)(B).

The interpretation that subsection (b)(1)(C) must only apply to money transmitting businesses that are registered with FinCEN is further compelled by the use of the word "otherwise." The Supreme Court recently interpreted the word "otherwise" in a federal criminal statute. *See Fischer v. United States,* 603 U.S. 480 (2024) ("otherwise" obstructing official proceeding in 18 U.S.C. § 1512(c)(2) did not include conduct in storming the Capitol but was limited to document-related offenses). In *Fischer*, the Supreme Court emphasized that it was required to determine how such a "residual clause is linked to its surrounding words" and that it "must give effect, if possible, to every clause and word of the statute." *Id.* at 486 (cleaned up). The Supreme Court concluded, and the parties agreed, that the purpose of the "otherwise" clause is therefore "to cover some set of matters not specifically contemplated" by other portions of the statute. *Id.* (internal quotations omitted).

As in *Fischer,* the purpose of the "otherwise" clause in Section 1960 (b)(1)(C) is to cover matters not otherwise covered by the other subsections of the statute. Because not being registered with FinCEN is plainly covered by subsection (b)(1)(B), subsection (b)(1)(C) must cover situations where the money transmitting business *is* registered with FinCEN but *otherwise* violates the statute by being involved in transmission or transportation of known criminal funds.

By its own admission, what the government alleges is the "Tornado Cash service" was *not* registered with FinCEN. At best, then, Mr. Storm could have been charged with a violation of subsection 1960(b)(1)(B), an option that is now correctly off the table because Tornado Cash did not (as the government has also conceded) have custody or control over funds. Because the Tornado Cash service is not registered, however, Storm cannot "otherwise" be liable for transmitting or transferring tainted funds under (b)(1)(C).

As the government has now announced that it will only proceed on the object of the conspiracy to violate subsection (b)(1)(C), and that is not a possible violation of the statute, Count Two should be dismissed.[3]

- **Count Two is an Improper Conspiracy Charge**

Third, Count Two should be dismissed because it impermissibly seeks to impose conspiracy liability on Mr. Storm, when Section 1960 limits its reach to direct liability by certain specified individuals.

In *United States v. Hoskins,* the Second Circuit held that, given Congress's intent to limit the categories of persons liable under the Foreign Corrupt Practices Act to include only those who act on American soil and agents of domestic concerns, the government could not—even through a conspiracy count—charge nonresident foreign actors who never traveled to the United States during the alleged conduct. 902 F.3d 69*,* 71-72, 76-95 (2d Cir. 2018). The Second Circuit explained that the expressed intent of the statute to limit its reach to only the specified categories of persons created an exception to the general rule of conspirator liability for the conduct of others, and the court therefore affirmed the dismissal of the conspiracy charge. *Id.*; *see also United States v. Amen*, 831 F.2d 373, 381-82 (2d Cir. 1987) (continuing criminal enterprise statute, 21 U.S.C. § 848, could only be applied to drug "kingpins," not to others who aid and abet or conspire with the kingpin). Absent that limitation, the statute threatened to bring within its reach broad swaths of individuals minimally or tangentially involved in the alleged misconduct.

By analogy here, Section 1960, by its terms, limits its reach to only those individuals who "conduct, control, manage, supervise, direct or own" all or part of the alleged unlicensed money transmitting business. 18 U.S.C. § 1960(a); *see also United States v. Dimitrov,* 546 F.3d 409, 414 (7th Cir. 2008) ("§ 1960(a) requires the affirmative action of knowingly operating a money transmitting business"). Limiting the reach of the statute to those who would be expected to obtain a money transmitting license, *i.e.*, those who "conduct, control, manage, supervise, direct or own" the business, makes sense, as the focus of the statute is on those who operate a money transmitting business without a license. Opening liability under the statute to anyone who is potentially involved in some way in the business, however, threatens to bring within the statute's reach persons who are employed by or somehow tangentially connected to the business. Those persons are not the ones responsible for making sure the business is properly licensed if it were a business that is supposed to be licensed or for making sure the business complies with other requirements under the Bank Secrecy Act. Thus, just as in *Hoskins* and *Amen,* conspiracy liability does not apply to violations of Section 1960, and Mr. Storm cannot be liable, using a conspiracy theory, for a violation of Section 1960. Instead, he must *personally* be in the category of persons identified in subsection (a) and must *personally* commit the offense.

There is no allegation in the Superseding Indictment that Mr. Storm himself conducted, controlled, managed, supervised, directed, or owned what the government alleges is the

---

[3] If this Court does not dismiss Count Two, Mr. Storm will seek a supplemental jury instruction requiring the government to prove registration with FinCEN.

"Tornado Cash service." Instead, the only allegation is that he conspired with others to do so. (Dkt. 109 at ¶¶ 7-9.) Indeed, the government made clear its defective conspiracy theory in its proposed jury instructions, proposing that the jury be instructed that it must find that either the defendant *or a coconspirator* conducted, controlled, managed, supervised, directed, or owned the unlicensed money transmitting business. (Gov't's Request to Charge, Dkt. 156 at 29.) That formulation is not correct under *Hoskins*. Only a direct liability theory should have been charged, and this defect warrants dismissal of Count Two. *See Hoskins,* 902 F.3d at 97 (affirming the district court's dismissal of allegations that rested on conspiratorial liability theory).

- **Counts One and Three Should Also Be Dismissed with Prejudice**

The same fundamental flaws in the government's theory as to Count Two infect Counts One and Three as well. Among other problems, control is essential for both money laundering and IEEPA violations, just as much as it is for operating an unlicensed money transmitting business. (*See* Dkt. 112 at 6-13; Dkt. 154 at 20 n.21, 42-43; Executive Order 13722, § 2(a); 31 C.F.R. § 510.201(a)(3).) As the Fifth Circuit held in *Van Loon,* the lack of control over the smart contracts rendered civil sanctions invalid. *See Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 565 (5th Cir. 2024). If civil sanctions cannot be imposed on Tornado Cash, then certainly criminal liability cannot be imposed on Mr. Storm.

*** 

For all these reasons and those laid out in the prior motions to dismiss briefing and argument in support, this Court should dismiss the Superseding Indictment with prejudice.

Respectfully submitted,

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Nicholas Pavlis
Hecker Fink LLP

*Attorneys for Roman Storm*