## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> ROMAN STORM, <br><br> *Defendant*. | 1:23-cr-00430-KPF <br><br> Hon. Katherine Polk Failla |

## BRIEF FOR *AMICUS CURIAE* PARADIGM OPERATIONS LP IN SUPPORT OF DEFENDANT

Celeste L.M. Koeleveld
Benjamin Peacock
William Lanier
CLIFFORD CHANCE US LLP
375 Ninth Avenue
New York, NY 10001
(212) 878-3051
celeste.koeleveld@cliffordchance.com
benjamin.peacock@cliffordchance.com
william.lanier@cliffordchance.com

Dated: June 13, 2025

## CORPORATE DISCLOSURE STATEMENT

Paradigm Operations LP ("Paradigm"), by its attorneys and pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, discloses the following information.  Paradigm has no parent corporation.  No publicly held corporation owns 10% or more of Paradigm's stock. Paradigm reserves the right to supplement this disclosure statement.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ......................................................ii

TABLE OF CONTENTS................................................................... iii

TABLE OF AUTHORITIES .............................................................iv

INTEREST OF AMICUS CURIAE ................................................vii

INTRODUCTION ....................................................................1

ARGUMENT  ........................................................................3

I.   The Jury Must Be Appropriately Charged on the Three Mens Rea
     Requirements Applicable to the § 1960 Conspiracy Charge..........................3

II.  Adoption of Storm's Proposed Jury Instructions on Mens Reas for the §
     1960 Conspiracy Charge is Critical to Avoid Criminalizing Innocent
     Conduct ........................................................................6

     A. The Jury Must Be Correctly Instructed on What Storm Must Have
        Understood Regarding What Constitutes "Money Transmitting" and a
        "Money Transmitting Business"......................................... 7

     B. The Jury Must Be Correctly Instructed that They Cannot Convict Unless
        Storm Knew the Specific Funds Transmitted Were Derived from
        Criminal Activity ................................................... 13

     C. The Jury Must Be Correctly Instructed that It Cannot Convict Unless
        Storm "Unlawfully, Willfully and Knowingly" Joined the Conspiracy. 16

CONCLUSION ...................................................................18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bryan v. United States*,
  524 U.S. 184 (1998) ........................................................................3

*Commodity Futures Trading Comm'n v. Ooki DAO*,
  No. 3:22-cv-5416-WHO,
  2023 WL 5321527 (N.D. Cal. June 8, 2023) ......................................... vii, viii

*Crypto Freedom All. of Tex. & Blockchain Ass'n v. Sec. & Exch. Comm'n*,
  No. 4:24-cv-00361-O, 2024 WL 4858590 (N.D. Tex. Nov. 21, 2024) ......... vii

*Elonis v. United State*s,
  575 U.S. 723 (2015) ........................................................................5

*Levine v. United States*,
  383 U.S. 265 (1966) ........................................................................15

*Rehaif v. United States*,
  588 U.S. 225 (2019) .................................................................5, 10, 13

*Ruan v. United States*,
  597 U.S. 450 (2022) ......................................................................5, 6

*Staples v. United States*,
  511 U.S. 600 (1994) ........................................................................3

*United States v. Ajayi*,
  64 F.4th 243 (5th Cir. 2023) ..............................................................6

*United States v. Ali, et al.*,
  No. 06-CR-200 (ENV),
  2008 WL 4773422 (E.D.N.Y. Oct. 27, 2008).....................................4, 12, 13

*United States v. Bah*,
  No. S1 06 CRIM. 0243 LAK,
  2007 WL 1032260 (S.D.N.Y. Mar. 30, 2007) ....................................4

*United States v. Bah*,
  574 F.3d 106 (2d Cir. 2009) .............................................................8

Page(s)

*United States v. Balint,*
258 U.S. 250 (1922) ...................................................................................3

*United States v. Banki,*
685 F.3d 99 (2d Cir. 2012) ..................................................................11, 12

*United States v. Budovsky,*
No. 13cr368 (DLC), 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015) ................3

*United States v. E-Gold, Ltd.,*
550 F. Supp. 2d 82 (D.D.C. 2008) ........................................................8, 12

*United States v. Elfgeeh,*
515 F.3d 100 (2d Cir. 2008) .......................................................................4

*United States v. Faiella,*
39 F. Supp. 3d 544 (S.D.N.Y. 2014) ...........................................................8

*United States v. Hoskins,*
902 F.3d 69 (2d Cir. 2018) ........................................................................1

*United States v. Liparota,*
471 U.S. 419 (1985) .............................................................................5, 10

*United States v. Singh,*
995 F.3d 1069 (9th Cir. 2021) ..................................................................12

*United States v. Velastegui,*
199 F.3d 590 (2d Cir. 1999) .......................................................8, 11, 12, 13

*United States v. Wellington and Shrock,*
Case No. 1:21-cr-00853-WJ,
2022 WL 3345759 (D.N.M. Aug. 12, 2022) ................................................12

*United States v. X-Citement Video, Inc.,*
513 U.S. 64 (1994) ...................................................................................5

*Van Loon v. Dep't of Treasury,*
688 F. Supp. 3d 454 (W.D. Tex. 2023) ..................................................... viii

## Statutes

18 U.S.C. § 371 .........................................................................................4

Page(s)

18 U.S.C. § 922(g) ...........................................................................10

18 U.S.C. § 1960........................................................................ Passim

31 U.S.C. § 5330 ...............................................................................8

**Rules and Regulations**

Fed. R. Civ. P. 7.1 ............................................................................ ii

**Other Authorities**

Black's Law Dictionary (7th ed.1999) ..............................................12

Black's Law Dictionary (12th ed. 2024) .............................................7

Merriam–Webster's Collegiate Dictionary 1067 (10th ed. 2000)......................12

## <u>INTEREST OF AMICUS CURIAE</u>[1]

Paradigm Operations LP ("Paradigm") is a U.S.-based investment firm that backs entrepreneurs building innovative crypto companies and protocols, including projects that advance the utility and adoption of decentralized platforms. Paradigm believes this criminal prosecution—particularly the 18 U.S.C. § 1960 charge—rests on a definition of "money transmitting business" that is contrary to how money transmission works in practice and to prior regulatory guidance and legal precedent. Allowing this definition to prevail will harm software developers who have relied in good faith on past guidance and chill innovation in the industry. Simply put, the prosecution of Roman Storm stretches the reach of § 1960 far beyond the money transmitting businesses it was designed to regulate, threatening innovators like Storm with criminal liability for developing and deploying technology that is not inherently criminal and that does not promote, condone, or control criminal conduct.

Paradigm has submitted amicus curiae briefs in matters involving crypto regulation, including issues related to custody, privacy software, and decentralized finance.[2] Paradigm hopes to assist the Court in understanding the

---

[1] No party's counsel authored this brief, in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person other than amicus curiae or its counsel contributed money that was intended to fund preparing or submitting this brief.

[2] *See* Br. for Blockchain Ass'n & Crypto Freedom All. of Tex. as *Amicus Curiae* Supporting Pls., *Crypto Freedom All. of Tex. & Blockchain Ass'n v. Sec. & Exch. Comm'n*, No. 4:24-cv-00361-O, 2024 WL 4858590 (N.D. Tex. Nov. 21, 2024) (explaining negative impact the SEC's proposed dealer rule would have on decentralized finance); Br. for Ooki DAO as

industry's reliance on past regulator guidance on money transmission, the impact of expanding the definition of money transmission, and the critical need to cabin § 1960's reach to true money transmitting businesses.  Otherwise, § 1960 will be deployed unfairly against unsuspecting and innocent actors who produce or maintain decentralized software tools.

---

*Amicus Curiae* Supporting Def., *Commodity Futures Trading Comm'n v. Ooki DAO*, No. 3:22-cv-5416-WHO, 2023 WL 5321527 (N.D. Cal. June 8, 2023) (explaining governance mechanisms for decentralized protocols and impact of expanding liability to unsuspecting technology users); Br. for Van Loon, *et al*. as *Amicus Curiae* in Support of Pls., *Van Loon v. Dep't of Treasury*, 688 F. Supp. 3d 454 (W.D. Tex. 2023), *rev'd and remanded sub nom. Van Loon v. Dep't of Treasury*, 122 F.4th 549 (5th Cir. 2024) (arguing OFAC exceeded its authority in sanctioning Tornado Cash and explaining impact of sanctioning open-source code).

# INTRODUCTION

The charge against Roman Storm for violating 18 U.S.C. § 1960[3] sent shockwaves through the crypto and software development industries. In support of the prosecution, SDNY has argued that the mere creation of software enabling peer-to-peer cryptocurrency transactions constitutes "money transmitting," and that § 1960 does not require "control" of the funds being transferred. *See* Opp. to Mot. to Dismiss, ECF No. 53 at 24. Both arguments are contrary to long-standing guidance issued by FinCEN on what constitutes a money transmitting business.[4] This guidance has been relied upon in good faith by the industry and has been cited widely by legal counsel endeavoring to educate clients on money transmission compliance requirements.[5] Subjecting a software developer to

---

[3] In fact, Storm is charged with conspiring to violate 18 U.S.C. § 1960, but liability under § 1960 is specifically limited to those who "conduct[], control[], manage[], supervise[], direct[], or own[]" an unlicensed money transmitting business, *see* 18 U.S.C. § 1960(a), the very people who would be expected to obtain a license if one were required and thus the focus of the statute. Accordingly, accessorial liability is not available under § 1960. *Cf. United States v. Hoskins*, 902 F.3d 69, 71-72, 76-95 (2d Cir. 2018) (limiting categories of persons liable under Foreign Corrupt Practices Act to categories specifically listed in statute). *See also* Def. Req. to Charge, ECF No. 154 at 36, n.71.

[4] *See* FinCEN Guidance, FIN-2019-G001, *Application of FinCEN's Reguls. to Certain Bus. Models Involving Convertible Virtual Currencies* (May 9, 2019) ("2019 FinCEN Guidance")*,* at § 1.1 (highlighting that a developer or seller of a software application may be exempt from BSA obligations if they are not engaged in the business of accepting and transmitting currency, funds, or value that substitutes for currency); § 4.2.1 (explaining that unhosted wallets, where users control the funds themselves, do not involve money transmission by the software provider; § 4.5.1(b) (stating that providers of software used to anonymize transactions are not considered money transmitters because they are providing tools, not engaging in the transmission of funds themselves).

[5] *See, e.g.*, Satish M. Kini, *et al*, *Applying the Bank Secrecy Act Framework to Convertible Virtual Currency*, Debevoise & Plimpton LLP (May 28, 2019), https://www.debevoise.com/insights/publications/2019/05/applying-the-bank-secrecy-act-framework; Mark. W. Rasmussen, *et al*, *FinCEN Consolidates Guidance on Virtual Currencies*, Jones Day (June 2019), https://www.jonesday.com/-/media/files/publications/

1

criminal liability under § 1960 for others' independent actions, when the software developers had no control over any funds and their only "operation" was creating immutable open-source code, would be as absurd as prosecuting a television manufacturer for state secrets being divulged on-air, leather craftsmen for wallets holding stolen cash, or Apple for conspiracies formed through iPhone conversations.

However, given that the Court has declined to dismiss the § 1960 charge, the Court must at least appropriately cabin the *mens rea* instructions to confine § 1960's reach to persons who fully understand what it means, as a factual matter, to operate a money transmitting business. The jury must be required to find beyond a reasonable doubt that Storm *knowingly* operated a recurring, fee-charging, money-transmitting business, *knowingly* transmitted funds on behalf of the public, and *knowingly* handled the specific proceeds alleged to be criminal.

With regard to *knowingly* operating a money-transmitting business, the jury must also be charged that Storm must *knowingly* have had custody or control of the funds being transmitted or transferred and *knowledge* of the fee being charged. If the Court concludes, contrary to Storm's arguments, that neither

---

2019/06/fincen-consolidates-guidance/fincen.pdf; Jeremy B. Zucker, *et al*, *Treasury Dep't Affirms Regime for Virtual Currencies*, Dechert LLP (May 21, 2019), https://info.dechert.com/10/12383/may-2019/financial-crimes-enforcement-network--treasury-department-affirm-regulatory-regime-for-convertible-virtual-currencies(1).asp?sid=421d2537-a7d3-42c0-8134-44e743fbcf05; Mike Nonaka, *et al, FinCEN Issues Guidance to Synthesize Regul. Framework*, Covington & Burling LLP (Nov. 2019), https://www.cov.com/-/media/files/corporate/publications/2019/11/fincen-issues-guidance-to-synthesize-regulatory-framework-for-virtual-currency.pdf.

custody and control nor a fee is required, the jury must then be charged that it must find that Storm *knew* he was operating a money transmitting business *even though that business did not have custody or control of the funds being transferred via the Tornado Cash protocol, and even though that business did not charge a fee for a funds transfer*.  Absent proof of that precise, subjective knowledge, Storm cannot be said to have *knowingly* operated a money transmitting business in violation of 18 U.S.C. § 1960.

## ARGUMENT

### I.   The Jury Must Be Appropriately Charged on the Three Mens Rea Requirements Applicable to the § 1960 Conspiracy Charge

The "general rule" in criminal prosecutions is that a guilty or blameworthy mind is "a necessary element in the indictment and proof of every crime," *United States v. Balint*, 258 U.S. 250, 251 (1922).  This mens rea requirement serves to "shield people against punishment for apparently innocent activity."  *Staples v. United States*, 511 U.S. 600, 622 (1994) (Ginsburg, J., concurring).  Especially in the context of a "complex" statute like 18 U.S.C. § 1960, which includes "somewhat peculiar terms" that create "glaring problems of interpretation," improper application of the mens rea requirement risks ensnaring individuals engaged in conduct they reasonably believe to be lawful.  *See Bryan v. United States*, 524 U.S. 184, 194 (1998) (willfulness requirement ensures that innocent behavior does not result in criminal conviction); *United States v. Budovsky*, 2015 WL 5602853, at *6 (S.D.N.Y. Sept. 23, 2015) (describing § 1960 as "complex");

*United States v. Bah*, 2007 WL 1032260, at \*1 (S.D.N.Y. Mar. 30, 2007) (describing § 1960 as setting forth "somewhat peculiar terms"); *United States v. Ali*, 2008 WL 4773422, at \*12 (E.D.N.Y. Oct. 27, 2008) (noting "glaring problems of interpretation" under § 1960).

Here, the money transmitting conspiracy charge against Storm has three mens rea requirements, the first two under 18 U.S.C. § 1960 (subsections (a) and (b)(1)(C)), and the third under 18 U.S.C. § 371. Before turning to Storm's requests to charge and why the Court should adopt them, we discuss general principles applicable to these three mens rea requirements.

*First*, a defendant cannot be convicted under § 1960 absent proof of knowledge of each element that makes the defendant's conduct criminal. Section 1960(a) punishes anyone who "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business." Here, "knowingly" applies not only to the series of the verbs that follows it ("conducts, controls, manages, supervises, directs, or owns," collectively referred to in this brief as "operates"), but also to "unlicensed" and "money transmitting business." *See United States v. Elfgeeh*, 515 F.3d 100, 133 (2d Cir. 2008) (Section 1960 requires proof that "defendant knew that the business was engaged in money-transmitting and also knew that the business" was unlicensed). In other words, Storm must have known that he was operating a business, and that the business was unlicensed and engaged in money transmission.

Not extending "knowingly" to each element poses an unacceptable risk of "criminaliz[ing] a broad range of apparently innocent conduct" and sweeping in "individuals who had no knowledge of the facts that made their conduct blameworthy." *Elonis v. United States*, 575 U.S. 723, 735 (2015) (citing *United States v. Liparota*, 471 U.S. 419, 426 (1985)). Thus, unless Congress plainly dispenses with knowledge, "knowingly" must attach to every element that criminalizes otherwise innocent conduct. *See Rehaif v. United States*, 588 U.S. 225, 228 (2019) (presuming that "criminal statutes require the degree of knowledge sufficient to hold someone responsible for their actions"); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct.").

*Second*, when statutory regulations and industry standards are at issue, the requisite "knowledge" is the defendant's subjective knowledge and good faith belief, not what an objective observer might have known or believed. *Ruan v. United States*, 597 U.S. 450, 457-458 (2022). In *Ruan*, for example, the Court considered a statute that criminalized dispensing a controlled substance "except as authorized." *Id.* at 457. The Court determined that, to be convicted, the defendant must have known that he "was acting in an unauthorized manner, or intended to do so." *Id.* at 454. The issue was not whether the defendant's behavior accorded with objective professional standards or objectively reasonable good-faith efforts; rather, the Court found, the defendant's personal

understanding of what was authorized by law controlled. *Id*. at 465; *see also United States v. Ajayi,* 64 F.4th 243, 247 (5th Cir. 2023) ("[f]illing an objectively illegitimate prescription is not a sufficient condition to convict" under § 841(a); rather, "the defendant must subjectively understand the illegitimate nature of the distribution they facilitate").

By analogy here, it is Storm's subjective knowledge of whether Tornado Cash was an "unlicensed money transmitting business" that determines whether he can be convicted for violating § 1960.

## II.    Adoption of Storm's Proposed Jury Instructions on Mens Reas for the § 1960 Conspiracy Charge is Critical to Avoid Criminalizing Innocent Conduct

Storm's proposed requests to charge correctly reflect the mens rea requirements of a conspiracy to violate 18 U.S.C. § 1960(a) and (b)(1)(C). However, to the extent that the Court declines to instruct the jury that control of funds and payment of a fee is required for money transmitting, the Court must at least instruct the jury that, to convict, it must find that Storm *knew* that Tornado Cash was a money transmitting business *even though* it did not (i) control funds and (ii) receive a fee.

### A. The Jury Must Be Correctly Instructed on What Storm Must Have Understood Regarding What Constitutes "Money Transmitting" and a "Money Transmitting Business"

As Storm has requested, the jury must be charged that the object of the conspiracy was to "knowingly" operate an "unlicensed" "money transmitting" "business."[6]  To meet this "knowledge" requirement, the Court must instruct the jury on what specifically Storm needs to have understood to "know" whether the alleged business was a money transmitting business.  This requires the Court to define "money transmitting" and "money transmitting business" for the jury.

### 1.  "Money Transmitting"

By its plain terms, § 1960 applies to those who "transfer" money "on behalf of the public," 18 U.S.C. § 1960(b)(2), meaning those who accept custody and control over funds from one source and pass them along to a recipient.  The ordinary meaning of "transmit" and "transfer" requires the actor to have possession or control over the thing it transmits or transfers.  To "transfer" something, one must "convey," "pass or hand over," or "dispos[e] of" it. *Transfer*, Black's Law Dictionary (12th ed. 2024); *see also Transmit* ("send or transfer").  And logic dictates that one cannot convey, hand over, or dispose of something without having possession or control over it.

---

[6]     Knowledge that the business be "unlicensed" is addressed below in connection with the discussion of the mens rea requirement in § 1960(b)(1)(C).

Indeed, that is exactly how federal courts have consistently understood the meaning of "money transmitting" in the context of § 1960.  *See, e.g.*, *United States v. Velastegui,* 199 F.3d 590, 592 (2d Cir. 1999) (GMJ controlled funds when it "collected" money from its principals and then sent that money "to third parties"); *United States v. Bah*, 574 F.3d 106, 108 (2d Cir. 2009) (Bah was in control of money that he received in New York and carried to New Jersey for transmittal abroad); *United States v. Faiella,* 39 F. Supp. 3d 544, 546 (S.D.N.Y. 2014) (Faiella controlled the "cash deposits" he received from his customers and then "transferred . . . to the customers' accounts on Silk Road").

Similarly, under FinCEN's implementing regulations and guidance, only those "having total independent control over the value" fall within the definition of a money transmitter, whereas purely anonymizing-software providers "do not have total independent control over the value" and thus are not money transmitters.  *See* 2019 FinCEN Guidance § 4.5.1(a), (b).[7]  Accordingly, FinCEN's Guidance repeatedly reiterates that a license is required only for

---

[7]    FinCEN's guidance has not become irrelevant now that the government is no longer proceeding under 18 U.S.C. § 1960(b)(1)(B), with its reference to 31 U.S.C. § 5330.  Storm is still charged with operating an unlicensed money transmitting business, and the definition of "money transmitting business" under the Bank Secrecy Act, which the FinCEN guidance interprets, "tracks the language of Section 1960 so closely . . . as to be virtually indistinguishable." *United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 92 n.10 (D.D.C. 2008).  Indeed, "there is virtually no substantive difference, nor did Congress intend there to be a substantive difference, between the terms 'money transmitting' in Section 1960 and 'money transmitting business' in Section 5330." Id.  Under the circumstances, the crypto and software development industry would logically perceive FinCEN's guidance interpreting "money transmitting business" for purposes of the Bank Secrecy Act as providing authoritative guidance for what "money transmitting" means under Section 1960.  Good faith reliance on that guidance cannot be squared with criminal intent.

cryptocurrency businesses "*receiving* one form of value … *and transmitting* [it] to another person or location." *Id.* § 2 (emphases added).[8]

The jury should therefore be instructed that Storm can only have "knowingly" operated a money transmitting business if he "knowingly" had "control" over the funds being transmitted.

Conversely, if the Court maintains its (incorrect) position that control over the funds is not required under § 1960, the Court should at least instruct the jury that Storm has to have known that control was not required and that he was operating a money transmitting business even though he did not have control over the funds. In this regard, it would not be enough for the government to merely show that Storm was in fact operating a money transmitting business. Storm must have *knowingly* operated a money transmitting business, meaning he must have known he could be operating a money transmitting business despite the fact that the business lacked control over the funds being transmitted.

Notably, this is not the type of fact where the maxim "ignorance of the law is no excuse" would apply. That maxim does not apply "where a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,'

---

[8]    *See, e.g.*, FinCEN Guidance § 3 (license is required for "[p]ersons accepting and transmitting [cryptocurrency]"); *id.* § 4.2.1 (license is required for hosted wallet providers that "receive, store, and transmit [cryptocurrency] on behalf of their accountholders"); *id.* § 4.3 (license is required for electronic terminals that "accept currency from a customer and transmit the equivalent value"); *id.* § 4.4 (license is required for decentralized applications that "accept and transmit value"); *id.* § 4.5.1 (license is required for anonymizing services that "accept [cryptocurrencies] and retransmit them").

thereby negating an element of the offense." *Rehaif*, 588 U.S. at 234.  In *Rehaif*, the Court considered whether a felon or a person "illegally or unlawfully in the United States" who is charged with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g) must be aware not only that he possessed a firearm but also that he belonged to a category of persons (felons or "aliens") prohibited from possessing firearms.  *Id.* at 233-35.

To answer that question, the Court analogized to *Liparota v. United States*, where the Court required the government to prove that a defendant charged with unauthorized use of food stamps knew not only that he used food stamps, but that "his use of food stamps was unlawful—even though that was a question of law." *Rehaif*, 588 U.S. at 234.  *Liparota* was similar, in the Court's view, because the defendant's status in *Rehaif* as a member of a prohibited category, like the defendant's unauthorized use of food stamps in *Liparota*, "refers to a legal matter, but this legal matter is what commentators refer to as a 'collateral' question of law." *Id.* at 235.  Rejecting the government's reliance on "ignorance of the law is no excuse," the Court explained that the maxim does not apply "where a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense." *Id.* at 234.  The Court concluded that a "defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require." *Id.* at 235.

Here, the necessity of control of funds (or lack thereof) is a "legal matter" to which the maxim "ignorance of the law is no excuse" does not apply" because a defendant, like Storm, who "has a mistaken impression" about the "legal effect" of control of funds is making a mistake "concerning the legal effect of some collateral matter and that mistake results in his misunderstanding of the full significance of his conduct, thereby negating an element of the offense," namely, Storm's knowledge that he was operating a money transmitting business.

Accordingly, the jury should be charged—if the Court maintains its position that control of funds is in fact not required for a business to be engaged in money transmitting—that Storm *must have known* that control of funds was not required.

### 2. "Money Transmitting Business"

The jury must find not only a conspiracy to transmit money, but also that there was a business in the first place. To meet that requirement, the Court must instruct the jury that a "money transmitting business" is (i) a commercial money transmitting enterprise that (ii) performs multiple transmissions of money (iii) in exchange for a fee and that Storm had the requisite knowledge of each of those elements.

A money transmitting business is plainly a commercial enterprise engaged in more than single, isolated money transmission. *See United States v. Banki*, 685 F.3d 99, 114 (2d Cir. 2012) (citing *Velastegui*, 199 F.3d at 595 n.4).

As to the fee requirement, the Second Circuit has defined a money transmitter as one who "receives money from a customer and then, *for a fee paid by the customer*, transmits that money to a recipient." *Velastegui*, 199 F.3d at 592 (emphasis added).  Building on that definition, other courts have recognized that customers must pay a fee in connection with the money transmitting service for there to be a "business."  *See United States v. Singh*, 995 F.3d 1069, 1077 (9th Cir. 2021) (adopting Second Circuit definition in *Velastegui*); *Banki*, 685 F.3d at 114 ("[U]nder § 1960 a 'business' is an enterprise that is carried on for profit or financial gain.") (citing Merriam–Webster's Collegiate Dictionary 1067 (10th ed. 2000) (defining "business" as "a commercial or sometimes an industrial enterprise")); *United States v. Wellington*, 2022 WL 3345759 at *8 (D.N.M. Aug. 12, 2022) ("[R]eceipt of a fee is a fact required to prove a business under this statute.").  Courts see the requirement of a fee as "comport[ing] with the commonsense definition of a business."  *See Ali*, 2008 WL 4773422 at *13 (citing Black's Law Dictionary (7th ed.1999)); *accord Wellington*, 2022 WL 3345759 at *8 ("Nevertheless, the term 'business' is self-explanatory. . . . It does require the receipt of a fee, but this goes without saying because businesses are, by nature, enterprises carried out for financial gain.") (citing *United States v. E-Gold*, 550 F. Supp. 2d at 88); *Ali*, 2008 WL 4773422 at *13 (absent evidence of commission paid by transmitter to payer, money transmitting license not required).

The Court should accordingly adopt Storm's request to charge the jury that a business is not a money transmitting business unless it transmits money for a

fee.  However, if the Court maintains its position—contrary to *Velastegui* and the many cases adhering to that decision—that no fee is required, the Court should instruct the jury that Storm *must have known* that no fee was required.  In other words, the jury must be charged that if Storm was unaware that a business could be a money transmitting business even if it did not charge a fee for that service, he did not have the requisite knowledge and must be acquitted.  Once again, the maxim "ignorance of the law is no excuse" does not apply here.  Storm's lack of knowledge of the no-fee requirement is a mistake "concerning the legal effect of some collateral matter and that mistake results in his misunderstanding of the full significance of his conduct, thereby negating an element of the offense."  *See Rehaif,* 588 U.S. at 234 (citation omitted).

### B. The Jury Must Be Correctly Instructed that They Cannot Convict Unless Storm Knew the Specific Funds Transmitted Were Derived from Criminal Activity

For Storm to be guilty, the alleged money transmitting business must have involved the transmission of funds that were "known to the defendant to have been derived from a criminal offense" or "are intended to be used to promote or support unlawful activity."  18 U.S.C. § 1960(b)(1)(C).  In other words, the statute requires Storm to have known not only that Tornado Cash was a money transmitting business but also to have known that the specific funds that were transmitted were derived from or intended for criminal activity.

As Storm has argued, knowledge in this context cannot be equated with negligence.  *See* Def. Req. to Charge, ECF No. 154 at 37.  The jury must therefore

be instructed that it is not sufficient for a defendant to have developed a software protocol that could in the future be put to both malign and benign uses. Merely foreseeing that a product in development could be abused is not the same as conspiring with malicious actors to develop a protocol knowing and intending that it will be misused. Researchers who develop a life-saving drug are surely not criminally liable for conspiring with unknown, unidentified, and unidentifiable drug dealers who later market or sell the drugs illegally. This is because research and development at "time one" is separate from use and potential abuse at "time two," and the persons involved in the former are not conspiring with those involved in the latter. To think otherwise is simply not a coherent philosophy, whether applied to real-world products or lines of code.

Closely related to this temporal separation concept is the requirement that a defendant be aware of and involved in, in real time, a specific transmission of tainted funds. Again, it is not enough that the defendant can foresee that a transaction of tainted funds may occur someday using a software protocol that the defendant has developed. Nor is it enough for the defendant to become aware after the fact that a transaction of tainted funds occurred in the past, without the defendant's knowledge or involvement. Rather, the defendant must be aware of specific illegal transactions as they occur.

This concept is required under conspiracy law. A person who joins a narcotics trafficking conspiracy with knowledge of drug quantities that the conspiracy has distributed in the past does not become responsible or liable for

14

those past drug distributions. *See, e.g. Levine v. United States*, 383 U.S. 265, 266 (1966) ("[a]n individual cannot be held criminally liable for substantive offenses committed by members of the conspiracy before that individual had joined"). While that person does potentially become liable for future drug distributions that are reasonably foreseeable to him and in furtherance of the conspiracy, this is only to the extent he has agreed to join the conspiracy.  Further, mere association with the drug dealers, even to achieve objectives other than drug dealing, does not make him liable for conspiracy.

Similarly here, Storm is not liable as a conspirator for actions taken using the Tornado Cash protocol after he developed it and after it became immutable. As the Indictment concedes, Storm never had any contact with the Lazarus Group or knowledge of particular transactions, and he could not have predicted or prevented their misuse after the protocol's immutable deployment. *See* Storm's Mot. to Dismiss, ECF No. 30 at 26-27.  Such an absence of knowledge about the exact source or destination of funds precludes conviction for conspiring to transmit criminal proceeds.  The jury should be instructed that, if at that point Storm did not have any control over the protocol, nor any agreement with any user to transmit any particular funds, he cannot be found guilty of conspiring to violate § 1960(b)(1)(C).

### C. The Jury Must Be Correctly Instructed that It Cannot Convict Unless Storm "Unlawfully, Willfully and Knowingly" Joined the Conspiracy

Finally, the conspiracy charge adds an additional mens rea requirement that Storm "unlawfully, knowingly and willfully" joined a conspiracy to operate an unlicensed money transmitting business, and "that he agreed to take part in the conspiracy to promote and cooperate in its unlawful objective," that is, to operate an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a) and (b)(1)(C). *See* Gov't Req. to Charge, ECF No. 156 at 28.

As the government acknowledges, "willfully" means to act "knowingly and purposely with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or disregard the law." *See* ECF No. 156 at 21. Therefore, the government must prove that Storm acted not only with full knowledge of the conspiracy and its unlawful objective, but also with a bad purpose to disobey or disregard the law.

In order for Storm to have "knowingly" become a member of a conspiracy to operate an unlicensed money transmitting business, he must have been aware of what it means to operate an unlicensed money transmitting business. That in turn means that he must have been aware of all of the facts underpinning any determination that there was a money transmitting business, as discussed above.

Additionally, Storm must have acted "willfully," meaning knowingly, voluntarily and purposely, "with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or disregard the law." Gov't Req.

to Charge, ECF No. 156 at 21.  The willfulness requirement lends further support to Storm's request that the jury be charged that it cannot convict if Storm did not know there was a money transmitting business because he did not know that such a business could exist without control of funds or fees charged for specific money transfers.

Nor can Storm have had the necessary mens rea if the jury concludes, as Storm has argued, that Storm set out to build a privacy-preserving protocol that would allow users to engage in self-custodied and self-directed peer-to-peer transactions, and nothing more.  In fact, the Indictment acknowledges that the Tornado Cash developers set out to build a privacy-preserving software protocol that would allow users to engage in self-directed peer-to-peer transactions.  *See* Ind. ¶ 1, 9-11.  The protocol was always intended to be, and indeed was, self-custodial, meaning users never gave up control or custody of their funds to Tornado Cash.  And if Storm did not have the requisite control over funds to be engaged in "money transmitting" under § 1960(b)(2), it necessarily follows that the protocol could not have been engaged in a money transmitting business.  In that circumstance, Storm cannot be said to have unlawfully, knowingly and willfully joined a conspiracy to engage in an unlicensed money transmitting business.

It would be profoundly unfair and contrary to due process for Storm to be found guilty, despite clear FinCEN guidance, established case law, and resulting

industry consensus, that operation of a money transmission business requires control of funds and payment of a fee.

## **CONCLUSION**

For the reasons set forth above, Storm's proposed jury instructions on the § 1960 charge should be adopted.

Dated: June 13, 2025                    Respectfully submitted,

*/s/ Celeste Koeleveld*
Celeste L.M. Koeleveld
Benjamin Peacock
William Lanier
CLIFFORD CHANCE US LLP
375 Ninth Avenue
New York, NY 10001
212-878-3051
celeste.koeleveld@cliffordchance.com
benjamin.peacock@cliffordchance.com
william.lanier@cliffordchance.com

*Counsel for Amicus Curiae*
*Paradigm Operations LP*