UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

ROMAN STORM, ET AL.,

                    Defendants.

Case No. 23 Cr. 430 (KPF)

Final Pretrial Conference: July 8, 2025

## DEFENDANT ROMAN STORM'S
## SUPPLEMENTAL AND ADDITIONAL MOTIONS *IN LIMINE*

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

David E. Patton
Christopher Morel
Hecker Fink LLP
350 Fifth Ave, 63rd Floor
New York, New York 10118
(212) 763-0883

*Attorneys for Roman Storm*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  ARGUMENT ...........................................................................................................1

   A.   Supplement to Defendant's Motion *in Limine* No. 2 to Exclude "Victim"
        Testimony ......................................................................................................1

        1.   Overview ...............................................................................................1

        2.   The Government's Proposed "Victim" Witnesses.................................3

        3.   The Proposed Witnesses Are Not "Victims" in This Case .................5

        4.   The Testimony Is Irrelevant in This Case.............................................6

        5.   Testimony Regarding the Alleged Connection Between the Losses
             and Tornado Cash Should Be Excluded Because It Is Based on
             Hearsay ...............................................................................................8

        6.   The Testimony Should Be Excluded Because It Is More Prejudicial
             than Probative .....................................................................................8

   B.   Additional Motion *in Limine* No. 15 to Exclude the Testimony of an
        Alleged Scam Perpetrator (Government Witness No. 6).....................................11

        1.   The Testimony of Witness No. 6 Is Irrelevant.........................................12

        2.   Much of Witness No. 6's Testimony Regarding Tornado Cash Will
             Be Based on Hearsay .............................................................................12

        3.   The Prejudicial Effect of Witness No. 6's Testimony Far
             Outweighs Its Probative Value ...............................................................13

   C.   Additional Motion *in Limine* No. 16 to Exclude Testimony from Rho................14

   D.   Additional Motion *in Limine* No. 17 to Exclude Testimony of FBI Special
        Agent Lopez, American Express Records, and Bloomberg Records ...................16

        1.   The Cell Site Analysis, American Express Records, and
             Bloomberg Swipe Card Records Are Irrelevant .....................................17

        2.   The Cell Site Analysis, American Express Records and Bloomberg
             Swipe Card Records Do Not Support Venue.............................................17

III. CONCLUSION........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Old Chief v. United States,*
    519 U.S. 172 (1997) ................................................................................................ 9

*United States v. Araujo,*
    539 F.2d 287 (2d Cir. 1976) ................................................................................... 6

*United States v. Bermudez,*
    529 F.3d 158 (2d Cir. 2008) ................................................................................... 9

*United States v. Cabrales,*
    524 U.S. 1 (1998) ................................................................................................. 18

*United States v. Calonge,*
    74 F.4th 31 (2d Cir. 2023) ................................................................................... 18

*United States v. Davis,*
    689 F.3d 179 (2d Cir. 2012) ................................................................................. 19

*United States v. Eisenberg,*
    2025 WL 1489248 (S.D.N.Y. May 23, 2025) ..................................................... 18

*United States v. Figueroa,*
    618 F.2d 934 (2d Cir. 1980) ................................................................................... 9

*United States v. Jasmin,*
    No. 13-Cr-297 (CM),
    2015 WL 1566650 (S.D.N.Y. March. 25, 2015) ................................................ 20

*United States v. Kim,*
    246 F.3d 186 (2d Cir. 2001) ................................................................................. 18

*United States v. Kirk Tang Yuk,*
    885 F.3d 57 (2d Cir. 2018) ................................................................................... 19

*United States v. Lichtenstein,*
    2025 WL 1019428 (D.D.C. Apr. 4, 2025) ............................................................ 5

*United States v. Magassouba,*
    619 F.3d 202 (2d Cir. 2010) ................................................................................. 18

*United States v. Rommy,*
    506 F.3d 108 (2d Cir. 2007) ................................................................................. 19

*United States v. Svoboda,*
    347 F.3d 471 (2d Cir. 2003) ................................................................................. 19

**<u>STATUTES</u>**

18 U.S.C. § 3500 ................................................................................................................. 1

18 U.S.C. § 3663A(a)(2) .................................................................................................... 5

18 U.S.C. 3771(e)(2)(A) .................................................................................................... 5

**<u>RULES</u>**

Fed. R. Evid. 402 ............................................................................................................. 14

Fed. R. Evid. 403 ............................................................................................... 9, 11, 13, 14

Fed. R. Evid. 801 ........................................................................................................... 8, 13

Fed. R. Evid. 802 ........................................................................................................... 8, 13

Fed. R. Evid. 404 ............................................................................................................. 14

## I.    PRELIMINARY STATEMENT

After the filing of Roman Storm's motions *in limine,* the government disclosed materials

pursuant to 18 U.S.C. § 3500, its witness list, and exhibits.  Based on the information learned

from these sources to date, Mr. Storm supplements his motions *in limine* as follows:

> A.  Supplement to Motion *in Limine* No. 2, to exclude testimony from alleged victims of hacks and scams;
>
> B.  Additional Motion *in Limine* No. 15, to exclude testimony from an alleged perpetrator of a scam;
>
> C.  Additional Motion *in Limine* No. 16, to exclude testimony from a witness from the Rho financial services company about alleged false statements by Mr. Storm; and
>
> D.  Additional Motion *in Limine* No. 17, to exclude testimony of FBI Special Agent Lopez and American Express and Bloomberg exhibits.

For the reasons discussed below, this Court should not permit the government to offer the

above testimony and exhibits at trial.  Mr. Storm reserves his right to raise additional objections

and arguments as the defense continues to review and analyze the 3500 materials and the

government's proposed exhibits (including in light of the government's proposed witnesses),

both of which are voluminous and are regularly being supplemented.

## II.    ARGUMENT

### A.    Supplement to Defendant's Motion *in Limine* No. 2 to Exclude "Victim" Testimony

#### 1.    Overview

In its motion *in limine* No. 2, the defense sought exclusion of testimony from alleged

victims of criminal activity, arguing that it was both irrelevant and prejudicial.  (Dkt. 155 at 11-

13.)  That motion focused on alleged victims of the Ronin hack, attributed to the Lazarus Group,

assuming that the government would seek to introduce such evidence at trial.  (*Id.* at 12.)  But

based on the government's proposed exhibits, the 3500 materials, and the government's witness

list, it appears the defense underestimated the government's efforts to introduce irrelevant and unfairly prejudicial testimony at trial. The government has not limited its evidence to that regarding the Ronin hack but instead intends to call six witnesses—three individual alleged victims of various hacks and scams and three representatives from allegedly hacked entities—all to testify regarding purported criminal activity that Mr. Storm had nothing to do with.[1] To be clear, these witnesses are not properly considered "victims" here at all because they did not suffer losses as a result of the criminal offenses charged in this case.

Regardless of what they are labeled, the proffered witnesses' testimony should be excluded. Their testimony is irrelevant because Mr. Storm is not alleged to have participated— and of course did not participate—in any of these alleged scams or hacks. Relevance would only possibly arise if there were evidence that Mr. Storm knew contemporaneously that proceeds from these purported scams or hacks were being sent to Tornado Cash and that he intended to and agreed to help launder those funds through Tornado Cash. But there is no such evidence. Moreover, to the extent these witnesses can testify only based on hearsay about whether the funds were even sent through Tornado Cash, that testimony should be excluded. From what has been disclosed by the government, that is in fact the case: none of the proposed witnesses has any direct personal knowledge about the use of Tornado Cash. And even to the extent that their testimony could be somehow relevant and otherwise admissible, it should be excluded pursuant to Rule 403. Their testimony is unfairly prejudicial because it would confuse the jury into believing that Mr. Storm had something to do with this uncharged criminal activity, which of

---

[1] In its opposition to the government's motions *in limine*, the defense stated that it "does not anticipate arguing that such victims were negligent at trial." (Dkt. 174 at 42.) That remains true with respect to the individual "victims" of the hacks or scams, but the defense fully reserves its rights to cross-examine representatives of hacked entities regarding those entities' responsibility for the hacks.

course he did not, and could lead them to decide the case improperly based on their sympathy for the alleged victims.  It would also waste time with a parade of witnesses with no real knowledge of Tornado Cash, other than what they have allegedly heard from others, forcing a response from the defense that will cause the trial to devolve into a series of mini-trials over other crimes not at issue in this case.

### 2. The Government's Proposed "Victim" Witnesses

The government has placed the following witnesses on its witness list, and the 3500 materials provide information about the nature of their likely testimony as summarized here.[2] The three alleged victims of hacks and scams are:

- No. 5:  This witness does not claim that Tornado Cash had anything do with the scam.

  (Witness No. 5's statements from the 3500 materials are attached as Exhibit 1.)

- No. 22:  This witness does not claim that Tornado Cash had anything do with the hack.

  (Witness No 22's statements from the 3500 materials are attached as Exhibit 2.)

- No. 23: 

---

[2] The witnesses are identified by their number on the government's witness list.

████████████████████████████████ This witness does not claim that Tornado Cash had anything do with the scam.

(Witness No. 23's statements from the 3500 materials are attached as Exhibit 3.)

The three witnesses who represent entities that were hacked are:

- No. 15:  his witness does not claim that Tornado Cash had anything do with the hack.

(Witness No. 15's statements from the 3500 materials are attached as Exhibit 4.)

- No. 16:  his witness does not claim that Tornado Cash had anything do with the hack.

(Witness No. 16's statements from the 3500 materials are attached as Exhibit 5.)

- No. 24:  This witness does not claim that Tornado Cash had anything do with the hack.

(Witness No. 24's statements from the 3500 materials are attached as Exhibit 6.)

### 3.    The Proposed Witnesses Are Not "Victims" in This Case

As an initial matter, the proposed six witnesses, labeled as "victims" by the government, are not in fact victims of the charged offenses in this case under the law.  Even accepting all of the government's misguided allegations as true, the proposed witnesses are victims of the purported underlying frauds and hacks whereby they allegedly lost their money, not by any subsequent money laundering.  The Crime Victims' Rights Act ("CVRA") defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense."  18 U.S.C. 3771(e)(2)(A).  Similarly, the Mandatory Victims Restitution Act ("MVRA") also defines "victim" as "a person directly and proximately harmed as a result of the commission of an  offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663A(a)(2).

The government has acknowledged as much recently.  In a prosecution for money laundering, the government argued that the persons who were victimized by hackers and fraudsters do not qualify as victims under either the CVRA or the MVRA for purposes of money laundering when the defendants in the money laundering case were not involved in the underlying frauds and hacks.  *See United States v. Lichtenstein*, 2025 WL 1019428, at *1-2 (D.D.C. Apr. 4, 2025) (adopting the government's position that, for CVRA and MVRA purposes, victims of theft of cryptocurrency funds that were later laundered were not "victims" of the defendant's conviction for conspiracy to commit money laundering).  For this reason, if they are permitted to testify, this Court should instruct the government not to refer to them as "victims."

### 4.    The Testimony Is Irrelevant in This Case

Information from the proposed witnesses regarding various purported hacks and scams is irrelevant because Mr. Storm is not charged with participating in any way in those alleged hacks or scams, and their existence does nothing to prove the conspiracy charges in this case absent some evidence that Mr. Storm was aware of them and subsequently agreed to participate in laundering the illicitly obtained funds.  In opposing Mr. Storm's motion *in limine* No. 2, the government argued that testimony from victims is relevant because it is "direct evidence of the charged SUAs with respect to Count One (here, wire fraud and computer fraud and abuse), the criminal origin of transmitted funds with respect to Count Two, and the defendant's knowledge of the funds' criminal roots with respect to both counts."  (Dkt. 173 at 15.)  The government's arguments for relevance do not withstand scrutiny.

The government is not claiming that Mr. Storm participated in any way in the underlying alleged scam and hacking offenses, or that he was even aware of them at the time the alleged scammers and hackers supposedly used Tornado Cash.  They are therefore irrelevant to the conspiracy charges in this case.  *See United States v. Araujo,* 539 F.2d 287, 289 (2d Cir. 1976) (with respect to proving the participation of each defendant in criminal conduct, "proof of criminal acts not involving [the defendant] would be irrelevant").  Likewise, the circumstances of the purported scams or hacks have no relevance here.  In one example, the government appears to be planning to introduce not only testimony but exhibits in the form of chats where the purported scammer ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

(*See* Ex. 1.)  The circumstances of this alleged scam and these communications are irrelevant to the charges here, where there is no evidence that Mr. Storm participated in or even knew about them.

Second, the government's theory that alleged victim testimony will establish "the defendant's knowledge of the funds' criminal roots with respect to both counts" does not follow. (*See* Dkt. 173 at 15.)  Just because a scam or hack occurred does not mean that Mr. Storm knew about it.  Indeed, in the majority of cases (Witnesses Nos. 16, 22, 23 and 24), the witnesses never communicated with Tornado Cash at all about any criminal activity or their beliefs that criminally derived funds went to Tornado Cash.  (Exs. 2-3, 5-6.)  In one instance (No. 5), the alleged victim emailed "hello@tornado.cash" but got no response, and there is no evidence that Mr. Storm was made aware of this communication.  (Ex. 1.)  If Mr. Storm was not made aware of the criminal activity or its possible connection to Tornado Cash, there cannot be even arguable relevance.

Nor does the alleged impact of the purported losses of the alleged victims have any bearing on the charges in this case.  Many of the alleged victims apparently will claim that they lost all or a substantial chunk of their life savings and be asked to discuss the psychological toll that took on them and their families, and in the case of the two entity witnesses, will be asked to discuss the impact of the purported hacks on their businesses.  Mr. Storm did not cause any of these alleged losses, and however tragic they might have been, they have nothing to do with him or the charges he faces in this case.

The government nevertheless has argued that alleged victim impacts are relevant to show the magnitude of the funds that went through Tornado Cash and the "implausibility" of any claim of a lack of knowledge by Mr. Storm.  (Dkt. 173 at 16.)  But calling individual witnesses to talk about their alleged individual losses and the alleged impact of those losses on them or their businesses does not establish the magnitude of the funds allegedly being laundered through Tornado Cash, and regardless, none of them have direct knowledge of how Tornado Cash might

have been used.  Nor are they relevant to prove the *mens rea* of money laundering, which is that Mr. Storm had specific knowledge that a financial transaction involved criminal proceeds at the time the transaction occurred, and knew (at that time) that the transaction was intended to conceal the source of the proceeds.

     5.    **Testimony Regarding the Alleged Connection Between the Losses and Tornado Cash Should Be Excluded Because It Is Based on Hearsay**

In addition to the irrelevance of these witnesses' testimony, it is also inadmissible to the extent it is based not on personal knowledge but on hearsay.  The witnesses assert that funds from the alleged hacks and scams went to Tornado Cash, but they do not have first-hand knowledge of this fact.  (Exs. 1-6.)  Instead, they rely on hearsay to support their belief that criminally derived funds went to Tornado Cash.  (*Id.*)

For example, a number of the witnesses hired individuals or firms to trace the funds and report the results of those traces.  (*See* No. 5 (Ex. 1) (███████████████████████); No. 15 (Ex. 4) (███████████████████); No. 16 (Ex. 5) (███████████████ ███████); No. 22 (Ex. 2) (███████████████████████████); No. 24 (Ex. 6) (███████████████████).)  One witness, No. 23, even reports that ███ ██████████████████████████████████████ (Ex. 3.)  Because these witnesses will not be testifying based on their personal knowledge and instead will be reporting what others told them, their testimony on this issue is inadmissible.  *See* Fed. R. Evid. 602 (testimony must be based on personal knowledge); Fed. R. Evid. 801(c), 802 (hearsay inadmissible).

     6.    **The Testimony Should Be Excluded Because It Is More Prejudicial than Probative**

Even if their testimony were somehow relevant and not inadmissible hearsay, the six witnesses should still be excluded from testifying because any probative value of their testimony

would be substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  This Court has broad discretion to exclude evidence under Rule 403 and should exercise it here.  *See United States v. Bermudez,* 529 F.3d 158, 161 (2d Cir. 2008).

One of the biggest dangers of having witnesses testify about other alleged crimes by other alleged bad actors, having nothing to do with Mr. Storm, is that the jury will be confused and misled into believing that Mr. Storm was somehow involved in the other purported crimes. Especially if the government is allowed to call the numerous witnesses it apparently plans to call regarding various alleged hacks and scams, the jury will likely be led to believe that the case is about these other crimes.  And since Mr. Storm will be the lone defendant at this trial, the jury may well presume that he was involved in these other crimes, as the jury will otherwise likely be puzzled why they are hearing so much about them from so many different witnesses.  The prejudice to Mr. Storm is especially great to the extent he is implicated in other purported crimes for which he has not been charged.  *See Old Chief v. United States,* 519 U.S. 172, 180 (1997).

The introduction of their testimony would also be unfairly prejudicial because it would tend to cause the jurors to decide the case based on sympathy for the alleged victims, rather than based on the relevant evidence presented.  *See United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir. 1980) (unfair prejudice may result if evidence tends "to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant").  All of the alleged victims purportedly lost money, and they have discussed the alleged impact that has had on their lives.  (*See, e.g.,* No. 5 (Ex. 1) (████████████████████████████████████

████████████████████████████); No. 22 (Ex. 2) (████████████████████████

████████████████████████████████████████████████████



); No. 23 (Ex. 3) (███████████████████████████).) Witnesses representing allegedly hacked entities also seem poised to testify about the purported losses to their customers as well as the alleged impact on their businesses. (*See* No. 16 (Ex. 5) (███████████ ██████████████████████████); No. 24 (Ex. 6) (███████████████ ███████████████████████████████████████████ ██████████████).) These alleged victim impacts are likely to spark emotional responses from the jurors that will unfairly turn the jurors against Mr. Storm based on conduct for which he is not responsible.

These government witnesses will also be cumulative. The government has three alleged victims lined up to testify that they were the victims of scams or hacks, plus three witnesses to talk about the alleged hacks of two different entities (plus an alleged perpetrator of another scam altogether, which is discussed below). This evidence is irrelevant in the first place, as discussed above, and the jury certainly does not need to hear from six different "victim" witnesses about hacks and scams. In one particularly egregious example of cumulative evidence, the government plans to call two witnesses to talk about the alleged hack of ██████ (Nos. 15 and 16), but their testimony will largely repeat the same information, and there is no need to duplicate it.

Finally, calling these witnesses to testify about other purported crimes and their alleged victim impacts will also cause undue delay and waste time. If this testimony is to have any probative value at all, then the government will have to prove that the witnesses were in fact hacked or scammed. The defense is of course entitled to challenge such evidence. This testimony will take up undue amounts of time and will devolve into mini-trials regarding the alleged hacks and scams.

For all these reasons, this Court should exercise its discretion and exclude the hack and scam testimony pursuant to Rule 403.

**B.      Additional Motion *in Limine* No. 15 to Exclude the Testimony of an Alleged Scam Perpetrator (Government Witness No. 6)**

The government has given notice that it intends to call a cooperating witness who will testify as the alleged perpetrator of a scam.  Witness No. 6,[3] as identified on the government's witness list, will apparently testify that he was one of the perpetrators of the ███████████ scam— a "rug pull" scam in which he and his co-conspirators would develop a project to entice investors, but once funds were raised, they would keep the money and shut down the project. (Ex. 7 (3500 material statements.)  The witness has provided extensive details about the purported scam and his and his co-conspirators' involvement in it.  (*Id.*)  Mr. Storm is not charged with and had nothing to do with this alleged scam.

Witness No. 6 apparently stated that he learned about Tornado Cash *after the scam was complete* from ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ (*Id.*)  Ultimately, he and his co-conspirators allegedly used Tornado Cash to deposit and then withdraw proceeds, but Witness No. 6 never communicated with anyone involved with Tornado Cash about his alleged use of Tornado Cash for this purpose.  (*Id.*)

This witness's expected testimony is irrelevant, filled with hearsay, and unfairly prejudicial, and it should be excluded.

---

[3] This witness is also identified by the number on the government witness list.

### 1.    The Testimony of Witness No. 6 Is Irrelevant

As with the "victim" testimony discussed above, the expected testimony of Witness No. 6 is irrelevant.  This witness appears prepared to talk at length about the details of a purported rug pull scam he and his co-conspirators committed.  But this has nothing to do with this case.  Mr. Storm is not alleged to have participated in this purported scam, and there is no evidence he even knew about it or the alleged subsequent use of Tornado Cash.

The only possible relevance of the testimony would be if Mr. Storm were aware that the witness intended to use Tornado Cash to launder proceeds and Mr. Storm intended, and agreed with others, to further that use.  But there is no evidence of any such knowledge or intent by Mr. Storm.  There will be no evidence that Witness No. 6 or anyone else communicated with anyone at Peppersec (the company Mr. Storm co-founded that launched the Tornado Cash protocol), much less Mr. Storm directly, about their alleged use of Tornado Cash for this purpose.  Without such a connection, the evidence regarding this other scam and the perpetrators' use of Tornado Cash is irrelevant to proving that Mr. Storm knowingly and willfully participated in the conspiracies charged in the indictment.

### 2.    Much of Witness No. 6's Testimony Regarding Tornado Cash Will Be Based on Hearsay

Witness No. 6 apparently will discuss how he learned about Tornado Cash, and it was all through hearsay.  The government appears likely to attempt to elicit testimony that Witness No. 6 ████████████████████████████████████████████████[4]  (Ex. 7.)  It appears Witness No. 6 initially learned about Tornado Cash ████████████████  (*Id.*)  The government will also likely attempt to elicit that Witness No. 6 ██████

---

[4] These words are not necessarily those of the witness but rather are the notes prepared by one of the prosecutors.  It is clear, however, that this is the spin the prosecution will attempt to put on Witness No. 6's testimony.



(*Id.*)  Witness No. 6 will also likely state that ███████████████

████████████████████████████████████████████████████

███████████████  (*Id.*)

What Witness No. 6 learned from ████████████████████████ is

hearsay.  Obviously, the witness should not be allowed to testify to what other individuals have

stated in out-of-court statements.  *See* Fed. R. Evid. 801(c), 802.  Anyone can say anything on

the internet, and such evidence has no place in the courtroom.

### 3.    The Prejudicial Effect of Witness No. 6's Testimony Far Outweighs Its Probative Value

Even if the testimony of Witness No. 6 had any relevance and were not based on

hearsay, its prejudicial effect far outweighs any probative value.  It should therefore be

excluded pursuant to Rule 403.

First, as with the alleged victim testimony discussed above, the testimony will be

unfairly prejudicial because it will likely confuse and mislead the jurors into believing that

Mr. Storm was somehow involved in the underlying purported scam or intended to facilitate

it, which is not true.

The testimony will also be unfairly prejudicial because it is likely to evoke an angry

response from jurors.  The jury's anger toward the acknowledged perpetrator of a purported

scam cannot help but spill over to Mr. Storm.  This would be highly prejudicial to Mr. Storm

because he had nothing to do with the purported scam and was not even made aware that

funds went to Tornado Cash.

The testimony will also be cumulative of the alleged victim testimony discussed above,

and will waste time and cause undue delay as a trial-within-a-trial.  The government appears

13

intent on calling multiple witnesses to testify about alleged hacks and scams having nothing to do with Mr. Storm, and Witness No. 6 is one more witness to testify about the same thing. If the government's point is that criminals used Tornado Cash to launder their proceeds, and this Court permits them to call the "victim" witnesses to say that, then they do not need to hear the same thing repeated by this witness. For all these reasons, the testimony of Witness No. 6 should be excluded.

### C.    Additional Motion *in Limine* No. 16 to Exclude Testimony from Rho

As part of his opposition to the government's motion *in limine* No. 5, Mr. Storm moved to preclude evidence of allegedly false statements made on a questionnaire of the Rho financial services company on the basis that the evidence is irrelevant under Rule 402, improper character evidence under Rule 404(b)(1), and unfairly prejudicial under Rule 403. (Dkt. 174 at 34.) Having reviewed the 3500 materials and the government's proposed exhibits, the defense supplements its opposition and moves to exclude this evidence based on statements made by representatives of Rho that further demonstrate that the questionnaire responses were not false.

As explained in Mr. Storm's opposition, the statements he is alleged to have made on the questionnaire about Peppersec's involvement with the blockchain and cryptocurrency were true: Peppersec did not operate on the blockchain, offer products related to a digital wallet, or accept cryptocurrency deposits. (*See id.* at 33.) Mr. Storm truthfully responded to questions on those topics, and he truthfully disclosed Peppersec's relationship to Tornado Cash, as is now crystal clear from the 3500 materials.

After Mr. Storm filed his opposition, the government, as part of its 3500 materials disclosures, produced notes of a call on December 5, 2024 between the government and Rho's outside counsel, who is not on the government's witness list. (Ex. 8 (3500 materials).) The notes suggest that even Rho representatives themselves believed that Mr. Storm's statements in

the questionnaire were not false, despite the government's claim in its motions *in limine*.  (*See*

Dkt. 157 at 34.)  According to the government's notes, ████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████ (Ex. 8 at 2.)  In response, ████████

██████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.*)  The government then

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ (*Id.*)  Again, ████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ (*Id.*) ████████████████████████

████████████████████████████████████████████ (*Id.*)  In other

words, Rho decided to terminate the relationship with Peppersec given Peppersec's risk

exposure, not because Mr. Storm made any false statements.[5]

    This is consistent with a Rho employee interviewed by the government who ████████

██████████████████████████████████████████████████████

█████████████████████████████ (*See* Ex. 8.) ████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ ████████████████████████

████████████████████████████████████████████████ ).  This

_____

[5] Upon reviewing these notes, the defense asked the government to provide any additional
information from Rho employees that formed the bases for these views that the statements were
not false.  The government disagrees with the defense assessment but is continuing to look into
the matter.  The defense believes the notes speak for themselves and show that Rho did not
consider any statements to be false.

directly contradicts the government's claim that Peppersec (and Mr. Storm) was somehow misleading Rho about the nature of its business and relationship to the blockchain and cryptocurrency.  Rho closed Peppersec's account *precisely because of accurate information it received from Peppersec and Rho's decision to reduce its exposure to cryptocurrency risk.* Indeed,



(Ex. 8.)

(*Id.*)

The government's self-serving theory about the questionnaire responses has no basis in fact, and its attempt to unfairly tarnish Mr. Storm's character should be rejected.

### D.  Additional Motion *in Limine* No. 17 to Exclude Testimony of FBI Special Agent Lopez, American Express Records, and Bloomberg Records

The Court should preclude the government from introducing (1) the testimony of FBI Special Agent William Lopez, a cell site analyst, including underlying data he relied on, (2) records from American Express pertaining to an account in the name of a Dragonfly Capital official, and (3) records relating to a Bloomberg reporter.  In reviewing the government's proposed exhibits, it seems as though the government intends to use the above-referenced testimony and documents to attempt to prove venue is proper in this District by showing that a Peppersec investor and a reporter were located in Manhattan at various times when Mr. Storm was allegedly communicating with them.  But as discussed below, none of the testimony or evidence would in fact demonstrate venue—even assuming the investor and reporter were

16

located in Manhattan.  Because the evidence is irrelevant to any issue at trial, it should be
excluded.

      **1.**      **The Cell Site Analysis, American Express Records, and Bloomberg
Swipe Card Records Are Irrelevant**

The government plans to elicit expert testimony from Agent Lopez "about cellular
network operations" and the "approximate locations of certain cellphones" between March and
August 2022.  (Ex. 9 (Lopez Expert Disclosure at 1).)  The government's disclosure does not
attempt to explain either the relevance of this testimony or the relevance of the cell site analysis.
And, as far as Mr. Storm is aware, testimony about the approximate location of certain cell
phones between certain dates is not relevant to any of the issues in this case.

The government also plans to introduce purported American Express account records of
an official at  Dragonfly Capital, a venture capital company that invested in Peppersec.  (GX
1150-1152.)  The account records are statements allegedly reflecting credit card purchases from
February 2022 through September 2022.  This Dragonfly official is not on the government's
witness list, and credit card purchases bear no known relevance to the charges against Mr. Storm.

Lastly, as part of its exhibits, the government includes an excel sheet produced by
Bloomberg, which purports to show building entry records for one of its reporters from March 1,
2022 to March 30, 2022, at Bloomberg's offices in New York.  (GX 1032.)  That reporter wrote
an article about Tornado Cash on March 10, 2022, but she is otherwise unconnected to the case.
She, too, is not listed on the government's witness list.

      **2.**      **The Cell Site Analysis, American Express Records and Bloomberg
Swipe Card Records Do Not Support Venue**

Mr. Storm assumes the government plans to use the above testimony and records in an
attempt to establish venue because the dates of certain of the cell site charts, credit card charges,
and building swipes, correspond to a handful of communications—texts and phone calls—

between Mr. Storm and the Dragonfly official and Bloomberg reporter. If that is the case, the proffered evidence has no relevance. Neither of them are alleged conspirators of Mr. Storm's, and there is no plausible argument that Mr. Storm's communications with them were in furtherance of any conspiracy. Just as significant, there is no evidence that Mr. Storm was aware of their location or that it was foreseeable to him that they would be located in this District at the time of the communications.[6] Thus, even assuming they were located in this District at the time Mr. Storm communicated with them, that is irrelevant to any issue at trial.

"In determining whether an offense was committed in a particular district," courts "look to 'the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Magassouba*, 619 F.3d 202, 205 (2d Cir. 2010) (quoting *United States v. Cabrales*, 524 U.S. 1, 5 (1998)). "In other words, determining whether venue is proper requires courts to 'first identify the conduct constituting the offense and then determine where that conduct occurred.'" *United States v. Eisenberg*, 2025 WL 1489248, at *3 (S.D.N.Y. May 23, 2025) (quoting *United States v. Kim*, 246 F.3d 186, 191 (2d Cir. 2001)). "In performing this analysis, [courts] must separate 'essential conduct elements' from 'circumstance element[s].'" *United States v. Calonge*, 74 F.4th 31, 35 (2d Cir. 2023) (second alteration in original). "Only essential conduct elements provide the basis for venue." *Id.* The government bears the burden of proving venue by a preponderance of the evidence. *United States v. Rommy*, 506 F.3d 108, 118-19 (2d Cir. 2007).

Moreover, the venue analysis "does not end as to all defendants charged with a conspiracy when we find a single overt act performed in the district of prosecution." *United*

---

[6] There is one purported text exchange between Mr. Storm and the Dragonfly official in which the official claims that he is in New York, but that exchange is about a different project— not Tornado Cash.

*States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018).  Instead, the Second Circuit requires

"some sense of venue having been freely chosen by the defendant."  *Id*.  (quoting *United States*

*v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012).  "Actual knowledge that an overt act was committed

in the district of prosecution is not required, however: venue will lie if a reasonable jury could

find that it was more probable than not that the defendant reasonably could have foreseen that

part of the offense would take place in the district of prosecution."  *Kirk Tang Yuk*, 885 F.3d at

69-70.  As such, "it must have been 'reasonably foreseeable' to each defendant charged with the

conspiracy that a qualifying overt act would occur in the district where the prosecution is

brought."  *Id*. (citing *Rommy*, 506 F.3d at 123); *see also United States v. Svoboda*, 347 F.3d 471,

483 (2d Cir. 2003) (holding that "venue is proper in a district where (1) the defendant

intentionally or knowingly causes an act in furtherance of the charged offense to occur in the

district of venue or (2) it is foreseeable that such an act would occur in the district of venue").

Here, even assuming the truth and accuracy of Agent Lopez's analysis and the reliability

of the American Express and Bloomberg records, they do not in any way tend to show that

"essential conduct" took place in this District, much less that it was "foreseeable" that such

conduct "would occur" in this District.  Indeed, the cell site analysis and records do not

demonstrate anything beyond the mere presence of non-coconspirators communicating with Mr.

Storm while they were in this District.  Their presence says nothing about any specified unlawful

activity occurring in this District, nothing about financial transactions in this District, and

nothing about the commission of an act in furtherance of the conspiracy.  Further, the Indictment

and Superseding have no venue allegations relating to any of this as a basis for venue.  (*See* Dkts.

1, 109.)  Accordingly, the proposed evidence should be excluded as irrelevant under Rule 401.

The proposed evidence should also be excluded because its probative value is substantially outweighed by the "undue delay and waste of time" that would come from "the distinct possibility of lengthy frolics and detours" that would come from addressing issues far afield from the ones actually at issue. *United States v. Jasmin*, No. 13-Cr-297 (CM), 2015 WL 1566650, at *2 (S.D.N.Y. March. 25, 2015).

As such, this Court should preclude the government from introducing the testimony and analysis of Agent Lopez and the American Express and Bloomberg records.

## III.    CONCLUSION

For all the foregoing reasons, this Court should grant these motions *in limine*.

DATED: July 7, 2025                                  Respectfully submitted,


By: */s/ Brian E. Klein*
      Brian E. Klein
      Keri Curtis Axel
      Becky S. James
      Kevin M. Casey
      Viviana Andazola Marquez
      Waymaker LLP

      -and-

      David E. Patton
      Christopher Morel
      Hecker Fink LLP

      *Attorneys for Roman Storm*