

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

July 12, 2025

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

<u>*Via ECF*</u>

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   United States v. Storm, 23 Cr. 430 (KPF)

Dear Judge Failla:

On behalf of our client, defendant Roman Storm, we write to reply to the government's opposition to Mr. Storm's motion to exclude the government's extraction of what is alleged to be Alexey Pertsev's phone. (*See* Dkt. 197 ("Opp.").)  The defense apologizes for burdening this Court with one more filing right before trial, but the government's opposition contains factual inaccuracies which, at the very least, require the defense to make a clear record.  In its opposition, the government doubles down on, and compounds, the serious errors which first gave rise to the defendant's objection to the phone extraction data.  The government also provides nonsensical explanations that call into question the integrity of its intended presentation to the jury.

This Court should exclude any evidence derived from the government's extraction and order the government to provide the defense with the grand jury transcripts.

- **The Government's "Pertsev" Phone Extraction Exhibits Are Missing Critical Information as to the Author of Messages Such That They Should Be Excluded**

The government does not, because it cannot, dispute that the Telegram messages it intends to offer into evidence are: (1) taken from a cherry-picked and partial extraction of what it alleges is Pertsev's phone; and (2) missing information identifying the author of messages that are forwarded.  Nevertheless, the government astoundingly maintains that the exhibits are not really "missing" information. (*See* Opp. at 2.)

The government begins by speculating that perhaps Telegram messages did not contain the information about the author of a forwarded message back in 2022. (*Id.*)  But, as the government's own discovery proves, Telegram messages do show that information and did so as

Hon. Katherine Polk Failla
July 12, 2025
Page 2 of 6

early as 2021.[1]  For example, here is a 2021 Telegram message extracted from a Dragonfly official's phone from the government's discovery:

```
From:            Roman Storm
Recipients:      ▮▮▮▮▮
Forwarded From:  Alexey Pertsev
Timestamp:       7/8/2021 12:32:55 PM -07:00
```

thank you for the help

((USAO_SDNY_00007808; *also produced at* USAO_SDNY_00102866 at 2953).)

The government claims that the jury will not be misled by its exhibits because they will include the word "Forwarded." (Opp. 3.) But that misses the point: these exhibits do not provide any information on who the author of the forwarded message is, which is obviously critical to understanding the message, as the government itself has proved by repeatedly misidentifying the author of the forwarded message (as recently as at the July 8, 2025 conference). (*See* Dkt 193 ("Mot.") at 3.)

In fact, the government has consistently stood by the allegation in paragraph 57 of the original Indictment that misattributes a Telegram message to Pertsev, which was actually a forwarded message from a reporter, even after superseding in November 2024.  (*See id.*) At Mr. Storm's December 9, 2024 arraignment, the government explained that it "just fixed a couple of technical issues with the prior indictment," and the defense confirmed that the government had told them that "their allegations from the prior speaking indictment remain the same in the sense that they are not backing away from any of those." (12/9/24 Tr. at 4.)  By that time, the government had the formatted Telegram messages that are in its exhibits because IRS-CI Special Agent Peter Dickerman had brought them back in November 2024.[2]

---

[1] The government notes that Telegram contains a feature or add-on that allows anonymous forwarding. (Opp. at 2 n.2.) But there is no evidence that Pertsev used that feature, and this government argument undercuts its other argument that forwarding that identifies the author of the forwarded message was not available in 2021. After all, one would not need that feature unless regularly forwarding identified the author. Moreover, this was not a one-off occurrence – *all* of the forwarded messages in the government's exhibits extracted from what it alleges to be Pertsev's phone are missing the information about the author of the forwarded messages, and it cannot be that different users all used this anonymous forwarding feature all of the time.

[2] On July 12, 2025, the government sent a correction of its July 11, 2025 letter to this Court, explaining that, in fact, the formatted versions were not disclosed to the defense until December 2024, not September 2023 as previously stated. (Dkt. 198.) That the government had to make this correction is emblematic of the government's problems here.

Hon. Katherine Polk Failla
July 12, 2025
Page 3 of 6

In addition, the government argues that the inclusion of the word "Forwarded" demonstrates somehow that its extraction "contain[s] the full information from the Pertsev phone," which is a red herring. (Opp. at 3.) First, the Dutch extraction may actually contain the missing "forwarded from" information. Second, that is simply not true, as noted above: Telegram messages did contain that information as early as 2021.

The government also makes the preposterous claim that its attribution of the reporter's message to Pertsev was actually legally proper, claiming that by forwarding the message, Pertsev somehow adopted it. (*See* Opp. at 3-4.) That is a shocking claim, unsupported by common sense or the law. It would be like saying that, when the victim of a threat forwards to the police a message he received that says, "I'm going to burn your house down," that the victim is now saying he is going to burn the police officer's house down. Or imagine if Former FBI Director James Comey received and forwarded to his wife a message from a reporter asking, "How would one go about killing the President?" and she responded "Let's discuss." The government would apparently maintain that this is evidence that they are conspiring to kill the President.

Lastly, calling this an "obvious attempt to ambush the Court and the [g]overnment three days before trial" is absurd. The defense's objection was raised in a timely manner following its receipt of the government's hundreds of exhibits on June 30, 2025, as the chronology in the defense's motion shows. (*See* Mot. at 2-3.) Moreover, the defense should not be faulted for not catching on to this problem sooner when the government has been misleading the grand jury and this Court about it for some time. Indeed, while the government attacks the defense for not noticing the issue sooner, the government does not disclose when it learned about this issue, and, given that the government mistakenly attributed the reporter's Telegram message to Pertsev at the Pretrial Conference, it appears that the government itself was unaware of this issue until the defense raised it, so they are not in a position to point fingers.

- **The Government Admits It Did Not Receive All of the Extraction Files Captured by Its Search Terms**

The government's response to the defense assertion that Agent Dickerman did not retrieve all of the extraction files is a misdirection. (Opp. at 2 n.1.) The undisputed fact is that Agent Dickerman did *not* get all the extraction files from the Dutch authorities. The government's only answer is to argue that the Dutch did not permit him to take all the files initially, and on his second trip he was "never authorized" and it was "never contemplated" that he would return with the full set of files that were responsive to the searches he conducted in the Netherlands. (*Id.*) This attempted justification misses the point: the fact of the matter is that the 3500 materials make clear that Agent Dickerman did not bring back to the United States every record his search terms hit on, so it is not a complete extraction of what he searched for. (*See* Mt. at 3.) That renders him incapable of authenticating exactly what the extracted contents are, as limitations were imposed by the Netherlands authorities that are not disclosed.

- **The Government's Authentication Methods Do Not Solve This Serious Problem**

The government goes on at length about how it plans to authenticate the Pertsev phone extraction. (Opp. at 5-7.) But all of its methods of authentication go only to show that its extraction came from a phone that belonged to Pertsev. While that is one aspect of authentication, it is not the only or even the most serious issue here. Namely, it appears the Telegram messages that were extracted are not accurate. The fact that they are plainly missing critical information undermines their reliability. When presented with the obvious flaws in its exhibits and its initial misunderstanding of the extraction, the government still refuses to acknowledge error and instead offers sophistry to try to explain it away, only compounding the concerns about how it will present the extraction evidence to the jury.

The government also gives short shrift to the point, which Agent Dickerman has conceded, that the extraction files could have been modified. (Opp. at 4-5.) While it is true that the defense cannot say with certainty whether the files were modified, the real problem is that the government cannot either. This possibility is one more reason that the government's extraction cannot be relied upon as authentic without calling Dutch witnesses who could be cross-examined about that possibility.

Moreover, the government tellingly fails to address anywhere in its opposition the defense's argument under Rule 403. (*See* Mot. at 5.) Even if the government could clear the authentication bar, exhibits from its extraction should still be excluded pursuant to Rule 403. The messages are clearly misleading and confusing in their failure to identify the author of forwarded messages. The prejudice of these dangers vastly outweighs any probative value.

- **This Court Should Order the Government to Disclose the Grand Jury Transcripts**

The defense understand that this Court is undertaking an *in camera* review of the grand jury transcripts. As the defense argued in its motion, the defense has grave concerns about the integrity of the grand jury proceedings since it appears that the government provided false information to the grand jury. (*See* Mot. at 5.)

In claiming that there is no particularized need for disclosure of the grand jury minutes, the government absurdly claims that the Indictment's allegation discussed above is "not factually inaccurate." (*See* Opp. at 9.) The government's refusal to acknowledge the error calls into question the integrity of its whole approach here. As discussed above, if it had been Pertsev asking the question—as the government has represented repeatedly—it could suggest guilty intent by an alleged co-conspirator. But if it was a reporter asking the question—as is the case—it says nothing about Pertsev's intent and changes the implications and meaning of the Telegram conversation altogether.

Again, it is absurd to suggest that Pertsev somehow "adopted" the reporter's statement by forwarding it, as the government does again in this section. (*See* Opp. at 9.) Forwarding that message means nothing more than that he wanted others to know what the reporter was asking. It does not remotely suggest that he is actually asking how to launder criminal proceeds.

Hon. Katherine Polk Failla
July 12, 2025
Page 5 of 6

This case is unlike *United States v. Shvartsman,* cited by the government. (*See* Opp. at 10 citing 722 F. Supp. 3d 276, 302-03 (S.D.N.Y. 2024).) There, the indictment quoted an apparently incriminating text which the government later admitted had nothing to do with the charged scheme. *Id.* at 302. The district court conducted an *in camera* review of grand jury transcripts. Afterwards, the court determined not to dismiss the indictment primarily because the government had since sought and obtained a superseding indictment from a different grand jury that was "not exposed to the misleading text." *Id.* at 302-03. That court went on to state as an alternative basis that, based on its *in camera* review, the misleading text message was not "material to the grand jury's decision to indict." *Id.* at 303 (internal quotation marks omitted).

Here, the government does not even argue that the Telegram message attributed to Pertsev was immaterial to the grand jury. The government must have presented it to the first grand jury, given the quotation in the indictment, and the defense believes the second grand jury was likely tainted by the initial grand jury presentation as well.

Instead of addressing this significant problem, the government argues that the Telegram message at issue is relevant to show Mr. Storm's knowledge of the Ronin hack and the likelihood that the Lazarus Group would try to launder the proceeds through Tornado Cash. (Opp. at 10.) But the fact that the message could have some relevance even if, as is the case, it was authored by a reporter and not Pertsev, does not mean that who authored it is "beside the point." (*Id.*) The point is that the message is misleading insofar as it suggests it was Pertsev who wrote it because it suggests that the co-conspirators were discussing how to launder funds, not just that they were aware of a reporter's question.[3]

This Court should order the disclosure of the grand jury transcripts so the defense can review them for grounds for a motion to dismiss.

- **The Unavailability of *Brady* Review Underscores the Problem with Admitting the Government's Exhibits Tied to Its "Pertsev" Phone Extraction**

The government complains that it cannot be ordered to conduct a *Brady* review of the Pertsev phone extraction because, as it admits, "the full extraction of the Pertsev phone was never in [its] possession, custody, or control. Rather it has always been in the possession, custody, and control of Dutch law enforcement." (Dkt. 197 at 11.) The government misses the point once again.

The defense is aware that the government cannot do a *Brady* review of documents it does not have. But that is just the problem. The government does not have all the extraction files, and Agent Dickerman therefore cannot testify competently to what was in those files. And more importantly, the defense cannot confront the witnesses who would know—the Dutch officials

---

[3] The government once again resorts to blaming the defense for not raising this issue earlier. (Opp. at 10.) This was no "strategic decision to play 'gotcha' on the eve of trial," (*id.*) but rather a result of the defense's diligent review of the government's exhibits, which are in Russian in the original, and were first disclosed on June 30, 2025, in the course of preparing for trial.

Hon. Katherine Polk Failla<br>
July 12, 2025<br>
Page 6 of 6

who did the full extraction. Without this opportunity, the defense is deprived of its due process and Confrontation Clause rights.

* * *

For all the foregoing reasons, this Court should grant the defense's motion.

Respectfully submitted,

*[signature]*

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Christopher Morel
Hecker Fink LLP

*Attorneys for Roman Storm*