

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

**By Email and ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Roman Storm*,
            23 Cr. 430 (KPF)

Dear Judge Failla:

    The Government respectfully writes regarding two issues raised by defendant Roman Storm's opening statement yesterday. First, the Court previously relied on Storm's representation that it was "not necessary" to resolve the Government's motion *in limine* precluding arguments and evidence regarding privacy rights unless and until Storm testified, and did not rule on that motion. After Storm's opening statement, however, it is now necessary to preclude evidence and arguments based on privacy rights. Second, this Court should preclude Storm from eliciting testimony from his expert, Matthew Green, about "dangerous gangs" and "people being threatened, harmed, and even kidnapped" for their cryptocurrency (Dkt. 159-2 at 5), which testimony is irrelevant and inflammatory, and would invite impermissible discussions of privacy rights and/or nullification that Storm previously foreswore. At a minimum, the Court should require Storm to provide additional information regarding this aspect of Green's proposed testimony.

**A.    Arguments Regarding Privacy Rights**

    In advance of trial, the Government asked the Court to preclude Storm from arguing that his conduct was protected by privacy rights. (Dkt. 157 at 48–49 ("the defendant has repeatedly argued that his charged conduct is protected by constitutional rights to freedom of speech and privacy. … [T]he only purpose Storm could have in making such arguments—and eliciting testimony in support of them—before the jury is to induce jury nullification ….")). Storm did not dispute this argument, rather, he represented to the Court that it was "not necessary" to grant the Government's motion because he did not intend to make any such arguments, and would only raise the issue of privacy if he testified. (Dkt. 174 at 45 ("It is not necessary for this Court to enter a blanket order prohibiting discussions of free speech and/or privacy rights. … Mr. Storm does not intend to make arguments aimed at jury nullification. And he does not intend to introduce or make any arguments about free speech. However, if Mr. Storm testifies, he may decide to discuss privacy, which is an issue that is essential to discussing the background and context of the Tornado Cash project.")).

    At the final pretrial conference, the Court accepted Storm's representation and did not rule on the admissibility of arguments regarding privacy rights except as related to Storm's testimony:

"privacy rights, I understand those aren't being discussed. If he testifies, Mr. Storm can discuss his beliefs about the importance of privacy." (FPTC Tr. 130).

Despite this, during his opening statement, Storm argued about privacy rights, and speculated about why jurors would personally want to be able to conceal their identities through a mixer like Tornado Cash, inviting the jury to nullify based on concepts of privacy rights and/or their own personal privacy concerns, rather than render a fair and impartial verdict based on the evidence:

> What do I mean when I say financial privacy? Well, it is the right to keep your financial transactions private from the public and this is a right that many of us just simply take for granted. How would you feel if someone took your bank account and published it on the internet and everyone could see it? They could figure out maybe where you shop, what you like to eat, how much money you have in your account. Maybe even where your kids go to school. You would not feel very safe and you certainly would feel—

(Trial Tr. 69).

Storm plainly suggested to the jury that his conduct should be protected by privacy rights—appealing to their sense of their own personal privacy rights—and in no way limited or tied the argument to his state of mind. On the contrary, defense counsel said she was speaking about "what … I mean when I say financial privacy." (Trial Tr. 69). Defense counsel's personal views on privacy rights are irrelevant to any issue for the jury to decide and these remarks were improper.

While Storm told this Court that it "should decline the government's request to act 'in an abundance of caution' and deny the motion" regarding privacy and free-speech right arguments (Dkt. 174 at 46), his opening statement demonstrates that that caution was well-placed. This Court should hold Storm to his word, and ensure that, in the Court's own words, "[f]ree speech and privacy rights … aren't being discussed" (FPTC Tr. 130) by granting the Government's motion *in limine*.

### B.  Testimony of Matthew Green

During his opening statement, Storm stated that "you are going to hear from experts that there are high profile examples of people being kidnapped and extorted." (Trial Tr. 74). This appears to refer to a sentence in the expert disclosure for Green regarding "dangerous gangs" and "people being threatened, harmed, and even kidnapped by bad actors attempting to take their cryptocurrency." (Dkt. 159-2 at 5).

The Government previously moved to preclude Green's testimony in its entirety. (Dkt. 159 at 6–14). At the final pretrial conference, the Court expressed concern about Green's testimony and limited it in certain respects, but also held that "testimony regarding privacy features" was admissible for the limited purpose of "whether certain of the defendant's conduct evinces a criminal intent or some other intent." (FPTC Tr. 138). Storm has apparently interpreted that ruling as

Hon. Katherine Polk Failla
July 16, 2025
Page 3 of 4

permitting Green to testify broadly about some unspecified number of criminal incidents,[1] without any connection to this case and without any apparent evidentiary basis to suggest that such incidents bear on Storm's state of mind or that he was even aware of them. Notably, Storm's opening statement introduced this testimony as part of a general argument about the "need" for Tornado Cash, without any reference to Storm's state of mind or intent. Rather, it appears to be an attempt to "back-door" inappropriate testimony and/or argument, which this Court already warned against. (FPTC Tr. 138 ("I'm not going to allow this sort of testimony about this ultimate issue to be back-doored through presenting it in terms of industry practice. Whether things are legal or legitimate or whether folks are thinking about being lawful or unlawful, is too close to a legal condition based on the facts of this case.")).

In short, this Court should not permit Green to testify to criminal incidents, which Storm has not tied to his state of mind—and has not proffered evidence that he could do so absent his own testimony. Beyond that, testimony concerning dangerous gangs and bad actors threatening, harming, and kidnapping people for their crypto is not the purview of expert testimony, is inflammatory, and calls for jury nullification, which Storm all-but-explicitly sought in his opening statement when he asked what the jurors would think if their personal data were publicly available; indeed, Storm went so far as to invoke jurors' concerns safety of their own children. (Trial Tr. 69 ("Maybe even where your kids go to school. You would not feel very safe ….")). Accordingly, the Government respectfully requests that the Court preclude Green from testifying about criminal incidents. Moreover, to the extent that Storm argues that specific criminal incidents are fair play because: (1) they occurred (as opposed to being speculative or hypothetical); (2) Green has a proper foundational basis to discuss those incidents; and (3) they bear on Storm's state of mind, this Court should direct Storm to provide prompt notice of such "high profile examples" of any criminal activity it intends to elicit from Green, the date of any such incidents, and the basis for an argument that they would bear on Storm's state mind during the charged time period. This will

---

[1] It is unclear what expert basis Green has regarding these unspecified criminal incidents.

Hon. Katherine Polk Failla
July 16, 2025
Page 4 of 4

allow the Court to address any objections to this facially inflammatory and prejudicial testimony before it is presented to the jury.

                              Respectfully submitted,

                              JAY CLAYTON
                              United States Attorney

By:      /s/ Thane Rehn
        Ben Arad
        Thane Rehn
        Benjamin A. Gianforti
        Assistant United States Attorneys
        (212) 637-6521 / -2490 / -2354

        Kevin Mosley
        Special Assistant United States Attorney

cc:    Counsel for defendant Roman Storm (by email and ECF)