

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

July 19, 2025

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

<u>*Via ECF*</u>

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:    United States v. Storm, 23 Cr. 430 (KPF)**

Dear Judge Failla:

On behalf of our client, defendant Roman Storm, we write to request exclusion of testimony of government expert Phillip Werlau regarding hypothetical software modifications Mr. Storm could have implemented to prevent misuses of Tornado Cash.[1]

The government's demonstrative slides for Werlau includes a slide that references a "hypothetical user registry smart contract." (GX 3005 at PDF 34.) This slide appears to relate to a section of Werlau's February 14, 2025 disclosure that states:

> This means that the Tornado Cash founders could also have implemented a new smart contract with a registry of authorized users, and could have programmed the Router to call that smart contract to check that the deposit address and/or withdrawal address were included on that list. This hypothetical smart contract could have been set up so that the Tornado Cash founders, or another person or entity, had the ability to add or remove authorized users based on a KYC process.

(Ex. 1 at 10.)

Testimony regarding a "hypothetical user registry smart contract" is exactly the sort of hypothetical software modification this Court stated it would not permit Werlau to testify about.

---

[1] The parties met and conferred about this issue and another issue, Werlau testifying about a "business model." Regarding the latter, the government agreed that Werlau would not use that term or testify about that subject matter, and references to it would be removed from the government's demonstrative slides for him.

Hon. Katherine Polk Failla<br>
July 19, 2025<br>
Page 2 of 3

As the Court recognized, "[t]his isn't a negligence case. It's a willfulness case." (7/8/2025 Tr. at 58:2-3.) This Court explained:

> To the extent Mr. Werlau can come up with some crazy thing that no one could have known, that would have fixed this, not going to be helpful, right? I presume what he's going to testify -- I'm telling you what he's going to testify are things that any software developer would have known, such as -- again, Mr. Storm is not being charged with negligence. He's not being charged with not being the greatest, most comprehensive software developer in the world. You're going to be arguing that there are things that, if you will, and with all respect, any idiot would have known to have put in place that he knew about and elected not to put in place. That's what Werlau is testifying to.

(*Id.* at 61:23-62:10.) This Court went on to make clear, "I'm not letting him speak about any possible thing that could be done, because of course everything has to be something that Mr. Storm should have known about, knew about, and elected not to do." (*Id.* at 98:6-9.)

Yet, Werlau appears poised to testify about a "possible" thing that "could have" been done that this Court found inadmissible. The use of the term "hypothetical" is telling because there will be no evidence that a "user registry smart contract" has ever actually been used in the blockchain industry. This is term Mr. Werlau invented, and he points to no code that could accomplish it. It is not the sort of thing that "any idiot" would have known to put in place.

Moreover, Werlau's reference to a hypothetical user registry smart contract is particularly troubling because Werlau himself has related it to a KYC process. (Ex. 1 at 10.) And this Court disallowed testimony regarding KYC and similar processes:

> What I'm concerned about, though, is that it looks like Mr. Werlau is going to be talking about know your customer rules or know your customer protocols. When you start doing that, I get concerned, because he didn't have a legal or regulatory obligation to implement "know your customer" protocols. So, therefore, I am troubled by the idea of him being convicted for not doing what he was not legally required to do. So, that's a thing.

(7/8/2025 Tr. at 58:24-59:6.) This Court stated: "the words 'know your customer,' KYC, AML, ABM, should not be coming from his lips." (*Id.* at 134:7-8.)

But as Werlau makes clear in his disclosure, the whole point of his "hypothetical user registry smart contract" is that Mr. Storm would have had "the ability to add or remove authorized users

Hon. Katherine Polk Failla
July 19, 2025
Page 3 of 3

based on a KYC process." (Ex. 1 at 10.) Even if Werlau does not utter the words "KYC," his point would still be that Mr. Storm should have implemented that sort of process.[2]

For all the foregoing reasons, this Court should not permit Werlau to testify or use slides regarding "hypothetical" measures Mr. Storm could have implemented, such as a user registry smart contract. The defense maintains all of its prior objections to Werlau's testimony,

Respectfully submitted,

*(signature)*

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Christopher Morel
Hecker Fink LLP

*Attorneys for Roman Storm*

---

[2] For this reason, defense expert Michael Carter, based on his considerable experience in compliance, discusses why such hypothetical smart contracts cannot exist, given how KYC processes actually work. (*See* Carter Supplemental Disclosure ¶¶ 9-19). He further opines that such a hypothetical smart contract would "create significant legal and operational risks for the software developers, and data security and data privacy risks for the users." (*Id.* ¶ 19). Indeed, he opines that it would be "unethical to direct developers to collect, hold, and safeguard personal information about persons to whom they have no contractual relationship or duties." (*Id.* ¶ 14).