

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

July 20, 2025

**BY EMAIL AND ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Roman Storm*, 23 Cr. 430 (KPF)

Dear Judge Failla:

    The Government respectfully writes in opposition to the defendant's motion, filed July 19, 2025 (the "Motion"), to exclude testimony of Philip Werlau concerning how the defendant could have modified Tornado Cash to deter criminals from using it. The Motion misstates the Court's prior ruling on this issue, ignores the Government's proffers regarding Mr. Werlau's intended testimony, and seeks to exclude critical evidence that goes to the core of this case. The Motion is an attempt to relitigate an issue already decided by the Court, and it should be denied.

    At the July 8, 2025 pretrial conference, the Court ruled that the Government could argue—and Mr. Werlau could testify—that the defendant could have made changes to Tornado Cash that "could have been a way of identifying the source of something, or preventing folks from using Tornado Cash," provided that those possible modifications were "thing[s] that Mr. Storm must have known about—one might say most people in his position would have known about [them]—that he could have implemented and that he deliberately elected not to." July 8, 2025 Tr. at 58:6-9. The Court expressly distinguished such testimony from testimony about know-your-customer ("KYC") protocols, permitting the former and forbidding the latter. *Id.* at 59:8-12 (Allowing Mr. "Werlau [to testify] about a thing that could be done that anyone could do that was feasible, that was known, that was not selected, and have that be evidence of willfulness, as distinguished from there's a whole bunch of things called 'know your customer' protocols"). "[T]he issue," the Court instructed, "is whether the technology [underlying the possible changes] is feasible and not whether it was required by statute or regulation, and then whether Mr. Storm's conscious decision not to employ it or to employ something that he knew was going to fail is somehow indicative of willfulness." *Id.* at 59:18-23. The primary reason this Court permitted this testimony is obvious: the defendant has argued he was unable to, and it was not feasible to, stop criminal activity on the Tornado Cash service. (Dkt. 37-1 at 2). Mr. Werlau's proposed testimony is fully consistent with the Court's ruling.

    As an initial matter, the Government has already made clear that Mr. Werlau will not make mention of regulatory obligations and related terminology. *Id.* at 60:23-61:3 ("[O]ne thing to bear in mind is we produced the Werlau disclosure at a point in time when the [18 U.S.C.

Hon. Katherine Polk Failla
July 20, 2025
Page 2 of 3

§] 1960(b)(1)(B) failure to register charge—we were still planning to proceed, so to the extent [the disclosure] refers to terms like KYC, we do not intend to have him use that term or similar terms, AML, anything like that, anything relating to any sort of regulatory obligation."). Accordingly, the defendant's concern that Mr. Werlau has previously "related" the possible measures he will testify about "to a KYC process" is misplaced. Dkt. 206, Mot. at 2.

With respect to whether the defendant was familiar with the possible changes that Mr. Werlau will identify, Mr. Werlau is expected to testify that those changes were technologically similar to other modifications that the defendant and his co-conspirators actually implemented—thus establishing that the changes were feasible, and the defendant knew it. As the Government previously proffered:

> [Mr. Werlau will explain how] changes to the code [made by the defendant and his co-conspirators in February 2022] *are themselves a model* that could be used to implement a "registry of authorized users" that would allow the service to confirm the identity of people making deposits and withdrawals . . . . In fact, Werlau's disclosure explains exactly how multiple other smart contracts worked together to effectuate deposits and withdrawals, and then explains that an additional smart contract could have been integrated into the architecture *in the same way*.

Dkt. 175 at 11 (quoting Werlau disclosure ¶ 18) (emphasis added); *see also* July 8. 2025 Tr. at 63:15-20 (proffering that Mr. Werlau's testimony will "discuss similar analogous changes to the ones that were in fact made that could have easily been implemented . . . to screen out known criminal deposits into the service, and also to deal with the known criminal withdrawals from the service").[1] The Court should deny the Motion, which fails to even acknowledge this and other proffers by the Government that place Mr. Werlau's testimony squarely within the confines of the Court's July 8 ruling.

At bottom, and as discussed at the July 8 conference, this case is in the heartland of money laundering prosecutions. It is about the defendant's control over a business that laundered criminal proceeds, could have stopped, and chose not to—like a restaurateur who consciously accepts criminal proceeds in the form of cash even though it would be perfectly feasible to take measures to prevent the ongoing laundering activity. Accordingly, Mr. Werlau's proposed testimony about measures the defendant must have known he could have taken to stop laundering criminal proceeds

---

[1] The Government had its first meeting with Mr. Werlau since the pretrial conference yesterday, and asked him about this issue in light of the Court's remarks at the pretrial conference. In response, Mr. Werlau explained, among other things, that a user registry as described in his expert disclosure would be "easy to implement and very simple," and that a "junior developer could implement the design." According to Mr. Werlau, it is "widely known that many websites have registered users and track user activity," and the concept of a user registry smart contract is a "similar concept" to the relayer registry that the defendant and his co-conspirators in fact implemented in February 2022. (3511-021).

is directly relevant to a principal issue in this case. Indeed, when the Government said the defendant is "going to make some sort of defense about how [he] purportedly couldn't stop" criminals from using Tornado Cash, the Court observed: "That's why we're having a trial." July 8, 2025 Tr. 63:7-9, 12. The Motion seeks to expand the Court's prior ruling[2] so that it precludes any testimony of ways in which Tornado Cash could have stopped engaging with criminals—even methods that a jury could conclude the defendant clearly knew about, because they were both well within the capability of software developers and technologically analogous to other measures he had implemented. It should be denied.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:     /s/ Thane Rehn
Ben Arad
Thane Rehn
Benjamin A. Gianforti
Assistant United States Attorneys
(212) 637-6521 / -2490 / -2354

Kevin Mosley
Special Assistant United States Attorney

cc: Counsel for defendant Roman Storm (by email and ECF)

---

[2] In seeking to revisit the Court's prior ruling about Mr. Werlau's testimony, the Motion relies on proposed testimony of defense expert Michael Carter that the Court has already precluded. Specifically, the defendant cites Carter's opinion "that it would be 'unethical to direct developers to collect, hold, and safeguard personal information about persons to whom they have no contractual relationship or duties.'" Mot. at 3 n.2 (quoting Carter Disclosure). But the Court already ruled at the July 8 conference, "I can tell you this: The proposed testimony regarding . . . the legal or ethical duties of software developers . . . is impermissible legal testimony." July 8, 2025 Tr. 143:17-22. The Court's prior ruling precluding this portion of Carter's proposed testimony should stand, as should its prior ruling allowing Mr. Werlau to testify about modifications to the Tornado Cash service that would have prevented its criminal use and would have been familiar to the defendant.