UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 23 Cr. 430 (KPF) |
| Plaintiff, | |
| -against- | |
| ROMAN STORM, ET. AL., | |
| Defendant. | |

## DEFENDANT ROMAN STORM'S
## REVISED PROPOSED JURY INSTRUCTIONS REGARDING COUNT THREE

## TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

PRELIMINARY STATEMENT ......................................................................................... 1

I.      Function of Court and Role of Jury ...................................................................... 2

II.     Statements of Court and Counsel Not Evidence.................................................. 4

III.    Government Treated Like Any Other Party ......................................................... 6

IV.     Presumption of Innocence and Burden of Proof.................................................. 7

V.      Reasonable Doubt ................................................................................................... 8

VI.     Number of Witnesses .............................................................................................. 9

VII.    Direct and Circumstantial Evidence .................................................................. 10

VIII.   Inferences ............................................................................................................... 12

IX.     Stipulation (If Applicable) ................................................................................... 13

X.      Limiting Instructions (If Applicable) .................................................................. 14

XI.     No Outside Communications, Outside Research, or Internet Research............ 15

XII.    Improper Considerations...................................................................................... 16

XIII.   Summary of the Indictment ................................................................................. 17

XIV.    Count One: Conspiracy to Commit Concealment Money Laundering.......................... 18

    A.  First Element of Count One – Existence of the Conspiracy ............................ 18

    B.  Object of the Conspiracy: To Commit Concealment Money Laundering........................ 20

        1.  Object Element One – Conducting a Financial Transaction.......................................... 22

        2.  Object Element Two – Transaction Involving Proceeds of Specified Unlawful Activity 22

        3.  Object Element Three – Knowledge that the Transaction Would Involve Proceeds of Some Form of Unlawful Activity ................................................................................. 23

        4.  Object Element Four – Knowledge that the Transaction Would Be Designed to Conceal or Disguise Nature, Location, Source, Ownership, or Control of Funds........ 24

    C.  Second Element of Count One – Membership in the Conspiracy .................................... 24

XV.     Count Two: Conspiracy to Operate an Unlicensed Money Transmitting Business ......... 28

    A.  First Element of Count Two – Existence of the Conspiracy ........................... 28

    B.  Object of the Conspiracy: To Operate an Unlicensed Money Transmitting Business ..... 29

        1.  Object Element One – Money Transmitting Business.............................................. 30

        2.  Object Element Two – Defendant's Knowledge ...................................... 32

        3.  Object Element Three – Defendant Controlled the Business ................................. 32

        4.  Object Element Four – Knowledge that Business Transmitted Funds Derived from a Criminal Offense.................................................................................................. 34

     5.    Object Element Five – Affecting Interstate Commerce .................................. 35

  C.   Second Element of Count Two – Membership in the Conspiracy ..................................... 35

  D.   Third Element of Count Two – Overt Act ..................................................................... 36

XVI.  Count Three: Conspiracy to Violate the International Emergency Economic  Powers Act (IEEPA) ................................................................................................................. 37

  A.   First Element of Count Three – Existence of the Conspiracy to Violate  the IEEPA ...... 38

  B.   Objects Charged of the Conspiracy to Violate the IEEPA .............................................. 38

  C.   Object of the Conspiracy to Violate the IEEPA – Substantive Elements ........................ 43

     1.    Object Element One – Violation of License, Order, or Regulation ............................. 43

     2.    Object Element Two – Property Within the United States or in Possession or Control of a U.S.  Person ........................................................................................................ 44

     3.    Object Element Three – Willfulness ........................................................................ 45

     4.    Object Element Four – OFAC license ..................................................................... 46

  D.   Second Element of Count Three – Membership in the Conspiracy................................... 46

  E.   No Overt Act Requirement ........................................................................................... 47

XVII.    OTHER INSTRUCTIONS ............................................................................... 48

  A.   Multiple Agreements ................................................................................................... 48

  B.   Venue ......................................................................................................................... 48

  C.   Variance in Dates and Times ....................................................................................... 49

  D.   Multiple Counts .......................................................................................................... 49

  E.   Credibility of Witnesses.............................................................................................. 49

  F.   Particular Investigative Techniques Not Required ........................................................ 53

  G.   Charts and Summaries (If Applicable) ......................................................................... 53

  H.   Testimony of Law Enforcement Officers ..................................................................... 53

  I.   Testimony of Experts .................................................................................................. 54

  J.   Preparation of Witnesses.............................................................................................. 55

  K.   Evidence Obtained From Searches ............................................................................... 55

  L.   Advice of Counsel / Good Faith .................................................................................. 56

  M.   Defendant's Testimony ............................................................................................... 56

  N.   Defendant's Right Not to Testify.................................................................................. 56

  O.   Theory of the Defense.................................................................................................. 57

## PRELIMINARY STATEMENT

Defendant Roman Storm respectfully submits the following revised proposed jury instructions pursuant to Rule 30 of the Federal Rules of Criminal Procedure.  All the revisions in these revised proposed instructions are in the proposed jury instructions for Count Three, the IEEPA count (Section XVI).  The revised proposed jury instructions are redlined so the Court can see the changes the defense is making to the proposed jury instructions.

It should be noted that in these revised proposed jury instructions, Mr. Storm makes references to the Lazarus Group.  Mr. Storm makes these references in light of the Court's previous ruling denying his motion *in limine* no. 1 to exclude references to the Lazarus Group. In now including references to the Lazarus Group, Mr. Storm in no way waives or forfeits his previous objection to making reference to the Lazarus Group.

Mr. Storm again reserves the right to object to the government's proposed instructions and the right to further modify his proposed instructions and/or seek additional ones if, for example, the evidence at trial necessitates modification.

I.      **Function of Court and Role of Jury**[1]

You have now heard all of the evidence in the case as well as the final arguments of the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  And you should know that you're going to be able to take a copy of these instructions into the jury room.

Your final role is to pass upon and decide the fact issues that are in the case.  You, the members of the jury, are the sole and exclusive judges of the facts.  You weigh the evidence or lack of evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony, and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.  I will later discuss with you how to pass upon the credibility—or believability—of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence.  The evidence before you consists of the answers given by witnesses—the testimony they gave, as you recall it—and the exhibits that were received in evidence.  The evidence does not include

---

[1] Adapted from charge of Hon. Lewis J.  Liman in *United States v. Phillips*, 22 Cr. 138 (LJL) (Oct. 2023) ("*Phillips*").

questions.  Only the answers are evidence.  But you may not consider any answer that I directed you to disregard.

You may also consider the stipulations of the parties as evidence.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the guilt of Mr. Storm has been proven beyond a reasonable doubt.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other witness.  I stress to you that the court has no opinion as to the verdict you should render in this case.

As to the facts, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice as to any party.

II.    **Statements of Court and Counsel Not Evidence**[2]

As I said, in determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. If your recollection of the facts differs from the statements made in opening or closing, you should rely on your recollection. If a statement was made during an opening or summation and you find that there is no evidence to support the statement, you should disregard the statement.

A question put to a witness is not evidence. It is only the answer coupled with question that is evidence. Nor is anything I may have said during the trial or may say during these instructions with respect to a fact is to be taken in substitution for your own independent recollection. What I say is not evidence.

Relatedly, do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the evidence, credibility of the witnesses or how you should decide the case.

In addition, remember that it is the duty of a party to object when the other side offers testimony or other evidence that the party believes is not properly admissible. Therefore, you should draw no inference from the fact that there was an objection to any evidence. An objection is not evidence. Nor should you draw any inference from the fact that I sustained or overruled an objection. Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its importance or significance. That is for you to decide.

The personalities and the conduct of counsel are not in any way at issue. If, from their conduct at this trial, you formed opinions of any kind about any of the lawyers in the case,

---

[2] *Id.*

favorable or unfavorable, whether you approved or disapproved of their behavior, those opinions should not enter into your deliberations.  The only issue is whether the government has proven each of the elements of the charged offenses beyond a reasonable doubt.

### III.    Government Treated Like Any Other Party[3]

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration.  All parties, whether government or individuals, stand as equals at the bar of justice.

---

[3] *Id.*

## IV.    Presumption of Innocence and Burden of Proof[4]

Now, I will instruct you on the presumption of innocence and the government's burden of proof in this case.  Mr. Storm has pleaded not guilty.  By doing so, he denies the charges in the Indictment.  Thus, the government has the burden of proving the charges against Mr. Storm beyond a reasonable doubt.  Mr. Storm is presumed innocent.  A defendant does not have to prove his innocence.  This presumption of innocence was in Mr. Storm's favor at the start of the trial, continued in his favor throughout the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

The government has the burden of proof in this case.  The presumption of innocence is removed as to Mr. Storm if *and only if* you, as members of the jury, are satisfied that the government has sustained its burden of proving the guilt of him beyond a reasonable doubt.

---

[4] *Id.*

## V.    Reasonable Doubt[5]

The government has the burden of proving Mr. Storm guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of Mr. Storm's guilt. A reasonable doubt is one that would cause a reasonable person to hesitate to act in a matter of importance in their own personal life. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely upon it in making an important decision.

There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, after fair and impartial consideration of the evidence or lack thereof, you are firmly convinced that Mr. Storm is guilty of the crime charged, you must find him guilty of that charge. If on the other hand, you have a reasonable doubt as to his guilt with respect to a particular charge, you must give him the benefit of the doubt and find him not guilty of that charge.

---

[5] "Firmly convinced" language adapted from Tenth Circuit Pattern Jury Instruction 1.05; Federal Judicial Center Pattern Instructions, General Criminal Instruction 21; *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) ("This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly."). The Second Circuit in *United States v. Reese*, affirmed this instruction. 33 F.3d 166, 172 (2d Cir. 1994). *Reese*, however, criticized as "potentially confusing" language later in the instruction stating that the jury should acquit if it found a "real possibility" that the defendant was not guilty. *Id.* This instruction thus omits the "real possibility" language and adds the "hesitate to act" language endorsed by the Second Circuit in *Reese* and included in the Sand instruction. *See* Sand, *Modern Federal Jury Instructions*, Instr. § 4-2 (Reasonable Doubt).

## VI.    Number of Witnesses[6]

The government is not required to prove the essential elements of either offense by any particular number of witnesses.  The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what they have told you.  Likewise, the testimony of one hundred witnesses may be insufficient if you do not credit their testimony or otherwise find that it does not prove the elements of the charged offenses beyond a reasonable doubt.  The government must prove its case beyond a reasonable doubt regardless of the number of witnesses called.

---

[6] Adapted from *Phillips supra* n.1.

## VII.    Direct and Circumstantial Evidence[7]

There are two types of evidence that you may properly use in deciding whether Mr. Storm is guilty or not guilty of the crimes with which he is charged.

One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise observed through the five senses.  The second type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day outside.  Also assume that the courtroom shades were drawn, and you could not look outside.  Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence.  You infer on the basis of your reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact.

---

[7] *Id*.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.

## VIII.  Inferences[8]

During the trial you may have heard the parties use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists.

There are times when different inferences may be drawn from facts, whether proven by direct or circumstantial evidence.  The government asks you to draw one set of inferences, while the defense asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

---

[8] *Id.*

**IX.    Stipulation (If Applicable)[9]**

In this case you have heard evidence in the form of stipulations of fact and testimony.  A stipulation of fact is an agreement between the parties that a certain fact or set of facts are true, and you must regard such agreed facts as true.  It is for you to determine the effect or weight to give those agreed-upon facts.  A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony.  You must accept as true the fact that the witness would have given the testimony.  However, it is for you to determine the effect or weight to give that testimony.

---

[9] *Id.*

X.    **Limiting Instructions (If Applicable)[10]**

If certain testimony or evidence was received for a limited purpose, you must follow the limiting instructions I have given and use the evidence only for the permissible limited purpose I indicated.

---

[10] *Id.*

## XI.    No Outside Communications, Outside Research, or Internet Research[11]

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom.  As I told you at the beginning of this case, you must not conduct any independent research about this case, the matters in this case, and the parties involved in the case.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, social media outlets, or use any other electronic tools to obtain information about this case or to help you decide the case.  You must not visit any location mentioned in this case for the purpose of investigating it.  Please do not try to find out information from any source outside the confines of this courtroom.

You must not talk to anyone about this case.  This includes your family and friends.  You may not communicate with anyone about the case by any means, including on your cell phone, through email, instant messaging, text messaging, through any blog or website, through any internet chat room, or by way of any other social networking platforms, including Facebook, Twitter (or "X"), Instagram, Threads, LinkedIn, Snapchat, and YouTube.

If you become aware that any other juror is violating this instruction, you should immediately bring it to my attention through my Courtroom Deputy, but please do not make it known to any other jurors.

---

[11] *Id.*

## XII.    Improper Considerations[12]

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.

It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about Mr. Storm's race, religion, national origin, sex, or age.  As I have explained to you, all persons are entitled to the presumption of innocence, and the government has the burden of proof.

It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.

I also caution you that, under your oath as jurors, you cannot allow to enter into your deliberations any consideration of the punishment that may be imposed upon Mr. Storm if he is convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court, and the issue of punishment may not affect your deliberations as to whether the government has proven his guilt beyond a reasonable doubt.

Under your oath as jurors, you are not to be swayed by sympathy.  It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking there is a risk that you will not arrive at a true and just verdict.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.  If you have a reasonable doubt as to Mr. Storm's guilt, you should not hesitate for any reason to return a verdict of not guilty.  But, on the other hand, if you should find that the government has met its burden of proving his guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to return a verdict of guilty.

---

[12] Adapted from *id.* (combining instructions on Improper Considerations, Punishment Is Not to Be Considered by the Jury, and Sympathy: Oath of Jurors).

### XIII. Summary of the Indictment[13]

Mr. Storm has been formally charged in an Indictment containing three counts, or charges.  In your deliberations and in reaching your verdict, you must consider each count separately.

Count One charges that, from at least in or about September 2020, up to and including in or about August 8, 2022, Mr. Storm willfully and knowingly participated in a money laundering conspiracy by agreeing with others to engage in certain financial transactions in order to conceal and disguise the ownership and control of the proceeds of specified unlawful activity.

Count Two charges that, from at least in or about March 2022, up to and including in or about August 8, 2022, Mr. Storm willfully and knowingly conspired with others to conduct, control, manage, supervise, direct and own an unlicensed money transmitting business.

Count Three charges that, from at least on or about April 14, 2022, up to and including on or about August 8, 2022, Mr. Storm willfully and knowingly conspired with others to violate and cause a violation of licenses, orders, regulations, and prohibitions issued under the International Emergency Economic Powers Act ("IEEPA").

Mr. Storm denies that he is guilty of these three charges.  Mr. Storm is not charged with committing any crime other than the three offenses alleged in the Indictment.  You are here only to determine whether the government has proven Mr. Storm guilty beyond a reasonable doubt of the three specific charges in the Indictment.

---

[13] Adapted from charge of Hon. Alison Nathan in *United States v. Ali Sadr Hashemi Nejad,* 18 Cr. 224 (Mar. 12, 2020) (hereafter, "*Nejad*").

## XIV.   Count One: Conspiracy to Commit Concealment Money Laundering[14]

To sustain its burden of proof with respect to the conspiracy charge in Count One, the government must prove beyond a reasonable doubt each of the following elements:

*First*, the government must prove that the conspiracy charged in Count One existed.  That is, that there was an unlawful agreement or understanding among at least two people to engage in concealment money laundering, as I will further define below.

*Second*, the government must prove that Mr. Storm knowingly and willfully became a member of that conspiracy, with the specific intent to commit the offense that is the object of the conspiracy.[15]

Each of these elements must be satisfied beyond a reasonable doubt.

### A.       First Element of Count One – Existence of the Conspiracy[16]

The first element that the government must prove beyond a reasonable doubt is that two or more persons entered into an unlawful agreement charged in Count One—that is, that two or more persons agreed to commit money laundering by engaging in financial transactions that involved the proceeds of specified unlawful activity, in order to conceal or disguise the nature, location, source, ownership, or control of the proceeds of that activity.[17]

---

[14] *Id.*; *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009); Sand, *Modern Federal Jury Instructions*, Instr. 19-3 (Elements of the Conspiracy).

[15] Final clause adapted to *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) ("knowingly engaged in the conspiracy with the specific intent to commit the offenses that [are] the objects of the conspiracy"); cited by both parties in the motion to dismiss briefing.  (*See* Dkt. 30, 53.)

[16] *Nejad supra* n.13; *see also* charge given by Hon. Loretta Preska in *United States v. Adelekan*, 19 Cr. 291 (Oct.  26, 2021) (hereafter, "*Adelekan*"); charge given by Hon. Lewis Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Dec.  12, 2023) (hereafter, "*Bankman-Fried*"); *United States v. Rahmankulov,* No. 20 Cr. 653 (Abrams, D.J.) (Aug. 30, 2022) (ECF No. 253-1 Court's Proposed Jury Charge) ("*Rahmankulov*"); *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009); Sand, *Modern Federal Jury Instructions*, Instr. 19-3 (Elements of the Conspiracy).

[17] *Nejad supra* n.13; *Rahmankulov supra* n.16.

A conspiracy is an agreement or understanding between two or more persons to accomplish some unlawful purpose. To establish the existence of a conspiracy, however, the government is not required to show that two or more people sat around a table and entered into a formal contract. It is sufficient if two or more persons, in any manner, came to a common understanding to violate the law. Express language or specific words are not required to indicate agreement to or membership in a conspiracy. It is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed. Nevertheless, in determining whether two or more individuals have agreed to commit a crime, you may look at all of their conduct—including any acts done to carry out an apparent criminal purpose—and determine whether that conduct reflects an intent to carry out a common criminal purpose.[18]

If, upon consideration of all the evidence, direct and circumstantial, you find that the government has proven beyond a reasonable doubt that there was a meeting of the minds or agreement between two or more persons to commit the unlawful objective charged in Count One, then proof of the existence of a conspiracy is established. Mere discussions about crimes or mere knowledge of crimes without an agreement to commit them is not a conspiracy. Further, agreement to achieve a lawful goal is not the same as a criminal conspiracy—two or more individuals must have agreed to commit the crime of conducting financial transactions knowing that they involved the proceeds of specified unlawful activity and knowing that the transactions were designed in whole or in part to conceal or disguise the ownership or control of the proceeds of specified unlawful activity.[19]

---

[18] *Nejad supra* n.13.
[19] *Id.*

I will now instruct you further on the charged object of conducting a financial transaction involving the proceeds of specified unlawful activity.

### B.    Object of the Conspiracy: To Commit Concealment Money Laundering[20]

The objects of a conspiracy are the illegal goal or goals the co-conspirators agree or hope to achieve.  The object of the conspiracy charged in Count One is money laundering, which is a crime under 18 United States Code, section 1956.  Specifically, Count One alleges a conspiracy to commit concealment money laundering.

In order to prove that Mr. Storm entered into a conspiracy with the objective of committing concealment money laundering, the government must establish beyond a reasonable doubt:

*First*, that a person who is part of the conspiracy[21] conducted[22] a "financial transaction" that affected interstate or foreign commerce;

---

[20] *Rahmankulov supra* n.16; *see also Adelekan supra* n.16, *Bankman-Fried supra* n.16; Sand, *Modern Federal Jury Instructions*, Instr. 50A-8; 18 U.S.C § 1956(c)(6)(A); 31 U.S.C. § § 5312(a)(2), (R).

[21] *Bankman-Fried supra* n.16.  Conspiracy liability does not make a defendant liable for the acts of third parties who are not his co-conspirators. Rather, defendant is only vicariously "responsible for the substantive illegal acts of [his] co-conspirators, done in furtherance of the conspiracy, even though he may not have participated directly in them." *United States v. Head*, 546 F.2d 6, 10 (2d Cir. 1976); *see also United States v. Piampiano*, C.A.2 (N.Y.) 1959, 271 F.2d 273 ("act of one conspirator is imputed to the other conspirators."); *United States v. Collazo*, 984 F.3d 1308, 1320 (9th Cir. 2021) ("[I]n order to convict a defendant of conspiracy, the government must prove beyond a reasonable doubt that (1) the defendant agreed with another person that some member of the conspiracy would commit the relevant underlying offense . . . and that (2) the defendant had the requisite intent necessary for a conviction of the underlying offense"); 15 A C.J.S. Conspiracy § 283 ("A charge of conspiracy to launder money requires proof that the defendant knowingly was involved with at least one other person *who has agreed with the defendant to commit an act of money laundering*") (emphasis added).

[22] To the extent this and other instructions often includes alternative conditional language such as "would have conducted" "if the conspiracy had …its objective achieved," we believe such conditional language is superfluous here and may unnecessarily confuse the jury.  Here, the government alleges that the objective of the conspiracy was achieved.  Deleting this unnecessary language will streamline the instruction and focus the jury on what is at issue.

*Second*, that the financial transaction at issue involved the proceeds of some form of specified unlawful activity;

*Third*, Mr. Storm knew[23] that the financial transaction involved the proceeds of some form of unlawful activity; and

*Fourth*, Mr. Storm knew that the transaction was designed in whole or in part either to conceal or disguise either the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.[24]

---

[23] *Adelekan supra* n.16.  *See United States v. Tavoularis*, 515 F.2d 1070, 1074 (2d Cir. 1975) (holding that "where a substantive offense requires specific knowledge, that same knowledge must be established before a defendant can be found to be a member of a conspiracy to commit that offense" and rejecting as "an erroneous statement of legal principle" where district court "apparently held that, if any one defendant had the requisite knowledge, it could be imputed to the other defendants for purposes of the conspiracy count") (applying *Ingram v. United States*, 360 U.S. 672, 678 (1959) (conspiracy "to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself"). *See also United States v. Bufalino*, 285 F.2d 408, 416 (2d Cir. 1960) ("[e]vidence of the same intent or knowledge would be required to convict conspirators as to convict those charged with the substantive offense"); *United States v. Steward*, 451 F.2d 1203, 1207 (2d Cir. 1971) ("the government cannot attribute Steward's possession to Sands and thereby establish the latter's knowledge of [the substantive offense]—a necessary element of his conviction as a principal, conspirator or aider and abettor"); *United States v. Hysohion*, 448 F.2d 343, 347 (2d Cir. 1971) (reversing defendants' convictions where government failed to prove that defendants knew that the heroin offered for sale had been illegally imported"); *Jefferson v. United States*, 340 F.2d 193, 197 (9th Cir. 1965) (reversing conviction where jury was instructed that the knowledge of one member of the conspiracy could be imputed to all members of the conspiracy).
[24] Third and fourth elements from *Adelekan supra* n.16.

### 1.    Object Element One – Conducting a Financial Transaction[25]

The first element of concealment money laundering requires that the government prove beyond a reasonable doubt that a person who is part of the conspiracy conducted a "financial transaction" that affected interstate or foreign commerce.[26]

- The term "conducted" includes the action of initiating, concluding, or participating in initiating or concluding a transaction.[27]

- A "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition of property.[28]

- The term "financial transaction" means a "transaction" which affects interstate or foreign commerce and involves the movement of funds by wire or other means.[29]

- The term "funds" includes any currency, money, or other medium of exchange that can be used to pay for goods and services.[30]

- The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.[31]

### 2.    Object Element Two – Transaction Involving Proceeds of Specified Unlawful Activity[32]

The second element of the object of concealment money laundering requires that the government prove beyond a reasonable doubt that the financial transaction at issue involves the proceeds of specified unlawful activity.

---

[25] *Rahmankulov supra* n.16; *see also Bankman-Fried supra* n.16; Sand, *Modern Federal Jury Instructions*, Instr. 50A-8 (Financial Transaction Involving Proceeds of Unlawful Activity Instruction); 18 U.S.C. § 1956(c)(6)(A); 31 U.S.C. §§ 5312(a)(2), (R).

[26] *Bankman-Fried supra* n.16.

[27] *Id.*; *see also Rahmankulov supra* n.16.

[28] *Rahmankulov supra* n.16.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*; *see also Adelekan supra* n.16; Sand, *Modern Federal Jury Instructions*, Instr. 50A-28 (Transaction Involved Criminally Derived Property).

- The term "proceeds" means any property, or any interest in property, that someone acquires or retains as profits resulting from the commission of the specified unlawful activity.[33]

Here, the government alleges that the financial transactions involved proceeds of the following specified unlawful activity:  computer fraud and abuse, in violation of Title 18, United States Code, Section 1030.[34]  I instruct you, as a matter of law, that the term "specified unlawful activity" includes this specified unlawful activity.  The government does not need to prove this specified unlawful activity beyond a reasonable doubt.  It is sufficient if you find that the government has proven beyond a reasonable doubt that the financial transaction involved the proceeds of computer fraud and abuse.[35]

### 3.    Object Element Three – Knowledge that the Transaction Would Involve Proceeds of Some Form of Unlawful Activity[36]

The third element of concealment money laundering requires that the government prove beyond a reasonable doubt that Mr. Storm knew that the financial transaction involved the proceeds of some form of unlawful activity.  Keep in mind that it is not necessary for Mr. Storm to believe that the proceeds would come from computer fraud specifically; it is sufficient that Mr. Storm believed that the proceeds would come from *some* unlawful activity.

---

[33] *Adelekan supra* n.16.

[34] The government must prove, beyond a reasonable doubt, that that someone committed the underlying SUA by showing that individual "committed all elements of the underlying offense." *United States v. Silver*, 948 F.3d 538, 576 (2d Cir. 2020).  However, wire fraud cannot qualify as the predicate SUA here because the Second Circuit has held that the wire fraud statute does not have extraterritorial application.  *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129, 140-41 (2d Cir. 2014), *rev'd on other grounds, RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325 (2016); *see also United States v. Prevezon Holdings LTD.*, 122 F. Supp. 3d 57, 70 (S.D.N.Y. 2015) (finding "that the wire fraud alleged . . . cannot qualify as the relevant SUA, because the alleged scheme [was] not sufficiently domestic and [was] therefore not actionable under U.S. law").  As such, the predicate SUA of wire fraud should not be submitted to the jury.

[35] *Adelekan supra* n.16.

[36] *Id.*; *see also Rahmankulov supra* n.16.

    **4.**    **Object Element Four – Knowledge that the Transaction Would Be Designed to Conceal or Disguise Nature, Location, Source, Ownership, or Control of Funds[37]**

The fourth and final element of concealment money laundering requires that the government prove beyond a reasonable doubt that Mr. Storm knew that the transaction was designed in whole or in part either to conceal or disguise either the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

As I have previously instructed, to act knowingly means to act purposely and deliberately and not because of mistake or accident, mere negligence, or other innocent reason. That is, the acts must be the product of Mr. Storm's conscious objective. If you find that the evidence establishes beyond a reasonable doubt that Mr. Storm knew the purpose of the particular transaction in issue, and that the transaction would be designed to either conceal or disguise the true origin of the property in question, then this element is satisfied.

Again, Mr. Storm need not know which "specified unlawful activity" he was agreeing to help conceal. He need only know that a purpose of the financial transaction was concealing the nature, location, source, ownership, or control of the funds.

**C.**    **Second Element of Count One – Membership in the Conspiracy[38]**

The government must also prove beyond a reasonable doubt that Mr. Storm knowingly, willfully, and voluntarily entered into the conspiracy.[39]

As I have instructed you, to act knowingly means to act intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. To act willfully means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids,

---

[37] *Adelekan supra* n.16; *Rahmankulov supra* n.16.

[38] *Nejad supra* n.13; *Rahmankulov supra* n.16; Sand, *Modern Federal Jury Instructions*, Instr. 19-3S (Short Form Instruction); *id*. Instr. 19-6 (Membership in the Conspiracy).

[39] Sand, *Modern Federal Jury Instructions*, Instr. 19-6 (Membership in the Conspiracy).

that is to say with the bad purpose to disobey or disregard the law.  You must determine: Did Mr. Storm join the conspiracy knowing of its unlawful aim and purpose and with the specific intent of furthering that unlawful purpose?[40]

Thus, if a defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, this element cannot be established because a defendant who acted in good faith cannot be found to have acted knowingly, willfully, and with the unlawful intent required in this element.  The burden of establishing knowledge and lack of good faith rests upon the government.  Mr. Storm is under no burden to prove his good faith; rather, the government must prove Mr. Storm's knowing and willful participation beyond a reasonable doubt.[41]

Now, knowledge is a matter of inference from the facts proved.  Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  However, you do have before you the evidence of certain acts and conversations alleged to have taken place involving Mr. Storm or in his presence.  You may consider this evidence in determining whether the government has proven beyond a reasonable doubt Mr. Storm's knowledge of the unlawful purpose of the conspiracy.[42][43]

---

[40] *Rahmankulov supra* n.16.  In *Attila*, the government disputed that it had to show that the defendant had actual knowledge of the conspiracy's unlawful purpose *and* the specific intent to further it, but the court gave this instruction over its objection.  The defense also offered a specific paragraph that stated that the government had to show a specific intent to further the unlawful object, but the court did not include the paragraph.  Joint Proposed Requests to Charge, *United States v. Attila,* No.  15 Cr. 867 (Berman, D.J.) (Oct.  30, 2017) (ECF No. 324) (Gov't Request 27 at pg. 65-67) (hereafter, "Joint Proposed Requests to Charge, *Attila*").

[41] *Nejad supra* n.13.

[42] *Id*.

[43] The defense suggests deleting this portion of the form instruction as irrelevant to the facts of the case and the theories in the Indictment:

> It is not necessary for the government to show that a defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part.  To have guilty knowledge, a defendant need not have known the full extent of the conspiracy or

Nor is it necessary that Mr. Storm received any monetary benefit from his participation in the conspiracy, or had a financial stake in the outcome. However, although proof of a financial interest in the outcome of a scheme is not essential or determinative, if you find that Mr. Storm had a financial or other interest, that is a factor you may properly consider in determining whether Mr. Storm was a member of the conspiracy.[44]

Each member of a conspiracy may perform separate and distinct acts and may perform them at different times. Some conspirators may play major roles, while others play minor roles in the scheme. An equal role or an important role is not what the law requires. In fact, even a single act can be sufficient to make a defendant a participant in an illegal conspiracy.[45]

However, a person's mere association with a member of the conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place. Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction. A person may know, or be friendly with, a criminal, without being a criminal himself. In other words, knowledge without agreement and participation is not sufficient. What is necessary is that a defendant participate in the conspiracy with knowledge of its unlawful purpose or objective, and with an intent to aid in the accomplishment of its unlawful objectives.[46]

---

all of the activities of all of its participants. It is not even necessary for a defendant to know every other member of the conspiracy.

*See id*. at 24. The government does not allege that Mr. Storm lacked knowledge of the full extent of the conspiracy, its members, or other details of the conspiracy.

[44] *Id*. Some instructions also include a statement regarding the relevance (or irrelevance) of the "duration and extent of a defendant's participation in the conspiracy." We submit this language is superfluous and confusing because it is not relevant to the government's theory in this case, which is that Mr. Storm was continuously involved in the proposed conspiracies from the beginning.

[45] *Id*.

[46] *Id*.

In the context of this case, a mere drafter of computer code underlying a particular software platform cannot be liable for a third-party's misuse of that platform.[47]

In sum, Mr. Storm, with an understanding of the unlawful nature of the conspiracy, must have intentionally engaged, advised or assisted in the conspiracy for the purpose of furthering an illegal undertaking.[48]

---

[47] *Risley v. Universal Navigation Inc.,* 690 F. Supp. 3d 195, 215 (S.D.N.Y. 2023) (Failla, D.J.), *aff'd in relevant part, vacated in part on other grounds, remanded,* No. 23-1340-CV, 2025 WL 615185 (2d Cir. Feb. 26, 2025).

[48] *Nejad supra* n.13.

**XV.    Count Two: Conspiracy to Operate an Unlicensed Money Transmitting Business[49]**

To sustain its burden of proof with respect to the conspiracy charge in Count Two, the government must prove beyond a reasonable doubt each of the following elements:

*First*, the government must prove that the conspiracy charged in Count Two existed. That is, that there was an agreement or understanding among at least two people to conduct, control, manage, supervise, direct, or own an unlicensed money transmitting business, which affected interstate and foreign commerce.

*Second*, the government must prove that Mr. Storm knowingly and willfully became a member of the conspiracy, with intent to further its illegal purpose, that is, with the intent to commit the object of the charged conspiracy.[50]

*Third*, the government must prove that a member of the conspiracy committed at least one overt act in furtherance of the conspiracy.  Each of these elements must be satisfied beyond a reasonable doubt.

**A.    First Element of Count Two – Existence of the Conspiracy[51]**

The first element that the government must prove beyond a reasonable doubt is that two or more persons entered into the unlawful agreement charged in Count Two—that is, that two or more persons agreed to conduct, control, manage, supervise, direct, or own an unlicensed money transmitting business, which affected interstate and foreign commerce.  I have already instructed you on the elements of a conspiracy charge generally and those instructions apply to Count Two.

---

[49]  *Rahmankulov supra* n.16; *see also* Sand, *Modern Federal Jury Instructions*, Instr. 19-3 (Elements of the Conspiracy).

[50]  *Rahmankulov supra* n.16.

[51]  *Id*.; Sand, *Modern Federal Jury Instructions*, Instr. 19-3 (Elements of the Conspiracy).

## B.      Object of the Conspiracy: To Operate an Unlicensed Money Transmitting Business[52]

As I explained earlier, the object of a conspiracy is the illegal goal that the co-conspirators agree to achieve. Here, the object of the conspiracy in Count Two is to conduct, control, manage, supervise, direct, or own an unlicensed money transmitting business. Thus, to prove that Mr. Storm is guilty of the conspiracy offense charged in Count Two, the government must prove beyond a reasonable doubt that Mr. Storm entered into an agreement with one or more other persons to conduct, control, manage, supervise, direct, or own an unlicensed money transmitting business.[53]

To prove that the criminal offense of operating an unlicensed money business was the object of the conspiracy, the government must prove beyond a reasonable doubt:

*First*, that Tornado Cash was a money transmitting business, meaning: (1) a business; (2) that requires a license to "transfer[s] funds on behalf of the public"; and (3) actually transfers funds on behalf of the public;[54]

*Second*, that Mr. Storm controlled, conducted, managed, supervised, directed, or owned the business with knowledge that it was used as a money transmitting business;[55]

*Third*, that Mr. Storm knew that the business transported or transmitted funds on behalf of the public that were known to Mr. Storm to have been derived from a criminal offense or were intended to be used to promote or support unlawful activity;[56] and

---

[52] *Rahmankulov supra* n.16; *see also* Sand, *Modern Federal Jury Instructions*, Instr. 50A-33 (Elements of Unlicensed Money Transmission Charge).
[53] *Rahmankulov supra* n.16.
[54] *Id*.; 18 U.S.C. § 1960(b)(2). By definition, a money transmitting business is required to be licensed. 31 U.S.C. § 5330(a).
[55] *Rahmankulov supra* n.16.
[56] 18 U.S.C. § 1960(b)(1)(C); 18 U.S.C. § 1960(b)(2).

*Fourth*, that operation of the unlicensed money transmitting business affected interstate or foreign commerce.[57]

### 1.    Object Element One – Money Transmitting Business[58]

The first element the government must prove beyond a reasonable doubt is that the alleged business was a money transmitting business.

- A "business" is a commercial enterprise that is regularly carried on for profit. Thus, a single isolated transmission of money is not a business under this definition.[59]

- A "money transmitting business" is a business that, for a fee, accepts or receives funds and transfers such funds on behalf of the public.[60]

- "Transferring" or "transmitting" funds on behalf of the public necessarily or inherently requires obtaining control over those funds to effectuate the transfer or transmission, then relinquishing that control once the transfer or transmission is

---

[57] *Rahmankulov supra* n.16.

[58] *Id.*; *see also United States v. Pilipis*, 2025 WL 486604, at *6 (S.D. Ind. Feb. 13, 2025) (business has to be a "money transmitting business" before it can be subject to liability under section 1960(b)(1)(B) or (C)).

[59] *Rahmankulov supra* n.16.

[60] Gov't Proposed Jury Charge, *United States v. Rahmankulov,* No. 20 Cr. 653 (Aug. 01, 2022) (ECF No. 151) (government's proposed instructions, citing both 18 U.S.C. § 1960(b)(2) and 31 U.S.C. §§ 5330, (d)(1)(A)); 31 U.S.C. §§ 5330, (d)(1)(A)(2); 31 C.F.R. § 1010.100(f)(5)(i)(A), (B); *see also United States v. Velastegui,* 199 F.3d 590, 592, 595 n.4 (2d Cir. 1999) (defining a "money transmitting business" as the transmission of money "for a fee" involving more than "a single, isolated transmission of money"); *United States v. Banki*, 685 F.3d 99, 113 (2d Cir. 2012), *as amended* (Feb.  22, 2012) (citing *Velastegui,* 199 F.3d 592, 595 n.4).

complete.[61] A person or entity is not a money transmitter if they lack control of the funds being transferred.[62]

- The term "funds" includes any currency, money, or other medium of exchange that can be used to pay for goods and services, including digital or cryptocurrency.[63]

- A person or entity is not a money transmitter if they only provide a means of delivery, communication, or network access services used by a money transmitter to support money transmission services.[64]

In this case, I instruct you that the developers of the Tornado Cash smart contracts do not take custody or control over a user's cryptocurrency. No one, other than the user, can control the cryptocurrency that the user deposits into Tornado Cash smart contracts.[65]

I further instruct you that the developers of the Tornado Cash smart contracts do not profit from the smart contracts. And none of the smart contracts entitle the smart-contract creators to a benefit.[66]

---

[61] *See Velastegui*, 199 F.3d at 592 ("A money transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually in a foreign country."); *Banki*, 685 F.3d at 113 n.9 (holding definition in *Velastegui* was "legally correct"); *United States v. Bah*, 574 F.3d 106, 114-15 (2d Cir. 2009) (defendant could not be convicted of violating Section 1960 when he merely received, but did not transmit, money from New York, where he was not licensed); *United States v. $1,370,851.62 in United States Currency, Seized from Total Bank Acct. No.: XXXXXXXXX,* 2010 WL 11650916, at *6 (S.D. Fla. Oct. 6, 2010) ("both the COINSA LLC and the [g]overnment appear to agree that a 'money transmitting business' under § 1960 begins with receipt of money from another and then a transmittal of that money to a third party"); *see also* 31 U.S.C. § 5330(d)(2) ("'money transmitting service'" includes accepting currency, funds, or value that substitutes for currency and transmitting the currency, funds, or value that substitutes for currency by any means"); *Transfer*, Merriam-Webster Dictionary Online, available at https://www.merriam-webster.com/dictionary/transfer ("to convey from one person, place, or situation to another" or "to cause to pass from one to another").

[62] FinCen Guidance, FIN-2019-G001, *Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies* (May 9, 2019), at 17.

[63] *Rahmankulov supra* n.16.

[64] 31 C.F.R. § 1010.100(f)(5)(ii)(A).

[65] *Van Loon v. Department of the Treasury, et al.*, 122 F.4th 549, 557, 568 (5th Cir. 2024).

[66] *Id.* at 567.

### 2.    Object Element Two – Defendant's Knowledge

The second element the government has the burden of proving beyond a reasonable doubt is that Mr. Storm knew that the alleged business was a money transmitting business.  That means that the government must prove that Mr. Storm knew that Tornado Cash was a business and that it was a money transmitting business, as I have just defined those terms for you.[67]

### 3.    Object Element Three – Defendant Controlled the Business[68]

The third element that the government must prove beyond a reasonable doubt is that Mr. Storm knowingly controlled (or conducted or managed or supervised or directed or owned) the alleged money transmitting business.[69]

To prove that Mr. Storm knowingly controlled the alleged money transmitting business, the government must prove beyond a reasonable doubt that Mr. Storm was involved in the management of the business and was not merely an employee of that business.[70]  It is also not

---

[67] *United States v. Elfgeeh,* 515 F.3d 100, 133 (2d Cir. 2008).  Some formulations include language stating, "In other words, the government does not need to prove that the Defendant knew the unlicensed money transmission business was illegal."  The defense submits that such language would be misleading to the jury in this case because the defense maintains that Section 1960 contains a *mens rea* requirement, *i.e.,* that the defendant must know that the business at issue is a money transmitting business and that it was therefore required to be licensed.  It would also be misleading given that Mr. Storm is charged to have participated in a conspiracy, which he must knowingly and willfully have entered, and for which good faith is a defense.  Accordingly, if Mr. Storm did believe that the business was not an unlicensed money transmitting business and therefore no license was required, it would demonstrate good faith and defeat the knowing and willful element (element two) of the conspiracy charge.  As such, this language appears contrary and should not be included.

[68] Sand, *Modern Federal Jury Instructions*, Instr. 50A-35 (Defendant Controlled Business) at ¶ 50A.07 Conducting Unlicensed Money Transmitting Business (18 U.S.C. § 1960).

[69] *Id*.

[70] *Id*.

enough that Mr. Storm conspired with others who controlled the business; for purposes of Count Two, Mr. Storm must have personally done so.[71]

An act is done knowingly when it is done voluntarily and intentionally and not because of accident, mistake or some other innocent reason.[72]

To prove that Mr. Storm acted knowingly here, the government must prove beyond a reasonable doubt that Mr. Storm knew two things: (1) that the alleged business was a money transmitting business, meaning he knew that the business "transferred funds on behalf of the public," and (2) that it involved the transportation or transmission of funds that were known to Mr. Storm to have been derived from a criminal offense or were intended to be used to promote or support unlawful activity.[73]

---

[71] *See United States v. Hoskins,* 902 F.3d 69 (2d Cir. 2018). In *Hoskins,* the Second Circuit held that given Congress's intent to limit the categories of persons liable under the Foreign Corrupt Practices Act to include only those foreign persons who act on American soil, the government could not – even through a conspiracy count – charge a nonresident foreign resident who never traveled to the United States during the alleged conduct. *Id.* at 71-72, 76-95. The Second Circuit explained that the expressed intent of the statute to limit its reach to only the specified categories of persons created an exception to the general rule of conspirator liability for the conduct of others. *Id.*; *see also United States v. Amen*, 831 F.2d 373, 381-82 (2d Cir. 1987) (continuing criminal enterprise statute, 21 U.S.C. § 848, could only be applied to drug "kingpins," not to others who aid and abet or conspire with the kingpin). By analogy here, 18 U.S.C. § 1960, by its terms, limits its reach to only those individuals who "conduct, manage, supervise, direct or own" all or part of the alleged unlicensed money transmitting business. 18 U.S.C. § 1960(a); *see also United States v. Dimitrov,* 546 F.3d 409, 414 (7th Cir. 2008) ("§ 1960(a) requires the affirmative action of knowingly operating a money transmitting business"). For the same reason as in *Hoskins* and *Amen,* Mr. Storm cannot be liable, using a conspiracy theory, for a violation of Section 1960 unless he is in the category of persons identified in subsection (a).

[72] Sand, *Modern Federal Jury Instructions*, Instr. 50A-35 (Defendant Controlled Business) at ¶ 50A.07 Conducting Unlicensed Money Transmitting Business (18 U.S.C. § 1960).

[73] *See Elfgeeh,* 515 F.3d at 133; 18 U.S.C. § 1960(b)(2). Moreover, the Supreme Court has made clear that courts should presume or "read into" the statute a *mens rea* requirement to each of the statutory elements that criminalize otherwise innocent conduct. *See, e.g., Ruan v. United States*, 597 U.S. 450, 458 (2022); *Rehaif v. United States*, 588 U.S. 225, 229, 231, 233 (2019) (to sustain a conviction, the government must prove both that the defendant knew he possessed a firearm, and that he knew he belonged to a category of person (felons or "aliens") subject to the

### 4.    Object Element Four – Knowledge that Business Transmitted Funds Derived from a Criminal Offense

The fourth element the government must prove is that Mr. Storm knew that the unlicensed money transmitting business transported or transmitted funds that were derived from a criminal offense or were intended to be used to promote or support unlawful activity.[74]

To satisfy this element, it is not enough for the government to prove that Mr. Storm must have known or anticipated that some users of the Tornado Cash smart contracts might use them to transfer or transmit funds that were derived from a criminal offense or were intended to be used to promote or support unlawful activity.[75]  Nor is it enough for Mr. Storm to have become aware of allegations that such uses of the smart contracts occurred in the past.  Rather, the

---

prohibition on possessing firearms); *Elonis v. United States,* 575 U.S. 723, 737, 740 (2015) (Court applied the presumption of *mens rea*, reiterating that the "presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct").

[74] 18 U.S.C. § 1960(b)(1)(C); *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("to qualify as an 'unlicensed money transmitting business' under § 1960, a business must a) transfer, *on behalf of the public*, b) funds, and c) do so in violation of state or federal licensing and registration requirements, or with knowledge that the funds were derived from a criminal offense.").  *See supra* n.24 (discussing *Tavoularis*, 515 F.2d at 1074 ("where a substantive offense requires specific knowledge, that same knowledge must be established before a defendant can be found to be a member of a conspiracy to commit that offense").

[75] *See U.S. v. Falcone*, 109 F.2d 579, 581 (2d Cir. 1940), *aff'd*, 311 U.S. 205 (1940) ("[I]n prosecutions for conspiracy . . . [i]t is not enough that he does not forego a normally lawful activity, of the fruits of which he knows that others will make an unlawful use; he must in some sense promote their venture himself, make it his own, have a stake in its outcome."); *see also U.S. v. Lopac*, 411 F. Supp. 2d 350, 362 (S.D.N.Y. 2006) (describing defendants "on the fringes of conspiracy" including in *Falcone*-type circumstances involving "providers of services and goods who facilitate the criminal objectives of the conspirators, often without specific intention to further the ends of their conspiracy" as lacking "sufficient proof that defendants intended to join the illegal enterprise," even where "the defendants reasonably knew that the products they sold were likely to be used for [illegal purposes.]"); *see also Direct Sales Co. v. U.S.*, 319 U.S. 703, 709 (1943) ("[O]ne does not become a party to a conspiracy . . . through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally.").

government must prove that Mr. Storm knew of the specific illegal transactions at issue at the time they occurred.

### 5.    Object Element Five – Affecting Interstate Commerce[76]

The fifth element that the government must prove beyond a reasonable doubt is that the money transmitting business affected interstate or foreign commerce.[77]

Interstate or foreign commerce simply means the movement of goods, services, money and individuals between states or between the United States and a foreign state or nation.[78]

The government must prove beyond a reasonable doubt that the money transmitting business affected interstate or foreign commerce in any manner, no matter how minimal.[79]

### C.    Second Element of Count Two – Membership in the Conspiracy[80]

The second element of Count Two that the government must prove beyond a reasonable doubt is that Mr. Storm knowingly and willfully entered into the conspiracy, that is, that he agreed to take part in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective.[81]

I have previously instructed you on the definitions and principles to apply to determine whether Mr. Storm knowingly and willfully joined the charged conspiracy.  You should apply those definitions and principles here, to determine whether the government has proved beyond a

---

[76] Sand, *Modern Federal Jury Instructions*, Instr. 50A-35 (Defendant Controlled Business) at ¶ 50A.07 Conducting Unlicensed Money Transmitting Business (18 U.S.C. § 1960).
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Rahmankulov supra* n.16; *see also Nejad supra* n.13; Sand, *Modern Federal Jury Instructions*, Instr. 19-3S (Short Form Instruction); *id.*, Instr. 19-6 (Membership in the Conspiracy).
[81] *Id.*

reasonable doubt that Mr. Storm knowingly and willfully joined the conspiracy charged in Count Two, with knowledge of its illegal objective and intent to further that unlawful purpose.[82]

A defendant may not be held liable for conspiring to conduct, control, manage, supervise, direct, or own an unlicensed money transmitting business if he acted, or chose not to act, in a good-faith belief that he was complying with the licenses, orders, regulations, and prohibitions issued by the federal and state authorities with respect to money transmission.  In other words, if you find that Mr. Storm acted in good faith, then he may not be convicted of a conspiracy to conduct, control, manage, supervise, direct, or own an unlicensed money transmitting business, which affected interstate and foreign commerce.[83]

### D.    Third Element of Count Two – Overt Act[84]

The third element of Count Two that the government must prove is the commission of an overt act.  In particular, the government must show beyond a reasonable doubt that at least one overt act was committed in furtherance of the conspiracy charged in Count Two by at least one of the co-conspirators—not necessarily Mr. Storm.

The purpose of the overt act requirement is clear.  There must have been something more than mere agreement; some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy.

Let me put it colloquially.  The overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage.  The requirement of an overt act

---

[82] *Id.*
[83] *Id.*
[84] *Rahmankulov supra* n.16; Sand, *Modern Federal Jury Instructions*, Instrs. 19-7, 19-8; *see also Braverman v. United States*, 317 U.S. 49, 53 (1942) (overt act "may be that of only a single one of the conspirators and need not be itself a crime").

is a requirement that some action be taken during the life of the conspiracy by one of the coconspirators to further the conspiracy.

For the government to satisfy the overt act requirement, it is not necessary for the government to prove all of the overt acts alleged in the Indictment or even any of the overt acts contained in the Indictment. Indeed, you may find that overt acts were committed that were not alleged at all in the Indictment. In short, it is sufficient for the government to show that Mr. Storm or one of his alleged co-conspirators knowingly committed an overt act—whether specifically charged in the Indictment or not—in furtherance of the conspiracy. You must be unanimous on at least one such overt act.

## XVI. Count Three: Conspiracy to Violate the International Emergency Economic Powers Act (IEEPA)[85]

Like Counts One and Two, Count Three charges a conspiracy. Unlike Count Two, an overt act is not required for Count Three. To sustain its burden of proof with respect to the conspiracy charge in Count Three, the government must prove beyond a reasonable doubt each of the following elements:

*First*, the government must prove that the conspiracy charged in Count Three existed. That is, that there was an agreement or understanding among at least two people to violate orders, regulations, and prohibitions in and issued under the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1705(a), Executive Order 13722, and 31 C.F.R. § 510.201.

---

[85] *Nejad supra* n.13; Sand, *Modern Federal Jury Instructions*, Instr. 19-3 (Elements of the Conspiracy).

*Second*, the government must prove that Mr. Storm knowingly and willfully became a member of that conspiracy, with knowledge of its unlawful objective and in furtherance of its unlawful objective.

Each of these elements must be proven beyond a reasonable doubt.

### A.    First Element of Count Three – Existence of the Conspiracy to Violate the IEEPA[86]

The first element that the government must prove beyond a reasonable doubt is that two or more persons knowingly and willfully entered into the unlawful agreement charged in Count Three—that is, an agreement to violate, or to cause a violation of, certain orders, regulations, and prohibitions in and issued under the IEEPA.

In Count One, I instructed you on the principles of law you are to apply to determine whether the government has proven beyond a reasonable doubt that a conspiracy existed.

You should apply the principles in that instruction here to determine whether the unlawful agreement charged in Count Three existed.

### B.    Objects Charged of the Conspiracy to Violate the IEEPA[87]

I will instruct you on the elements of the alleged objects of the conspiracy, which are to violate orders, regulations, and prohibitions in and issued under the IEEPA.  The Indictment charges that there were four separate objects of the conspiracy between April 14, 2022 and August 8, 2022:

---

[86] *Nejad supra* n.13.
[87] *Id*.

The first object charged is to knowingly and willfully cause other U.S. persons[88] to receive, funds, goods, and services,[89] to wit, transfers, payments, deposits, and fees, from the

---

[88] Under E.O. 13722 § 2(a) and 31 CFR §§510.210(a), property and interests in property are only "blocked" "that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person." Only after they are deemed "blocked" does the prohibition against the property being "transferred, paid, exported, withdrawn or otherwise dealt in apply." *Id.* The objective of the conspiracy must have been to cause U.S. persons to receive the property of a blocked entity, otherwise the prohibitions are not triggered.

[89] The defense has moved to exclude references to the Lazarus Group and therefore also objects to any reference to the Lazarus Group in the jury instructions. The jury instructions easily stand without these references.

0x098B716 Address,[90] without first obtaining the required approval of Department of the

Treasury, enforced by the Department's Office of Foreign Assets Control ("OFAC").[91]

---

[90] This and other charged objects of the conspiracy refer to the 0x098B716 Address as "blocked property" but that is incorrect. OFAC designated the Lazarus Group as an SDN and included the 0x098B716 Address as associated with the Lazarus Group. But property and interests of an SDN are not "blocked" until they come into contact with a U.S. person or entity. 31 CFR 510.201(a)(3) ("All property and interests in property that are in the United States, that come within the United States, or that are or come within the possession or control of any U.S. person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt."). As OFAC's FAQs explain:

> "Blocking" refers to freezing assets or other property. Blocking immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to the property.

> OFAC authorities may require U.S. persons to block all property and interests in property of certain persons, known as 'blocked persons.' When this is the case, any property and interests in property of a blocked person that are within the United States or within the possession or control of a U.S. person must be blocked (*i.e.*, "frozen")—not seized—and may not be transferred, withdrawn, or otherwise dealt in.

*See* OFAC, *FAQs*, available at https://ofac.treasury.gov/faqs/9. *See also Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152, 154-155 (2d Cir. 2018) ("These regulations provide that "property and interests in property" of [SDNs] are "blocked" and "may not be transferred, paid, exported, withdrawn or otherwise dealt in" if the property or interest is either in the United States or comes within the possession or control of a U.S. person.); *Cozen O'Connor v. United States Dep't of Treasury*, 570 F. Supp. 2d 749, 764 (ED Pa. 2008) ("The executive orders can direct the blocking of property and property interests of [designated] persons . . . within the United States or within the possession or control of United States persons, wherever located); *see, e.g., Interpamil GmbH v. Collectibles, Inc.*, 1999 U.S. Dist. LEXIS 17681, *12-13 (SDNY Nov 15, 1999) (Under the Sanctions Regulations, blocked property is defined as any property or interest in property that is owned by the Federal Republic of Yugoslavia . . . .that was in the United States as of the effective date of the sanctions[.]"

By contrast, property of a blocked entity that does enter the United States or the possession or control of a U.S. person are not blocked. *Foley v. Union de Banques Arabes Et Françaises*, 2023 U.S. Dist. LEXIS 191569, *8-10 (SDNY Oct 25, 2023) (Syrian sanctions regime only blocks property and interests in property that are in the United States or in the possession or control of any U.S. person. . . . The assets at issue here are in Paris and are held by a French bank and therefore satisfy neither definition of a blocked asset."); *Zarmach Oil Servs., Inc. v. United States Dep't of the Treasury*, 750 F. Supp. 2d 150, 157 (DDC 2010) (the exercise of OFAC blocking authority over the assets is not, as Zarmach claims, an exercise in 'extraterritorial jurisdiction.' . .

The second object charged  is to knowingly and willfully cause other U.S. persons to provide funds, goods, and services, to wit, transfers, payments, money transmitting services, and money laundering of funds, to the 0x098B716 Address, without first obtaining OFAC approval.[92]

The third object charged is to knowingly and willfully cause other U.S. persons to transfer, pay, withdraw, and deal in property and interests in property of the Lazarus Group, namely the 0x098B716 Address, without first obtaining OFAC approval.[93]

The fourth object charged is to knowingly and willfully cause other U.S. persons to engage in transactions to evade and avoid, and attempt to evade and avoid, the requirements of U.S. law with respect to the transfer, payment, withdrawal, and dealing in the 0x098B716 Address, ~~and the provision of funds, goods, and services by, to, or for the benefit of, and the~~

---

. The regulations explicitly prohibit the transfer of any 'property or interests in property of the Government of Sudan, that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons, including their overseas branches.'"

Referring to assets in the wallet as "blocked property" is inaccurate and distorts the government's burden of proof because such assets would not become blocked until they came within the possession or custody of a U.S. person.

[91] Language of objective changed to conform to law in *supra* n.90.

[92] Language of objective changed to conform to law in *supra* n.90.

[93]  Language of objective changed to conform to law in *supra* n.90.

receit of funds, goods, or services from the 0x098B716 Address, a sanctioned entity,[94] without

first obtaining OFAC approval.[95]

For each of the above charged objects, I instruct you that OFAC designated the Lazarus

Group as a "Specially Designated National," or "SDN," which is a type of sanctioned entity and

included the 0x098B716 Address as associated with the Lazarus Group.   I further instruct you

that U.S. persons were required to block or freeze the property and interests in property of the

Lazarus Group, if the property or interests in property came into the possession or control of a

U.S. person or entity, or came within the United States.

There are four lines for Count Three for you to fill in on the verdict form.  Each line asks

whether Mr. Storm is guilty of a particular charged object of the conspiracy.  To find Mr. Storm

guilty of any of these four objects there must be unanimous agreement on that object.  With that

in mind I will now proceed to discuss the elements of the substantive offenses charged as objects

of the conspiracy.

---

[94]  The stricken language should be omitted.  Under Executive Order 13722 § 7(a), "any transaction that evades and avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the provisions set forth in the order is prohibited." The "prohibitions" in the Executive Order are in Section 1 and 2, which prohibit the transfer, payment, export, withdrawal, or dealing in property and interests in property of a sanctioned person or entity. (Section 2, implemented in 31 C.F.R. § 510.201(a)(3), is applicable here).  The stricken language above is from Section 6, which is a definitional paragraph explaining the scope of Sections 1 and 2 (in other words, explaining what conduct comes within the scope of dealing in blocked property).  It is superfluous and confusing to include Section 6, which is a subset of the Section 2 prohibited conduct, as an add-on to the Sections 1 and 2 prohibition language.  The wording will unnecessarily confuse the jury.
[95] Language of objective changed to conform to law in *supra* n.90.

### C.    Object of the Conspiracy to Violate the IEEPA – Substantive Elements [96]

I will instruct you on the elements of the alleged objects of the conspiracy, which are violations of the IEEPA.  To establish a violation of the IEEPA, the government must prove the following elements beyond a reasonable doubt:

*First*, a U.S. person violated a license, order, or regulation under IEEPA, specifically, Executive Order 13722 § 2(a) and 31 C.F.R. § 510.201(a)(3), by transferring, paying, exporting, withdrawing, or otherwise dealing in the property or interests in property of a sanctioned entity;

*Second*, that prior to any alleged transfer, payment, export, withdrawal, or dealing in any property or interests in property of a sanctioned entity, such property came within the United States or within the possession or control of a U.S. person;[97]

*Third,* that Mr. Storm willfully caused such U.S. person to transfer, pay, export, withdraw, or deal in the property or interests in property of a sanctioned entity; and

*Fourth*, that the U.S. person did not have a license issued by OFAC to engage in the charged transaction.

I will now explain each of those elements in more detail.

### 1.    Object Element One – Violation of License, Order, or Regulation[98]

The first element of a substantive IEEPA offense is that a member of the conspiracy violated a license, order, or regulation issued pursuant to IEEPA, during the period of the alleged conspiracy, April 14, 2022 through August 8, 2022.  I instruct you that Executive Order 13722

---

[96] Adapted from Gov't Request to Charge, *United States v. Amirznami*, 08 Cr. 429 (Rufe, D.J.) (Jan. 27, 2009) (ECF No. 87 Gov't Requests 40, 41) (hereafter "*Amirznami* Gov't Request to Charge"); Executive Order 13722,§ 2(a); 31 C.F.R.  § 510.201(a)(3).

[97]  Executive Order13722, § 2(a); 31 C.F.R.  § 510.201.

[98] *Amirznami* Gov't Request to Charge *supra* n.96.

§ 2(a) and 31 C.F.R. § 510.201(a)(3) were promulgated pursuant to IEEPA by OFAC, and were in effect at all times relevant to Count Three.

Executive Order 13722 § 2(a) and 31 C.F.R. § 510.201(a)(3) prohibit a U.S. person from transferring, paying, exporting, withdrawing, or otherwise dealing in the property or interests in property of a sanctioned person or entity.  These prohibitions include the following types of transactions, which are also prohibited: (1) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any" sanctioned person or entity; and (2) the receipt of any contribution or provision of funds, goods, or services from any" sanctioned person or entity;[99] and (3) any transaction that evades and avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the provisions set forth in the order.[100]

The government has alleged that Mr. Storm conspired to violate Executive Order13722, § 2(a) and 31 C.F.R. § 510.201(a)(3) by dealing in the 0x098B716 Address.  To meet this element, the government must prove beyond a reasonable doubt that the violation was performed by a co-conspirator.

### 2.    Object Element Two – Property Within the United States or in Possession or Control of a U.S.  Person[101]

The second element of an IEEPA violation requires the government to prove that, prior to any alleged transfer, payment, export, withdrawal, or dealing with the 0x098B716 Address, such property came within the United States or within the possession or control of a U.S. person.[102]

---

[99] Executive Order 13722, § 6(a), (b); 31 C.F.R.  § 510.201(b).
[100]  Executive Order 13722, § 7(a)
[101] *Amirznami* Gov't Request to Charge *supra* n.96; Executive Order 13722, § 2(a); 31 C.F.R.  § 510.201(a)(1).
[102] Executive Order 13722, § 2(a); 31 C.F.R. § 510.201.

In considering whether the wallet address, or proceeds from the wallet address, came "within the possession or control of a U.S. person," I instruct you that the Tornado Cash smart contracts operate independently, autonomously, and publicly on the Internet. No one has the power to stop anyone else from using these immutable smart contracts. You should also consider my previous instruction to you that the Tornado Cash smart contracts are irreversibly immutable, meaning they are self-executing and impossible to alter, remove, or control. No one has the power to stop anyone else from using these immutable smart contracts.[103]

The term "United States person" includes any: (1) United States citizen; (2) permanent resident alien; (3) an entity organized under the laws of the United States (including foreign branches); or (4) any person in the United States.

### 3.    Object Element Three – Willfulness[104]

The third element of an IEEPA violation is that Mr. Storm willfully caused the U.S. person to transfer, pay, export, withdraw, or deal in any blocked property or interests in property of a sanctioned entity, specifically, the 0x098B716 Address. Specifically, the government must prove that Mr. Storm deliberately chose to violate the law with knowledge of the illegal objective and with intent to further that unlawful purpose.[105]

---

[103] *Van Loon v. Department of the Treasury, et al.*, 122 F.4th 549, 557, 568-69 (5th Cir. 2024).
[104] *Amirznami* Gov't Request to Charge *supra* n.96; *see also* charge by Hon. Richard M. Berman in *United States v. Atilla,* No.  15 Cr. 867 (Dec.  20, 2017) (hereafter, "*Atilla*").
[105] *See United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 147 (2d Cir. 2004) ("The district court properly instructed the jury that it could not convict [defendant] of violating the Embargo [issued pursuant to IEEPA] unless 'the defendant knew that such transmission of funds was a violation of the Iranian embargo, and was, thus, illegal.'" (citing *Bryan v. United States*, 524 U.S. 184, 192 (1998) ("[T]o establish a 'willful' violation of he Government must prove that the defendant acted with knowledge that his conduct was unlawful."); *see also United States v. Griffith*, 515 F. Supp. 3d 106, 121 (S.D.N.Y. 2021) ("The IEEPA has a scienter requirement; it only punishes those who 'willfully commit[ ], willfully attempt[ ] to commit, or willfully conspire[ ] to commit, or aids or abets the commission of' the law or regulations. 50 U.S.C. § 1705(c).  In order to succeed, the government will have to prove beyond a reasonable doubt that [defendant] willfully violated the law.").

### 4.    Object Element Four – OFAC license

The fourth element of an IEEPA violation is that that the U.S. person did not have a license issued by OFAC to engage in the charged transaction.[106]  The parties agree that no Tornado Cash founder obtained a license to engaged in transactions with the 0x098B716 Address.  Under the IEEPA, no license is required for providing to a sanctioned individual or entity information or informational materials that were previously in existence.[107]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If you find beyond a reasonable doubt that Mr. Storm knowingly and willfully agreed with at least one other person to commit at least one of the four alleged violations of the IEEPA that is charged as an object of the conspiracy, then an object of Count Three would be proved. However, if you find that the government has not met its burden to prove that Mr. Storm knowingly and willfully agreed with at least one other person to commit at least one of the four alleged violations of the IEEPA, then the object would not be proved.

I remind you that the crime of conspiracy is distinct from the underlying substantive crime that the co-conspirators agreed to commit.  It is the agreement itself that is the crime. Accordingly, you need not find that a substantive violation of the IEEPA actually occurred, only that Mr. Storm knowingly and willfully participated in a conspiracy to engage in conduct that would have violated the IEEPA.[108]

### D.    Second Element of Count Three – Membership in the Conspiracy

---

[106] Adapted from charge of Hon. Katherine B. Forrest in *In re: 650 Fifth Avenue and Related Properties,* 08 Civ. 10934 (KHF) (June 30, 2017) (ECF. 1902 at 47).
[107] 50 U.S.C. § 1702(b)(3); *see also* 31 C.F.R. § 510.213(c) (collectively, the "Berman Amendment").
[108] Joint Proposed Requests to Charge, *Atilla supra* n.53.

The second element the government must prove beyond a reasonable doubt is that Mr. Storm knowingly and willfully entered into the conspiracy, that is, that he agreed to take part in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective.[109]

I have previously instructed you on the definitions and principles to apply to determine whether Mr. Storm knowingly and willfully joined the charged conspiracy. You should apply those definitions and principles here, to determine whether the government has proved beyond a reasonable doubt that Mr. Storm knowingly and willfully joined the conspiracy charged in Count Three, with knowledge of its illegal objective and intent to further that unlawful purpose.

Mr. Storm may not be held liable for a conspiracy to violate IEEPA if he acted in good faith.[110] If you find that Mr. Storm acted in good faith, then he may not be convicted of a conspiracy to conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business, which affected interstate and foreign commerce.

### E.    No Overt Act Requirement[111]

Although Count Three, like Counts One and Two, charges Mr. Storm with participating in a conspiracy, I instruct you that, unlike for Counts One and Two, it is not necessary for the government to prove the commission of any overt act in furtherance of the conspiracy alleged in Count Three. You should not concern yourselves with why an overt act is required for Counts One and Two but not for Count Three. The difference arises from the different statutes that define the different offenses. It does not have anything to do with the facts of this case.

---

[109] *Rahmankulov supra* n.16; *see also Nejad supra* n.13; Sand, *Modern Federal Jury Instructions*, Instr. 19-3S (Short Form Instruction); *id.*, 19-6 (Membership in the Conspiracy).
[110] *Nejad supra* n.13.
[111] *Id.*

## XVII.  OTHER INSTRUCTIONS

### A.  Multiple Agreements[112]

In this case, Mr. Storm contends that the government's proof fails to show the existence of one overall conspiracy, or criminal agreement, to a common unlawful objective.  Rather, Mr. Storm claims that there were actually several separate and independent agreements with various groups of members for different purposes, or different objectives.

Whether there existed a single unlawful agreement, or many such agreements, or indeed, no agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions I am about to give you.

When two or more people join together to further one common unlawful design or purpose, a single conspiracy exists.  By way of contrast, multiple agreements exist when there are separate agreements to achieve distinct purposes.

### B.  Venue[113]

In addition to all of the elements I have described, for each count, you must consider the issue of venue, namely, whether any act in furtherance of each of the crimes occurred within the Southern District of New York.  The Southern District of New York includes Manhattan, the Bronx, and Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan counties.

It is sufficient to satisfy the venue requirement if any act in furtherance of the crimes charged occurred within the Southern District of New York as I have described it to you.  In this regard, the government need not prove that the entire crime charged was committed in the

---

[112] Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 19-05 (Multiple Conspiracies); *United States v. Tramunti*, 513 F.2d 1082, 1107-08 (2d Cir. 1975); *United States v. Aracri*, 968 F.2d 1512 (2d Cir. 1992); *United States v. Heinemann*, 801 F.2d 86 (2d Cir. 1986).
[113] *Nejad supra* n.13.

Southern District of New York or that Mr. Storm or any alleged co-conspirator was even 1physically present here in the Southern District of New York.

I should note that on this issue of venue—and this issue alone—the government need not prove venue beyond a reasonable doubt, but only by a preponderance of the evidence. Thus, the government has satisfied its venue obligations if you conclude that it is more likely than not that an act in furtherance of the crime charged was committed in this District.

If you find that the government has failed to prove the venue requirement for any Count, then you must acquit Mr. Storm on that Count.

### C.    Variance in Dates and Times[114]

You will note that the Indictment alleges that certain acts occurred on or about various dates. It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date. The law requires only a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

### D.    Multiple Counts[115]

You must return a separate verdict of guilty or not guilty for each count charged. Whether you find Mr. Storm guilty or not guilty as to one offense should not affect your verdict as to any other offense. You must analyze and evaluate the evidence separately as to each count.

### E.    Credibility of Witnesses[116]

You have had the opportunity to observe the witnesses. It is now your job to decide how believable or credible each witness was in his or her testimony. You are the sole judges of the

---

[114] Adapted from the charges by Hon. P. Kevin Castel in *United States v. Fuentes Ramirez*, 15 Cr. 379 (PKC) (S.D.N.Y. 2021) (hereafter "*Fuentes Ramirez*"); Hon. Edward Weinfeld in *United States v. Della Rocca*, 72 Cr. 217 (S.D.N.Y. 1972), and Hon. Charles Metzner in *United States v. Koss*, *aff'd*, 506 F.2d 1103 (2d Cir. 1974), cert. denied, 420 U.S. 977 (1975).
[115] *Phillips supra* n.1.
[116] *Phillips supra* n.1.

credibility of each witness and of the importance of his or her testimony.  How do you judge the credibility of witnesses?  There is no magic formula.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in light of all other testimony and evidence, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. You should use your common sense, your good judgment, and your everyday experiences in life to make credibility determinations.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety.  On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case.  A witness may be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at trial is truthful in whole or in part.

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus

on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

You have heard the testimony of a law enforcement official. The fact that a witness may be employed as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness. In this context, Mr. Storm is allowed to try to attack the credibility of such a witness on the ground that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

The fact that one party called more witnesses and introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering the most witnesses. By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible. You also have to decide which witnesses to believe and which facts are true. To do this you must look at all the evidence, drawing upon your own common sense and personal experience. I have just discussed the criteria for evaluating credibility; keep in mind that the burden of proof is always on the government and Mr. Storm is not required to call any witnesses or offer any evidence, since he is presumed to be innocent.

### F.    Particular Investigative Techniques Not Required[117]

You have heard references in the arguments in this case to the fact that certain investigative techniques were used by the government and that certain others were not used. There is no legal requirement that the government use any specific investigative techniques to prove its case. However, you may consider these facts in deciding whether the government has met its burden of proof, because, as I told you, you should look to all of the evidence and lack of evidence in deciding whether or not the government has proven Mr. Storm's guilt beyond a reasonable doubt.

### G.    Charts and Summaries (If Applicable)[118]

The government (or defense) has presented exhibits in the form of charts and summaries. These charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts and summaries correctly present the information contained in the testimony and in the exhibits on which they are based. To the extent that the charts conform with what you determine the underlying evidence to be, you may consider them if you find that they are of assistance to you in analyzing and understanding the evidence.

### H.    Testimony of Law Enforcement Officers[119]

---

[117] Adapted from charge of Hon. Gregory Woods in *United States v. Chow*, 17 Cr. 667 (S.D.N.Y. 2018).

[118] Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 5-13, and the charges of the Hon. Katherine B. Forrest in *United States v. Benito Del Rosario*, 12 Cr. 81 (S.D.N.Y. 2012).

[119] Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 7-16.

You have heard testimony of law enforcement and government officials. The fact that a witness may be employed by the government does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness or government employee witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witnesses or government employee witnesses and to give that testimony whatever weight, if any, you find it deserves.

## I.        Testimony of Experts[120]

You have heard testimony from what we call [an] expert witness[es]. An expert is a witness who by education or experience has acquired learning or experience in a specialized area of knowledge. Such witnesses are permitted to give their opinions as to relevant matters in which they profess to be an expert and give their reasons for their opinions. Expert testimony is presented to you on the theory that someone who is experienced in a specialized field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Now, your role in judging credibility applies to experts as well as to other witnesses. You should consider the expert opinions that were received in evidence in this case and give them as much or as little weight as you think they deserve. If you should decide that the opinion of an expert is not based on sufficient education or experience or on sufficient data, or if you should conclude that the trustworthiness or credibility of an expert is questionable for any

---

[120] *Fuentes Ramirez supra* n.122.

reason, or if the opinion of the expert is outweighed, in your judgment, by other evidence in the case, then you might disregard the opinion of the expert entirely or in part.

On the other hand, if you find that the opinion of an expert is based on sufficient data, education and experience, and the other evidence does not give you reason to doubt his conclusions, you would be justified in relying on his or her testimony.

### J.    Preparation of Witnesses[121]

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

You may consider that fact when you are evaluating a witness's credibility.  There is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### K.    Evidence Obtained From Searches[122]

You have heard testimony about the evidence seized in connection with certain searches conducted by law enforcement officers or otherwise obtained by law enforcement.  Evidence obtained from these searches was properly admitted in this case and may be properly considered

---

[121] *Fuentes Ramirez supra* n.122.
[122] *Id.*.; *see also* charge of Hon. William H.  Pauley III in *United States v. Meregildo*, 11 Cr. 576 (S.D.N.Y. Nov. 28, 2012).

by you.  Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful.  You must, therefore, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven Mr. Storm's guilt beyond a reasonable doubt.

### L.    Advice of Counsel / Good Faith

[*To be requested only if advice of counsel defense asserted*]

### M.    Defendant's Testimony[123]

[*Requested only if Mr. Storm testifies*]

Mr. Storm in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and Mr. Storm is presumed innocent.  In this case, Mr. Storm did testify and he was subject to cross-examination like any other witness.  You should examine and evaluate the testimony just as you would the testimony of any witness with an interest in the outcome of the case.

### N.    Defendant's Right Not to Testify[124]

[*Requested if Mr. Storm does not testify*]

Mr. Storm did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the government's burden to prove Mr. Storm guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to Mr. Storm.  A defendant is never required to prove

---

[123] *See United States v. Gaines*, 457 F.3d 238, 249 & n.9 (2d Cir. 2006).

[124] Sand, *Modern Federal Jury Instructions*, Instr. 5-21.

that he is innocent.  The right of a defendant not to testify is an important part of our

Constitution.  As the Supreme Court of the United States has said:

> It is not everyone who can safely venture on the witness stand though entirely
> innocent of the charges against him.  Excessive timidity, nervousness when facing
> others and attempting to explain transactions of a suspicious character, and
> offenses charged against him, will often confuse and embarrass him to such a
> degree as to increase rather than remove any prejudice against him.  It is not
> everyone, however honest, who would therefore willingly be placed on the
> witness stand.[125]

Therefore, you must not attach any significance to the fact that Mr. Storm did not testify.

No adverse inference against him may be drawn by you because he did not take the witness

stand.  You may not consider it in any way in your deliberations in the jury room.

### O.    Theory of the Defense

[*The defense will request a theory of the defense charge at the close of the evidence*.]


DATED: June 6, 2025                              Respectfully submitted,


                                                By: */s/ Brian E. Klein*
                                                     Brian E. Klein
                                                     Keri Curtis Axel
                                                     Becky S. James
                                                     Kevin M. Casey
                                                     Viviana Andazola Marquez
                                                     Waymaker LLP

                                                     -and-

                                                     David E. Patton
                                                     Christopher Morel
                                                     Hecker Fink LLP

                                                     *Attorneys for Roman Storm*

---

[125] Adapted from the charge of Hon. John S. Martin in *United States v. Roy Moody*, 00 Cr. 671
(JSM).