

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 25, 2025

**By Electronic Mail**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>   **Re:**   *United States v. Roman Storm*,
>             23 Cr. 430 (KPF)

Dear Judge Failla:

    The Government writes respectfully to address certain questions that the Court raised regarding jury instructions at the end of the trial day on July 21, 2025. This letter goes through those questions one at a time.

**I.    The Instruction About Defendant Roman Storm's Testimony**

    If Storm testifies, he has asked the Court to instruct the jury to "examine and evaluate the testimony just as you would the testimony of any witness with an interest in the outcome of the case." (Dkt. 214 at 56). The Court noted that it had "had some problems with those charges in the past," and rather "tend[s] to charge, 'treat his testimony like that of any witness,' because that 'interest in the case' thing gets very problematic." (Tr. 783 (citing *United States v. Solano*, 966 F.3d 184 (2d Cir. 2020) (finding plain error in instructing jury to treat a defendant's testimony as testimony of a witness with an interest in the outcome of the case); *United States v. Jenkins*, 43 F.4th 300 (2d Cir. 2022) (finding no plain error in instructing jury to treat a defendant's testimony as testimony of a witness with an interest in the outcome of the case)).

    While Storm's explicit request for the interested-witness instruction with regard to his testimony would waive any appellate claim, in light of the less-than-consistent case law regarding such language, the Government would have no objection to instructing the jury to examine and evaluate Storm's testimony as it would the testimony of any other witness, understanding, of course, that the Government would be free to argue about Storm's incentives and biases in its closing arguments.

Hon. Katherine Polk Failla
July 25, 2025
Page 2 of 11

## II.   The Structure of the Conspiracy Charge

With respect to Count One, the Government proposed addressing the object of the conspiracy—the elements of money laundering— before discussing Storm's membership in the conspiracy. (Dkt. 156 at 10 (Request No. 8), 24–27 (Request No. 15). The Court exhibited concern about whether this order is confusing:

> This is the rare case in which we are charging—or you're asking me; you have charged, I've done no charging——the government has charged the conspiracy offense but not the substantive offense. And it's often really easy, in the cases where they're both charged, to say, conspiracy, first you have to find a conspiracy, second element is whether the defendant knowingly and willfully or knowingly and intentionally joined the conspiracy. And you just say, for the object, see later when we talk about money laundering. Here, we're not. We just had the conspiracy. And so I'm going to use money laundering as an example. Arguably each of you is asking me to prove too much. The defense is asking me to actually charge that the offense happened, that the objectives were committed, and that's footnote 22 of their proposed charge. The government wants me to charge, for example, for the third element I think of money laundering, they want me to charge that the defendant knew. Now the defense as well actually believes that the defendant—and it's not enough that a conspirator knew but that the defendant has to know. I've tried it both ways. It's really hard, and I know why it's hard, because we're just charging the conspiracy offense, but if you think about it—and I'm going to ask you just to indulge me for a moment—when you talk about the conspiracy, I don't have to mention Mr. Storm's name at all until I get to the second element. Is there a conspiracy? Did one or more people agree to do A, B, C, and D? Then next, did Mr. Storm? Now I would completely understand and I might even agree with you if you want to take away some of these issues by saying, the object is money laundering, and here you'll have to show that Mr. Storm and one other agreed to do X, agreed to do Y, and just invert the order. But if you think about it in the way that Sand prescribes the charge, the first question is: Did the conspiracy exist? The second is whether the defendant is a part of it. I'm fine inverting the order, but I'm just

> telling you, each of your charges, in one way or another, requires me to invert the order because it asks me to talk about Mr. Storm's involvement before I get to the point of asking the question of whether he's involved. I'm fine doing that. I just want you to understand that.

(Tr. 784–85).

The Court's point is a good one; however, the same confusion—if not more—exists if the order is inverted. That said, what may make sense is a bit of a roadmap so that the jury is not confused. The Court could add to the end of its general instruction about conspiracy crimes (Dkt. 156 at 4 (Request No. 4)):

> Because the defendant is charged in all three counts with conspiring to commit certain offenses—that is, with agreeing to commit a substantive crime, rather than committing the substantive crime itself—with respect to each count, I will first tell you what the elements of the underlying substantive offense is, and then tell you what it means to conspire to commit that offense. You will ultimately determine whether the Government has proved, beyond a reasonable doubt, that the defendant agreed to commit the substantive offenses; you will not ultimately determine whether the Government has proved that the defendant, in fact, committed those substantive offenses.

### III.   The Elements of the Object of the Conspiracy Charged in Count One

#### A.   Specified Unlawful Activity

With regard to the specified unlawful activities that predicated the money-laundering object of Count One, Storm has suggested that the Court instruct the jury: "First, that a person who is part of the conspiracy *conducted* a 'financial transaction' that affected interstate or foreign commerce." (Dkt. 214 at 20 (emphasis added); *see also* Dkt. 214 at 20 n.22). By contrast, the Government asks the Court to instruct the jury: "the Government must establish beyond a reasonable doubt that the defendant conspired … *to conduct or attempt to conduct* a 'financial transaction' involving property constituting the proceeds of specified unlawful activity …." (Dkt. 156 at 10 (Request No. 8) (emphasis added); *see also* Dkt. 156 at 11 (Request No. 9) ("The first element of money laundering … is that the defendant conspired to conduct or attempt to conduct a financial transaction")). The Court asked whether it was confusing or unnecessary to say that an element of the conspiracy is that the defendant agreed to conduct or attempt to conduct a financial transaction. (Tr. 794). While it may be

legally correct that a defendant can conspire to attempt to conduct a financial transaction, the Government agrees that it is unnecessary and potentially confusing: the Government need only prove that Storm agreed to conduct a transaction, and the Court can remove the "attempt to conduct" language.[1]

Relatedly, the Court asked: "does anybody actually believe that the hacks didn't happen, that there wasn't an SUA? There is certainly a question about whether Mr. Storm knew about it, but am I really charging the jury that they have to find that an SUA happened? I will if you want me to, but that's a real question for you." (Tr. 786). While the Court cannot cannot issue an "instruction [that] improperly t[akes] out of the hands of the jury [a] factual issue" regarding an element of the offense, *United States v. Marcucilli*, if Storm agrees, the Court could tell the jury that that parties agree that there were transactions involving the proceeds of computer fraud and abuse and wire fraud, and those were the proceeds of specified unlawful activity. This would obviate the need to instruct the jury on the elements of the specified unlawful activity. (Dkt. 156 at 16–21 (Request Nos. 11 and 12)).

### B. Belief That Funds Related to the Specified Unlawful Activity

With regard to the second element of the object of Count One, the Government asked the Court to instruct the jury that, "to meet its burden to prove that the financial transactions involved the proceeds of a specified unlawful activity, the government must prove, beyond a reasonable doubt, either of the following: (1) that the financial transaction in fact involved the proceeds of one of these specified unlawful activities; or (2) that the defendant believed that the financial transaction involved the proceeds of one of these crimes. The government need not prove both." (Dkt. 156 at 13–14 (Request No. 10)). The Court asked if the "belief" prong was appropriate: "The belief prong I thought came into play if it was a sting operation, where the government says, here, here's wire fraud proceeds, and someone ends up trying to launder them." (Tr. 786).

The Court should instruct the jury on the belief prong. While the Court is correct that the belief prong comes into play in sting operations, it is not limited to those circumstances. In *United States v. Hassan*, the defendant was charged with, among other things, substantive money laundering, in violation of 18 U.S.C. § 1956(a)(1), and participating in a conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). 578 F.3d 108, 126–28 (2d Cir. 2008). The Second Circuit found that there

---

[1] Storm argued that, for Count One, "the co-conspirator has to conduct the transaction." (Tr. 791). The Court is correct: "No, they have to agree to do the transaction; they don't actually have to do it." (Tr. 791; *see also* Tr. 793 ("I just think for the conspiracy, you just have to agree to it.")).

Hon. Katherine Polk Failla
July 25, 2025
Page 5 of 11

was insufficient evidence to support the substantive charges because the Government had not proven that any specific transactions in fact involved the proceeds of cathinone trafficking (which was a specified unlawful activity), *id.* at 127, but found sufficient evidence to support the conspiracy charge because "the jury could have easily inferred that Hassan believed that the funds related to cathinone trafficking," *id.* at 128.[2]

Here, like in *Hassan*, Storm was generally on notice of crime proceeds flowing through Tornado Cash. Storm may well argue that the specified unlawful activities underlying some or all of the transactions at issue have not been independently proven; like in *Hassan*, however, the jury would still be allowed to convict because "the jury could … easily infer[] that [Storm] believed that the funds related to" specified unlawful activities. 578 F.3d at 128.

## C. Whether Wire Fraud is a Specified Unlawful Activity

Storm has argued that wire fraud is not a specified unlawful activity: "However, wire fraud cannot qualify as the predicate SUA here because the Second Circuit has held that the wire fraud statute does not have extraterritorial application." (Dkt. 214 at 23 n.34 (citing *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129, 140–41 (2d Cir. 2014), *rev'd on other grounds*, *RJR Nabisco v. European Community*, 579 U.S. 325 (2016); *United States v. Prevezon Holdings LTD*, 122 F. Supp. 3d 57, 70 (S.D.N.Y. 2015))). The Government, on the other hand, asked the Court to instruct the jury that "wire fraud fall[s] within the definition of a specified unlawful activity." (Dkt. 156 at 13 (Request No. 10)).

The Court asked Storm why he believed "that wire fraud cannot suffice as an SUA under *Prevezon Holdings*" in light of the fact that "the government is going to be moving for wire fraud on people like Ms. Lin and folks for whom the wire fraud is domestic." (Tr. 788).

The Court is correct. In defining wire fraud—a specified unlawful activity—the Government proposed the following instruction:

> The third element of wire fraud requires the use of interstate or foreign wire communications. Wires include telephones, faxes, e-mail, internet communication, radios, and television. A wire communication also includes a wire

---

[2] The Court vacated the conspiracy counts due to an instructional error related to the underlying drug conspiracy charges that had potential spill-over effects. *See Hassan*, 578 F.3d at 128–34.

> transfer of funds between banks in different states or between a bank in the United States and a bank in a foreign country. *"Interstate" just means that a wire communication passes between two or more states. "Foreign" just means that a wire communication passes between the United States and another country, in either direction.* The use of the wire need not itself be fraudulent. Stated another way, the wire communication need not contain any fraudulent representation, or even any request for money. It is sufficient if a wire is used to further or assist in carrying out the scheme to defraud.

(Dkt. 156 at 20–21 (Request No. 12) (emphasis added)). In other words, the Government is not seeking an instruction that extraterritorial wire fraud is a specified unlawful activity. Indeed, in *United States v. Greenwood*, No. 23-7199, 2025 WL 354692 (2d Cir. Jan. 31, 2025) (summary order), the district court instructed the jury:

> The third and final element the government must prove beyond a reasonable doubt is that in the execution of that scheme, one or more participants in that scheme used or caused use by others of interstate or foreign wires (for example, wire transfers, phone calls, e-mail communications, or text messages). *An interstate wire is a wire that passes between two or more states. A foreign wire is a wire that passes between the United States and someplace outside the United States.* The use of the wire need not itself be a fraudulent representation. It must, however, further or assist in some way in carrying out the scheme to defraud. It is not necessary that any of the participants in the wire fraud scheme be directly or personally involved in any wire communication, as long as the communication is reasonably foreseeable in the execution of the alleged scheme to defraud in which the participants participated in.

*United States v. Scott*, No. 17 Cr. 630 (ER), Docket No. 207 at 1994–95 (S.D.N.Y. Dec. 12, 2019) (emphasis added). In other words, the district court used virtually the same language as the Government proposes here to ensure that the wire fraud SUA is sufficiently domestic in nature. The Second Circuit found no error in those instructions. *Greenwood*, 2025 WL 354692 at *4–5.

Because the jury will be instructed about the domestic nexus for wire fraud, and because there is evidence of domestic wire frauds including in the testimony of

Ms. Lin and Andre Llacuna, such wire fraud is an appropriate specified unlawful activity here.

## IV. Duration of, and Knowledge About, the Conspiracies

The Government proposes standard language:

> It is not necessary for the government to show that a defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part. To have guilty knowledge, a defendant need not have known the full extent of the conspiracy or all of the activities of all of its participants. It is not even necessary for a defendant to know every other member of the conspiracy.
>
> The duration and extent of a defendant's participation has no bearing on the issue of his or her guilt. He or she need not have joined the conspiracy at the outset. The defendant may have joined it for any purpose at any time in its progress, and he will be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while he was a member.

(Dkt. 156 at 25 (Request No. 15)). Storm argues that the Court need not provide what he admits is a "form instruction" because "[t]he government does not allege that Mr. Storm lacked knowledge of the full extent of the conspiracy, its members, or other details of the conspiracy" and because "the government's theory … is that Mr. Storm was continuously involved in the proposed conspiracies from the beginning." (Dkt. 214 at 25–26 nn.43–44). The Court asked for the Government to comment on this request. (Tr. 789–90).

The proposed instruction is appropriate. For example, the jury may find that one or more members of the conspiracy became aware of the movement of SUA proceeds at different times. Moreover, the various conspirators were located around the world; this instruction makes clear that they did not each have to have full insight into the others' knowledge or activities as long as they entered into the requisite agreement.

## V. Coconspirator Liability for Unlicensed Money Transmitting

Storm asks this Court to instruct the jury:

> To prove that Mr. Storm knowingly controlled the alleged money transmitting business, the government must prove beyond a reasonable doubt that Mr. Storm was involved in the management of the business and was not merely an employee of that business.[] It is also not enough that Mr. Storm conspired with others who controlled the business; for purposes of Count Two, Mr. Storm must have personally done so.

(Dkt. 214 at 32–33). In other words, Storm argues that he *himself* must have knowingly controlled the money transmitting business. The Court asked about this. (Tr. 795–96).

The crux of a conspiracy is that a defendant agree to commit the object offense. Storm cites no law for the extraordinary proposition that, in the context of a Section 1960 violation, more is necessary. Storm instead cites two cases—*United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018), and *United States v. Amen*, 831 F.2d 373 (2d Cir. 1987) (Dkt. 214 at 33 n.71)—that relate to uniquely structured statutes that have no application here.

*Hoskins* addressed the issue of conspiratorial liability to violate a different statute—the FCPA—which "establishes three clear categories of persons who are covered by its provisions," each of which is relevant to U.S. jurisdiction. 902 F.3d at 71. The Second Circuit held that the Government may not "employ theories of conspiracy or complicity to charge a defendant with violating the [FCPA] even if he is not in the category of persons directly covered by the statute." *Id.* In other words, the Second Circuit was concerned about charging via conspiracy "a nonresident foreign national, acting entirely outside the United States, and who is not an employee or agent of an American company," who would not otherwise be liable under the statute. *Id.* at 91. The Second Circuit explained that "the carefully tailored text of the [FCPA], read against the backdrop of a well-established principle that U.S. law does not apply extraterritorially without express congressional authorization and a legislative history reflecting that Congress drew lines in the FCPA out of specific concern about the scope of extraterritorial application of the statute, persuades us that Congress did not intend for persons outside of the statute's carefully delimited categories to be subject to conspiracy or complicity liability." *Id.* at 83–84.

*Hoskins* has no application here. Unlike the categories in the FCPA statute, whose purpose is to limit the scope of extraterritorial application of the statute, the categories in Section 1960 ("Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business …") have no bearing on jurisdiction or extraterritoriality. There is nothing to indicate that Congress intended to limit conspiratorial liability for this conduct.

*Amen* similarly has no application here. *Amen* held that the continuing criminal enterprise (CCE) statute, 21 U.S.C. § 848, only applies to a person in charge of a CCE, *i.e.*, a kingpin, and "one cannot incur liability for aiding and abetting such a person." *Id.* at 381. The Second Circuit looked to the CCE statute's legislative history and explained that Congress enacted the statute "to target the ringleaders of large-scale narcotics operations, … not the lieutenants and foot soldiers." *Id.* Again, the Second Circuit was ensuring that someone who Congress had decided would not be liable under the statute could not get swept into its reach via conspiratorial liability.

The concerns animating *Amen* are also not present in this case. In *Amen*, even the Government "concede[d] that employees of a CCE cannot be punished for aiding and abetting the head of the enterprise." *Id.* The application of complicity and conspiracy would thus "disrupt the carefully defined statutory gradation of offenses; the low-level henchman would find himself subject to the more severe penalties applicable to the 'kingpin.'" *Hoskins*, 902 F.3d at 80. Section 1960, by contrast, does not implicate a similar gradation of offenses, and Storm has cited nothing indicating that Congress intended to limit conspiratorial liability for such offenses. Notably, Storm has not found any cases applying the unique holdings of *Hoskins* and *Amen* to Section 1960 conspiracies.

## VI. Unanimity and Overt Acts

With regard to Count Two, the Government suggested that the jury needed to find an overt act unanimously. (Dkt. 156 at 34 (Request No. 21)). The Court questioned this:

> I don't believe that's correct in light of *United States v. Kozeny*, 667 F.3d 122 [(2d Cir. 2011)]. I'm pretty sure that the language should be, "You need not reach unanimous agreement on whether a particular overt act was committed in furtherance of the conspiracy. You just need to all agree that at least one overt act was so committed." *Kozeny* still seems to be the law, but if either side has found a Second Circuit case overruling *Kozeny*, let me know. It's not my intention to charge the jury incorrectly.

(Tr. 796).

The Court is correct. As the Court suggested, the Court should not require unanimity regarding the overt act, and should instead charge the jury: "You need not reach unanimous agreement on whether a particular overt act was committed in furtherance of the conspiracy. You just need to all agree that at least one overt act was so committed." (Tr. 796).

Hon. Katherine Polk Failla
July 25, 2025
Page 10 of 11

### VII.   Willfulness for Count Three

The Court asked the parties to convirm that "the willfulness standard for [the] Count Three conspiracy would be what I call *Bryan* willfulness, which is a general purpose to do w[hat] the law forbids." (Tr. 797).

The Court is correct: *Bryan*[3] willfulness applies here. *See, e.g., United States v. Homa Int'l Trading Corp.*, 387 F.3d 144 (2d Cir. 2004); *United States v. Abdullaev*, 761 F. App'x 78 (2d Cir. 2019); *United States v. Banki*, 2010 WL 11606509 (S.D.N.Y. 2010); *United States v. Turner*, 836 F.3d 849, *supplemented*, 840 F.3d 336 (7th Cir. 2016); *United States v. Piquet*, 372 F. App'x 42 (11th Cir. 2010); *United States v. Elashyi*, 554 F.3d 480 (5th Cir. 2008).

### VIII.   Special Verdict Form

The Government asked the Court to instruct the jury, with regard to Count Three:

> The Indictment alleges that the conspiracy charged in Count Three had four objectives. The Government must prove beyond a reasonable doubt that there was an agreement or understanding among at least two people to achieve any one or more of these four objectives: (1) to receive, and cause others to receive, funds, goods, or services from the Lazarus Group, a sanctioned North Korean entity, (2) to provide, and cause others to provide, funds, goods, or services to, by, or for the benefit of the Lazarus Group, (3) to transfer, pay, withdraw, or deal in or cause others to transfer, pay, withdraw, or deal in blocked property and interests in property of the Lazarus Group, or (4) to avoid and evade the requirements of U.S. law with respect to receiving funds, goods, or services from or providing funds, goods, or services to the Lazarus Group, or with respect to transferring, paying, withdrawing and dealing in blocked property of the Lazarus Group.

(Dkt. 156 at 37 (Request No. 23)). The Court asked whether it should provide a special verdict form to the jury with regard to Count Three. (Tr. 800).

---

[3] *Bryan v. United States*, 524 U.S. 184 (1998).

Hon. Katherine Polk Failla
July 25, 2025
Page 11 of 11

While the Government's view is that the four objects were properly charged and proved, the Government also recognizes that there are conceptual challenges to mapping the definition of blocked property onto the nature of the transactions at issue here, which may serve to confuse the jury. In light of the nature of the evidence and charged crime, here it makes sense to instruct the jury only as to the second object: "to provide, and cause others to provide, funds, goods, or services to, by, or for the benefit of the Lazarus Group"; after all, if the jury does not find that, it is vanishingly unlikely it would find the other objects. Accordingly, the Court should instead charge the jury:

> The Government must prove beyond a reasonable doubt that there was an agreement or understanding among at least two people to achieve the following objective: to provide, and cause others to provide, funds, goods, or services to, by, or for the benefit of the Lazarus Group.

In light of this, there is no need for a special verdict form. Additionally, this obviates any of the Court's and Storm's concerns about instructions regarding "blocked property."

Please do not hesitate to contact us with any questions.

                              Respectfully submitted,

                              JAY CLAYTON
                              United States Attorney

by:     __/s Thane Rehn_____
          Ben Arad
          Thane Rehn
          Benjamin A. Gianforti
          Assistant United States Attorneys
          (212) 637-6521 / -2490 / -2354

          Kevin Mosley
          Special Assistant United States Attorney