Cooley

Brian Klein
T: +1 213 720 2286
bklein@cooley.com

***By ECF***

October 9, 2026

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:** ***United States v. Roman Storm*, 23 Cr. 430 (KPF)**

Dear Judge Failla:

We write on behalf of Roman Storm to respond to the government's October 5, 2026 letter nominally notifying this Court of supplemental authority. (*See* Dkt. 305 ("Ltr.").) The letter asserts that the recent D.C. Circuit decision of *United States v. Sterlingov*, No. 24-3161, 2026 WL 2881230 (D.C. Cir. Sept. 25, 2026), provides new legal authority to answer the defense's arguments against venue predicated on the acts of Shakeeb Ahmed for Counts One and Two. The government, however, misreads *Sterlingov*, which does not support its venue arguments. In fact, the *Sterlingov* decision only serves to further illuminate the deficiencies in the government's venue and conspiracy theories.

There are material differences between the facts in *Sterlingov* and those in Mr. Storm's case which are central to the venue analysis. Contrary to the government's claim that Bitcoin Fog was "similar to Tornado Cash" (Ltr. at 1), Bitcoin Fog was a centralized, custodial mixer, unlike Tornado Cash, which was a noncustodial and permissionless protocol. Unlike Mr. Storm, *Sterlingov* personally administered Bitcoin Fog: he took custody of user funds, charged fees on every transaction he processed, and encouraged users to buy drugs from darknet vendors like Silk Road. 2026 WL 2881230, at *2. As further discussed below, the D.C. Circuit's venue holding rested squarely on the fact that there was sufficient evidence in the record for the jury to find that Sterlingov or a co-conspirator transferred the government agent's funds to and from the District of Columbia after being informed that the funds were represented to be proceeds of illicit activity, reflecting the custodial nature of Bitcoin Fog. *Id.* at *4. There are no similar facts here.

**Venue for Non-Conspirator Acts (Both Counts).** The government takes out of context a portion of the *Sterlingov* holding in which the D.C. Circuit notes that the government agent's transfer of funds to Bitcoin Fog could support venue because the "transfer of funds to and from [the mixer] furthered [its] ability to launder the funds of all users." (Ltr. at 2 (citing 2026 WL 2881230 at *4).) The government claims this supports materiality under *United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008), responding to the defense argument that Mr. Ahmed's use of Tornado Cash did not materially further the alleged conspiracy. This mischaracterizes the *Sterlingov* holding, as well as the defense's objection to using Mr. Ahmed's alleged acts as a basis for venue: The defense's argument does not rest solely on the brevity of Mr. Ahmed's Tornado Cash deposit, but on the fact that Mr. Ahmed's acts, as those of a non-conspirator, cannot support venue in the Southern District of New York at all. Importantly, the D.C. Circuit has never recognized a venue theory resting on a non-conspirator's acts. Its venue rule has always required an "overt act in furtherance of the conspiracy…committed by any co-conspirator" himself, not by an outsider to the agreement. *See, e.g.*, *United States v. Machado-Erazo*, 986 F. Supp. 2d 39, 54-55 (D.D.C. 2013) (citing *United States v. Brodie,* 524 F.3d 259, 273 (D.C. Cir. 2008)). The D.C. Circuit's standard also does not import the Second Circuit's venue rule of foreseeability, which applies even for acts performed by members of the conspiracy

Cooley



itself. *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018) (requiring "some sense of venue having been freely chosen by the defendant").

*Sterlingov* merely applies the D.C. Circuit-specific standard: The D.C. Circuit affirmed venue because it found sufficient evidence that defendant Sterlingov himself caused the agent's funds to be transmitted to the district. *Id.* at *4 (government's theory was that "Sterlingov or a co-conspirator allegedly mixed the [undercover] agent's Bitcoin and transferred it to a receiving account after being informed that the Bitcoin was the proceeds of an ecstasy sale on the darknet market"). In other words, *Sterlingov*'s holding does not rest on a website's mere accessibility or use of it in D.C.; it rests on the fact that Sterlingov actually took custody of a third party's Bitcoin after that party represented the funds were "the result of illegal ecstasy sales," and knowingly transmitting those funds to and from the district; the handling of illicit funds with knowledge is what supported venue. *Id.* at *4. Mr. Storm, by contrast, is not alleged to have ever taken custody of or personally effectuated any deposit or withdrawal; it is Tornado Cash's smart contracts, not Mr. Storm or the website, that receive and transmit funds. Nor has the government alleged that Mr. Storm knew any funds Mr. Ahmed deposited or withdrew were illicit, let alone that Mr. Ahmed or anyone else in this District conveyed that to him—and no trial evidence would support such an inference. *Sterlingov* simply does not address the question at issue here: when a non-conspirator's actions might provide a basis for venue in this District.

In contrast, the Second Circuit recognizes acts performed by parties outside of a conspiracy as a basis supporting venue only where: (1) the conspirators caused the non-conspirator's acts; (2) the acts materially furthered the ends of the conspiracy; and (3) the acts were reasonably foreseeable to the defendant. *See Royer*, 549 F.3d at 896; *United States v. Lange*, 834 F.3d 58, 70 (2d Cir. 2016) (same, quoting *Royer*). The defense has explained that Mr. Ahmed's acts fail all three elements—not merely that his deposit was too brief to matter—and the government does not engage with causation or foreseeability at all in its letter. (*See* Dkt. 230 (Rule 29 motion); Dkt. 242 (Rule 29 reply).) Mr. Storm did not cause the deposit or withdrawal: Mr. Ahmed learned of Tornado Cash from reports that it had been used by "nation-state attackers like Lazarus," not from Mr. Storm or any advertising. (Dkt. 230 at 23-24 (citing Tr. 895:10-13, 902:3-23).) Nor did Mr. Ahmed's deposit materially further the conspiracy: the government argues only that it added volume to the pools and so increased the "anonymity set" regardless of whose funds they were. (Ltr. at 1-2 (citing Tr. 224).) But *Royer* and *Lange* require more than a marginal addition to a pool used indiscriminately by the public—they require conduct "crucial to the success of the scheme," not the unprompted, unsolicited act of a stranger to the agreement. *Royer*, 549 F.3d at 895. Unlike the controlled subscribers in *Royer* or the solicited investors in *Lange*, Mr. Ahmed was not a conspirator-directed participant—he used a public, permissionless, non-custodial protocol on his own initiative, and the government introduced no evidence of widespread use of Tornado Cash in this District beyond Mr. Ahmed's single deposit. (Dkt. 242 at 21.) And none of it was foreseeable to Mr. Storm: unlike the undercover agent, who told Bitcoin Fog's administrator his funds were proceeds of narcotics sales before Sterlingov transmitted them to and from the district, Mr. Ahmed never communicated with Mr. Storm or any alleged co-conspirator at all. The absence of a more developed Second Circuit standard reflects only that *Royer* and *Lange* presented easy facts; it is not license to treat any relationship between in-district conduct and the object of a conspiracy as sufficient, and neither case so holds.

**Count Two.** As to the charged conspiracy to operate an unlicensed money transmitting business, the government seeks to import a theory from *Sterlingov* that does not match the offense here. Count Two proceeded *exclusively* as a Section 1960(b)(1)(C) offense: the jury had to find that Mr. Storm himself knew the funds transmitted were "derived from a criminal offense or…[were] intended to be used to promote or support unlawful activity"—not that Tornado Cash lacked a license, and not merely that it "served customers" in this District. *Sterlingov*'s venue holding for the unlicensed-transmission counts, by contrast, rested entirely on the Section 1960(b)(1)(A) licensing-failure theory—a failure to perform a legally required

Cooley



act, whose situs the D.C. Circuit fixed wherever that act should have occurred (there, D.C., because Bitcoin Fog received and issued funds to a person there). 2026 WL 2881230, at *5.

The government's letter relies exclusively on that licensing-failure holding, arguing that *Sterlingov* is "compelling" because venue there rested "on the sole basis" that the mixer "served customers in the District." (Ltr. at 2.) The government's letter fails to mention the knowledge-based theory under Section 1960(b)(1)(C) that the government also raised in *Sterlingov*—that Bitcoin Fog "involve[d] the transportation or transmission of funds" that Sterlingov knew were "derived from a criminal offense"—was not addressed or adopted by the D.C. Circuit. *See* Brief for Appellee at *27-28, *Sterlingov*, 2026 WL 498061 (D.C. Cir.). This distinction is dispositive: a licensing-based theory under (b)(1)(A) asking only where a business operated has no application to a knowledge-based offense under (b)(1)(C), which turns on Mr. Storm's state of mind, and there is no evidence suggesting that Mr. Storm knew that funds transmitted to or within this District were criminal proceeds or were intended to support unlawful activity. Mr. Ahmed testified that he interacted only with the Tornado Cash UI—never even communicating with Mr. Storm, any alleged co-conspirator, or even the relayer that processed his withdrawal—so there is no basis to infer he conveyed that his funds were criminally derived (and indeed, Mr. Ahmed's funds were not criminally derived). (Tr. 899:4-11, 901:4-7.) Nor could he even confirm having seen the Tornado Cash website when shown a screenshot at trial. The record does not establish what, if anything, the website conveyed to him, let alone that anything passed from him to Mr. Storm.

***

*Sterlingov* is not persuasive authority for the government's venue arguments. This Court should find that venue is not proper in this District.

Respectfully submitted,

B Kl

Brian Klein
Cooley LLP

Keri Curtis Axel
Waymaker LLP

David Patton
Hecker Fink LLP

*Attorneys for Roman Storm*