WAYMAKER

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

November 19, 2026

**Keri Curtis Axel**
Direct (213) 314-5284
kaxel@waymakerlaw.com

***Via ECF***

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Roman Storm*, 23 Cr. 430 (KPF)**

Dear Judge Failla:

We respectfully submit the recent decision in *United States v. Peraire-Bueno*, No. 24 Cr. 293 (JGLC), 2026 WL 3520573 (S.D.N.Y. Nov. 16, 2026), as supplemental authority supporting our client Roman Storm's pending Rule 29 motion. *See* Dkt. 230 (Motion); Dkt. 242 (Reply). For this Court's convenience, a copy of the decision is attached as Exhibit A.

In *Peraire-Bueno*, following a mistrial, the Honorable Jessica G. L. Clarke entered judgments of acquittal on wire fraud, wire fraud conspiracy, and money laundering conspiracy charges because the government failed to prove a required element: a material misrepresentation. *Peraire-Bueno* is relevant because it rejected the government's attempt to invoke the "totality" of the evidence as a substitute for element-specific proof, which is an argument the government has raised in opposition to Mr. Storm's Rule 29 motion. *See* Dkt. 241 (Gov't Opposition) at 15-16; Dkt. 286 (Gov't Letter re Technology Facts) at 1.

In *Peraire-Bueno*, the government argued that the evidence had to be considered "holistically," including evidence of the defendants' exploitation of a vulnerability in a blockchain protocol, their concealment of money they derived from that exploitation, and statements reflecting their intent. 2026 WL 3520573, at *21. Judge Clarke concluded that, while circumstantial evidence may be considered together, "[n]othing in [the government's] cited cases permit[ted] the Court to disregard an element of wire fraud in assessing the sufficiency of the Government's case." *Id.* (distinguishing *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011)). The government could not satisfy its burden "by gesturing generally at a scheme." *Id.* Nor could evidence of concealment and wrongful intent fill the evidentiary gap because "fraudulent intent is a separate element of this crime, and it cannot make up for the lack of a material misrepresentation." *Id.* at *22 (citing *United States v. Connolly*, 24 F.4th 821, 841-42 (2d Cir. 2022)).

*Peraire-Bueno*'s reasoning speaks directly to the government's response to Mr. Storm's sufficiency of trial evidence challenge. The government has emphasized that the trial evidence should be "considered in conjunction and in its totality," including the "literally hundreds of

steps" Mr. Storm allegedly took to operate, maintain, upgrade, and promote Tornado Cash. Dkt. 286 at 1; *see also* Dkt. 241 at 3 ("many affirmative steps . . . to operate, maintain, upgrade, promote, and exercise control"), 14, 47 (alleged steps to operate and promote Tornado Cash included paying for website and User Interface development and hosting). But the question is not whether those acts may be considered together; it is whether, considered together, they establish each element of the charged conspiracies—including the charged unlawful agreements to commit crimes and Mr. Storm's knowledge and intent to join the alleged agreements. *See* Dkt. 242 at 20-24, 39-40, 47, 50-52. The volume of evidence concerning Mr. Storm's development of Tornado Cash software cannot substitute for proof of what alleged unlawful agreement Mr. Storm joined, what alleged criminal objective he intended to further, whether he intended to provide "services" to anyone, and, if so, to whom.

Count Two, conspiracy to operate an unlicensed money transmitting business, illustrates the point. The jury was required to find that Mr. Storm "knowingly and willfully became a member of the conspiracy with the intent to further its illegal purpose." Trial Tr. 2510:12-14. It also had to find that the conspiratorial agreement encompassed every element of the substantive offense. *Id.* at 2511:6-9. Evidence that Mr. Storm continued to develop, improve, or monetize Tornado Cash—even with knowledge that criminals also used it—therefore cannot sustain the conviction unless that evidence permits a rational jury to find, beyond a reasonable doubt, the charged agreement to operate a money transmitting business as well as the requisite knowledge and willful intent. As this Court discussed at argument on the Rule 29 motion, relevant inquiries include whether the challenged conduct assisted criminal activity "by design, not by effect," and whether the founders intended particular functionality "to aid bad actors." Apr. 9, 2026 Tr. 48:19, 50:24. *Peraire-Bueno* reinforces that such element-specific inquiries cannot be replaced by the government's suggested overall narrative.

The same principle applies to Counts One and Three, conspiracies to engage in money laundering and to violate sanctions, respectively. Evidence probative of consciousness of guilt, knowledge of illicit use, or continued operation may be considered, but such evidence must bear on each of the elements of the crimes charged. It cannot substitute, as to Count One, for proof that Mr. Storm agreed that a co-conspirator would conduct a money laundering transaction, or proof that Mr. Storm knew that the transactions to be conducted contained the proceeds of specified unlawful activity. Nor can it substitute, as to Count Three, for an agreement to violate the sanctions laws, or to provide services to bad actors. *Peraire-Bueno* applies the principle that consideration of the evidence as a whole does not relieve the government of proving every element beyond a reasonable doubt.

Finally, Judge Clarke rejected the government's proffered evidence regarding "lying to friends and colleagues" and "laundering the proceeds" of the exploit as irrelevant to the missing element of material misrepresentation. *Peraire-Bueno*, 2026 WL 3520573, at *11 n.10. In this case, the government has attempted to rely on alleged lies to victims and to Rho Bank and alleged "secretive . . . means to cash out [Mr. Storm's] TORN tokens" as "consciousness of guilt" evidence. Dkt. 241 at 47, 72, 75. While Mr. Storm respectfully submits that the evidence does not support him lying to anyone, *see* Dkt. 242 at 5, 37 n.15, 38, and that his TORN sales

WAYMAKER



represented personal trading profits, not proceeds of the Tornado Cash protocol, *see* Dkt. 230 at 51; Dkt. 242 at 38 n.16, this evidence—even when viewed in the light most favorable to the government—are similarly irrelevant to the alleged criminal agreement and the required knowledge elements that the government failed to prove beyond a reasonable doubt.

We respectfully request that this Court consider *Peraire-Bueno* in resolving Mr. Storm's pending Rule 29 motion and acquit him of all charges.

Very truly yours,

Keri Curtis Axel
WAYMAKER LLP

Brian E. Klein
Cooley LLP

David Patton
Hecker Fink LLP

*Attorneys for Roman Storm*